# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al.*,<br><br>        Plaintiffs,<br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND<br>        SECURITY, *et al.*,<br><br>        Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Case No.: 1:21-cv-10083-DJC |

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 1

   I.   Statutory and Regulatory Background ............................................................................. 1

   II.  The Complaint ............................................................................................................. 5

ARGUMENT .............................................................................................................................. 7

   I.   The Complaint Should be Dismissed Because Plaintiffs' Injuries Fall Outside the Zones of Interests of the Provisions They Cite ........................................................................ 7

       A.   Plaintiffs' Injuries Fall Outside the Zones of Interests of the Two INA Sections. . 9

       B.   Plaintiffs' Injuries Fall Outside the Zone of Interests of the Regulation. ............. 11

       C.   Plaintiffs' Injuries Fall Outside the Zone of Interests of the Due Process Clause, as that Clause Applies to Noncitizens. .................................................................. 12

   II.  Plaintiffs' APA Claim Should be Dismissed Because Plaintiffs Have an Adequate Alternative Remedy. ..................................................................................................... 13

       A.   Removal Proceedings Before an Immigration Court ........................................... 14

       B.   USCIS's Denial of Benefits. ............................................................................... 18

   III.  Plaintiffs' Programmatic Attack on Defendants' Compliance with Their Disclosure Obligations Across all Immigration Proceedings Should Be Dismissed. ......................... 20

CONCLUSION ......................................................................................................................... 22

**INTRODUCTION**

Congress, through the Immigration and Nationality Act ("INA"), enacted a comprehensive system governing immigration policy and procedure. In conjunction with agency regulations, that system establishes extensive processes for adjudicating immigration benefits, removing noncitizens from the United States, and detaining noncitizens. Those processes generally include multiple opportunities for federal court and/or agency review, as well as opportunities for affected individuals to obtain documents or information about their immigration cases.

Notwithstanding these specific avenues for access to information, Plaintiffs—immigration law firms, attorneys, and a nonprofit legal services organization—have brought an omnibus Administrative Procedure Act ("APA") claim that essentially asks this Court to require Defendants to produce documents in *all* civil immigration matters. But there are many different types of civil immigration proceedings encompassing over a million individual adjudications each year. These many, varied proceedings involve different facts and implicate different statutory and regulatory provisions, and none of those statutes or regulations require all of the disclosures Plaintiffs seek. Regardless, Congress largely provided a means for Plaintiffs to raise any document-production challenges in individual immigration proceedings and through those challenges obtain an adequate remedy. Thus, the instant APA claim is barred.

Plaintiffs' complaint also fails at the outset because it is a generalized attack on an alleged agency-wide policy that seeks broad, programmatic relief, rather than a challenge to discrete, final agency action. Moreover, Plaintiffs' alleged injuries—lost resources and the inability to provide services to more clients—are, at best, only marginally related to the legal provisions upon which they root their APA claim. The Court should therefore dismiss the complaint.

**BACKGROUND**

## I.   Statutory and Regulatory Background

The INA is a comprehensive statutory scheme that "governs how persons are admitted to, and removed from the United States." *Pereida v. Wilkinson*, 141 S. Ct. 754, 758 (2021); *see also*

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 587 (2011). When it was enacted, among other "basic and significant changes," the INA "safeguard[ed] judicial review and provid[ed] for fair administrative practice and procedure." H.R. Rep. No.82-1365, at 28 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1679. Three components within the Department of Homeland Security ("DHS"), all named as defendants here, are primarily responsible for administering and enforcing the Nation's immigration laws. 6 U.S.C. § 211(c)(8); 8 U.S.C. § 1103; 8 C.F.R. § 100.1.[1]

U.S. Citizenship and Immigration Services ("USCIS") administers the lawful immigration system. 6 U.S.C. § 271.[2] People apply or petition to USCIS for benefits, including naturalization, lawful permanent residence, and temporary visas. *Id*. § 271(b), 8 C.F.R. § 103.2. In fiscal year 2020, USCIS received 7.7 million applications, petitions, and requests for benefits, including 967,900 applications for naturalization and 519,700 applications for lawful permanent residence.[3]

U.S. Customs and Border Protection ("CBP"), among other responsibilities, inspects travelers at ports of entry (like certain airports and land border crossings), and protects and patrols the borders to prevent the unlawful entry of persons and goods. 6 U.S.C. § 211(c).[4] In fiscal year 2020, CBP encountered 646,822 individuals who (1) presented themselves at a port of entry seeking lawful admission, but were determined to be inadmissible, (2) presented themselves at a port of entry seeking humanitarian protection, (3) presented themselves at a port of entry, withdrew their application for admission, and returned to their country of origin within a short timeframe, (4) were expelled in the interest of public health, or (5) were apprehended due to being unlawfully present.[5]

---

[1] Congress also assigned some immigration powers and duties to the Secretary of State and the Attorney General. *See* 8 U.S.C. §§ 1103, 1104.

[2] *See also* About us, Mission and Core Values, available at https://www.uscis.gov/about-us/mission-and-core-values (last visited April 16, 2021).

[3] 2020 USCIS Statistical Annual Report, at 2-6, available at https://www.uscis.gov/sites/default/files/document/reports/2020-USCIS-Statistical-Annual-Report.pdf (last visited April 16, 2021).

[4] *See also* About CBP, available at https://www.cbp.gov/about (last visited April 16, 2021).

[5] CBP Enforcement Statistics Fiscal Year 2021, available at https://www.cbp.gov/newsroom/stats/cbp-enforcement-

U.S. Immigration and Customs Enforcement ("ICE"), through its Enforcement and Removal Operations directorate, "upholds U.S. immigration law at, within, and beyond" the borders of the United States, and "manages all aspects of the immigration enforcement process, including identification and arrest, domestic transportation, detention, bond management, and . . . remov[al] from the U.S. . . ." [6]  Separately, the ICE Office of the Principal Legal Advisor serves as the exclusive government representative in immigration proceedings before the Department of Justices' Executive Office for Immigration Review ("EOIR"). 6 U.S.C. § 252(c). EOIR is responsible for adjudicating immigration cases, including removal proceedings through which a noncitizen can be removed from the country. 6 U.S.C. § 521(a). It includes the immigration court and its first level appellate court, the Board of Immigration Appeals. 8 U.S.C. § 1101(b)(4), 8 C.F.R. § 1003.0(a). In fiscal year 2020, the immigration court received 367,038 new cases.[7]

Defendants administer or play a role in numerous kinds of civil immigration proceedings. For example, noncitizens and others apply to or petition USCIS for immigration or naturalization benefits like citizenship, asylum, or lawful permanent residence.[8] *See* 6 U.S.C. § 271(b). USCIS, ICE, and CBP initiate removal proceedings in immigration court whereby an immigration judge will consider whether a noncitizen should be removed. 8 U.S.C. § 1229(a); 8 C.F.R. §§ 239.1, 1003.13, 1003.14(a), 1239.1. And ICE and CBP can reinstate a prior removal order against a noncitizen who illegally re-enters the United States. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(a); *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 33 (2006). Through expedited removal proceedings, DHS can remove certain noncitizens who arrive at a port of entry or who have been

---

statistics?_ga=2.203566864.1683215042.1615064102-1530298939.1615064102    (last   visited April 16, 2021); *see also* https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics-title-8-and-title-42-statistics-fy2020 (last visited April 16, 2021).

[6] About us, available at https://www.ice.gov/about-ice (last visited April 16, 2021).

[7] Executive Office of Immigration Review Adjudication Statistics, available at https://www.justice.gov/eoir/page/file/1060841/download (last visited April 16, 2021).

[8] In this memorandum, Defendants use the term "noncitizen" as synonymous with "alien," which is defined in 8 U.S.C. § 1101(a)(3).

present without admission or parole for less than two years, and who lack valid entry documents or who seek to procure admission by fraud or misrepresentation. 8 U.S.C. § 1225(b)(1). Also, DHS may detain certain noncitizens pending removal or during their removal proceedings. *See, e.g.*, 8 U.S.C. § 1226.

Further, there are many different proceedings within the broad categories described in the paragraph above, all of which implicate different regulations, statutes, and processes. For instance, in a removal proceeding before an immigration judge, the noncitizen can challenge removability (*i.e.*, whether he is lawfully present in the country) or raise a defense to removal (*e.g.*, asylum). 8 C.F.R. §§ 1240.10(c), (d), 1240.11. The differences in both the grounds for removability and the potential defense may affect the burden of proof and the type of evidence required. 8 U.S.C. § 1229a(c); 8 C.F.R. § 1240.8(d). The expedited removal process and the process for reinstating a prior order of removal provide other examples. During those processes, a USCIS asylum officer will interview a qualifying noncitizen who expresses a fear of returning to his home country. 8 C.F.R. §§ 208.30, 208.31. If the noncitizen establishes a significant possibility (credible fear screening standard) or reasonable possibility (reasonable fear screening standard) of persecution or torture, the noncitizen may be referred to an immigration court for further proceedings. 8 U.S.C. § 1151(a)(1), 8 C.F.R. §§ 208.16, 208.30, 208.31. *Id*.

Moreover, Congress and the agencies have established varied means of administrative and judicial review for immigration processes.[9] For example, Congress has vested the courts of appeals with exclusive jurisdiction to review final orders of removal from the immigration court, as well as "all questions of law and fact, including interpretation and application of constitutional and statutory provision" arising from those proceedings. 8 U.S.C. §§ 1252(a)(1), 1252(b)(9). In addition, 8 U.S.C. § 1421(c) authorizes district courts to conduct a *de novo* review when USCIS denies an application for naturalization. 8 U.S.C. § 1421(c). And the agencies provide their own

---

[9] There are also instances where Congress has expressly prohibited judicial review. *See, e.g.*, 8 U.S.C. § 1252(a)(2).

multi-tiered review processes in conjunction with many of the proceedings. *See, e.g.*, 8 C.F.R. §§ 1003.38, 1240.15 (appeal of removal order from immigration court to Board of Immigration Appeals); *id*. 103.3(a) (appeal of various USCIS decisions).

Congress and DHS have also provided for the disclosure of certain documents or information to noncitizens in immigration proceedings.[10] For example, during removal proceedings in immigration court, a noncitizen is served with a copy of a charging document containing, among other things, a description of the nature of the proceedings, the conduct alleged to be in violation of the law, and the applicable statutory provisions. 8 U.S.C. § 1229(a)(1). The noncitizen is  given "a reasonable opportunity to examine the evidence against" him. 8 U.S.C. § 1229a(b)(4)(B). And the noncitizen "shall have access to" his visa, other entry documents, and any non-confidential records and documents "pertaining to the alien's admission or presence in the United States" when the noncitizen has the burden of showing that he is lawfully present in the United States pursuant to a prior admission. 8 U.S.C. § 1229a(c)(2)(B). The removal proceeding concludes with a decision by the immigration judge. 8 C.F.R. § 1240.13. Similarly, when USCIS denies an immigration-related benefit, it sends a written notice to the applicant or petitioner "explain[ing] . . . the specific reasons for denial." *Id*. § 103.3(a)(1)(i). And prior to that, if the noncitizen is unaware of derogatory information considered by USCIS, USCIS generally advises the applicant about the derogatory information and provides the applicant an opportunity to explain or rebut it. 8 C.F.R. § 103.2(b)(16)(i).

## II. **The Complaint**

As summarized in the first sentence of the complaint, the instant lawsuit is a sweeping challenge to the alleged "systematic failure of the Department of Homeland Security ('DHS') to produce to noncitizens and their counsel the records that are necessary to support their claims and defenses or eligibility for benefits in a range of civil immigration proceedings." Compl. ¶ 1.

---

[10] There are instances where Congress has expressly precluded the exchange of certain information. *See, e.g.*, 8 U.S.C. § 1229a(b)(4)(B).

Plaintiffs are five attorneys, two law firms, and a nonprofit legal services organization, who represent noncitizens "in a range of immigration matters, including bond hearings, removal proceedings, applications for affirmative asylum, and applications for other benefits including visas, permanent resident status, and citizenship." *Id.* ¶ 2.

The crux of the complaint is the claim that DHS has a policy or practice, which Plaintiffs call the "Nondisclosure Policy," of "denying noncitizens and their counsel timely access to relevant records in the government's possession" during immigration proceedings and instead directing Plaintiffs to request those records through the Freedom of Information Act ("FOIA"). *Id.* ¶¶ 1-4. Plaintiffs maintain that this alleged policy violates DHS's legal obligations, arising under the Constitution and immigration laws and regulations, to disclose records that are relevant to a noncitizen's immigration case. They specifically point to the Due Process Clause, 8 U.S.C. § 1229a(b)(4)(B),[11] 8 U.S.C. § 1229a(c)(2)(B), and 8 C.F.R. § 103.2(b)(16) as the source of those obligations. Compl. ¶ 87.

Plaintiffs further claim that the alleged policy "applies across a broad range of Defendants' interactions with noncitizens." *Id.* ¶ 31. They single out the withholding of information that may be used to deny applications with USCIS, the withholding of information from noncitizens in removal proceedings, and the withholding of information from noncitizens whom DHS detains and removes based on prior removal orders, *id.* ¶¶ 31-34, but also complain about "various types of documents" not disclosed "in various types of proceedings." *Id.* ¶ 35. Plaintiffs assert that the alleged policy violates the APA because it is arbitrary, capricious, an abuse of discretion, unconstitutional and otherwise incompatible with law. *Id.* ¶¶ 86-87. They ask the Court to declare that the policy violates the APA and to "enjoin Defendants' Nondisclosure Policy and order compliance by Defendants with regulatory, statutory and constitutional disclosure obligations." *Id.* Prayer for Relief.

---

[11] Plaintiffs' complaint actually cites 8 U.S.C. § 1229a(a)(4)(B). Compl. ¶ 87. This appears to be a typographical error.

Plaintiffs assert that the alleged policy harms noncitizens because they are "deprived of the opportunity to examine the evidence against them" and prevented from learning about favorable evidence, all of which threatens their "ability to defend themselves" and "the fairness of the proceedings." *Id*. ¶¶ 54, 71. For their own part, Plaintiffs contend that they are harmed, as attorneys, when Defendants do not produce records because it increases the time and cost necessary for them to represent their clients, which "impede[s]" them "from achieving their mission and goal of providing help to those who need their services" by preventing them from taking on more clients. *Id*. ¶¶ 68, 79, 80. The private attorneys and private law firm plaintiffs (that is, everyone except Greater Boston Legal Services) maintain that they cannot recover these increased costs because they serve clients of limited resources or operate on flat-fee agreements. *Id*. ¶ 83.[12]

## ARGUMENT

Plaintiffs' complaint should be dismissed for any of three independent reasons. First, Plaintiffs' alleged injuries fall outside the zones of interests for the statutes, regulation, and constitutional provision they cite. Second, Plaintiffs have an adequate remedy to pursue records in the context of individual immigration proceedings, which bars this omnibus APA claim. And third, Plaintiffs do not challenge a circumscribed and discrete agency action, and, instead, improperly mount a broad programmatic attack.

## I.   **The Complaint Should be Dismissed Because Plaintiffs' Injuries Fall Outside the Zones of Interests of the Provisions They Cite.**

Plaintiffs must show that their alleged injuries "arguably fall within the zone of interests protected or regulated by the statutory provision[, regulation,] or constitutional guarantee invoked

---

[12] Defendants dispute many of the allegations in the complaint, in particular the existence of the so-called "Nondisclosure Policy." Those allegations must be accepted as true, however, for purposes of this motion to dismiss. *See García–Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). Defendants reserve the right to contest the allegations in the complaint if the case is not dismissed.

in the suit." *Bennett v. Spear,* 520 U.S. 154, 162 (1997); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *Fed. Def. of New York, Inc. v. Federal Bureau of Prisons*, 954 F.3d 118, 131 (2d 2020). *Harvey v. Veneman*, 396 F.3d 28, 34-5 (1st Cir. 2005). Whether Plaintiffs' interests fall within the zone-of-interest test is determined not by reference to the APA or by reference to the overall purpose of the Act in question, but, instead, by reference to the statutory provisions, regulations, or constitutional guarantees that Plaintiffs allege were violated. *See Bennett,* 520 U.S. at 175-76; *see also Air Courier Conf. v. Am. Postal Workers Union*, 498 U.S. 517, 529-30 (1991) (accepting "generality in defining the 'relevant statute'" deprives zone-of-interests tests of meaning.)

This zone of interests test "forecloses suit . . . when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the . . . [provision alleged to have been violated] that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012); (quotation marks omitted)). The "essential inquiry is whether Congress 'intended for [a particular] class [of plaintiffs] to be relied upon to challenge" the agency action. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984)). And while the test is "lenient," *Lexmark*, 572 U.S. at 130, it is not "toothless," *Moya v. U.S. Dept. of Homeland Sec.*, 975 F.3d 120, 132 (2d Cir. 2020) (plurality opinion).

To that end, Plaintiffs' complaint identifies four provisions upon which they rely—two sections of the INA (8 U.S.C. § 1229a(b)(4)(B) and § 1229a(c)(2)(B)), a DHS regulation (8 C.F.R. § 103.2(b)(16)), and Due Process Clause. Compl. ¶ 87. Plaintiffs argue that Defendants' failure to produce records in conjunction with these four provisions injures them because it "requires them to undertake considerable work designed to mitigate the [Nondisclosure] Policy's harms to their clients," *see id*. ¶ 68, which renders "Plaintiffs' representation of noncitizens . . . vastly more costly and time-consuming," *id*. ¶ 79. This, in turn, allegedly frustrates their goals because Plaintiffs cannot take on as many clients or must turn clients away who do not have their own paperwork.

*Id*. ¶¶ 80-81. But these injuries, even if actual, fall outside the zones of interests of the provisions Plaintiffs cite.

A. <u>Plaintiffs' Injuries Fall Outside the Zones of Interests of the Two INA Sections.</u>

Title 8 § 1229a(b)(4)(B) and § 1229a(c)(2)(B) are both in a statute titled, "Removal proceedings." The first, in a subsection titled, "Alien's rights in proceeding" affords the "alien . . . a reasonable opportunity to examine the evidence against" him "[i]n [removal] proceedings. . ., under regulations of the Attorney General…" 8 U.S.C. § 1229a(b)(4)(B). The second, 8 U.S.C. § 1229a(c)(2)(B), in a subsection titled, "Decision and burden of proof" provides that "the alien shall have access to" the alien's visa, other entry documents, and any non-confidential documents "pertaining to the alien's admission or presence in the United States" when, in a removal proceeding, the alien contends (and, therefore, has the burden of proving) that he is lawfully present pursuant to a prior admission.

"Whether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127 (quotations omitted). By their terms, these provisions provide noncitizens with access to certain documents in immigration court removal proceedings. Neither speaks directly or indirectly to the relationship between the noncitizen and his lawyer, and both apply regardless of whether the noncitizen is represented. Thus, Plaintiffs' injuries here are only "marginally related" to and, therefore, outside the zone of interests of, the provisions' purposes. *See Lujan*, 497 U.S. at 883 (noting that an agency's failure to comply with a statute requiring "on the record" hearings would have an adverse impact on the company that has a contract to record those hearings, but that impact would be outside the zone of interests because the statute "was obviously enacted to protect the interests of the parties to the proceedings and not those of the reporters"); s*ee also Arruda & Beaudoin, LLP v. Astrue*, 2013 WL 1309249, at **1, 11-12 (D. Mass. March 27, 2013) (holding that law firm's interests in obtaining volume requests of Social Security information and "its accompanying

commercial interests" were outside zone of interests of Privacy Act, even though law firm alleged that it needed the information to effectively service its clients). Indeed, a contrary reading would allow lawyers to bring collateral APA actions anytime a government action affects their case-management efficiency or advocacy goals. Such a result would be untenable.

The Second Circuit recently considered a zone-of-interest challenge in a similar context. In *Moya*, a nonprofit organization, which assisted noncitizens with naturalization applications, sued DHS and USCIS for their processing of those applications. 975 F.3d at 124-25. The plaintiff alleged that the defendants employed "'unlawful policies and practices'" that lead to the rejection of naturalization applications with forms N-648, in which an applicant can request a waiver of the civics and English tests based on disability pursuant to a provision of the INA. This alleged policy harmed the organization because it had "to spend more time with disabled clients and less time with everyone else." *Id*. at 125. This, in turn, required the organization to divert its time and resources from its primary mission of assisting immigrants with naturalization to overcoming the unlawful barriers for the immigrants with disabilities. *Id*.

Although finding that the organization had pled Article III standing, the Second Circuit nonetheless held that the organization's interests—a derivative interest in naturalization applicants' rights, coupled with a diversion of resources—fell outside the zone of interests of the applicable statute. *Id*. at 131-33. The effect of the statute's disability-waiver process on the organization, the court found, was "derived entirely from [the organization's] efforts to assist the disabled naturalization applicants who are directly regulated by the statute." *Id*. at 133. The court concluded that a decision permitting the collateral APA claim would be "'inconsistent'" with Congress' purpose in streamlining the process and procedures whereby a noncitizen can adjudicate an unfavorable naturalization decision. *Id.* (quoting *Lexmark*, 572 U.S. at 130). The court further found that holding otherwise would essentially allow the nonprofit to challenge derivatively what a disabled naturalization applicant cannot do directly (*i.e*., "bring suit without first exhausting administrative remedies."). *Id*. at 133-34.

10

Like the nonprofit organization in *Moya*, Plaintiffs' interests here are derivative of their clients' or entail resource diversion, which does not fit within the zones of interests of the applicable statutes they cite. Further, also like in *Moya*, allowing Plaintiffs to challenge DHS procedures here, as opposed to on behalf of their clients during the clients' individual immigration proceedings, would essentially sidestep the procedures Congress and the agencies have constructed for adjudicating immigration-related disputes. As such, Plaintiffs are outside the zones of interests of the statutory provisions they rely upon.

> B.   Plaintiffs' Injuries Fall Outside the Zone of Interests of the Regulation.

When, as here, a plaintiff brings an APA action because of an agency's alleged failure to comply with its own regulations, the zone-of-interest test focuses on the particular regulation that was allegedly violated. *Fed. Def.*, 954 F.3d at 131; *see also Busse Broad. Corp. v. F.C.C.*, 87 F.3d 1456, 1463 (D.C. Cir. 1996) (defining zone of interests as those "protected by the underlying statute or regulation"). A litigant falls within the zone of interests of a regulation when, at a minimum, the regulation protects or regulates the litigant. *Fed. Def.*, 954 F.3d at 131. At bottom, the inquiry is whether a plaintiff's interests are inconsistent with or so marginally related to the applicable regulation that "it cannot reasonably be assumed that" Congress authorized the suit. *See Lexmark*, 572 U.S. at 130; *Fed. Def.*, 954 F.3d at 131.

Plaintiffs' complaint cites 8 C.F.R. § 103.2(b)(16) as requiring DHS to disclose records that are relevant to a noncitizen's immigration case. Compl. ¶¶ 3, 5, 39, 87. This regulation, titled, "Submission and adjudication of benefit requests," states, in part, that "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16). It expressly includes a number of exceptions, including classified information, and courts have held that it requires the exchange of information but not the exchange of documents. *See infra* at 19; *see also Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663,678-79 (E.D. Va. 2019) (collecting cases), *aff'd*, 836 F. App'x 131 (4th Cir. 2020).

Nothing in this subsection directly or indirectly regulates the attorney-client relationship or otherwise applies only when the noncitizen is represented. This distinguishes it from the regulations at issue in *Federal Defenders*, where the court found that lawyers fell within the zone of interests of regulations explicitly directing inmate-attorney prison visits. *Fed. Def.*, 954 F.3d at 131-32. Here, the operative regulation provides a benefit only to the noncitizen, and Plaintiffs' interests in preserving resources and advocacy are, at best, only marginally related to, and therefore outside the zones of interests of, the regulation's purpose. *See Arruda & Beaudoin, LLP*, 2013 WL 1309249, at *12 n.8 (law firm seeking information from the Social Security Administration fell outside the zone of interests of SSA regulation because the regulation's purpose was for the benefit of the claimant and not the commercial benefit of the representative, notwithstanding express allowance for representatives to obtain information).

C. <u>Plaintiffs' Injuries Fall Outside the Zone of Interests of the Due Process Clause, as that Clause Applies to Noncitizens.</u>

The Due Process Clause prohibits the government from depriving persons of life, liberty, or property, without due process of law. U.S. Const. amend V. Plaintiffs claim the alleged policy violates noncitizens' procedural due process rights, but a litigant falls within the zone of interests of the Due Process Clause only when it claims an agency action violated its own procedural due process rights. *See Moya*, 975 F.3d at 136 (indirect, derivative harm insufficient to challenge procedural due process rights of another); *South Dakota v. U.S. Dept. of Interior*, 665 F.3d 986, 990-91 (8th Cir. 2012) (State's claim falls outside zone of interest of due process clause because the clause is inapplicable to a State); *see generally Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 809, 815-816 (D.C. Cir. 1987) ("A litigant therefore could never have standing to challenge a statute solely on the ground that it failed to provide" procedural due process rights "to third parties not before the court."). Plaintiffs make no such allegation here, instead resting their claim on the due process rights of their clients. Compl. ¶ 87 ("The Nondisclosure Policy leads to systematic violations of noncitizens' due process rights . . . ").

Plaintiffs' alleged injuries—depletion of attorney resources and decreased ability to service more clients—fall outside the zones of interests of each statute, regulation, and constitutional provision they invoke. Accordingly, Plaintiffs' claim should be dismissed.

## II. Plaintiffs' APA Claim Should be Dismissed Because Plaintiffs Have an Adequate Alternative Remedy.

The APA provides for judicial review of final agency action only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This section "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). When Congress enacted the APA, a number of statutes already codified specific procedures for reviewing agency action, including, for example, that Federal Trade Commission and National Labor Relations Board orders were directly reviewable by courts of appeals. *Bowen*, 487 U.S. at 903. Congress did not intend the APA's general grant of jurisdiction to duplicate such previously established procedures relating to specific agencies. *Id.*

Courts look for "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *CREW*, 846 F.3d at 1244–45 (D.C. Cir. 2017) (internal citations and quotations omitted). Further, the remedy need not be identical to that in the APA, but instead only in the "same genre" in order to be "adequate." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (internal quotations and citations omitted). And while an alternative remedy will not be held adequate if the remedy offers only "doubtful and limited relief," *see Bowen*, 487 U.S. at 901, adequacy is not dependent upon a party's ability to prevail, *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012).

Plaintiffs seemingly challenge document-production practices across all civil immigration proceedings, but the only authorities they cite are statutes involving removal proceedings in immigration court and a regulation affecting USCIS's consideration of benefit requests. The

statutes and regulations in place with respect to both proceedings make clear that Congress provided an alternative adequate remedy to the omnibus claim that Plaintiffs present.

### A. Removal Proceedings Before an Immigration Court

A noncitizen who is physically present in the United States without lawful status or otherwise present in violation of the INA or any other law is subject to removal. *See* 8 U.S.C. §§ 1182, 1227, 1229, 1229a(e)(2). USCIS, ICE, and CBP initiate removal proceedings in immigration court by filing a charging document with the court and serving a copy on the noncitizen, which, among other things, describes the conduct alleged to be in violation of the law and the applicable statutory provisions. 8 U.S.C. § 1229(a); 8 C.F.R. §§ 239.1, 1003.13, 1003.14(a), 1239.1. The noncitizen typically appears first at a master calendar hearing during which the immigration judge determines where the parties agree and the nature of any dispute that remains. 8 C.F.R. § 1240.10(c), (d); *see also* Office of the Chief Immigration Judge Practice Manual ("OCIJ Manual") § 4.15(e), (i) (available at, https://www.justice.gov/eoir/eoir-policy-manual/part-ii-ocij-practice-manual, last visited Apr. 17, 2021.). If the noncitizen contests the information in the charging document, then, generally, the government has the burden to demonstrate removability and does so, either at the master calendar hearing or in conjunction with a separate hearing as described more below, by providing the court and the noncitizen with the documents it is relying upon to support the allegations. OCIJ Manual 4.15(i)(2) (noting that DHS attorney should be prepared at the master calendar hearing to "file with the immigration court and serve on the opposing party all documents that support the charges and factual allegations in the Notice to Appear"). The court will schedule a hearing (called "individual calendar hearing" or "merits hearing") to address any remaining disputes, including any requests by the noncitizen for relief from removal. *Id.* at 4.16(a); 8 C.F.R. § 1240.10(d).

Prior to the individual calendar or merits hearing, the immigration judge, upon a party's request or *sua sponte*, has the authority to issue a subpoena for trial testimony or documents, and the parties typically file their exhibits, witness lists, any relief applications, and motions. 8 USC

14

§ 1229a(b)(1); 8 C.F.R. §§ 1003.21, 1003.35; OCIJ Manual at 4.16(b), 4.20. The INA also obligates DHS to provide the noncitizen with documentation in its possession pertaining to that individual's admission or presence in the United States when, the noncitizen contends and, therefore, has the burden of showing he is lawfully present pursuant to a prior admission. 8 U.S.C. § 1229a(c)(2)(B). If a noncitizen believes DHS has not met any disclosure obligations, he can raise those issues with the immigration judge via written motion or at the hearing itself. *See*, *e.g.*, *In re: Dikla Cohen*, 2018 WL 8062979, at * 2 (BIA Dec. 3, 2018) (noting that noncitizen filed motion for discovery). At that hearing, the court receives evidence and takes testimony, all of which is subject to objection and cross-examination. 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.7; OCIJ Manual 4.16(d), (e). The immigration judge then issues a decision. 8 U.S.C. § 1229a(c); 8 C.F.R. § 1240.12. The INA and accompanying regulations permit a noncitizen or the government to appeal that decision to the Board of Immigration Appeals, with a further right to appeal to the local United States Court of Appeals. 8 U.S.C. § 1252(a)(1); 8 C.F.R. §§ 1003.38, 1240.15.

If a noncitizen contends that (1) his due process rights were violated, (2) he did not have a "reasonable opportunity to examine the evidence against" him in violation of 8 U.S.C. § 1229a(b)(4)(B), (3) DHS violated 8 U.S.C. § 1229a(c)(2)(B) by failing to provide him with access to documents pertaining to his admission or presence in the United States, or (4) he otherwise was entitled to records that he did not receive, he can raise those issues in an appeal to the Board of Immigration Appeals. The Board of Immigration Appeals considers these types of challenges in conjunction with its review of the immigration court's decision. *See*, *e.g.*, *In re Cohen*, 2018 WL 8062979, at * 2 (holding DHS not required to turn over entire A-file, the file containing records showing noncitizens' immigration history); *In re: Matilde Morales*, 2018 WL 3045801, at *2 (BIA May 10, 2018) (remanding case so respondent can have access to A-file; relying, in part, on INA § 1229a(c)(2)(B)); *In re: Carlos Flores-Palomares*, 2015 WL 1605442, at **1–2 (BIA Mar. 3, 2015) (holding no due process violation when A-File was not produced); *In re: Julio Cesar Lopez Hernandez*, 2012 WL 5473614, at *1–3 (BIA Oct. 9, 2012) (holding immigration judges do not have authority to order discovery in removal proceedings beyond that

allowed by the INA and regulations).[13] Further, if the noncitizen is not satisfied with the Board's decision, Congress has expressly provided for additional review by the local court of appeals. 8 U.S.C. §§ 1252(a), (b)(9).

Accordingly, courts of appeals likewise adjudicate due process challenges, arguments regarding the proper scope of the INA provisions upon which Plaintiffs rely, and other document-production-related disputes. The First Circuit, for instance, recognizes that noncitizens in removal proceedings have certain procedural due process protections. Specifically, a noncitizen has the right to "notice of the nature of the charges and a meaningful opportunity to be heard." *Davis v. Lynch*, 802 F.3d 168, 177 (1st Cir. 2015) (quoting *Choeum v. INS*, 129 F.3d 29, 38 (1st Cir. 1997)). This entitles the noncitizen "to a fundamentally fair proceeding where the alien 'must have a meaningful opportunity to present evidence and be heard by an impartial judge.'" *Id.* (quoting *Munoz-Monsalve v. Mukasey*, 551 F.3d 1, 6 (1st Cir. 2008). And noncitizens raise challenges when they contend their hearing failed to comport with due process. *See*, *e.g.*, *Silva v. Lynch*, 636 F. App'x 1, 3–4 (1st Cir. 2016); *Davis*, 802 F.3d at 177 (no due process violation when immigration judge refused to allow counsel to refresh recollection with passport).

Similarly, both the Ninth and Seventh Circuits have heard due process challenges in appeals from removal proceedings, both rejecting claims to a general right to discovery. *Ortega De Pinon v. I.N.S.*, 87 F. Appx. 20, 21 (9th Cir. 2003) (no violation of due process for immigration judge to deny discovery during removal proceeding), *Kalejs v. I.N.S.*, 10 F.3d 441, 447-48 (7th Cir. 1993) ("no general right to discovery in a deportation hearing"). The Ninth Circuit has also held, in the context of a petitioner who claimed to be a citizen, that the petitioner was denied due process when he contended that he was lawfully present in the United States pursuant to adoption, and was not provided with a copy of his A-file, which contained information about his potential adoption. *Dent v. Holder*, 627 F.3d 365, 373-74 (9th Cir. 2010). In reaching its decision, the Ninth

---

[13] Defendants do not necessarily agree with all of these decisions and others cited in this subsection, but cite them merely to demonstrate that DHS's disclosure obligations are in fact adjudicated in the context of individual immigration proceedings.

Circuit relied on 8 U.S.C. § 1229a(c)(2)(B), which, as noted above, indicates that an "alien shall have access" to certain visa and other entry records to assist him in meeting his burden of proof. *Id*.[14] To be sure, DHS and noncitizens continue to litigate *Dent's* reach, as the *Dent* court itself left room for, *see* 627 F.3d at 375. *See, e.g., In re Cohen*, 2018 WL 8062979, at *2 (holding that DHS met its obligations by providing a relevant subset of documents from an A-file). But the merits of these cases is beside the point: the mere presence of these various holdings about information-sharing and access in immigration proceedings demonstrates the adjudicability of these issues in individual immigration cases.

Regardless of the outcome of any particular administrative or judicial decision, these statutes, regulations, and case decisions demonstrate that Plaintiffs have an alternative, adequate remedy to challenge DHS's compliance with its disclosure obligations, and any alleged document-production policies and practices, in the context of removal proceedings themselves. The potential remedy arising from judicial challenges to an immigration court's order—a new hearing and the production of documents—is, at a minimum, in the "same genre" as the global remedy sought by Plaintiffs here. This adequate alternative remedy is available, and therefore bars Plaintiffs' claim, even though they have to litigate document-production matters in individual immigration proceedings, as opposed to challenging DHS's alleged policy in one omnibus APA case. Indeed, it is far preferable and efficient to litigate record-production issues in the proceedings, contexts, and cases in which they arise. But in any event, even if a broader challenge would be more "effective in providing systemic relief" than "situation-specific" litigation; the latter still "affords an adequate, even if imperfect, remedy." *Garcia*, 563 F.3d at 525 (internal citations and quotations omitted); *see also CREW*, 846 F.3d at 1245-46 (barring APA suit against DOJ's Office of Legal

---

[14] In contrast, the Sixth Circuit rejected a noncitizen's due process challenge when the noncitizen contended that "DHS refused to provide to her all of the information it had about the three visa applications she submitted." *Zheng v. Lynch*, 819 F.3d 287, 298 (6th Cir. 2016). After observing that DHS gave the noncitizen everything it intended to introduce into evidence, the court, citing the Ninth Circuit's *Dent* decision, held that "[e]ven if due process requires more [disclosures], . . . the fact remains that [the noncitizen] has failed to show that access to further information would have led to a substantially different outcome." *Id.*

Counsel for failing to meet its disclosure obligations under FOIA's reading-room requirements, seeking injunction directing OLC to disclose all documents subject to that provision, where FOIA offered an adequate remedy for CREW to obtain records); *Manafort v. U.S. Dep't of Justice*, 311 F. Supp.3d 22, 33-34 (D.D.C. 2018) (barring civil APA claim where adequate relief was available in criminal proceedings, even though civil suit may have provided broader relief in one suit).

      B. <u>USCIS's Denial of Benefits.</u>

Noncitizens and others apply or petition to USCIS for a myriad of immigration or naturalization benefits. *See* 8 U.S.C. § 271(b), 8 C.F.R. § 103.2. In considering an immigration benefit application, USCIS can ask the filer for additional documentation, take biometric data, conduct interviews, and review records from other government agencies. 8 C.F.R. § 103.2(b). Further, USCIS may issue a Notice of Intent to Deny identifying the basis upon which USCIS intends to deny an application and allowing the applicant an opportunity to respond. *Id.* §§ 103.2(b)(8)(iv), 103.2(b)(16)(i). If a filer receives an unfavorable decision, USCIS provides the specific reasons for the denial in a written notice, and in some circumstances, the applicant has a right to appeal to either the Administrative Appeals Office or the Board of Immigration Appeals. *Id*. § 103.3(a). Moreover, an applicant can generally move for reconsideration or to reopen their application with USCIS. *Id*. § 103.5.

When USCIS's denial is final, USCIS can issue a notice to appear, which initiates removal proceedings (which are discussed at length above). In that circumstance, the immigration court would generally have exclusive jurisdiction to consider certain benefit applications and the noncitizen would have the right to appeal any final removal order to the local court of appeals. *See* 8 C.F.R. § 1245.2(a)(1)(i). If, however, there are no removal proceedings and no other means for judicial review, the noncitizen or other filer may bring an APA claim in district court challenging USCIS's decision as long as he has exhausted his administrative remedies and either the decision is a nondiscretionary one, or the challenge is constitutional or raises a question of law. 8 U.S.C. § 1252(a)(2)(B) & (D); *see Meza v. Cuccinelli*, 438 F. Supp.3d 25, 33-35 (D.D.C. 2020) (collecting

cases describing judicial review for USCIS decisions), *appeal filed*, No. 20-5079 (D.C. Cir. Apr. 7, 2020).

In considering these claims, courts can and do adjudicate challenges to USCIS's disclosure of information. For example, the Fifth Circuit has held that USCIS did not violate due process or 8 C.F.R. § 103.2(b)(16) when it provided an applicant with a description, but not actual copies, of the derogatory information it intended to use to deny the applicant's petition. *Mangwiro v. Johnson*, 554 F. Appx. 255, 261-62 (5th Cir. 2014). The Board of Immigration Appeals reached the same conclusion in *In re Lidtke*, 2009 WL 5548116, at *2 (B.I.A. Dec. 31, 2009). The Seventh and Eleventh Circuits have similarly found that USCIS met its obligations under § 103.2(b)(16) when it provided the applicant with a notice of its intent to deny a benefit which only described the derogatory information. *Diaz v. U.S.C.I.S.*, 499 F. Appx. 853, 855-56 (11th Cir. 2012); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735-36 (7th Cir. 2009*)*. The Ninth Circuit, however, reached the opposite conclusion in holding that an applicant was denied due process when USCIS only "briefly summarized the principal" derogatory statement without identifying the form of the statement or providing a complete version. *Mattson v. Wolf*, 826 F. Appx. 603, 604-05 (9th Cir. 2020).

With respect to applications for naturalization, a USCIS immigration officer, subject to supervisory review, determines whether the application should be granted or denied, and provides to the applicant the reasons for the determination. 8 C.F.R. § 316.14(b). After an initial denial of an application for naturalization, an applicant may request a hearing before an immigration officer who will review the application for naturalization. *See* 8 U.S.C. § 1447(a). Ultimately, the noncitizen can challenge a final negative decision in district court, which conducts a *de novo* review. 8 U.S.C. § 1421(c). This process similarly affords the noncitizen an adequate remedy for any document-related disputes. *Heslop v. Attorney General of U.S.*, 594 F. App'x 580, 584 (11th Cir. 2014) (dismissing APA claim because 8 U.S.C. § 1421(c) provides adequate remedy); *Garcia*, 563 F.3d at 522-23 (statute providing for *de novo* district court review provides for adequate remedy).

Thus, like with removal proceedings, courts can and do adjudicate challenges to USCIS's production of documents in individual benefit-determination cases. Therefore, Plaintiffs have an alternative and adequate means to allege USCIS is not abiding with its disclosure obligations and obtain relief, which precludes this omnibus APA claim. Further, allowing the omnibus claim would skirt individual noncitizens' obligations to exhaust administrative remedies and challenge only final agency actions. *Moya*, 975 F.3d at 126-27, 134.

### III.   Plaintiffs' Programmatic Attack on Defendants' Compliance with Their Disclosure Obligations Across all Immigration Proceedings Should Be Dismissed.

Another basis to dismiss the complaint is that it asserts a broad, programmatic challenge rather than a challenge to discrete agency action. The APA limits judicial review to "final agency action." 5 U.S.C. § 704. Such action must be circumscribed and discrete. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004). These requirements apply whether a plaintiff seeks to compel agency action as unlawfully withheld under § 706(1) or set aside an agency action under § 706(2). *Compare* 5 U.S.C. § 706(1) *with id.* § 706(2); *NAACP v. Bureau of Census*, 945 F.3d 183, 189 (4th Cir. 2019). Thus, a plaintiff cannot use the APA to mount a generalized attack on an agency-wide policy, or to seek broad, programmatic relief. *Norton*, 542 U.S. at 64-65; *see also Lujan*, 497 U.S. at 890-91.

But that is what Plaintiffs are trying to do here. By their own admission, Plaintiffs challenge the "systemic failure of the Department of Homeland Security . . . to produce to noncitizens and their counsel the records that are necessary to support their claims and defenses or eligibility for benefits in a[n undefined] range of civil immigration proceedings." Compl. ¶ 1. And they ask this Court to declare Defendants' alleged "policy and practice of denying noncitizens and their counsel timely access to relevant records," in apparently all civil immigration proceedings, unlawful. *Id*. ¶ 2. Plaintiffs' complaint neither identifies a provision requiring DHS to produce *all* records in *all* civil immigration proceedings, nor are Defendants aware of any such provision. Thus, their challenge is neither moored in a particular statute, regulation, or constitutional provision alleged to have been violated, nor rooted in any "set of statutory or regulatory requirements to guide [a

20

court] in assessing the propriety of an agency's procedures in a matter." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21-22 (1st Cir. 2020) (saving for another day whether a "pure APA" case could proceed without reference to a non-APA substantive statute and acknowledging that all of their previous APA cases have relied on statutes or regulations different from the APA in assessing the claim).

Plaintiffs' complaint itself confirms the broad, programmatic nature of Plaintiffs' claim, framing the alleged nondisclosure policy as "operat[ing] against a backdrop of increased immigration enforcement, a swell of immigration court caseloads, and a suite of policies designed to move immigration court dockets – particularly the cases of detained noncitizens – at breakneck pace." Compl. ¶ 62; *see also id*. ¶¶ 63-67. Further, their description of Defendants' document-production practice (or purported lack thereof) across all immigration proceedings is not "an identifiable action or event," *Lujan*, 497 U.S. at 899, and, is instead, an impermissible demand for day-to-day judicial review of over a million annual individual adjudications. *Id*. Nor does the result change because Plaintiffs have alleged (unspecified) instances in which they contend DHS violated certain information-exchange obligations. Compl. ¶ 87 (the alleged policy "leads to systemic violations of noncitizens' due process rights and of existing statutory and regulatory obligations); *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (cannot "challenge an entire program by . . . identifying specific allegedly-improper final agency actions within that program"). Plaintiffs must tailor their APA challenge to a "circumscribed, discrete agency action[]," *Norton*, 542 U.S. at 62, or bring their broader grievances to "the offices of the [various agencies] or the halls of Congress, where programmatic improvements are normally made," *Lujan*, 497 U.S. at 891.

Consequently, this wide-ranging lawsuit fails to state a claim under the APA, and Plaintiffs' complaint should be dismissed. *See*, *e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA."); *Del Monte Fresh Produce N.A., Inc. v. United States*, 706 F. Supp.2d 116, 118-20 (D.D.C. 2010) (dismissing pattern and practice claim).

21

## CONCLUSION

For the reasons described above, Defendants respectfully request that Plaintiffs' complaint be dismissed.

Respectfully submitted

April 19, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of April 2021 that I have filed this Memorandum with the Court's ECF system, which sends notice to Plaintiffs' Counsel identified on the NEF.

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney