**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al.,*<br><br>     Plaintiffs,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.,*<br><br>     Defendants. | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>Case No.: 1:21-cv-10083-DJC |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

I.    Constitutional, Statutory, and Regulatory Framework ................................................ 2

II.   Defendants' Nondisclosure Policy.............................................................................. 3

ARGUMENT ............................................................................................................................ 5

I.    Plaintiffs Fall Within the INA's Zone of Interest ...................................................... 5

II.   Plaintiffs Do Not Have Adequate Alternative Remedies........................................... 12

A.    Individual, Case-By-Case Immigration Proceedings Are an Inadequate Alternative to a Facial Challenge to an Agency Policy. ................................................................. 13

B.    Even if Case-By-Case Proceedings Could Be an Alternative Remedy, the INA's Specific Review Processes Structurally Preclude Actual Review of Plaintiffs' Claims. ................................................................................................................... 16

III.  Plaintiffs' Challenge to an Agency-Wide Policy Is Permissible .............................. 18

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuhajeb v. Pompeo*,
No. 20-10340, 2021 WL 1238416 (D. Mass. Mar. 31, 2021) ...................................................13

*Al Otro Lado v. Nielsen*,
327 F. Supp. 3d 1284 (S.D. Cal. 2018) ...............................................................................9, 10

*Am. Waterways Operators v. United States Coast Guard*,
No. 18-cv-12070, 2020 WL 360493 (D. Mass. Jan. 22, 2020) .................................................6

*Aracely v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) .......................................................................................19

*Ardestani v. INS*,
502 U.S. 129 (1991) .................................................................................................................8

*Bank of Am. Corp. v. City of Miami, Fla.*,
137 S. Ct. 1296 (2017) ...........................................................................................................10

*BNSF Ry. Co. v. EEOC*,
385 F. Supp. 3d 512 (N.D. Tex. 2018) ...................................................................................13

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .................................................................................................12, 14, 18

*Brady v. Maryland*,
373 U.S. 83 (1963) ...................................................................................................................2

*California v. U.S. Dep't of Homeland Sec.*,
476 F. Supp. 3d 994 (N.D. Cal. Aug. 3, 2020) ........................................................................8

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987) .......................................................................................................*passim*

*Conservation Law Found., Inc. v. Jackson*,
964 F. Supp. 2d 152 (D. Mass. 2013) ......................................................................................6

*Davis v. Lynch*,
802 F.3d 168 (1st Cir. 2015) ....................................................................................................2

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
140 S. Ct. 1891 (2020) ...........................................................................................................20

ii

*Devitri v. Cronen*,
   289 F. Supp. 3d 287 (D. Mass. 2018) ........................................................................2, 15, 16

*Devitri v. Cronen*,
   290 F. Supp. 3d 86 (D. Mass. 2018) ..............................................................................15, 16

*Durst v. Nielsen*,
   No. 18-cv-5415, 2019 WL 2895631 (C.D. Cal. Jan. 7, 2019)................................................12

*East Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ...........................................................................................9, 10

*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) .......................................................................................7, 9, 11

*El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS*,
   396 F.3d 1265 (D.C. Cir. 2005) ............................................................................................12

*Federal Defenders of New York, Inc. v. Federal Bureau of Prisons*,
   954 F.3d 118 (2d Cir. 2020)............................................................................................11, 12

*Harvey v. Veneman*,
   396 F.3d 28 (1st Cir. 2005)......................................................................................................5

*Hispanic Affairs Project v. Acosta*,
   901 F.3d 378 (D.C. Cir. 2018) ...............................................................................................20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).............................................................................................................5, 12

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990).................................................................................................18, 19, 20

*Manker v. Spencer*,
   No. 3:18-cv-372, 2019 WL 5846828 (D. Conn. Nov. 7, 2019)..............................................20

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012).....................................................................................................6, 10, 11

*Moya v. United States Dep't of Homeland Sec.*,
   975 F.3d 120 (2d Cir. 2020)...........................................................................................10, 11

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004)..........................................................................................................18, 19

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019).........................................................................................9, 17

iii

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................14

*Ryan v. U.S. Immigr. and Customs Enf't*,
  974 F.3d 9 (1st Cir. 2020) ..............................................................................9

*Ryan v. U.S. Immigration and Customs Enforcement*,
  382 F. Supp. 3d 142 (D. Mass. 2019) ............................................................8

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) .........................................................................8

*Union of Concerned Scientists v. Wheeler*,
  954 F.3d 11 (1st Cir. 2020)......................................................................19, 20

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
  136 S. Ct. 1807 (2016)........................................................................13, 14, 18

*United States v. Edwards*,
  777 F. Supp. 2d 985 (E.D.N.C. 2011).............................................................2

*United States v. Reyes-Bonilla*,
  671 F.3d 1036 (9th Cir. 2012) ........................................................................8

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973)......................................................................................20

## Statutes/Constitution

U.S. Const. amend. V.................................................................................2, 8

5 U.S.C. § 551...............................................................................................19

5 U.S.C. § 552............................................................................................3, 7

5 U.S.C. § 701.........................................................................................19, 20

5 U.S.C. § 704.....................................................................................12, 13, 19

5 U.S.C. § 706.........................................................................................19, 20

8 U.S.C. § 1101..............................................................................................7

8 U.S.C. § 1184..............................................................................................7

8 U.S.C. § 1228..............................................................................................7

8 U.S.C. § 1229a.....................................................................................3, 4, 7

8 U.S.C. § 1362................................................................................................................7

8 U.S.C. § 1252..............................................................................................................17

8 U.S.C. § 1443(h) ..........................................................................................................7

**Other Authorities**

8 C.F.R. § 103.2 ..................................................................................................... *passim*

8 C.F.R. § 208.12 ............................................................................................................3

8 C.F.R. § 103.3(a)........................................................................................................17

*AAO Practice Manual Chapter 3 - Appeals*, U.S. Citizenship and Immigration
   Services, uscis.gov/administrative-appeals/aao-practice-manual/chapter-3-
   appeals (last updated Mar. 11, 2019) ......................................................................17

USCIS Policy Memorandum PM-602-0086.1, *Precedent and Non-Precedent
   Decisions of the Administrative Appeals Office (AAO)* (Nov. 18, 2013),
   uscis.gov/sites/default/files/document/memos/PM-602-0086-
   1_AAO_Precedent_and_Non-Precedent_Decisions_Final_Memo.pdf...................17

**INTRODUCTION**

Plaintiffs challenge the Department of Homeland Security's policy not to comply with disclosure obligations in civil immigration cases. Defendants do not dispute that they have the obligation—through statutes, regulations, and the Due Process Clause—to provide documents to noncitizens in certain contexts. Nor do they dispute, for purposes of this motion, that they have a policy of not providing those records within the proceedings in which their disclosure obligations arise. And Defendants do not dispute that, instead of providing disclosures, they require noncitizens and their counsel to institute a separate process under the Freedom of Information Act ("FOIA"), which regularly fails to deliver documents in time. Defendants now seek dismissal of Plaintiffs' Administrative Procedure Act ("APA") challenge to this Nondisclosure Policy, contending Plaintiffs are outside the relevant "zone of interest," have alternative remedies, and have brought a "broad, programmatic" challenge. Each of these arguments fails.

Plaintiffs are attorneys, small law firms, and a nonprofit legal services organization who represent noncitizens in a range of immigration matters. Under Defendants' Nondisclosure Policy, Plaintiffs are systematically deprived of access to records that they need in order to represent their clients, and must undertake substantial additional steps to attempt to make up for the information shortfall. Plaintiffs challenge the Nondisclosure Policy as "arbitrary, capricious" and "not in accordance with law" under the APA.

Defendants contend that Plaintiffs' claims are not of the type permitted under the APA. But Defendants' three arguments for dismissal rely on distortions of Plaintiffs' claims and misapply the APA, a statute that embodies "Congress' evident intent to make agency action presumptively reviewable." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

*First*, Plaintiffs fall within the zone of interests that the relevant statutes and regulations seek to protect.  Plaintiffs need only "arguably" satisfy this lenient standard, and here can easily show that the INA encompasses the interests of attorneys and legal service providers.  *Id.* at 400. *Second*, there are no adequate alternative remedies to Plaintiffs' APA challenge.  Even if the procedures of the Immigration and Nationality Act ("INA") were sufficient to allow *noncitizens* to challenge applications of the Nondisclosure Policy to their cases—which they are not— *Plaintiffs* cannot challenge the Policy itself outside of the APA.  *Third*, the Complaint challenges a discrete agency action: Defendants' Policy of nondisclosure of noncitizens' records in immigration cases.  A challenge to this distinct Policy does not amount to an impermissible programmatic attack, and Defendants can only argue to the contrary by mischaracterizing the Complaint.  Accordingly, Defendants' Motion to Dismiss must be denied.

## BACKGROUND

## I.    CONSTITUTIONAL, STATUTORY, AND REGULATORY FRAMEWORK

Noncitizens' rights to documents in immigration proceedings—and Defendants' corresponding legal obligations—are enshrined across a constitutional, statutory, and regulatory framework.

The Fifth Amendment grants noncitizens due process rights in proceedings before U.S. Citizenship and Immigration Services ("USCIS"), before immigration courts, and in seeking legal remedies after a final order of removal has been issued.  *See Davis v. Lynch*, 802 F.3d 168, 177 (1st Cir. 2015); *Devitri v. Cronen*, 289 F. Supp. 3d 287, 294-95 (D. Mass. 2018).  And compliance with the Due Process Clause requires Defendants to disclose records in order to ensure a "fundamentally fair proceeding."  *Davis*, 802 F.3d at 177; *see also United States v. Edwards*, 777 F. Supp. 2d 985, 990-91 (E.D.N.C. 2011) (applying *Brady v. Maryland*, 373 U.S. 83 (1963) to civil proceeding, due to the "compelling liberty interest" at stake).

2

The INA also gives noncitizens in removal proceedings a "reasonable opportunity to examine the evidence against" them, and when noncitizens seek to demonstrate their lawful presence, the INA provides they "shall have access" to non-confidential "records and documents . . . pertaining to [their] admission or presence in the United States."  8 U.S.C. §§ 1229a(b)(4), (c)(2)(B).  *See* MTD at 2 (acknowledging Congress enacted these protections to ensure fair administrative practice and procedure).  Further, regulations controlling the adjudication of benefit requests by USCIS provide that noncitizens have the right to "inspect the record of proceeding which constitutes the basis for the decision."  8 C.F.R. § 103.2(b)(16).

## II.    DEFENDANTS' NONDISCLOSURE POLICY

Instead of fulfilling their disclosure obligations in each immigration proceeding, Defendants direct Plaintiffs to the general transparency provisions of the FOIA.[1]  The FOIA broadly requires government agencies make records available to the public.  5 U.S.C. § 552.  While Defendants use the FOIA as a substitute for their disclosure obligations, they recognize no duty to ensure that FOIA responses comport with the schedule set in the immigration proceeding or contain the documents necessary for that proceeding.  Compl. ¶¶ 6, 42.  Consequently, FOIA responses often lack key records or arrive too late to be of use.  *Id.* at ¶¶ 6, 49.

The Nondisclosure Policy applies across a range of Defendants' interactions with noncitizens.  Defendants do not disclose records regardless of whether they are confidential and regardless of whether disclosure is necessary to ensure due process, or would assist a noncitizen in demonstrating eligibility for relief or for an immigration benefit.

---

[1] While the Motion to Dismiss contains an explicit denial of the Nondisclosure Policy's existence, MTD at 7 n.12, Defendants never address the regulations cited in the Complaint that plainly reflect the Policy.  *See, e.g.,* 8 C.F.R. §§ 208.12 (instructing asylum applicants to seek records only through FOIA requests), 240.69; Compl. ¶¶ 5, 32.

3

*First*, DHS withholds information that may be used to deny USCIS applications.  Compl. ¶ 32.  Despite its duty to allow applicants to "inspect the record of proceeding which constitutes the basis for the decision," 8 C.F.R. § 103.2(b)(16), USCIS does not share these records with noncitizens even when factoring these same records into the denial or grant of a benefit.  *Id.*

*Second*, DHS withholds information from noncitizens in removal proceedings.  Compl. ¶ 33.  There, too, despite statutory disclosure obligations,  8 U.S.C. §§ 1229a(b)(4), (c)(2)(B), Immigration and Customs Enforcement recognizes no obligation to disclose records to the noncitizen or their counsel—even when the records would help defeat removability or demonstrate eligibility for relief or when disclosure is required by due process.  Compl. ¶ 33.  Instead, ICE hangs on to the records and uses them to ambush noncitizens during their hearings.  Compl. ¶ 56.

*Third*, DHS withholds information from noncitizens whom it detains and attempts to remove based on prior removal orders.  Compl. ¶ 34.  Although records of the prior removal proceeding are essential to evaluate whether a noncitizen has grounds to reopen the case or would otherwise qualify for some relief, DHS endeavors to remove such noncitizens promptly without providing them the records that supposedly justify their removal.  *Id.*

Across these interactions, Defendants fail to disclose various types of documents that are in their possession.  Compl. ¶¶ 35-37.  These documents include, but are not limited to, case documents, notes from asylum-related interviews, prior applications, records of prior removal proceedings, visa application material, criminal history records, and identification documents.  *Id.*

Making this uneven access to critical records even more troublesome, since 2018, the Department of Justice has instructed immigration courts to complete the removal proceedings of detainees in 60 days and created new performance metrics for immigration judges. Compl. ¶ 64. These metrics require judges to plow through at least 700 cases per year, achieve an appellate

remand rate of less than 15 percent, and meet other time-based metrics to receive a "satisfactory" performance review. *Id.* Immigration judges now sit on the bench with a dashboard on the screen in front of them that tracks their rate of case completions like a car's speedometer—a constant reminder of the government's preference for speed over fairness. *Id.*

Defendants' pattern of circumventing their disclosure obligations through FOIA prevents noncitizens and their counsel from learning about favorable evidence in the government's possession. Compl. ¶¶ 54-59. Among other things, Defendants' Nondisclosure Policy prevents individuals and their counsel from investigating and demonstrating a noncitizen's eligibility for certain forms of relief, and even from proving claims of U.S. citizenship. *Id.*

Defendants' Policy impedes Plaintiffs' ability to represent their clients and forces Plaintiffs and their staff to do innumerable hours of extra work, under significant time pressure, in an attempt to overcome information gaps created by Defendants' Policy.

## ARGUMENT

## I.    PLAINTIFFS FALL WITHIN THE INA'S ZONE OF INTEREST

Defendants first argue that Plaintiffs fall outside the "zone of interests" of the relevant provisions of law. But that test is not a demanding one, and Plaintiffs readily satisfy it because their interests in providing adequate representation of noncitizens in immigration proceedings, which includes ensuring just outcomes, is well within the INA's zone of interest.

The zone of interests test "requires [the court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (citations omitted). The zone of interests test is designed to exclude only plaintiffs whose interests are "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Harvey v. Veneman*, 396 F.3d

5

28, 34-35 (1st Cir. 2005) (quoting *Clarke*, 479 U.S. at 399).  This lenient standard is "particularly generous" with respect to APA claims given the APA's purpose to foster judicial review of agency action.  *Conservation Law Found., Inc. v. Jackson*, 964 F. Supp. 2d 152, 164 (D. Mass. 2013) (emphasizing the test "is not meant to be especially demanding" in APA cases) (quoting *Clarke*, 479 U.S. at 399).  Plaintiffs satisfy the test when the interests they seek to vindicate are "*arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  *Clarke*, 479 U.S. at 396 (emphasis added) (citation omitted); *see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (explaining the Court "ha[s] always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff"); *Am. Waterways Operators v. United States Coast Guard*, No. 18-cv-12070, 2020 WL 360493, at *12 (D. Mass. Jan. 22, 2020) (noting that complainants must only "arguably" be within the statute's zone of interest).

Plaintiffs brought this case to ensure their ability to effectively defend and advocate for noncitizens across a range of INA proceedings—interests which are well within the zone of interests of that statute.  Plaintiffs are attorneys, small law firms, and a nonprofit legal services organization who work to ensure access to justice for noncitizens in the immigration system, including those with limited resources.  *See* Compl. ¶¶ 68, 80, 84.  They challenge as arbitrary and capricious DHS's systematic refusal to produce records in the context of the range of procedures provided for in the INA, a refusal that leaves noncitizens and their counsel no option but to initiate a separate administrative proceeding under the FOIA.  By seeking to guarantee that DHS directly provides necessary records relevant to an immigration proceeding, Plaintiffs want to ensure their ability to help noncitizens achieve just outcomes in immigration cases, including benefits applications and removal hearings.  This interest aligns fully with the interests of the INA, a statute

6

that seeks to define fair and uniform standards and procedures for the administration of the immigration system.

That the Plaintiffs' interests as legal representatives seeking access to records necessary to adequately represent their clients in seeking benefits and relief provided by the INA are within the that statute's zone of interest is bolstered by the specific provisions at issue and the "overall context of the . . . Act." *Clarke*, 479 U.S. at 401 (rejecting argument focused "too narrowly" on specific statutory provision of National Bank Act). The same statutory and regulatory sections that provide for disclosure also provide for legal representation of noncitizens, confirming that Congress and the Defendants recognize the critical role of counsel in connection with the procedures in which they have required disclosures. For example, 8 U.S.C. § 1229a(b)(4) provides that noncitizens subject to removal proceedings "shall have the privilege of being represented . . . by counsel" and "have a reasonable opportunity to examine the evidence." *See also* 8 U.S.C. §§ 1229a(c)(2)(B), 1362.[2] Similarly, 8 C.F.R. § 103.2 states that the "applicant or petitioner may be represented by an attorney" and governs the "inspection of evidence." *See* 8 C.F.R. § 103.2(a)(3), (b)(16). And the FOIA process, to which the government unlawfully outsources its disclosure obligations, permits representatives to request documents on behalf of another person. *See* 5 U.S.C.

---

[2] Other INA provisions recognize the role of organizations in "helping immigrants navigate the immigration process." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 768-69 (9th Cir. 2018) ("*East Bay I*"); *see also* 8 U.S.C. § 1101(i)(1) (requiring that potential T visa applicants be referred to nongovernmental organizations for legal advice); *id*. § 1184(p)(3)(A) (same for U visas); *id*. §§ 1228(a)(2), (b)(4)(B) (recognizing right to counsel in administrative removal proceedings); *id*. §§ 1229(a)(1), (b)(2) (requiring noncitizens subject to deportation proceedings be provided a list of pro bono attorneys and advised of their right to counsel); *id*. § 1443(h) (requiring the Attorney General to work with 'relevant organizations' to 'broadly distribute information concerning' the immigration process). "These statutes, which directly rely on institutions . . . to aid immigrants, are a sufficient indicator that the plaintiff[s] [are] peculiarly suitable challenger[s] of administrative neglect ... support[ing] an inference that Congress would have intended eligibility to bring suit." *East Bay I*, 932 F.3d at 769 (citation omitted).

§ 552(a)(3)(A).  It is hardly surprising that Congress imagined a role for legal service providers in fulfilling the purpose of the INA.  Due to the complexities of the INA and fact that it addresses those who are not born in this country, many of the statute's provisions for immigration relief or benefits would barely have effect if not for attorneys.  *See Ardestani v. INS*, 502 U.S. 129, 138 (1991) ("We are mindful that the complexity of immigration procedures, and the enormity of the interests at stake, make legal representation in deportation proceedings especially important.").  Thus, Congress has recognized the right to counsel in an immigration hearing "among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings."  *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1045 (9th Cir. 2012) (quoting *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004)).[3]

In light of these and similar provisions of the INA recognizing the right to counsel, numerous courts have concluded that legal organizations and lawyers fall within the zone of interests in bringing an APA challenge to some aspect of the INA.  Recently, in *Ryan v. U.S. Immigration and Customs Enforcement*, 382 F. Supp. 3d 142, 155 (D. Mass. 2019), an APA case, a court in this district concluded that district attorneys and defense counsel were within the zone of interests of provisions relating to an ICE directive concerning the civil arrests of certain noncitizens at state courthouses.  The court reasoned that, although the plaintiffs were not targets

---

[3] It is doubtful that the zone of interests test applies to due process claims (notwithstanding Defendants' assumption to the contrary, MTD at 12).  *See* S*ierra Club v. Trump*, 929 F.3d 670, 701–02 (9th Cir. 2019) ("[W]e doubt that any zone of interests test applies to Plaintiffs' equitable cause of action" seeking an injunction against allegedly unlawful Presidential action); *California v. U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d 994, 1010 (N.D. Cal. Aug. 3, 2020) (surveying Supreme Court precedent, "which focused on Congress's intent in creating statutory causes of action," and declining to apply the zone of interests test to a due process challenge to public charge provisions of the INA).  But even if the test applies, Plaintiffs' claims fall within the zone of interests of due process because Defendants' Nondisclosure Policy impinges Plaintiffs' ability to discharge their duty to provide representation to clients, thereby invoking due process concerns.

of the ICE directive in question, they were "participants in the state civil and criminal justice systems" who "represent stakeholders affected by civil immigration arrests in state courthouses." *Id.* The court concluded that Congress intended for immigration enforcement not to impede criminal law enforcement, as the INA "specifies that the federal government may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." *Id.* This showing and "the plain interests of prosecutors, criminal defense attorneys, and an organization serving immigrants in the proper enforcement of immigration laws within courthouses," were sufficient to satisfy the zone of interests test's low bar.[4] *Id*.

Similarly, courts in other circuits have held that the interests of nonprofit legal organizations fall squarely within the INA's zone of interests. For example, *East Bay Sanctuary Covenant* involved legal organizations that satisfied the zone of interests test in challenges to a government policy that stripped asylum eligibility from every migrant crossing into the United States at places other than ports of entry. *See East Bay I*, 932 F. 3d at 768-69; *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 667-68 (9th Cir. 2021) ("*East Bay II*"); *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 144 (D.D.C. 2019) (holding that a legal organization that challenged the policy against granting asylum to noncitizens who enter the United States outside a designated port of entry fell within the INA's zone of interest because the organization's "interest in providing legal assistance to as many asylum seekers as they can is consistent with the INA's purpose"). Likewise, in *Al Otro Lado v. Nielsen,* 327 F. Supp. 3d 1284 (S.D. Cal. 2018), plaintiff organizations challenged the government's policy of preventing asylum seekers at the border from accessing the asylum process. The court concluded that the organizations fell within the INA's

---

[4] The First Circuit vacated the preliminary injunction and remanded for further proceedings on the APA claims. *See Ryan v. U.S. Immigr. and Customs Enf't*, 974 F.3d 9, 33-34 (1st Cir. 2020).

zone of interests because Al Otro Lado's interests were "related to the basic purposes of the INA's goal of permitting aliens to apply for asylum in the United States at POEs and not so marginally related that its interests fall outside the INA's zone of interests." *Id.* at 1296 (internal quotation marks and citation omitted). Here, too, in light of the "generous review provisions" of the APA, *Clarke*, 479 U.S. at 400 n.16, and the established role of counsel across a range of immigration proceedings, Plaintiffs' claims are "at the least, 'arguably within the zone of interests'" protected by the INA, *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1313 (2017) (quoting *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).

Defendants argue that Plaintiffs are outside the zone of interest by impermissibly constricting the test in several ways.

First, Defendants focus microscopically on the specific legal provisions that Plaintiffs' complaint points to as a source of disclosure obligations in specific contexts—*i.e.*, certain INA provisions and regulations, and the Due Process Clause. But that misconstrues Plaintiffs' claim and the zone of interest test. Plaintiffs do not bring claims under these provisions specifically, but challenge as arbitrary and capricious DHS's policy to refuse to produce documents within the proceedings in which disclosure obligations arise. The zone of interest test, in any event, is not narrowly focused on singular statutes, but allows a court to look as well to the overall context and purpose of the act. *See Patchak*, 567 U.S. at 226; *Clarke*, 479 U.S. at 401; *see also East Bay II*, 993 F.3d at 668 (explaining that the court's zone of interests review was "not limited to considering the [specific] statute under which [plaintiffs] sued, but may consider any provision that helps [the court] to understand Congress' overall purposes in enacting the statute"); *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 133 n.10 (2d Cir. 2020) (noting challenge to "public

10

charge" rule required zone of interest consideration of the INA provisions to which the rule applied, not just the "public charge" provision itself).

Second, Defendants demand that each information disclosure provision in the INA and its regulations "speak" to or "regulate[]" the attorney-client relationship specifically.  MTD at 9, 12. In this case, they do.  *See* 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 103.2.  But that is not required for a plaintiff's interest to fall "arguably" within a statute's zone of interest.  *See Patchak*, 567 U.S. at 225 (the test does not require "any 'indication of congressional purpose to benefit the would-be plaintiff'") (quoting *Clarke* 479 U.S. at 399-400); *East Bay I*, 932 F. 3d at 768 (finding that even though the INA does not directly regulate or benefit the organizations, "their interest in provid[ing] the [asylum] services [they were] formed to provide falls within the zone of interests protected by the INA") (citation omitted).

Third, Defendants graft a new limitation onto the zone of interest test—a requirement that a Plaintiff's interests not be "derivative" of another person or entity's.  But the test contains no such exclusion.  Although the Defendants rely heavily on the Second Circuit's decision in *Moya*, that case involved naturalization provisions that provided a specific cause of action for noncitizen plaintiffs, but not organizational ones.  *See* 975 F.3d at 133 n. 10, 135.  *Moya* recognized that, when addressing statutory provisions that "d[o] not explicitly create a cause of action for anybody," as is the case here, a "broader zone-of-interests inquiry" is "required." *Id.* at 133 n.10.

This case is more analogous to *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons*, 954 F.3d 118, 124 (2d Cir. 2020), which *Moya* distinguishes.  *See* 975 F.3d at 132-33. The plaintiffs in *Federal Defenders*, "a not-for-profit organization ... dedicated to offering public defense services to indigent persons in federal criminal cases," challenged under the APA restrictions on their access to inmates housed in a federal facility.  *Federal Defenders*, 954 F.3d at

11

123.  As a result of the inability to access their clients, the plaintiffs in *Federal Defenders*, as here, spent "significant time, focus, and resources" and were impaired in their ability to provide representation.  *Id.* at 123-24.  Because the Federal Defenders' interests "mirror[ed] the interests" that the regulations protected—the strong interests of inmates in having adequate access to legal counsel—the court found that the plaintiffs fell within the zone of interests.  *Id.* at 131.  Here too, Plaintiffs' interests in accessing documents indispensable to the effective representation of their clients easily "mirror the interests that" the INA provisions, the regulation, and the Due Process Clause seeks to protect—namely, ensuring a full and fair hearing and due process—by providing for disclosure.  *Lexmark*, 572 U.S. at 130.

## II.    PLAINTIFFS DO NOT HAVE ADEQUATE ALTERNATIVE REMEDIES

The APA allows judicial review of final agency actions where there is "no other adequate remedy in a court."  5 U.S.C. § 704.  Defendants contend that Plaintiffs' APA challenge to the Nondisclosure Policy is barred because of review procedures available to noncitizens who are denied benefits or ordered removed.

In *Bowen v. Massachusetts*, the Supreme Court concluded that § 704 should be applied hospitably, so as not to "defeat the central purpose [of the APA] of providing a broad spectrum of judicial review of agency action."  487 U.S. 879, 903 (1988) (finding potential for relief in Claims Court inadequate because "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief."); *see also Durst v. Nielsen*, No. 18-cv-5415, 2019 WL 2895631, at *2 (C.D. Cal. Jan. 7, 2019) (finding APA challenge to USCIS's decision that noncitizen breached bond contract could proceed despite availability of Court of Claims review, because complaint sought declaratory relief that was unavailable in that forum).  Alternative remedies are inadequate, moreover, where they provide only "doubtful and limited" relief, *Bowen,* 487 U.S. at 901, or relief that is "not of the same genre" as that available under the APA.  *El Rio*

12

*Santa Cruz Neighborhood Health Ctr. v. United States HHS*, 396 F.3d 1265, 1275 (D.C. Cir. 2005); *Abuhajeb v. Pompeo*, No. 20-10340, 2021 WL 1238416, at \*4 (D. Mass. Mar. 31, 2021). Finally, an alternative remedy that poses the risk of serious "penalties" or would be "arduous, expensive, and long" is inadequate. *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815-16 (2016).

In this case, an APA claim is the only means by which the Plaintiffs can obtain relief from the Nondisclosure Policy. Plaintiffs have no adequate alternative remedy sufficient under § 704 to bar review of an APA claim in district court, nor indeed are the remedies available to individuals adequate to address the Nondisclosure Policy. Rather than point to any alternative actually capable of redressing Plaintiffs' injuries or adjudicating their claims, Defendants argue that the mere existence of review processes for individual noncitizens through the Board of Immigration Appeals ("BIA"), the Administrative Appeals Office ("AAO"), and the courts shows a legislative intent to bar APA review of Plaintiffs' claim in district court. MTD at 14-19. This argument is wrong for two reasons. First, under § 704 and *Bowen*, the possibility of case-by-case review of specific disclosure issues through individual actions by noncitizens is not an adequate substitute for a facial challenge to the Nondisclosure Policy. Second, even if case-by-case adjudication could theoretically be an adequate substitute, the review procedures available under the INA cannot redress Plaintiffs' injuries or adjudicate their claims in this case.

> **A.      Individual, Case-By-Case Immigration Proceedings Are an Inadequate Alternative to a Facial Challenge to an Agency Policy.**

Courts have rejected the "whack-a-mole approach"—as one court colorfully expressed it— to obtaining review of an agency policy that Defendants propose here, finding that the ability to bring a series of individual lawsuits is not an adequate alternative remedy for a single APA challenge to agency action. *BNSF Ry. Co. v. EEOC*, 385 F. Supp. 3d 512, 529 (N.D. Tex. 2018)

(noting that a single APA action provided both parties with "efficiency and convenience"). In the immigrant detention context, for example, the INA's review procedures do not provide an adequate alternative remedy to APA review of DHS's detention policies. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185-86 (D.D.C. 2015) (finding that de novo review by immigration judge of ICE order denying release and writ of habeas corpus were not adequate alternative remedies to APA review of DHS detention policy).

Similarly, case-by-case adjudications of disclosure issues through the BIA, the AAO, and in the federal courts are not adequate alternative remedies to Plaintiffs' APA challenge. Plaintiffs are immigration attorneys seeking to enjoin an unlawful policy that hinders their ability to represent noncitizens in various proceedings. They have no other remedy to address the Policy outside of a claim under the APA. Defendants do not even contend that an individual noncitizen can address the Policy itself in an individual appeal. Instead, Defendants merely argue that it is sufficient that noncitizens can obtain review of specific nondisclosure issues in appeals in their individual immigration cases. *See* MTD at 14-19. But this case-by-case review of individual cases of nondisclosure cannot address the harm to Plaintiffs' professional interests as a result of the Policy.

Case-by-case review of nondisclosure issues would further provide only "doubtful and limited" relief, or an alternative that is "arduous, expensive, and long." *See Bowen*, 487 U.S. at 901; *Hawkes*, 126 S. Ct. at 1815-16. Even if the Nondisclosure Policy could itself be effectively reviewed in judicial review of agency immigration decisions on behalf of individual clients—as opposed to an individual question with regard to disclosure in a particular case—this alternative would still be inadequate because appeals are impossible or impracticable in many cases. For example, in large part due to the work Plaintiffs undertake to attempt to make up for the absence

of documents, individual noncitizens represented by Plaintiffs often succeed in securing relief.  In those cases, there is no occasion for administrative or judicial relief even though Plaintiffs have still been burdened by the Nondisclosure Policy.  Clients may also decline to seek judicial review because they do not wish to spend additional time in detention, cannot afford it, or do not know if it would be fruitful.  Even where a client pursues judicial review, other substantive issues in the case—such as whether a noncitizen falls within a "particular social group" for purposes of asylum—may overtake procedural questions about document disclosure.

Where a noncitizen faces imminent removal on the basis of an old order of removal, there is neither a pathway nor time for review.  Compl. ¶¶ 2, 6, 81.  In such cases, although the noncitizen may have legal remedies available, Plaintiffs cannot explore these avenues without the noncitizen's file.  FOIA requests can take months to process, *see* Compl. ¶¶ 46-48, and there is neither an INA procedure for seeking judicial review of nondisclosure nor time to undertake any such process before a noncitizen is removed.[5]

*Devitri v. Cronen*, 290 F. Supp. 3d 86 (D. Mass. 2018) is instructive.  In *Devitri*, Indonesian Christians who had lived in the United States for many years with final orders of removal turned themselves in to ICE as part of a program that made it possible for them to continue living in the United States under the agency's supervision.  *Id.* at 89.  In 2017, ICE suddenly decided to remove them.  *Id.* at 89-90.  The noncitizens wanted to reopen their cases and apply for asylum based on changed country conditions that made their return to Indonesia dangerous.  *Id.* at 88.  The district court concluded that, although petitioners had a statutory right to move to reopen their removal proceedings based on changed country conditions, they would likely be deported before the BIA

---

[5] Defendants do not contest that Plaintiffs have no adequate alternative remedy to APA relief challenging the Nondisclosure Policy in the context of noncitizens with prior removal orders. *See* Compl. ¶ 34.

and the Court of Appeals considered their motions. *Id.* at 92. To preserve petitioners' access to the administrative procedures for reopening their claims, the court temporarily stayed petitioners' removals and compelled production of the petitioners' A-Files and other immigration records from the government because these files are "necessary for preparing the motions to reopen based on changed country conditions." *Devitri*, 289 F. Supp. 3d at 298 (relying on Suspension Clause despite jurisdictional limitation in INA).[6]

Such extraordinary emergency measures to stay removal and obtain documents, however, are unavailable to most noncitizens. And while successful for the *Devitri* plaintiffs, the case did nothing to change the Nondisclosure Policy.

### B. Even if Case-By-Case Proceedings Could Be an Alternative Remedy, the INA's Specific Review Processes Structurally Preclude Actual Review of Plaintiffs' Claims.

While case-by-case challenges to the Nondisclosure Policy are not an alternative remedy to a facial challenge, even if they were, the structural limitations inherent in the INA's review processes render these proceedings an inadequate remedy. The Defendants discuss a series of specific INA remedies in their brief, MTD at 14-19, but Congress designed these review mechanisms exclusively to provide review of a particular immigration decision or proceeding. This limitation makes judicial review of agency policy, such as the Nondisclosure Policy, unavailable. It follows that Congress could not have created these procedures for administrative review to encompass Plaintiffs' claims.

In the context of removal proceedings, limitations on the scope of review impede judicial review of the Nondisclosure Policy. Under the INA, judicial review of removal orders "shall"

---

[6] After the court stayed petitioners' removal long enough to allow them to file motions to reopen, the BIA granted 44 of the 48 motions filed. *See* Gov't Motion to Dismiss Appeal as Moot at 4, *Devitri v. Cronen*, 1st Cir. No. 18-1281.

16

consist of "only … the administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A).    But here, Plaintiffs are challenging an agency-wide policy that governs information disclosure across all types of immigration proceedings, and the relevant record would include evidence concerning the Nondisclosure Policy itself.  *See O.A. v. Trump*, 404 F. Supp. 3d at 134 (in action challenging an agency policy, "the relevant record … consists of the materials the [Defendants] considered" when developing the Policy, and the record concerning its implementation and enforcement).  Yet because this information has no bearing on the merits of a noncitizen's individual removal defense or applications for relief, there is unlikely to be any opportunity to present it. *See id.*  ("Without [the] record . . . it is difficult to fathom how meaningful judicial review of individual plaintiffs' claims could occur.").

Similarly, the administrative review process for appeals of benefits denials by USCIS precludes review of agency actions that fall outside the individual benefit determination.  USCIS decisions about whether to grant a noncitizen benefits can be appealed to two different offices: the BIA or the AAO.  8 C.F.R. § 103.3(a).  In either case, the appeals process is not an adequate alternative remedy for the same reasons described earlier.  There is simply no procedure to challenge the Nondisclosure Policy itself in an appeal of an individual decision. *See id.*  Further, AAO decisions are generally non-precedential. [7]  Thus, even assuming the Policy could be challenged in an individual appeal, any successful decision could not compel future decisions by USCIS or the AAO.

---

[7] *AAO Practice Manual Chapter 3 - Appeals*, U.S. Citizenship and Immigration Services, uscis.gov/administrative-appeals/aao-practice-manual/chapter-3-appeals (last updated Mar. 11, 2019); USCIS Policy Memorandum PM-602-0086.1, *Precedent and Non-Precedent Decisions of the Administrative Appeals Office (AAO)* (Nov. 18, 2013), uscis.gov/sites/default/files/document/ memos/PM-602-0086-1_AAO_Precedent_and_Non-Precedent_Decisions_Final_Memo.pdf.

17

Defendants argue that, because individual noncitizens can file APA claims in district court after exhausting their administrative remedies with USCIS, an adequate alternative remedy exists. MTD at 18-19. As with the agency review of removal orders, however, Defendants ignore the structural limitations that limit the record on appeal and the scope of judicial review. Because the Nondisclosure Policy cannot be reviewed in these actions, individual APA actions cannot provide relief from the harms Plaintiffs experience from the repeated nondisclosure of documents and information in their pending cases, nor in any future cases. As a result, like the other appellate alternatives, judicial review of individual cases offers only "doubtful and limited" relief, at best, and provides no adequate alternative sufficient to bar review of the Nondisclosure Policy under the APA. *See Bowen,* 487 U.S. at 901; *Hawkes*, 126 S. Ct. at 1815-16.

## III. PLAINTIFFS' CHALLENGE TO AN AGENCY-WIDE POLICY IS PERMISSIBLE

Defendants next argue that Plaintiffs are seeking "broad, programmatic relief" barred by *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). MTD at 20-21. But Plaintiffs' challenge is to a discrete rule applied across the agency, and has nothing in common with the challenges in those cases.

*Lujan* involved what the plaintiffs called the "land withdrawal review program" of the Bureau of Land Management ("BLM"). 497 U.S. at 891. The plaintiffs' challenge encompassed the whole of "the continuing (and thus constantly changing) operations of the BLM" with regard to land use planning and reclassification of certain public lands, and the Court held that they could not seek "*wholesale* improvement of this program by court degree." *Id.* at 890-91. In *Norton*, the plaintiffs contended that the BLM had breached its duty to "continue to manage [certain lands] … in a manner so as not to impair the suitability of such areas for preservation as wilderness" by permitting off-road vehicles. 542 U.S. at 65 (quoting 43 U.S.C. § 1782(c)). Again, the Court

18

explained that "[g]eneral deficiencies in compliance . . . lack the requisite specificity for agency action" that can be challenged under the APA. *Id.* at 66.

This is a wholly different case. The Complaint here challenges a single policy: the Nondisclosure Policy. Plaintiffs allege the policy is "arbitrary, capricious, or otherwise not in accordance with law" under section 706(2) of the APA because DHS addresses its disclosure obligations by requiring noncitizens and their counsel to initiate separate administrative procedures under the FOIA—leaving it to happenstance whether a response arrives on time or includes the relevant records. Plaintiffs do not seek general improvement of the immigration courts or the adjudication of benefits. While DHS applies its Nondisclosure Policy to a range of immigration proceedings, Defendants' suggestion that this is somehow fatal to judicial review is simply wrong. The APA does not categorically bar challenges to agency-wide policies, and *Lujan* makes clear that "if there is in fact some specific order or regulation [that applies] across the board," and "if that order or regulation is final, and has become ripe for review," that "can of course be challenged under the APA." *Id*. at 890 n. 2.

This decision to rely exclusively on FOIA reflected in the Nondisclosure Policy is a discrete, final agency action subject to review under 5 U.S.C. § 704.[8] The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In turn, a "rule" is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). Under this broad standard, the Nondisclosure Policy

---

[8] While Defendants argue the Nondisclosure Policy is not "discrete" agency action, they do not contest it is "final." *See* MTD at 20; *see also Aracely v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018) ("[A]gency action need not be in writing to be judicially reviewable as a final action").

19

qualifies as a "rule" limiting compliance with Defendants' disclosure obligations in immigration proceedings to the inadequate and untimely FOIA process.  Compl. ¶¶ 4-5, 39-40.[9]

In an effort to cast Plaintiffs' claim as "broad" and "programmatic," Defendants quote prefatory language in the Complaint that contextualizes the Nondisclosure Policy within a broader immigration administrative system.  MTD at 20.  But the Complaint's Prayer for Relief plainly seeks, pursuant to 5 U.S.C. § 706(2), a declaration that the Nondisclosure Policy is "not in accordance with law," and an injunction against future application of the Nondisclosure Policy.  Compl. at 26.  Plaintiffs seek review of an "identified transgression"—the Nondisclosure Policy—and not "an exercise of broad, unspecified discretion."  *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018); *see also Manker v. Spencer*, No. 3:18-cv-372, 2019 WL 5846828, at *11-13 (D. Conn. Nov. 7, 2019).

On a motion to dismiss, the complaint only must "plausibly state claims for judicial review under the APA."  *Concerned Scientists*, 954 F.3d at 21-22; *see also Lujan*, 497 U.S. 871 at 889 (distinguishing *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669 (1973) on the basis that it concerned a motion to dismiss).  Plaintiffs have more than satisfied that requirement.

## CONCLUSION

For the reasons provided herein, the court should deny Defendants' Motion to Dismiss.

---

[9] Defendants point to *Union of Concerned Scientists v. Wheeler*'s reservation for another day of whether a "pure APA" case runs afoul of 5 U.S.C. § 701(a)(2), which bars review of agency action "committed to agency discretion by law."  MTD at 20-21 (citing *Concerned Scientists*, 954 F.3d 11, 21-22 (1st Cir. 2020).  Plaintiffs' claim is anchored to obligations contained within the INA and its regulations, *see* Compl. ¶ 39, and Defendants rightly make no argument that it is barred by § 701(a)(2). In any event, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905-07, 1910-15 (2020) makes clear that Courts can hold agency action arbitrary and capricious without looking to a substantive statute.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs respectfully request oral argument on Defendants' motion to dismiss, as Plaintiffs believe that oral argument may assist the Court in its consideration of the motion.

Dated: May 28, 2021

/s/ *John T. Montgomery*
John T. Montgomery (BBO #352220)
Nathan Abelman (BBO #703152)
Thanithia Billings (BBO #699018)
ROPES & GRAY LLP
Prudential Center
Boston, MA 02199
(617) 951-7000
John.Montgomery@ropesgray.com
Nathan.Abelman@ropesgray.com
Thanithia.Billings@ropesgray.com

Deanna Minasi *(admitted pro hac vice)*
Lauren Bergelson *(admitted pro hac vice)*
Meghan Gilligan Palermo *(admitted pro hac vice)*
Phillip Kraft *(admitted pro hac vice)*
Ricardo Mullings *(admitted pro hac vice)*
ROPES & GRAY LLP
1211 Avenue Of The Americas
New York, NY 10036
212-596-9216
Deanna.Minasi@ropesgray.com
Lauren.Bergelson@ropesgray.com
Meghan.GilliganPalermo@ropesgray.com
Phillip.Kraft@ropesgray.com
Ricardo.Mullings@ropesgray.Com

Adriana Lafaille (BBO #680210)
Krista Oehlke (BBO #707566)
Rebecca R. Krumholz (BBO #707379)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street, Suite 301
Boston, MA 02110
(617) 482-3170
ALafaille@aclum.org
KOehlke@aclum.org

21

RKrumholz@aclum.org

*Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I certify that on May 28, 2021, a copy of the foregoing was filed electronically via the

Court's ECF system, which effects service upon counsel of record.


/s/ *John T. Montgomery*
John T. Montgomery