## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND<br>  SECURITY, *et al.*,<br><br>    Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Leave to File Granted on June 28, 2021<br><br>Case No.: 1:21-cv-10083-DJC |

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.   Plaintiffs Have Not Challenged a Discrete Agency Action. .............................................. 2

    II.  Plaintiffs Have an Adequate Alternative Remedy For Document Disputes. ...................... 6

    III. Plaintiffs' Injuries Are Outside the Zones of Interest of the Provisions They Cite. ......... 10

CONCLUSION .................................................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Air Courier Conf. of Am. v. Am. Postal Workers Union*,
  498 U.S. 517 (1991).................................................................................... 10, 12

*Al Otro Lado v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018)................................................................ 12

*Axia NetMedia Corp. v. Mass. Tech. Park Corp.*,
  889 F.3d 1 (1st Cir. 2018)................................................................................ 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 3

*Bennett v. Spear*,
  520 U.S. 154 (1997)............................................................................ 10, 12, 13

*BNSF Railway Co. v. EEOC*,
  385 F. Supp. 3d 512 (N.D. Tex. 2018) ............................................................ 7, 8

*CREW v. DOJ*,
  846 F.3d 1235 (D.C. Cir. 2017)......................................................................... 7

*Ctr. for Reprod. Law & Policy v. Bush*,
  304 F.3d 183 (2d Cir. 2002) ............................................................................ 13

*DaCosta v. Gonzales*,
  449 F.3d 45 (1st Cir. 2006)............................................................................... 5

*Daniels v. Woodbury Cnty*,
  742 F.2d 1128 (8th Cir. 1984) .......................................................................... 2

*Davis v. Lynch*,
  802 F.3d 168 (1st Cir. 2015)............................................................................. 5

*Davison v. Plowman*,
  247 F. Supp. 3d 767 (E.D. Va. 2017), *aff'd*, 715 F. App'x 298 (4th Cir. 2018) ........................ 2

*Dep't of Homeland Sec. v. Thuraissigiam*,
  140 S. Ct. 1959 (2020)................................................................................. 4, 5

*Devitri v. Cronen*,
  289 F. Supp. 3d 287 (D. Mass. 2018)................................................................. 9

*East Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .......................................................................... 12

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) .......................................................................... 12

*Elhady v. Kable*,
   993 F.3d 208 (4th Cir. 2021) ................................................................................... 5

*Emergency Coal. To Defend Educ. Travel v. U.S. Dep't of Treasury*,
   545 F.3d 4 (D.C. Cir. 2008) .................................................................................... 13

*Garcia-Catalan v. United States*,
   734 F.3d 100 (1st Cir. 2013)..................................................................................... 3

*Garcia v. McCarthy*,
   2014 WL 187386 (N.D. Cal. 2014), *aff'd*, 649 F. App'x 589 (9th Cir. 2016) .......... 7

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009)................................................................................ 7, 9

*Haitian Refugee Ctr. v. Gracey*,
   809 F.2d 794 (D.C. Cir. 1987)............................................................................. 11, 12

*Hispanic Affairs Project v. Acosta*,
   901 F.3d 378 (D.C. Cir. 2018)............................................................................... 5, 6

*Houchins v. KQED, Inc.*,
   438 U.S. 1 (1978)..................................................................................................... 4

*In re Boston Herald, Inc.v. Connolly*,
   321 F.3d 174 (1st Cir. 2003)..................................................................................... 4

*INS v. Legalization Assistance Project*,
   510 U.S. 1301 (1993) (O'Conner, J., in chambers) ................................................ 13

*Kalejs v. I.N.S.*,
   10 F.3d 441 (7th Cir. 1993) ...................................................................................... 5

*Lineback v. Spurlino Materials, LLC*,
   546 F.3d 491 (7th Cir. 2008) .................................................................................... 2

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)................................................................................................ 3, 6

*Manafort v. DOJ*,
   311 F. Supp. 3d 22 (D.D.C. 2018)............................................................................ 7

*Manker v. Spencer*,
   2019 WL 5846828 (D. Conn. Nov. 7, 2019) ............................................................ 6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)................................................................................................ 13

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)................................................................................................. 5

*Moya v. U.S. Dep't of Homeland Sec.*,
   975 F.3d 120 (2d Cir. 2020) (plurality opinion) .................................................. 11, 13

iv

*Norton v. So. Utah Wilderness Alliance,*
  542 U.S. 55 (2004)......................................................................................................... 3, 6

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019), *appeal pending* .............................................................. 12

*Ortega de Pinon v. I.N.S.*,
  87 F. App'x 20 (9th Cir. 2003) ............................................................................................ 5

*Pagán v. Calderón,*
  448 F.3d 16 (1st Cir. 2006)................................................................................................ 10

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015)........................................................................................ 8

*Ryan v. ICE*,
  382 F. Supp. 3d 142 (D. Mass. 2019), *vacated and remanded*, 974 F.3d 9 (1st Cir. 2020)..... 12

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000) ........................................................................................ 3, 4

*Sierra Club v. Trump*,
  929 F.3d 670 (9th Cir. 2019) ........................................................................................... 13

*South Dakota v. U.S. Dep't of Interior*,
  665 F.3d 986 (8th Cir. 2012) ........................................................................................... 13

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)......................................................................................................... 13

*Women's Equity Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990).............................................................................................. 7

**Statutes**

8 U.S.C. § 1101................................................................................................................. 1

8 U.S.C. § 1229............................................................................................................. 4, 11

8 U.S.C. § 1252.............................................................................................................. 11

8 U.S.C. § 1362.............................................................................................................. 11

**Regulations**

8 C.F.R. § 103.2.......................................................................................................... 4, 11

**Rules**

Fed. R. Civ. P. 65............................................................................................................ 2

## **INTRODUCTION**

The Administrative Procedure Act ("APA") is not the appropriate framework within which a court should evaluate what practically amounts to a motion to compel documents for more than a million individual immigration adjudications each year. The APA enables judicial review of discrete agency actions. But Plaintiff's APA complaint essentially asks this Court to consider Defendants' document productions across every individual adjudication across every different kind of immigration proceeding.

While the complaint purports to challenge DHS's "Nondisclosure Policy," that is only because Plaintiffs have named it that for purposes of this lawsuit. What the complaint actually alleges is a broad, diffuse practice of DHS not complying with its document-production "obligations" in civil immigration proceedings. But Plaintiffs have not alleged any one source of right for all noncitizens to records in all civil immigration proceedings because there is none.[1] Rather, the complaint points to a few statutes and a regulation that provide access to certain records or information in certain situations.

As such, in order to determine whether the alleged "Nondisclosure Policy" even exists, and whether it is arbitrary and capricious as Plaintiffs claim, the Court would likely need to review over a million annual individual immigration adjudications to assess Plaintiffs' broadside claims rather than reviewing a discrete agency action, as the APA requires. Similarly, because of how Plaintiffs' APA claim would have to be litigated, Plaintiffs' alternative remedy of seeking records and judicial review of record-access decisions in the individual immigration proceedings in which those requests arise is adequate. Indeed, not only is such an approach required under the APA, it is in fact more efficient than the review Plaintiffs seek from this Court. In addition, Plaintiffs' alleged injuries fall outside the zones of interest of the provisions they cite. For all these reasons, the Court should dismiss the complaint.

---

[1] In this reply, Defendants use the term "noncitizen" as synonymous with "alien," which is defined in 8 U.S.C. § 1101(a)(3).

## ARGUMENT

### I.   Plaintiffs Have Not Challenged a Discrete Agency Action.

As set forth in DHS's opening brief, Plaintiffs' complaint is a broad, programmatic challenge rather than a challenge to discrete agency action and therefore must be dismissed. *See* ECF # 24, Defs.' Memo In Support ("Memo."), at 20-21. Plaintiffs argue in opposition that this is not so because "[t]he Complaint here challenges a single policy:  the Nondisclosure Policy," which is "a discrete, final agency action subject to review." *See* ECF # 37, Pl.'s Opposition ("Opp."), at 19. But that is not correct, as the complaint itself reveals.

Plaintiffs labeled an alleged practice across many individual immigration proceedings a policy, and then gave it a name—"the Nondisclosure Policy." The complaint is unabashed that an actual single policy, set forth in some form of policy document, whether it be a rule, an order, a guidance document, a policy manual, or even a memorandum, does not exist. What the complaint actually alleges is one of the broadest, most diffuse challenges one could imagine—that in civil immigration proceedings across the country, every day, DHS denies noncitizens and their counsel timely access to the particular records relevant to those individual proceedings, directing them to seek records through FOIA instead. The breadth of relief the complaint seeks is further proof of this:  it asks for an order requiring DHS to comply with "regulatory, statutory and constitutional disclosure obligations." Compl. at 26.[2] The complaint is not a challenge to a circumscribed and

---

[2] Such "follow-the-law" injunctions are disfavored. *See Daniels v. Woodbury Cnty*, 742 F.2d 1128, 1134 (8th Cir. 1984) ("an injunction which does little or nothing more than order the defendants to obey the law is not specific enough."); *Davison v. Plowman*, 247 F. Supp. 3d 767, 783 (E.D. Va. 2017), *aff'd*, 715 F. App'x 298 (4th Cir. 2018) ("[I]njunctions that simply require their subjects to follow the law are generally overbroad.") (citing *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008)); *see also* Fed. R. Civ. P. 65(d) (requiring an injunction to describe in reasonable detail the act or acts restrained or required); *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018) ("The [Rule 65] specificity requirements are not merely technical but are designed to prevent uncertainty and confusion . . .") (internal citations and quotations omitted).

discrete agency action, and Plaintiffs cannot avoid that conclusion by taking a diffuse alleged practice and calling it a "single policy" and a "rule." Opp. at 19-20.[3]

In this way, Plaintiffs are no different than the *Lujan* plaintiffs who impermissibly challenged the "continuing (and thus constantly changing) operations of the" Bureau of Land Management "in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans" because violations of the law were "rampant" within those operations. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990). Like the *Lujan* plaintiffs, Plaintiffs here "couch" their claim as seeking to set aside unlawful agency action, but they nonetheless seek wholesale changes to DHS's document-production practices either because they contend that Defendants routinely violate their obligations, or because they wish to advocate for broader disclosures than those currently authorized by the Immigration and Nationality Act ("INA"), or both. *See Norton v. So. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004) (describing *Lujan* as a "challenge to [the Bureau of Land Management's program], couched as unlawful agency 'action' that the plaintiffs wished to have 'set aside' under §706(2)"). Regardless, the broad programmatic changes advocated by Plaintiffs here are made in "the offices of the Department or the halls of Congress" and not by court decree. *Lujan*, 497 U.S. at 891. As the Supreme Court did in *SUWA*, this Court should decline Plaintiffs' invitation to issue a "general order[] compelling compliance with broad statutory mandates," 542 U.S. at 66-67, like unidentified "regulatory, statutory and constitutional disclosure obligations." Compl. at 26.

This case is also like *Sierra Club v. Peterson*, 228 F.3d 559, 562 (5th Cir. 2000), where environmental groups challenged the Forest Service's practice of allowing even-aged management techniques in the timbering of national forests. Much like this case, the environmental groups

---

[3] In a motion to dismiss, a court assumes the truth of the factual allegations, even though DHS disputes many of them. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). A court, however, need not accept legal conclusions or other labels and conclusions. *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. . .") (internal citations omitted). As a result, this Court need not accept as true Plaintiffs' label that the alleged practice is a "Nondisclosure Policy."

3

pointed to several instances of allegedly improper timber sales. *Id*. at 563. Nonetheless, the groups were not challenging any specific timber sales; they merely cited these sales as instances of the agency's challenged policy. *Id*. The court held that *Lujan* foreclosed this challenge, as the agency's practices of timber management to which the environmental groups objected did not constitute an identifiable agency action or event. *Id*. at 566. The court held further that the plaintiffs could not use the cited instances of alleged agency action as a basis to challenge a general policy: "Nor is this programmatic challenge made justiciable by the fact that the environmental groups identified some specific sales in their pleadings that they argue are final agency actions." *Id*. at 567.

The complaint here simply does not challenge a "'specific order or regulation [that applies] across the board.'" Opp. at 19 (citing *Lujan*). Although Plaintiffs seek "relevant records," they fail to identify a single source of law requiring DHS to turn over those records in all civil immigration proceedings. Instead, Plaintiffs point to 8 U.S.C. §§ 1229a(b)(4)(B) and (c)(2)(B), 8 C.F.R. § 103.2(b)(16), and the Due Process Clause as the source of Defendants' document-disclosure obligations. But none of those provisions directs the agencies to produce "relevant records" for *all* immigration proceedings or, for that matter, A-files, interview notes, prior application materials, records of prior removal proceedings, and records that may assist the noncitizen. *See* Compl. ¶¶ 35-37, 40. Rather, the two statutory provisions involve removal proceedings in immigration court only, and the regulation involves USCIS's immigration-benefit applications. These provisions say nothing about other immigration proceedings, including removal based on the reinstatement of prior orders, bond hearings, and expedited removal. And even with respect to removal proceedings and USCIS's adjudications, none of the cited provisions mandates the across-the-board document production Plaintiffs seek. *See* Memo. at 5, 13-20.

Nor does the Due Process Clause fill the gap. To start, there is no generalized civil right to government information. *Houchins v. KQED, Inc*., 438 U.S. 1, 14 (1978); *In re Boston Herald, Inc. v. Connolly*, 321 F.3d 174, 180 (1st Cir. 2003). Moreover, noncitizens do not have a life, liberty, or property interest sufficient to implicate the Due Process Clause in conjunction with all civil immigration proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959,

4

1964, 1963-64, 1982-83 (2020) ("While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause."); *DaCosta v. Gonzales*, 449 F.3d 45, 50 (1st Cir. 2006) (no liberty or property interest in a discretionary adjustment of status). Similarly, although the First Circuit recognizes that noncitizens have certain procedural due process rights in removal proceedings, it has not expressly interpreted those rights to extend to the automatic production of documents by Defendants. *See Davis v. Lynch*, 802 F.3d 168, 177 (1st Cir. 2015) (a noncitizen has "'a meaningful opportunity to present evidence and be heard by an impartial judge.'"). And courts considering the document-production issue directly have concluded that there is no general right to discovery in removal proceedings. *Ortega de Pinon v. I.N.S.*, 87 F. App'x 20, 21 (9th Cir. 2003) (no violation of due process for immigration judge to deny discovery during removal proceeding); *Kalejs v. I.N.S.*, 10 F.3d 441, 447-48 (7th Cir. 1993) ("no general right to discovery in a deportation hearing"). Also, Plaintiffs' due process APA claim appears to be a facial challenge, but Plaintiffs' allegations on this point are entirely conclusory. They do not muster any specific examples of any due process violation, much less a demonstration that due process violations arise from DHS document-production actions across the board. *See generally Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) (due process inquiry is directed at the "generality of cases, not the rare exceptions"); *Elhady v. Kable*, 993 F.3d 208, 217-18 (4th Cir. 2021).

The fact that Plaintiffs' complaint does not challenge "a specific order or regulation [that applies] across the board," as well as the diffuse nature of the alleged practice, distinguishes this case from the cases Plaintiffs rely upon. *See* Opp. at 20. In *Hispanic Affairs Project v. Acosta*, the court held that the plaintiff's challenge to DHS's alleged unlawful practice of habitually approving and extending visas for herders did not run afoul of *Lujan's* prohibition on programmatic challenges because the alleged practice was "'particular'" and in contravention of a statutory command that was both "cabined and direct." 901 F.3d 378, 388 (D.C. Cir. 2018). The plaintiff

5

targeted "its argument to an identified transgression of . . . statutory and regulatory language, not to an exercise of broad, unspecified direction." *Id*. *See also Manker v. Spencer*, 2019 WL 5846828, at *13 (D. Conn. Nov. 7, 2019) ("Each individual member of the certified class of discharged Navy or Marine Corps veterans claims that the NDRB wrongfully failed to consider or comply with specified statutorily or regulatory factors, with the result that the veteran's application for a discharge upgrade was impermissibly denied.").

There are over a million individual civil immigration adjudications each year across many different types of proceedings. APA review requires a "case-by-case approach" and not the "correction of the administrative process at a higher level of generality." *Lujan*, 497 U.S. at 894. Given the variance in immigration proceedings, procedures, and factual circumstances, an order "[e]njoin[ing] Defendants' Nondisclosure Policy and order[ing] compliance by Defendants with regulatory, statutory, and constitutional disclosure obligations," Compl. at 26, would entangle the Court in the "day-to-day management" of over a million adjudications each year, *SUWA*, 542 U.S. at 67. Plaintiffs' complaint alleges "[g]eneral deficiencies in compliance," "lack[s] the specificity requisite for agency action," and should be dismissed. *Id*. at 66.

## II.   Plaintiffs Have an Adequate Alternative Remedy For Document Disputes.

These same deficiencies of the complaint—that it does not challenge an actual DHS policy and that it does not point to a single authority requiring the broad-based disclosure of records— show that Plaintiffs' APA claim is barred because Plaintiffs have an adequate alternative remedy. Defendants' opening brief demonstrated that noncitizens and their lawyers have the opportunity to seek information and documents relevant to particular immigration proceedings in those proceedings themselves, and to seek judicial review when record requests are denied. Thus, Plaintiffs have an alternative adequate remedy to challenge DHS's compliance with its disclosure obligations, including to argue that any noncompliance is subject to a policy or practice. Again, because the complaint alleges no one source of a right to relevant records in all immigration proceedings, but rather a patchwork of statutes and regulations that provide for documents or

6

information in certain circumstances, it is in fact more efficient to litigate record-production issues in the proceedings, contexts, and cases in which they arise. But even if a broader challenge would be more effective in providing systematic relief, the existing remedy is still adequate. Memo. at 13-20.

In opposition, Plaintiffs first claim as a general matter that "the ability to bring a series of individual lawsuits is not an adequate alternative remedy for a single APA challenge to agency action." Opp. at 13. In making this argument, Plaintiffs ignore the caselaw cited in Defendants' motion for the proposition that even if a broader challenge would be more effective in providing systemic relief than situation-specific litigation, the latter still affords an adequate remedy. *See* Memo. at 17-18 (citing *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009); *CREW v. DOJ*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017); *Manafort v. DOJ*, 311 F. Supp. 3d 22, 33-34 (D.D.C. 2018)). *See also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (dismissing APA claim because suits against discriminating entity provided alternative remedy to address discrimination, even though the process may be "more arduous, and less effective in providing systemic relief" than oversight of federal government enforcement); *Garcia v. McCarthy*, 2014 WL 187386, at **11-14 (N.D. Cal. 2014), *aff'd*, 649 F. App'x 589 (9th Cir. 2016) (holding that plaintiffs had an adequate alternative remedy to an APA claim through individual challenges in California State courts).

Instead, Plaintiffs rely primarily on *BNSF Railway Co. v. EEOC*, 385 F. Supp. 3d 512 (N.D. Tex. 2018), but that case is distinguishable from the instant case. *See* Opp. at 13-14. In *BNSF*, the court concluded that BNSF could bring an APA claim against the EEOC challenging its issuance of 54 identical right-to-sue letters reporting that the EEOC found reasonable cause to believe that BNSF violated the law, that the EEOC would not be suing BNSF, and that the recipients of the letters could bring their own suits. 385 F. Supp. 3d at 517, 529. In rejecting the EEOC's argument that BNSF had an alternative remedy in the suits brought by the 54 individuals the EEOC authorized to sue, the court observed that the EEOC would not have been a party to those alternative suits and that BNSF challenged discrete issues that involved a common set of facts

regarding the validity of the letters. *Id*. at 528-29. In contrast, here, Defendants are parties to alternative, individual immigration proceedings, and whether noncitizens are entitled to documents is anything but common—rather, it will vary tremendously based on the type of proceeding, stage of proceeding, and disputed legal and factual issues. Thus, there is simply not the same "efficiency and convenience" to litigating in one suit whether DHS must produce records to all noncitizens in all civil immigration proceedings. *Id*. at 529.[4]

Indeed, Plaintiffs' argument that litigating document-disclosure issues in the immigration proceedings in which they arise is not an adequate alternative remedy to Plaintiffs' APA challenges ignores the fundamental fact that the complaint does not challenge an actual policy but rather an alleged practice in myriad types of immigration proceedings (most of which Plaintiffs fail to identify or articulate). While Plaintiffs may prefer to argue in one case in federal court that DHS fails to comply with its document-disclosure "obligations" in all immigration proceedings and obtain an order requiring DHS to abide by its obligations, it is unclear how this Court is supposed to determine that there is such an *en masse* failure or "Nondisclosure Policy," when Plaintiffs have alleged what amounts to, at most, a de facto policy and no one source of right to all documents in all immigration proceedings. Nor is it clear upon what record the Court would make that determination. Plaintiffs claim the record would consist of evidence of the "Nondisclosure Policy" itself, Opp. at 17, but it is far more likely that the record would need to consist of evidence regarding the position DHS took, and why, in the context of document-disclosure requests in untold myriad individual immigration proceedings. Such a wide-ranging inquiry across all

---

[4] Plaintiffs also cite *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185-86 (D.D.C. 2015), in which the court concluded that the INA's procedures did not provide an adequate remedy when those procedures only allowed for review weeks or months after ICE allegedly unlawfully detained noncitizens. Here, however, noncitizens can and do seek documents during their individual proceedings and, if successful, may use those documents to assist them with their cases, so there is no similar timing issue. *See* Memo. at 13-20.

immigration-proceeding contexts into what documents are released or not released, and when, and why, is transparently infeasible.

Plaintiffs also argue that litigating DHS's document-disclosure obligations in the immigration proceedings in which they arise is an inadequate remedy because it is impracticable in many cases due to such circumstances as noncitizens succeeding in securing the relief they are seeking, noncitizens declining to seek judicial review for various reasons, and noncitizens acquiring the records in other ways. Opp. at 14-15. However, that Plaintiffs can challenge document production in individual proceedings, not whether they choose to do so, is the mark of an adequate, alternative remedy. Further, a remedy need not be identical to that offered by the APA in order to be adequate; it simply needs to be in same genre. *Garcia*, 563 F.3d at 522. Plaintiffs want this Court to order the production of documents, but, if appropriate, other courts can and do order the production of those same documents in case-by-case challenges.

The example Plaintiffs highlight from *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018), only confirms that relief exists in individual cases when the reviewing court deems it appropriate. Opp. at 15-16 (explaining that the court ordered production of the petitioners' A-Files because these files are "'necessary for preparing the motions to reopen based on changed country conditions,'" quoting *Devitri*, 289 F. Supp. 3d at 298). Plaintiffs claim that the problem with *Devitri* is that while the case was successful for the *Devitri* plaintiffs, "the case did nothing to change the Nondisclosure Policy." Opp. at 16. But that is because the court did not find a broad-based right to A-files in every civil immigration proceeding but rather only that the petitioners needed their A-files to prepare "motions to reopen based on changed country conditions to demonstrate what has 'changed' for each Petitioner individually since the original decision" and that the Records of Proceedings before the immigration court would not suffice. *Devitri*, 289 F. Supp. 3d at 298. Those facts obviously will not exist in every civil immigration proceeding, and so broader relief is not necessary or appropriate. And similarly situated noncitizens can seek to rely on this precedent in future cases. That is the crux of the problem with the instant lawsuit—whether noncitizens are entitled to what documents in their immigration proceedings is an

individualized determination based on the facts, law, and context of those proceedings, and it cannot be aggregated in one APA suit just because Plaintiffs label DHS's failure to provide documents in some proceedings a "policy."

**III.    Plaintiffs' Injuries Are Outside the Zones of Interest of the Provisions They Cite.**

Defendants established in their opening brief that Plaintiffs—attorneys, law firms, and a nonprofit legal services corporation—do not satisfy the zone-of-interest test because their alleged injuries fall outside the zones of interest protected by the statutory, regulatory, and constitutional provisions they cite. Defendants explained that Plaintiffs' alleged injuries are derivative of their clients' interests and only marginally related to the interests protected by the operative provisions, which speak to noncitizens' rights to access to certain documents and say nothing about their lawyers' rights or the attorney-client relationship. Memo. at 7-12.

Plaintiffs argue in opposition that they meet the zone-of-interest test because their interests align with those of the entire INA and because the INA recognizes that noncitizens can employ counsel to assist them with their cases. Opp. at 5-12. The zone-of-interest test, however, focusses on the specific legal provisions identified by Plaintiffs in support of their APA claim, not the surrounding provisions or the INA as a whole. *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997); *Air Courier Conf. of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 529-30 (1991). That is, a plaintiff meets the zone-of-interest test only when its injuries arguably fall within the zone of interests protected by the particular provision alleged to have been violated. *Bennett,* 520 U.S. at 175-76; *Pagán v. Calderón,* 448 F.3d 16, 27 (1st Cir. 2006) (stating that a plaintiff must show that "his claim . . . falls within the zone of interests *protected by the law invoked.*") (emphasis added). While it is true that in applying the zone-of-interest test, courts can, and do, consider provisions other than the one alleged to have been violated, they do so only when necessary to understand the interests regulated or protected by the provisions at issue. *See Air Courier Conf.*, 498 U.S. at 529; *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 131 n.7 (2d Cir. 2020) (plurality opinion).

10

The statutes and regulation here require no such extra study to understand the interests they protect. By their terms, they provide noncitizens with rights to information or documents in certain circumstances to ensure a fair process and procedure for the noncitizen. They neither regulate the attorney-client relationship, like the regulation in *Federal Defenders of New York, Inc. v. Federal Bureau of Prisons* that explicitly directed inmate-attorney prison visits, nor protect attorneys' rights or interests in efficiency or resource management. And the fact that the INA acknowledges that noncitizens may be represented by counsel in these proceedings does not mean that the provisions at issue here protect any independent interests of counsel in obtaining records in cases in which they represent noncitizens. *See* Opp. at 7 (citing 8 U.S.C. §§ 1229a(b)(4), 1362; 8 C.F.R. § 103.2(a)(3)). Plaintiffs' argument also proves too much, as it would give attorneys carte blanche to challenge most agency action on the theory that those actions will inevitably affect attorney resources or case management in some way. *See Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 814 (D.C. Cir. 1987) (positing a hypothetical that lawyers would not be within the zone of interests of a bail-reform statute that Congress thought might "enable lawyers to plan their courtroom strategies with more certainty").

Moreover, Plaintiffs' attempt to distinguish the Second Circuit's recent decision in *Moya v. DHS* fails. As discussed in Defendants' opening brief, *Moya* was a challenge brought by a nonprofit organization to a purported USCIS practice of improperly denying certain naturalization applications. *Moya* held that the organization, which assisted noncitizens with naturalization applications, failed the zone-of-interests test because its interests were derivative of its clients' interests. Memo. at 10. Plaintiffs claim that *Moya* recognized that a broader zone-of-interests inquiry is required when the INA does not explicitly create a cause of action for anybody, and contend that is the case here. Opp. at 11 (citing *Moya*, 975 F.3d at 133 n.10). But Congress has provided noncitizens (not advocacy organizations or attorneys in their own name) a means to challenge any alleged procedural irregularities, including potentially unproduced documents, in removal proceedings and USCIS benefit considerations. *See, e.g.*, 8 U.S.C. §§ 1252(a)(1), 1252(b)(9) (courts of appeals have exclusive jurisdiction to review final orders of removal to

11

include "all questions of law and fact, including interpretation and application of constitutional and statutory provisions" arising from those proceedings); Memo. at 14-20.

Nor are the various cases in the immigration context that Plaintiffs cite apposite or persuasive. Opp. at 8-10. *Ryan v. ICE*, 382 F. Supp. 3d 142 (D. Mass. 2019), *vacated and remanded*, 974 F.3d 9 (1st Cir. 2020), which Plaintiffs highlight, is easily distinguishable. The plaintiffs in *Ryan* were "participants in the state civil and criminal justice systems" who argued that ICE's policy of allegedly arresting noncitizens in State courthouses adversely affected their interests in separate, State cases in which DHS was not a party. *Id*. at 151, 154-55. In contrast, here, Plaintiffs challenge an alleged DHS practice from the very civil immigration proceedings in which they represent noncitizens against DHS. In addition to *Ryan*, Plaintiffs rely on cases concluding that organizations representing noncitizens in asylum proceedings satisfied the zone-of-interest test and could challenge policies or practices involving access to asylum procedures. *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 755, 67-69 (9th Cir. 2018) ("*East Bay I*"); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 659, 668 (9th Cir. 2021) ("*East Bay II*"); *O.A. v. Trump*, 404 F. Supp. 3d 109, 116, 144-45 (D.D.C. 2019), *appeal pending*; *Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1293 (S.D. Cal. 2018). In reaching their decisions and considering the test, however, the courts conflated the organizations' advocacy purpose with their alleged injuries or failed to meaningfully consider the actual statutes upon which the groups rooted their APA claims. *See East Bay I*, 932 F.3d at 768-69; *East Bay II*, 993 F.3d at 668; *O.A.*, 404 F. Supp. 3d at 144-45; *Al Otro Lado*, 327 F. Supp. 3d at 1301-2. This violates the Supreme Court's admonition, noted above, to focus on both the alleged injuries and the particular provisions allegedly violated. *Bennett*, 520 U.S. at 175-76; *Air Courier Conf.*, 498 U.S. at 523-24. Plaintiffs err in a similar way when they invoke their general interest in "ensur[ing] their ability to help noncitizens achieve just outcomes," rather than their actual alleged injuries of depletion of attorney resources and decreased ability to service more clients. Opp. at 6-7; *see also Haitian Refugee Ctr.*, 809 F.2d at 813 ("If any person or organization interested in promoting knowledge, enjoyment, and protection of the rights created by a statute or by a constitutional provision has an interest that

12

falls within the zone protected or regulated by the statute or constitutional provision, then the zone-of-interest test is not a test because it excludes nothing."); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers) ("The fact that the INS regulation may affect the way an organization allocates its resources. . . does not give standing to an entity which is not within the zone of interests the statute meant to protect.").

Finally, Plaintiffs claim, in a footnote, that "[i]t is doubtful that the zone of interests test applies to due process claims." Opp. at 8, n.3. They base this on a Ninth Circuit opinion that questioned whether the test would apply, but then went on to actually perform the zone-of-interest analysis for a constitutional claim. *See Sierra Club v. Trump*, 929 F.3d 670, 700-04 (9th Cir. 2019). The zone-of-interest test, however, indisputably applies to claims brought under the APA. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). In addition, the Supreme Court and many other courts have applied or acknowledged the zone-of-interest requirement to causes of action to enforce constitutional provisions. *See, e.g.*, *Bennett*, 520 U.S. at 162 ("a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."); *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ("[T]he Court has required that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (quotation marks omitted)); *Moya*, 975 F.3d at 136 (indirect, derivative harm insufficient to challenge procedural due process rights of another); *South Dakota v. U.S. Dep't of Interior*, 665 F.3d 986, 990-91 (8th Cir. 2012) (State's claim falls outside zone of interest of Due Process Clause because the clause is inapplicable to a State); *Emergency Coal. To Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 11 (D.C. Cir. 2008) (applying the zone of interests requirement to a constitutional claim); *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 196 (2d Cir. 2002) (Sotomayor, J.) ("As plaintiffs do not assert a harm to their own interest in receiving due process of law, this is precisely the sort of claim that the . . . [zone-of-interest] doctrine is designed to foreclose.").

13

Plaintiffs argue that "even if the test applies, Plaintiffs' claims fall within the zone of interests of due process because Defendants' Nondisclosure Policy impinges Plaintiffs' ability to discharge their duty to provide representation to clients, thereby invoking due process concerns." Opp. at 8 n.3. But Plaintiffs do not explain what recognized liberty or property interest *they* have in representing their clients, nor does the complaint allege such an interest. As such, Plaintiffs' APA claim based upon alleged violations of the Due Process Clause should be dismissed. *See* Compl. ¶ 87.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in Defendants' opening brief, the Court should dismiss Plaintiffs' complaint.

Respectfully submitted

June 28, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

14

## **CERTIFICATE OF SERVICE**

I hereby certify on this 28th day of June 2021 that I have filed this Reply with the Court's ECF system, which sends notice to Plaintiffs' Counsel identified on the NEF.

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney