UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREATER BOSTON LEGAL SERVICES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 21-cv-10083-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     **January 13, 2022**

**I.    Introduction**

Plaintiffs Greater Boston Legal Services, Demissie & Church, Susan Church, Araujo & Fisher, LLC, Annelise M. Araujo, Stefanie Fisher and William E. Graves, Jr. have filed this lawsuit against Defendants United States Department Of Homeland Security ("DHS"), United States Citizenship And Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), United States Customs And Border Protection ("CBP") (collectively the "Agencies") and various senior officials of the Agencies sued in their official capacities alleging a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. D. 1. Defendants have moved to dismiss. D. 23. For the reasons stated below, the Court ALLOWS the motion in part and DENIES it in part.

1

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

Unless otherwise noted, the following facts are drawn from Plaintiffs' complaint, D. 1, and are taken as true for the purpose of resolving the motion to dismiss.

Plaintiffs are individual attorneys, small law firms and nonprofit legal services organizations that represent noncitizens in immigration matters, like bond hearings, removal proceedings, and applications for affirmative asylum and other benefits (e.g., visas, permanent resident status, citizenship). D. 1 ¶¶ 2, 68. The Agencies are responsible for administering and enforcing United States immigration law. Id. ¶ 18. Specifically, USCIS adjudicates requests for benefits, ICE prosecutes removal proceedings in immigration court and CBP enforces laws regarding the entry and exit of people and goods at the U.S. border. Id. ¶¶ 20, 22, 24.

DHS maintains electronic and paper records concerning each noncitizen that they interact with in these immigration proceedings but, as alleged, follows a policy and practice (the "Policy") of refusing to turn over records that may aid the noncitizen in these proceedings and directing noncitizens or their counsel to file a Freedom of Information Act ("FOIA") request. Id. ¶¶ 28-29, 39. For example, when USCIS adjudicates a benefit application (e.g., asylum), it reviews information in a noncitizen's file and assembles records from other agencies (e.g., prior visa applications, interactions with border officials), but does not share these records with noncitizens, although the records could help the noncitizen establish eligibility for the benefit. Id. ¶ 32. Instead, USCIS directs applicants to file a FOIA request for records. Id. Additionally, in adversarial removal proceedings, ICE uses a noncitizen's file, including information from other agencies, but DHS recognizes no obligation to disclose that information to the noncitizen in defending against removal, except in response to a FOIA request. Id. ¶¶ 33, 39. Furthermore, when DHS detains and attempts to remove noncitizens based on prior removal orders, it does not disclose records of the prior removal proceeding to the noncitizen, which establishes the basis for the current proceeding. Id. ¶ 34.

The documents and records the Agencies withhold include (1) Form I-213, which summarizes a noncitizen's immigration record and is often used by ICE as evidence against a noncitizen in immigration court, (2) notes from asylum or credible fear interviews, which ICE uses to cross-examine asylum applicants in immigration court, (3) prior application materials, which can impact eligibility for a benefit or relief from removal, (4) records of prior removal proceedings, (5) visa application materials, which are used to cross-examine noncitizens in immigration court or question noncitizens in USCIS interviews, (6) criminal history records from different jurisdictions that are difficult for noncitizens to obtain, especially if detained, and (7) identification

documents, like passports, which DHS confiscates. Id. ¶ 35. As to the identity documents, DHS denies bond or other immigration relief because noncitizens cannot establish their identity. Id. Many but not all these documents are contained in a noncitizen's "A-file," the primary record of their immigration history. Id. ¶ 36.

When Plaintiffs do file FOIA requests for these records, like the A-file, the Agencies do not meet statutory deadlines for responses, even in instances where faster processing would be required for noncitizens who are scheduled for hearings before immigration judges. Id. ¶¶ 46–48. Recently, USCIS has taken one year or more to respond to FOIA requests for a noncitizen's A-file. Id. ¶ 47. For records not in the A-file, Plaintiffs must submit separate FOIA requests, which are susceptible to the same delays. Id. ¶ 49. Prior to receiving requested documents, noncitizens may face impending deadlines to respond to potentially adverse decisions, like removal. Id. ¶ 50. Some FOIA responses omit relevant documents or redact information that a noncitizen may need for their defense. Id. ¶ 51. The Agencies do not inform noncitizens facing adverse immigration actions about the procedures for using FOIA to obtain records that may assist them. Id. ¶ 61. Given how quickly immigration proceedings can move, FOIA responses often arrive after the underlying immigration matter has ended or the noncitizen has already been removed. Id. ¶¶ 49–50, 63–66.

Defendants' Policy and FOIA response delays have been an impediment to Plaintiffs' ability to represent noncitizens as they require Plaintiffs to conduct additional work, including interviews with clients, family members and previous attorneys to gather a client's immigration history, FOIA tracking and appeals, and record collection from attorneys and courts. Id. ¶¶ 70–74. The Policy has also caused Plaintiffs to conduct additional investigation, aimed at anticipating or guessing what records DHS might be withholding and planning to use, to seek continuances

4

and to prepare otherwise unnecessary applications.  Id. ¶¶ 75–78.  In turn, the Policy makes Plaintiffs' representation of noncitizens more costly and time-consuming, prevents Plaintiffs from taking on more cases, and in some cases, requires Plaintiffs to decline a case altogether when it appears futile.  Id. ¶¶ 79–83.

**IV.     Procedural History**

Plaintiffs instituted this action on January 15, 2021.  D. 1.  Defendants then moved to dismiss.  D. 23.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 43.

**V.      Discussion**

      **A.     Zone of Interests**

In addition to Article III standing requirements, a "plaintiff [must] show that his claim . . . falls within the zone of interests protected by the law invoked."  Pagán v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006) (citations omitted).  To satisfy the inquiry, Plaintiffs must assert an interest that is "'arguably within the zone of interests to be protected or regulated by the statute' that [Plaintiffs] say[] was violated."  Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 224 (2012) (quoting Ass'n of Data Processing Service Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)).[1]  Here, Plaintiffs allege that Defendants' Policy violates their disclosure obligations in two provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §

---

[1] Defendants do not challenge Plaintiffs' Article III standing.  See D. 24.

1229a(b)(4)(B) and § 1229a(c)(2)(B)),[2] a DHS regulation, 8 C.F.R. § 103.2(b)(16),[3] and the Due Process Clause. D. 1 ¶¶ 39–40. Defendants assert that Plaintiffs fail the zone of interests test for each. See D. 24 at 10-11.

The zone of interests test "'is not meant to be especially demanding' . . . in keeping with Congress's 'evident intent' when enacting the APA 'to make agency action presumptively reviewable.'" Patchak, 567 U.S. at 225 (quoting Clarke v. Securities Industry Ass'n., 479 U.S. 388, 399 (1987)). Accordingly, the test "does not require any 'indication of congressional purpose to benefit the would-be plaintiff,'" and the "benefit of any doubt goes to the plaintiff." Id. In the APA context, "[t]he test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Id. (internal quotation marks and citation omitted); Conservation L. Found., Inc. v. Jackson, 964 F. Supp. 2d 152, 164 (D. Mass. 2013) (explaining that zone of interests test "is particularly generous with respect to claims brought under the APA") (citations omitted). "In applying the zone of interests test, the Court 'do[es] not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff.'" Arruda & Beaudoin, LLP v. Astrue, 11-cv-10254-GAO, 2013 WL 1309249, at *11 (D. Mass. Mar.

---

[2] These two INA provisions govern removal proceedings: The first provides that in removal proceedings "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government . . . ." 8 U.S.C. § 1229a(b)(4)(B). The second provides that in removal proceedings, when establishing lawful presence in the United States, "the alien shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States." 8 U.S.C. § 1229a(c)(2)(B).

[3] The DHS regulation provides that, in adjudicating benefit requests made to USCIS, "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision" except where the decision is based on derogatory information unknown to the petitioner or applicant, a determination of statutory eligibility, is a discretionary determination, or if the information is classified. 8 C.F.R. § 103.2(b)(16).

27, 2013) (quoting Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 492 (1998)). "Instead, [the Court] first discern[s] the interests 'arguably . . . to be protected' by the statutory provision at issue; [the Court] then inquire[s] whether the plaintiff's interests affected by the agency action in question are among them." Id. The Court is "not limited to considering the statute under which [Plaintiffs] sued, but may consider any provision that helps [it] to understand Congress' overall purposes in [the overall Act]." Clarke, 479 U.S. at 401.[4]

1. *INA Provisions and DHS Regulation*

As to the two INA provisions and the DHS regulation, Plaintiffs' interests as legal services organizations and immigration attorneys "arguably" fall within the zone interests protected by them. The INA provisions outlining the procedures and parameters of removal proceedings show that Congress contemplated the role and availability of counsel to persons subject to removal. The INA establishes a right to counsel in removal proceedings, see 8 U.S.C. § 1229a(b)(4)(A), that persons subject to removal must be notified of this right, id. § 1229(a)(1)(E), that an initial hearing is not scheduled until ten days after such notice so the individual has an opportunity to secure counsel, id. § 1229(b)(1), and that the Department of Justice must make available a list of pro bono counsel for removal proceedings, id. § 1229(b)(2). See Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev., 513 F. Supp. 3d 154, 171 (D.D.C. 2021) (citing same INA provisions and concluding that legal services organization "readily surpass[ed] [the] low bar" to satisfy the zone of interests test because "Congress plainly had as an objective under the INA to optimize the availability of pro bono or low-cost counsel to persons subject to removal"); Las Americas

---

[4] In the context of an APA claim for regulatory noncompliance, other courts have employed the same zone of interests test applicable to statutes. See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 131 n.12 (2d Cir. 2020) (collecting cases).

Immigrant Advoc. Ctr. v. Trump, 475 F. Supp. 3d 1194, 1206-07 (D. Or. 2020) (concluding same where plaintiffs' "organizational purpose and mission is to provide low-cost or pro bono legal representation for aliens in proceedings that fall under § 1229a" who "have a right to [the organization's] services" and where plaintiffs "allege that Defendants' policies and practices render it nearly impossible to provide these services and, by extension, for aliens in removal proceedings to achieve their statutory right to counsel").  The DHS regulation also provides that in USCIS benefit proceedings, an applicant or petitioner has the right to be represented by an attorney, 8 C.F.R. § 103.2(3), and that these attorneys receive original notices from USCIS to effectuate their representation, see id. § 103.2(19)(ii)(A).  See E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (concluding that organization was within zone of interests of the INA and its regulations because organizational purpose, to help individuals apply for and obtain asylum and provide low-cost legal services for same, fell within scope of statue and regulations that "shaped asylum eligibility requirements for migrants").

Here, Plaintiffs have alleged that their daily work of representing noncitizens in removal and benefit proceedings, where these noncitizens enjoy the right to counsel (among other rights noted above), is impeded by Defendants' Policy.  See D. 1 ¶¶ 79–83.  In light of the statutory provisions and regulations described above, Plaintiffs' allegations satisfy the low bar set by the zone of interests test for an APA claim.  See Nw. Immigrant Rts. Project v. United States Citizenship & Immigr. Servs., 496 F. Supp. 3d 31, 52 (D.D.C. 2020) (concluding Plaintiff organization was within zone of interests of INA when "daily work is governed by the INA and the [] provisions at issue" in their complaint and the INA "[o]n its own terms . . . contemplates an important role for organizations like Plaintiffs"); Fed. Defs. of New York, Inc., 954 F.3d at 131-32 (concluding that organization of attorneys who challenged regulations about attorney-client

visitation of federal inmates fell within zone of interests when organization's interest "mirror[ed] the interests" of the regulation, access to counsel); E. Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 769 (9th Cir. 2018) (citing INA provisions regarding role of counsel and concluding that "[t]hese statutes, which directly rely on institutions like the Organizations to aid immigrants, are a sufficient 'indicator that the plaintiff[s] [are] peculiarly suitable challenger[s] of administrative neglect . . . support[ing] an inference that Congress would have intended eligibility' to bring suit") (quoting Hazardous Waste Treatment Council v. EPA, 861 F.2d 277, 283 (D.C. Cir. 1988) (alteration in original).

Defendants' reliance upon Moya v. United States Dep't of Homeland Sec., 975 F.3d 120 (2d Cir. 2020), commands no different result here. There, the Second Circuit concluded that an organization's interests fell outside the zone of interests of a separate INA provision, which provides for disability waivers when a lawful permanent resident takes a citizenship test to be naturalized. Id. at 124. Unlike Plaintiffs' interests and the relevant statutory and regulatory provisions here, the organization in Moya was staffed by non-lawyers providing application assistance under the INA waiver provisions that contained a specific appeal process and cause of action for the applicant. Id. at 124–25; 133 n.10 (noting lack of specific cause of action required broader application of zone of interests test); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 130 (2014) (explaining that zone of interest test's "lenient approach" in APA claims "is an appropriate means of preserving the flexibility of the APA's omnibus judicial-review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review"). Accordingly, the court deemed the interests of the organization "in improving the naturalization process for the sake of its clients . . . a crucial step removed from the challenged statute." Id. at

132–33. Here, by contrast, the statute and regulation that undergird Plaintiffs' APA claim set out their role as attorneys, and the interest they assert is not derivative of their clients, but rather their own interest is effectuating the attorney-client relationship in these immigration proceedings.

Accordingly, the Court concludes that Plaintiffs' APA claim satisfies the zone of interests test as to the INA provisions and DHS regulation.

### 2. *Due Process Clause*

Plaintiffs have not sufficiently alleged, however, that they fall within the zone of interests of the Due Process Clause. Here, Plaintiffs assert only that the Policy "leads to systematic violations of noncitizens' due process rights." D. 1 ¶¶ 40, 87. Plaintiffs make no allegation, and fail to address in their opposition, how their own due process interests fall within the Due Process Clause and the rights it affords them. See D. 1; D. 37; Ctr. for Reprod. L. & Pol'y v. Bush, 304 F.3d 183, 196 (2d Cir. 2002) (Sotomayor, J.) (concluding that claim fell outside Due Process Clause zone of interests where "plaintiffs d[id] not assert a harm to their own interest in receiving due process of law," but rather interests of third parties) (citing Haitian Refugee Ctr. v. Gracey, 809 F.2d 794, 809 (D.C. Cir. 1987) (explaining that a plaintiff "could never have standing . . . solely on the ground that [statute] failed to provide due process to third parties not before the court")).

Accordingly, the Court allows the motion to dismiss Plaintiffs' APA claim to the extent it relies upon a violation of third-party due process rights.

### B. **Adequate Alternative Remedy**

"Federal courts may only review an APA claim if there is 'no other adequate remedy in a court.'" Abuhajeb v. Pompeo, 531 F. Supp. 3d 447, 454 (D. Mass. 2021) (quoting 5 U.S.C. § 704). "The APA generally precludes review where Congress has provided a 'special and adequate

review procedure,' but courts can hear APA claims where that review procedure provides 'doubtful and limited relief' or relief which is not of 'the same genre.'" Id. at 454-55 (quoting Bowen v. Mass., 487 U.S. 879, 901, 904 (1988); El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs., 396 F.3d 1265, 1272 (D.C. Cir. 2005)). Courts should only restrict access to judicial review "upon a showing of clear and convincing evidence of a contrary legislative intent . . . . " El Rio, 396 F.3d at 1272 (citation and internal quotation marks omitted). And the "'adequate remedy' limitation on APA review [is to be construed] narrowly . . . '[not] to defeat the central purpose of providing a broad spectrum of judicial review of agency action." R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 185 (D.D.C. 2015) (quoting Bowen, 487 U.S. at 903).

Here, Defendants argue that Plaintiffs' APA claim should be dismissed because Congress has provided an "alternative adequate remedy" for Plaintiffs to bring their claim. D. 24 at 15-22. Specifically, Defendants contend that "the adjudicability of these [statutory and constitutional disclosure] issues in individual immigration cases . . . demonstrate[s] that Plaintiffs have an alternative, adequate remedy to challenge DHS's compliance with its disclosure obligations." Id. at 19-22. Plaintiffs counter that case-by-case adjudication of disclosure and discovery issues is not an adequate alternative remedy because, here, they bring a facial challenge under the APA to the Policy. D. 37 at 20.

The Court concludes that Plaintiffs do not have an adequate alternative remedy that precludes their APA challenge to Defendants' Policy. First, Defendants have not identified any alternative remedy or pointed to clear and convincing evidence of contrary legislative intent for these Plaintiffs (i.e., legal services organizations, immigration law firms and attorneys) and the relief that these Plaintiffs seek here (that the Court enjoin the Policy, see D. 1 at 26). Rather, Defendants focus on the ability of an individual noncitizen to pursue claims regarding discovery

11

and disclosure in individual immigration proceedings, for example by appealing to the Board of Immigration Appeals or to federal courts that may require disclosure of documents in specific cases. See D. 24 at 17-20. Plaintiffs, however, are not parties to the individual challenges between a noncitizen facing removal and the Agencies. See D. 24 at 18 n.13 (stating that cited cases "merely . . . demonstrate that DHS's disclosure obligations are in fact adjudicated in the context of individual immigration proceedings"). Moreover, the relevant statute and regulation provide no cause of action to Plaintiffs, but rather only provide a limited right of noncitizens to appeal the outcome of each proceeding. See, e.g., 8 U.S.C. §§ 1229a (removal), 1252 (judicial review of same); 8 C.F.R. § 103.3(a) (USCIS benefit determinations); Meza v. Cuccinelli, 438 F. Supp. 3d 25, 30 (D.D.C. 2020) (describing limited judicial review of removal orders and discretionary benefit determinations), aff'd sub nom. Meza v. Renaud, 9 F.4th 930 (D.C. Cir. 2021); cf. Citizens for Resp. & Ethics in Washington v. United States Dep't of Just., 846 F.3d 1235, 1245 (D.C. Cir. 2017) (rejecting APA claim premised on failure to comply with statute that explicitly provided de novo judicial review available to plaintiffs).[5] Second, even if an individual noncitizen challenges the Agencies' failure to comply with their disclosure obligations, that review does not address the

---

[5] Defendants assert that Plaintiffs have overlooked the "proposition that even if a broader challenge would be more effective in providing systemic relief than situation-specific litigation, the latter still affords an adequate remedy." D. 42 at 12. As discussed above, Defendants conflate the ability of a noncitizen to challenge the records disclosed to them in certain immigration proceedings with Plaintiffs' APA challenge to the allegedly unlawful Policy where they lack any cause of action in the relevant immigration statutes and regulations. The cases upon which Defendants rely support this distinction because in each one, unlike here, the plaintiffs had a cause of action available to them that could provide their desired relief. See Garcia v. Vilsack, 563 F.3d 519, 524-25 (D.C. Cir. 2009) (noting adequacy of lawsuit available to plaintiffs under Equal Credit Opportunity Act, which provides for damages, fees and injunctive relief); Citizens for Resp. & Ethics in Washington, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (concluding that FOIA's judicial review provision allowed plaintiffs to bring a claim to enforce statute's own "reading-room" provision and to seek specific documents); Manafort v. U.S. Dept. of Just., 311 F. Supp. 3d 22, 33-34 (D.D.C. 2018) (rejecting plaintiff's APA claim for unlawful prosecution where he had adequate remedy in Federal Rules of Criminal Procedure to file a motion to dismiss indictment).

12

broader injury alleged by Plaintiffs here, that Defendants' Policy of requiring them to FOIA for their client's records, in contravention of their disclosure obligations, makes their representation more difficult, costly and time-consuming. See R.I.L-R 80 F. Supp. 3d at 185 (determining adequacy of remedy based on "the central injury at issue"); O.A. v. Trump, 404 F. Supp. 3d 109, 134 (D.D.C. 2019) (explaining that in the context of removal proceedings, INA precludes consideration of relevant record and "would leave no room for the courts of appeals to evaluate the lawfulness of [agency rule] under APA standards"). Third, even assuming *arguendo* that judicial review of individual proceedings addressed Plaintiffs' alleged injury, these remedies are not adequate as Plaintiffs have alleged that the Policy forces them to endure significant delays and expenses filing unnecessary FOIA requests for documents the Agencies were legally obligated to disclose, resulting in responses that arrive after critical deadlines (e.g., after a final removal order) and are incomplete or redacted. See D. 1 ¶¶ 47, 49-51, 63-66; U.S. Army Corps of Engineers v. Hawkes Co., 578 U.S. 590, 601 (2016) (concluding that judicial review after awaiting adverse outcome of permit process not an adequate alternative to APA review where process can be "arduous, expensive, and long"); R.I.L-R, 80 F. Supp. 3d at 185 (ruling that availability of de novo review after ICE denied release to noncitizen was not adequate alternative because potential redetermination "occurs weeks or months after ICE's initial denial of relief" and thus did not remedy "the period of unlawful detention members of the class suffer *before* receiving this review—the central injury at issue in this case") (emphasis in original).

### C. Discrete Agency Action

Plaintiffs ask this Court to "set aside" the alleged Policy as "not in accordance with the law." D. 1 ¶ 86; see 5 U.S.C. § 706(2); Al Otro Lado, Inc. v. Nielsen, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018) (noting that § 706(2) "is typically reserved for completed agency actions whose

13

validity can be assessed according to the bases for setting aside agency action set forth in that provision"). Defendants assert that Plaintiffs have failed to allege a discrete agency action, but rather bring a broad, programmatic challenge to discovery in all civil immigration proceedings, which the APA does not permit. D. 24 at 22–23. According to Defendants, Plaintiffs do not point to "an identifiable action or event," but "instead, [make] an impermissible demand for day-to-day judicial review of over a million annual individual adjudications." Id. at 23. Defendants also contend that Plaintiffs have not "moored" their challenge "in a particular statute, regulation, or constitutional provision alleged to have been violated." Id. at 22. Plaintiffs counter that the "decision to rely exclusively on FOIA reflected in the [Policy] is a discrete, final agency action" subject to APA review because it is an agency "rule." D. 37 at 25-26.

"Because 'an on-going program or policy is not, in itself, a final agency action under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." Cobell v. Kempthorne, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted); see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 890-91 (1990) (explaining that plaintiffs "cannot seek *wholesale* improvement of [agency] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made") (emphasis in original). For agencywide policies, like the alleged Policy here, courts look to whether the complaint refers to an identifiable agency order, regulation, policy or plan of the Defendants, "which constitutes or reflects an agency policy applicable to all [agency] officials." Al Otro Lado, Inc., 327 F. Supp. 3d at 1319 (citing Lujan, 497 U.S. at 890); see Bark v. United States Forest Serv., 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (concluding on summary judgment that plaintiffs had not shown final agency action where they "point[ed] to no written rules, orders, or

even guidance documents of the [defendants] that set forth the supposed policies challenged here" but instead "attached a 'policy' label to their own amorphous description [agency's] practices").

Here, Plaintiffs' complaint cites DHS regulations that apply to certain asylum proceedings. See D. 1 ¶ 32 (citing 8 C.F.R. §§ 208.12, 240.69). Sections 208.12 and 240.69 permit asylum officers to "rely on material provided by the Department of State, other USCIS offices, or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions," but do not "entitle the [asylum] applicant to conduct discovery directed toward the records, officers, agents, or employees of the Service, the Department of Justice, or the Department of State." 8 C.F.R. § 208.12; see id. § 240.69 (stating same). Section 208.12 states that instead of discovery, "[p]ersons may continue to seek documents available through a Freedom of Information Act (FOIA) request . . . ." 8 C.F.R. § 208.12. Thus, by identifying DHS regulations that direct asylum applicants to file FOIA requests instead of seeking discovery for relevant documents to which the regulations purportedly require access, Plaintiffs have plausibly alleged an agencywide policy with respect to these proceedings. See Lujan, 497 U.S. at 890 n.2; R.I.L-R, 80 F. Supp. 3d at 174 (rejecting plaintiffs' contention that "DHS adopted a categorical policy . . . of denying release to all asylum-seeking Central American families in order to deter further immigration" but accepting narrower formulation of policy where plaintiffs pointed to evidence that DHS "directs ICE officers to consider deterrence of mass migration as a factor in their custody determinations").

As to the other proceedings described in the complaint, namely removal proceedings, Plaintiffs have not pointed to a regulation or described the Policy with reference to a specific guidance document or plan. See D. 1 ¶¶ 33-34, 39. Failure to allege a written policy is not fatal to Plaintiffs' claim, since "agency action need not be in writing to be judicially reviewable as a

final action." See Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 138 (D.D.C. 2018) (citing Venetian Casino Resort LLC v. EEOC, 530 F.3d 925, 929 (D.C. Cir. 2008)). But to sufficiently allege such an action, Plaintiffs must still point to a "specific 'final agency action' [that] has an actual or immediately threatened effect." Id. (quoting Lujan, 497 U.S. at 894). In other words, Plaintiffs have not alleged the action's actual or threatened effects on immigration proceedings or allege specific proceedings in which Plaintiffs were denied access to records based upon the purported Policy in these other proceedings. See Ramirez v. U.S. Immigr. & Customs Enf't, 310 F. Supp. 3d 7, 21 (D.D.C. 2018) (distinguishing between "aggregation of similar, discrete purported injuries—claims that many people were injured in similar ways by the same type of agency action," which is a valid APA claim, from a "broad programmatic attack," which is not). Here, Plaintiffs have made no such allegations of discrete injuries in their complaint. See, e.g., D. 1 ¶¶ 33-34, 39, 54-59 71-79; cf. Aracely, R., 319 F. Supp. 3d at 123-24, 138 (concluding that plaintiffs alleged a policy by pointing to both data showing significant decrease in parole release rate of asylum seekers and to specific "rejections of Plaintiffs' parole requests—purportedly upon consideration of an improper factor"); Bark, 37 F.Supp.3d at 50–51 (allowing challenge to five alleged applications of "generalized, unwritten administrative policy"); RCM Techs., Inc. v. DHS, 614 F.Supp.2d 39, 45 (D.D.C. 2009) (noting that specific denial of a visa application made pursuant to allegedly unlawful policy would be justiciable); Manker v. Spencer, No. 3:18-CV-372 (CSH), 2019 WL 5846828, at *13 (D. Conn. Nov. 7, 2019) (concluding that complaint sufficiently alleged discrete agency action where "[e]ach individual member of the certified class . . . claim[ed] that the [agency] wrongfully failed to consider or comply with specified statutorily or regulatory factors, with the result" that their applications were "impermissibly denied" and "[e]ach denial . . . constitutes a particularized agency action with respect to that veteran).

The Court does not doubt that filing FOIA requests in immigration proceedings can often be the only practical means of acquiring critical documents, or that such a mechanism for obtaining these documents can have severe consequences for the individuals that Plaintiffs represent, especially given the accelerated timing of these proceedings. See Velasco Lopez v. Decker, 978 F.3d 842, 853 (2d Cir. 2020) (noting that plaintiff unable to access relevant records about DACA status until his counsel "later obtained them through a Freedom of Information Act request"); Nightingale v. U.S. Citizenship & Immigr. Servs., 507 F. Supp. 3d 1193, 1205, 1212 (N.D. Cal. 2020) (explaining "[t]he unfortunate reality is that FOIA is the only realistic mechanism through which noncitizens can obtain A-Files" and that "DHS has acknowledged that '[p]ro se litigants who lack expertise to file FOIA requests are routinely unable to obtain copies of their A-Files or do not receive it in a timely fashion to adequately represent themselves . . . increas[ing] the likelihood that DHS will improperly remove individuals who do not fall under any of the Department's enforcement priorities'"). Nevertheless, aside from reference to the asylum regulations, Plaintiffs have failed to allege the existence of a discrete agency action under the APA.

Accordingly, the Court denies the motion to dismiss as to the asylum proceedings described above, see 8 C.F.R. § 208.12, and allows the motion without prejudice and with leave to amend as to the remainder of the proceedings, see Al Otro Lado, Inc., 327 F. Supp. 3d at 1321 (ruling same where "Plaintiffs may be able to allege the existence of a policy" by amending complaint despite infirmities in initial pleadings).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss in part and DENIES it in part, D. 23. The motion is allowed to the extent the claim relies upon the Due Process Clause, denied as the claim as to asylum proceedings, and allowed without prejudice to amend as

to other proceedings, namely removal proceedings. If Plaintiffs seek to amend as to these proceedings, they must do so by February 14, 2022.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

18