**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LEGAL SERVICES, *et al.*,

        Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND
    SECURITY, *et al.*,

        Defendants.

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF PARTIAL
MOTION TO DISMISS**

Case No.: 1:21-cv-10083-DJC

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 3

PROCEDURAL HISTORY AND THE AMENDED COMPLAINT ........................................... 4

STANDARD................................................................................................................................ 7

ARGUMENT .............................................................................................................................. 8

I.   Plaintiffs' Claim Premised on 8 U.S.C. §§ 1229a(b)(4)(B) and 1229a(c)(2)(B), Both of
     Which Apply to Removal Proceedings, Should Be Dismissed. ......................................... 9

II.  Plaintiffs' Claim Premised on the Due Process Clause Should Be Dismissed................. 16

CONCLUSION......................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Al Otro Lado, Inc. v. Nielsen,*
327 F. Supp. 3d 1284 (S.D. Cal. 2018 ...................................................................................9, 10

*Aracely, R. v. Nielsen,*
 319 F. Supp. 3d 110 (D.D.C. 2018) ......................................................................... 14

*Arista Recs. LLC v. Doe 3,*
 604 F.3d 110 (2d Cir. 2010) ................................................................................... 13

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................. 7

*Bark v. United States Forest Serv.,*
 37 F. Supp. 3d 41 (D.D.C. 2014) ........................................................................... 14

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ................................................................................................. 7

*Bi Qing Zheng v. Lynch,*
 819 F.3d 287 (6th Cir. 2016) ................................................................................. 12

*Breda v. McDonald,*
 153 F. Supp. 3d 496 (D. Mass. 2015) ..................................................................... 7

*Dent v. Holder,*
 627 F.3d 365 (9th Cir. 2010) ......................................................................... *passim*

*Dial v. Holder,*
 No. 12-13452, 2013 WL 607836 (E.D. Mich. Feb. 19, 2013)............................... 18

*F.C.C. v. Fox Television Stations, Inc.,*
 556 U.S. 502 (2009)................................................................................................ 18

*Fernandez-Vargas v. Gonzales,*
 548 U.S. 30 (2006)................................................................................................... 3

*García–Catalán v. United States,*
 734 F.3d 100 (1st Cir. 2013)................................................................................. 7, 8

*Gianfrancesco v. Town of Wrentham,*
 712 F.3d 634 (1st Cir. 2013)................................................................................ 8, 13

*In re Cohen,*
 2018 WL 8062979 (BIA Dec. 3, 2018) ................................................................. 12

iii

*In re: Dinea*,
    2014 WL 3889490 n.1 (BIA July 15, 2014) ................................................................ 12

*In re: Hernandez*,
    2012 WL 5473614 (BIA Oct. 9, 2012) ...................................................................... 12

*In re: Mora-Flores*,
    2012 WL 1705607 (BIA April 25, 2012) .................................................................. 12

*Lexington Ins. Co. v. Johnson Controls Fire Protection LP*,
    347 F. Supp. 3d 61 (D. Mass. 2018) ........................................................................ 13

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009) ...................................................................................... 7

*Nazareth Hosp. v. Sebelius*,
    No. 10-3513, 2012 WL 4889278 (E.D. Pa. Oct. 16, 2012) ...................................... 18

*S.E.C. v. Tambone*,
597 F.3d 436 (1st Cir. 2010) ......................................................................................... 7

*Silva v. Sessions*,
    699 F. App'x 609 (9th Cir. 2017) ............................................................................ 12

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ............................................................................................ 7

**Statutes**

5 U.S.C. § 706 ............................................................................................................... 18

6 U.S.C. § 211 ................................................................................................................. 3

6 U.S.C. § 271 ................................................................................................................. 3

8 U.S.C. § 1101 ............................................................................................................... 3

8 U.S.C. § 1103 ............................................................................................................... 3

8 U.S.C. § 1104 ............................................................................................................... 3

8 U.S.C. § 1182 .......................................................................................................... 3, 10

8 U.S.C. § 1225 ............................................................................................................... 4

8 U.S.C. § 1226 ................................................................................................. 4

8 U.S.C. § 1227 ................................................................................................. 3

8 U.S.C. § 1229 ................................................................................................. 3

8 U.S.C. § 1229a ....................................................................................... *passim*

8 U.S.C. § 1231 ................................................................................................. 3

**<u>Federal Rules</u>**

Fed. R. Civ. P 12(b)(6) ..................................................................................... 7

**<u>Federal Regulations</u>**

8 C.F.R. § 100.1 ............................................................................................... 3

8 C.F.R. § 103.2 ........................................................................................ 1, 5, 8

8 C.F.R. § 208.12 ........................................................................................... 10

8 C.F.R. § 239.1 ............................................................................................... 3

8 C.F.R. § 240.69 ........................................................................................... 10

8 C.F.R. § 241.8 ............................................................................................... 3

8 C.F.R. § 1003.0 ............................................................................................. 3

8 C.F.R. § 1003.13 ........................................................................................... 3

8 C.F.R. § 1003.14 ........................................................................................... 3

8 C.F.R. § 1208.2 ........................................................................................... 14

8 C.F.R. § 1208.12 .................................................................................. 2, 14, 15

8 C.F.R. § 1239.1 ............................................................................................. 3

8 C.F.R. § 1240.8 ................................................................................................ 4

8 C.F.R. § 1240.10 .............................................................................................. 4

8 C.F.R. § 1240.11 .............................................................................................. 4

8 C.F.R. § 1240.61 ............................................................................................ 16

8 C.F.R. § 1240.65 ............................................................................................ 16

8 C.F.R. § 1240.66 ............................................................................................ 16

8 C.F.R. § 1240.69 ............................................................................................ 16

28 C.F.R. § 16.1 ............................................................................................... 15

Aliens and Nationality; Homeland Security; Reorganization of Regulations,
68 Fed. Reg. 9824-01 (Feb. 28 2003) ............................................................ 15

Asylum Procedures,
65 Fed. Reg. 76121-01 (Dec. 6, 2000) .......................................................... 15

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens;
Conduct of Removal Proceedings; Asylum Procedures,
62 Fed. Reg. 10312-01 (Mar. 6, 1997) .......................................................... 15

## **INTRODUCTION**

This is an Administrative Procedure Act ("APA") case against the United States Department of Homeland Security ("DHS") and three of its components, U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP"). Plaintiffs—immigration attorneys, law firms, and a nonprofit legal services organization—challenge Defendants' purported national policy and practice of directing noncitizens and their counsel to the Freedom of Information Act ("FOIA") instead of meeting certain alleged disclosure obligations in the immigration proceeding itself. Am. Compl. for Declaratory & Injunctive Relief ("Am. Compl.") ¶ 95, ECF No. 57. The Court has already considered the sufficiency of the complaint once, and Defendants are mindful of the Court's holding denying in part and granting in part their previous motion to dismiss. Memorandum and Order ("MTD Order"), ECF No. 50. Defendants do not here rehash arguments the Court has previously considered and rejected. Instead, this motion focuses on the new allegations in Plaintiffs' amended complaint and the impact of the Court's Order.

In that amended complaint, Plaintiffs again identify Defendants' purported disclosure obligations as arising under one DHS regulation governing USCIS's adjudication of benefit applications, two provisions of the Immigration and Nationality Act ("INA") governing removal proceedings, and the Due Process Clause. Am. Compl. ¶ 95. The Court has already allowed Plaintiffs' claim as it applies to certain asylum proceedings, based on an alleged disclosure obligation arising under the regulation pertaining to USCIS's adjudication of requests for immigration benefits, 8 C.F.R. § 103.2(b)(16). MTD Order at 15, citing Compl. ¶ 32. But Plaintiffs' claim as it applies to removal proceedings and the Due Process Clause once again fails to state a claim upon which relief can be granted.

1

Beginning with the INA provisions applicable to removal proceedings, *see* 8 U.S.C. §§ 1229a(b)(4)(B), (c)(2)(B), Plaintiffs' claim should be dismissed because Plaintiffs have not alleged an unlawful or arbitrary and capricious policy. *See* MTD Order at 15-17. Their new allegations mainly revolve around DHS's implementation of a decision from the Ninth Circuit, *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010). In *Dent,* the Ninth Circuit vacated a Board of Immigration Appeals decision affirming an immigration judge's order of removal where the Government failed to provide the noncitizen with his A-File. *Id*. Plaintiffs contend that DHS has improperly applied that decision by limiting it to the Ninth Circuit, interpreting it to require the provision of a limited set of documents rather than the whole A-file, and instead relying on the FOIA for the remainder of the A-file. Am. Compl. ¶¶ 41-50. But Plaintiffs' allegations do not describe a practice that is arbitrary, capricious, or contrary to existing law. *Dent* applies only in the Ninth Circuit, and fairly read, it centers on key documents from the A-file. Plaintiffs also cite to a Department of Justice ("DOJ") regulation, 8 C.F.R. § 1208.12, referencing FOIA and applicable to asylum proceedings before immigration judges, to support their claim of an alleged DHS nondisclosure policy in those proceedings. But *DOJ* regulations do not dictate *DHS* policy, and, in all events, that regulation does not speak to how the two INA provisions from which Plaintiffs contend DHS's disclosure obligations arise are satisfied.

Turning to the Due Process Clause, the Court has already dismissed "Plaintiffs' APA claim to the extent it relies upon a violation of third-party due process rights." MTD Order at 10. Nonetheless, Plaintiffs' amended complaint continues to advance allegations about noncitizens' due process rights, moors the APA claim in those rights, and seeks relief vindicating those rights. The APA claim should again be dismissed insofar as it continues to rely on noncitizens' due

process rights because "Plaintiffs have not sufficiently alleged . . . that they fall within the zone of interests of the Due Process Clause." *Id*.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' claim premised on the two INA provisions applicable in removal proceedings and reaffirm that Plaintiffs cannot resurrect their Due Process claim.

## **BACKGROUND**

Three components within DHS, all named as defendants here, are primarily responsible for administering and enforcing the Nation's immigration laws. 6 U.S.C. § 211(c)(8); 8 U.S.C. § 1103; 8 C.F.R. § 100.1.[1] Collectively, USCIS, CBP, and ICE play a role in numerous kinds of civil immigration proceedings. For example, noncitizens and others affirmatively apply to or petition USCIS for immigration or naturalization benefits like citizenship, asylum, or lawful permanent residence. *See* 6 U.S.C. § 271(b). Separately, USCIS, ICE, and CBP also initiate removal proceedings by filing a notice to appear in immigration court charging the noncitizen with inadmissibility under 8 U.S.C. § 1182 or removability under 8 U.S.C. § 1227. 8 U.S.C. §§ 1229, 1229a(2), 8 C.F.R. §§ 239.1, 1003.13, 1239.1. An immigration judge, who is housed within the DOJ's Executive Office for Immigration Review ("EOIR"), then adjudicates whether a noncitizen is removable from the United States and, if so, whether the noncitizen warrants relief from removal. 8 U.S.C. §§ 1101(b)(4), 1229(a); 8 C.F.R. §§ 1003.0(a), 1003.14. Also, ICE and CBP can reinstate a prior removal order against a noncitizen who illegally re-enters the United States. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(a); *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34-35 (2006). Through expedited removal proceedings, DHS can remove certain noncitizens who

---

[1] Congress also assigned some immigration powers and duties to the Secretary of State and the Attorney General. *See* 8 U.S.C. §§ 1103, 1104.

arrive at a port of entry or who are present without admission or parole, and who lack valid entry documents or who seek to procure admission by fraud or misrepresentation. 8 U.S.C § 1225(b)(1). In addition, DHS may detain certain noncitizens pending removal or during their removal proceedings. *See, e.g.*, *id*. § 1226.

Further, there are many different proceedings within these broad categories, all of which implicate different regulations, immigration statutes, and processes. For instance, in a removal proceeding before an immigration judge, the noncitizen can challenge the charge of inadmissibility or removability stated in the notice to appear or seek relief from removal (*e.g.*, applying for asylum with the immigration judge). 8 C.F.R. §§ 1240.10(c), (d); 1240.11. The differences in both the grounds for removability and the potential defenses affect the burden of proof and the type of evidence required. 8 U.S.C. § 1229a(c); 8 C.F.R. § 1240.8. All told, there are millions of individual civil immigration proceedings each year in the United States.[2]

## PROCEDURAL HISTORY AND THE AMENDED COMPLAINT

Plaintiffs, now four attorneys, two law firms, and a nonprofit legal services organization with "decades of experience representing noncitizens in a range of immigration matters," filed their original complaint for declaratory and injunctive relief on January 15, 2021. Complaint ("Compl.") ¶¶ 1-2, ECF No. 1. It was a sweeping challenge to the alleged "systematic failure of the Department of Homeland Security ('DHS') to produce to noncitizens and their counsel the records that are necessary to support their claims and defenses or eligibility for benefits in a range

---

[2] *See* 2020 USCIS Statistical Annual Report, at 3, https://perma.cc/H2XB-AHR9 (noting that USCIS completed more than 7.6 million applications, petitions, and requests in fiscal year 2020); CBP Enforcement Statistics Fiscal Year 2022, https://perma.cc/5GEP-76GE (noting that CBP had 1,956,519 enforcement actions in fiscal year 2021); Executive Office for Immigration Review, Adjudication Statistics, https://perma.cc/9SJU-SQCJ (noting that the immigration court received 235,663 cases and completed 114,751 cases in fiscal year 2021).

of civil immigration proceedings." Compl. ¶ 1. The crux of the original complaint was that DHS had a policy or practice, which Plaintiffs call the "Nondisclosure Policy," of "denying noncitizens and their counsel timely access to relevant records in the government's possession" during immigration proceedings and instead directing Plaintiffs to request those records through the FOIA. *Id*. ¶¶ 1-4. Plaintiffs maintained that this alleged policy violated DHS's legal obligations, arising under the Constitution and immigration laws and regulations, to disclose records that are relevant to a noncitizen's immigration case. They specifically pointed to the Due Process Clause, 8 U.S.C. § 1229a(b)(4)(B), 8 U.S.C. § 1229a(c)(2)(B), and 8 C.F.R. § 103.2(b)(16) as the source of those disclosure obligations. Compl. ¶ 87. Plaintiffs asserted that the alleged policy violated the APA because it was "arbitrary, capricious, an abuse of discretion, unconstitutional and otherwise incompatible with law." *Id*. ¶¶ 86-87. And they asked the Court to "[e]njoin Defendants' Nondisclosure Policy and order compliance by Defendants with regulatory, statutory and constitutional disclosure obligations." *Id*. at Prayer for Relief.

Defendants moved to dismiss the complaint for failure to state a claim. Defs.' Mot. to Dismiss, ECF No. 23. They argued that Plaintiffs did not fall within the zone of interests protected by the statutes, regulation and constitutional provision that Plaintiffs cited, that Plaintiffs had an adequate alternative remedy to redress any production disputes in individual immigration proceedings, and that Plaintiffs had not alleged a discrete agency action susceptible to APA review. Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mem."), ECF No. 24.

On January 14, 2022, the Court issued its decision dismissing "Plaintiffs' APA claim to the extent it relie[d] upon a violation of third-party due process rights" because Plaintiffs' injuries fell outside the zone of interests of the Due Process Clause. MTD Order at 10. The Court then allowed the APA claim as to affirmative asylum proceedings before USCIS because "by

identifying DHS regulations that direct asylum applicants to file FOIA requests instead of seeking discovery for relevant documents to which regulations purportedly require access, Plaintiffs . . . plausibly alleged an agencywide policy with respect to these proceedings." *Id*. at 15 (citing Compl. ¶ 32). But the Court dismissed, with leave to amend, Plaintiffs' complaint "as to other proceedings, namely removal proceedings" before EOIR because with respect to those proceedings, Plaintiffs had not "allege[d] the existence of a discrete agency action under the APA." *Id*. at 17-18.

Plaintiffs filed their amended complaint on February 14, 2022. Am. Compl. Despite the Court's previous order narrowing Plaintiffs' claim to, at most, affirmative asylum proceedings before USCIS and, if sufficiently pleaded in an amended complaint, removal proceedings, and dismissing the claim insofar as it relies on the Due Process Clause, the amended complaint merely repeats the same sweeping, diffuse, and largely unspecific allegations from the original complaint. *See, e.g.*, Am. Compl. ¶ 1 ("This action challenges the systematic failure of . . . DHS to produce to noncitizens and their counsel the records that are necessary to support their claims and defenses or eligibility for benefits in a range of civil immigration proceedings."); ¶ 29 ("The Nondisclosure Policy applies across a broad range of Defendants' interactions with noncitizens, certain of which may have particularly serious consequences for noncitizens."). Again though, the crux of the amended complaint is that Defendants have a policy and practice, which Plaintiffs have labeled the "Nondisclosure Policy," of directing noncitizens and their counsel to the FOIA instead of meeting certain disclosure obligations in the civil immigration proceeding itself. *Id*. ¶¶ 2-5. And Plaintiffs point to the same two INA provisions, the same regulation, and the same constitutional provision (the Fifth Amendment) as the source of those disclosure obligations. *Id*. ¶ 95.

Plaintiffs once again assert that this policy and practice is "arbitrary, capricious, an abuse of discretion, unconstitutional, and otherwise incompatible with law." *Id.* ¶ 95.  And they again

ask the Court to declare that Defendants' policy and practice violates the APA and "order compliance by Defendants with regulatory, statutory, and constitutional disclosure obligations." *Id.* at Prayer for Relief.

## STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Id.* at 442 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (cleaned up).

Courts conduct a two-step inquiry in considering these standards. *Breda v. McDonald*, 153 F. Supp. 3d 496, 499 (D. Mass. 2015). First, a court will separate the well-pleaded facts from conclusory legal allegations and accept as true only the factual allegations. *García–Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). Second, a court must determine whether those factual allegations "support the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 103 (internal citations and quotations omitted). Although courts generally cannot consider extraneous documents, the First Circuit permits a narrow exception for, among other things, "documents the authenticity of which are not disputed" and official public records. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

As applied here, that standard requires the Court to accept as true well-pleaded factual allegations that Defendants otherwise might contest. That standard, however, does not require the

Court to accept as true Plaintiffs' legal conclusions about whether a particular statute or regulation requires the disclosure of certain documents. *García–Catalán*, 734 F.3d at 103. Nor does it require the Court to hold that unsupported and conclusory factual statements sufficiently state a claim. *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013) (concluding that litigant did not properly plead his claim when his "assertions [were] nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint.") (cleaned up).

## **ARGUMENT**

Because no statute or regulation requires Defendants to turn over all records in all civil immigration proceedings, Plaintiffs' claim is rooted in certain discrete disclosure obligations. Thus, although pleaded as one count, Am. Compl. ¶ 95, the amended complaint actually purports to allege separate violations of the APA, with each violation tied to the particular statute, regulation, or constitutional provision Plaintiffs contend demands the required disclosure—specifically, a regulation applicable to USCIS's processing of applications for immigration benefits (8 C.F.R. § 103.2(b)(16)), two INA provisions involving removal proceedings (8 U.S.C. §§ 1229a(b)(4)(B), (c)(2)(B)), and the Due Process Clause. Am. Compl. ¶ 95. The Court has already allowed Plaintiffs' claim based on the regulation—8 C.F.R. § 103.2(b)(16)—and affirmative asylum proceedings before USCIS. MTD Order at 15 (allowing limited claim relating to Compl. ¶ 32, which identifies USCIS's adjudication of immigration-related applications and the purported disclosure obligation at § 103.2(b)(16)). That leaves only the alleged APA violations linked to 8 U.S.C. §§ 1229a(b)(4)(B) and (c)(2)(B) and the Due Process Clause.

The portion of Plaintiffs' claim relating to removal proceedings, which is premised on disclosure obligations arising under 8 U.S.C. §§ 1229a(b)(4)(B) and (c)(2)(B), should be dismissed for failure to state a claim upon which relief can be granted. The Court gave Plaintiffs leave to

amend their complaint as to removal proceedings to allege "an identifiable agency order, regulation, policy or plan of the Defendants, 'which constitutes or reflects an agency policy applicable to all [agency] officials.'" MTD Order at 14 (quoting *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1319 (S.D. Cal. 2018)). Plaintiffs have not done so. Instead, they allege a failure to properly interpret the Ninth Circuit's decision in *Dent*, 627 F.3d 365, but courts have in fact accepted Defendants' interpretation of that decision.  Nor do Plaintiffs allege "actual or threatened effects on immigration proceedings" or "specific proceedings in which Plaintiffs were denied access to records based upon the purported Policy." MTD Order at 16. Their amended complaint cites no examples of specific proceedings applicable to them, and their general allegations fail to describe an unlawful or arbitrary and capricious policy.

Second, in accordance with this Court's previous order, that portion of the APA claim that continues to rely on noncitizens' due process rights should again be dismissed. MTD Order at 10.

## I.    Plaintiffs' Claim Premised on 8 U.S.C. §§ 1229a(b)(4)(B) and 1229a(c)(2)(B), Both of Which Apply to Removal Proceedings, Should Be Dismissed.

Plaintiffs contend that Defendants instruct noncitizens in removal proceedings and their counsel to file FOIA requests to obtain the documents identified in 8 U.S.C. § 1229a(b)(4)(B) and § 1229a(c)(2)(B). Am. Compl. ¶ 37. Section 1229a(b)(4)(B) applies to all removal proceedings and states, in pertinent part, that the noncitizen "shall have a reasonable opportunity to examine the evidence *against*" him "under regulations of the Attorney General." 8 U.S.C. § 1229a(b)(4)(B) (emphasis added). In contrast, § 1229a(c)(2)(B) applies only in those removal proceedings where the noncitizen contends he is "lawfully present in the United States pursuant to a prior admission." *Id.*[3] The noncitizen in only that particular circumstance "shall have access" to non-confidential

_____

[3] 8 U.S.C. § 1229a(c)(2) provides as follows:

records "pertaining to the [noncitizen's] admission or presence in the United States," including

any visa or other entry documents. *Id.* § 1229a(c)(2)(B). By their terms, neither provision requires

the production of the entire A-file nor do they require the production of all documents that may

"help defeat removability or demonstrate eligibility for relief," *see* Am. Compl ¶ 31. 8 U.S.C. §§

1229a(b)(4)(B), a(c)(2)(B).[4]

In previously considering Plaintiffs' allegations about these two provisions, the Court

concluded that Plaintiffs' original complaint failed to state a claim and gave Plaintiffs an

opportunity to amend their complaint to sufficiently allege "an identifiable agency order,

regulation, policy or plan of Defendants, 'which constitutes or reflects an agency policy applicable

to all [agency] officials.'" MTD Order at 14 (quoting *Al Otro Lado*, 327 F. Supp. 3d at 1319). The

Court contrasted the complaint's citation of DHS regulations applicable to certain USCIS asylum

proceedings, 8 C.F.R. §§ 208.12 and 240.69, with its failure to allege any specific national policy

———————————————

(2) Burden on alien

In the proceeding the alien has the burden of establishing--

> (A) if the alien is an applicant for admission, that the alien is clearly and beyond doubt
> entitled to be admitted and is not inadmissible under section 1182 of this title; or

> (B) by clear and convincing evidence, that the alien is lawfully present in the United
> States pursuant to a prior admission.

In meeting the burden of proof under subparagraph (B), the alien shall have access to the alien's
visa or other entry document, if any, and any other records and documents, not considered by the
Attorney General to be confidential, pertaining to the alien's admission or presence in the United
States.

[4] "The A-file contains all the individual's official record material such as naturalization
certificates; various forms (and attachments, e.g., photographs), applications and petitions for
benefits under the immigration and nationality laws, reports of investigations; statements; reports;
correspondence; and memoranda on each individual for whom [DHS] has created a record under
the Immigration and Nationality Act." *Dent*, 627 F.3d at 372 (citations and quotations omitted).

or practice under which Plaintiffs were directed by DHS to file a FOIA request for documents to which they were entitled in removal proceedings. MTD Order at 15-17. The Court found the complaint's vague allegations related to 8 U.S.C. §§ 1229a(b)(4)(B) and (c)(2)(B) to be insufficient. *Id*. at 15-16, citing Compl. ¶¶ 33-34, 39.

The amended complaint purports to cure this deficiency with new paragraphs 41-50 and material added to paragraph 31. Am. Compl. at 2 n.1. The gist of the new allegations in paragraphs 41-50 is that DHS improperly implements a decision from the Ninth Circuit about the provision of A-files in removal proceedings, *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010). Plaintiffs allege Defendants misinterpret *Dent* by limiting it to the Ninth Circuit, by reading it to require the provision of a limited set of documents rather than the whole A-file, and by relying on FOIA for the remainder of the A-file. But while Plaintiffs may disagree with this interpretation and want more disclosures, the policy they allege is not arbitrary, capricious, or contrary to existing law.

In *Dent*, the Court held that the government's failure to provide the petitioner, who claimed to be a citizen, a copy of his A-file in his immigration proceeding violated § 1229a(c)(2)(B)'s command that in meeting the burden of proof, "'the alien shall have access' to his entry document 'and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.'" 627 F.3d at 374-75 (quoting 8 U.S.C.§ 1229a(c)(2)(B)). The Court stated that an interpretation of that provision requiring the petitioner to rely on FOIA would pose "a serious due process problem." *Id.* at 374. The Ninth Circuit's due process analysis, however, is irrelevant here, because this Court dismissed Plaintiffs' APA claim to the extent it relies on a violation of third-party due process rights. MTD Order at 10; *see infra* § II.

11

As for the statutory basis of *Dent*, the focus of the opinion is on the government's failure to have provided Dent with documents in his A-file that were highly relevant to his removal proceeding—specifically, documents related to his citizenship, his possible naturalization, and his mother's citizenship. *Id.* 627 F.3d at 372-73. In subsequent cases, DHS has argued—and courts have agreed—that the affirmative obligation to produce the A-file recognized in *Dent* extends only to certain documents in the A-file that are relevant to the particular removal proceeding. *See, e.g., Silva v. Sessions*, 699 F. App'x 609, 613 (9th Cir. 2017) (mem. op.) (distinguishing *Dent* because noncitizen did not suggest there was any document or transcript in her A-file that was relevant to her proceeding); *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 298 (6th Cir. 2016) (holding that government did not violate a noncitizen's due process rights when it failed to provide all of the information about noncitizen's visa applications and instead produced only the evidence it intended to introduce at the hearing); *In re Cohen*, 2018 WL 8062979, at *2 (BIA Dec. 3, 2018) (agreeing with DHS that *Dent* did not require production of the entire A-file and holding that DHS met its obligations by providing the documents from the A-file that were relevant to the respondent's admission or presence in the United States).

There is nothing arbitrary, capricious, or contrary to law in interpreting *Dent* in this fashion, or in interpreting it as applying only in the circuit in which it was decided, or in defaulting to the FOIA for the remainder of the A-file. *Cf. In re: Dinea*, 2014 WL 3889490, at *1 n.1 (BIA July 15, 2014) (distinguishing *Dent* because the noncitizen's removal proceeding was not in the Ninth Circuit and the noncitizen did not claim to be a citizen, like Mr. Dent); *In re: Hernandez*, 2012 WL 5473614, at *2 (BIA Oct. 9, 2012) (holding DHS complied with *Dent* by providing all documents pertaining to respondent's unlawful presence); *In re: Mora-Flores*, 2012 WL 1705607, at *1 (BIA April 25, 2012) (holding that *Dent* was materially distinguishable because respondent

did not claim to be a citizen). And the amended complaint alleges no more than this. Paragraphs 43-46 allege a policy of not providing the "entire" A-file, and paragraph 45 screenshots a form letter in which ICE offers to review the file for documentation relevant to any disputes about prior admissions or legal status and offers to consider other requests for discrete documents. Paragraph 47 concedes that 2013 ICE guidance *did* provide for the disclosure of certain documents from the A-file in removal proceedings without requiring the noncitizen to file a FOIA request. After acknowledging this guidance, Plaintiffs vaguely claim "[o]n information and belief" and on their "substantial experience" that the guidance "was reversed or superseded by the nationwide application of the Nondisclosure Policy, or is simply not followed." Am. Compl. ¶ 47. The Court has already rejected as insufficient such conclusory statements. MTD Order at 14-17; *see also Gianfrancesco*, 712 F.3d at 640 (litigant did not properly plead his claim when his "assertions [were] nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint.") (cleaned up). And facts may be pled "on information and belief" only when "the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also Lexington Ins. Co. v. Johnson Controls Fire Protection LP*, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018). Plaintiffs are not without knowledge of the purported policy, nor does the amended complaint articulate specific factual information to make the inference they seek to draw plausible.

While paragraph 44 alleges that a third party immigration clinic "requested records" and was told by ICE attorneys in the Ninth Circuit "that it was ICE policy not to release asylum officer notes, and that they could file a FOIA," Plaintiffs do not allege that those asylum officer notes

were relevant to the proceeding in which they were requested, that they were used as "evidence against the" noncitizen in a removal proceeding, *see* 8 U.S.C. § 1229a(b)(4)(B), or even that the particular removal proceeding implicated § 1229a(c)(2)(B). Am. Compl. ¶ 44. And, in any event, one example, applying to a third party, does not meet the Court's directive to allege sufficiently a national policy or specific proceedings in which Plaintiffs experienced the purported policy, much less allege a disclosure obligation that has been violated. MTD Order at 16 (stating that Plaintiffs had to allege "the action's actual or threatened effects on immigration proceedings or allege specific proceedings in which Plaintiffs were denied access. . . based on the purported Policy"); *see also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 123-24, 139-140 (D.D.C. 2018) (relying on statistics compiled by non-profit human rights organizations and several individuals' specific accounts to establish existence of an unwritten agency policy); *Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 51 (D.D.C. 2014) (rejecting broadside challenge to unwritten alleged policy and allowing as applied challenge only).

Plaintiffs have also added to paragraph 31 a citation to a DOJ regulation applicable to removal proceedings where a noncitizen seeks asylum as relief from removal. Am. Compl. ¶ 31 (citing 8 C.F.R. § 1208.12). In such circumstances, the immigration judge, and not DHS, evaluates and resolves the asylum application. 8 C.F.R. § 1208.2(b). The cited regulation—§ 1208.12(b)—provides that nothing in the relevant part of the regulation "shall be construed to entitle the applicant to conduct discovery" and that the noncitizen "may continue to seek documents available through" a FOIA request. *Id*. § 1208.12(b). This regulation does not allege a DHS policy to direct noncitizens and their counsel to the FOIA instead of producing documents in the immigration proceeding itself, for two reasons.

First, 8 C.F.R. § 1208.12 is a *DOJ* regulation and not a *DHS* policy. *See* Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824-01, 9824, 9826, 9834 (Feb. 28, 2003) (explaining that DOJ duplicated CFR part 208 into part 1208 because The Homeland Security Act of 2002 transferred the functions of the Immigration and Naturalization Service from DOJ to DHS). Indeed, § 1208.12(b) refers to the DOJ's FOIA regulations, "28 CFR part 16," and not the DHS FOIA regulations. 8 C.F.R. § 1208.12(b); *see* 28 C.F.R. § 16.1.  And § 1208.12(a) discusses what materials an immigration judge, who is part of DOJ, not DHS, may rely on and what disclosures an immigration judge must make in order to rely on those materials.

Second, the reference to the FOIA in this DOJ regulation was intended merely to allay concerns that FOIA would somehow not be available when the noncitizen seeks asylum. DOJ added the FOIA language to its regulation only because "commentators expressed concern about the statement . . . [involving] discovery" potentially "preclud[ing] someone from seeking, or excuse the [Immigration and Naturalization Service] from providing, information under the" FOIA. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10316 (Mar. 6, 1997); *see also* Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. at 9824, 9826, 9834 (explaining that DOJ duplicated 208 into part 1208). The Department described this "fear" as "totally groundless," 62 Fed. Reg. at 10316, and ultimately promulgated the final rule with the FOIA language to "clarify that [the] prohibition on discovery" there would not preclude a FOIA request. Asylum Procedures, 65 Fed. Reg. 76121-01, 76126, 76133 (Dec. 6, 2000). Accordingly, the DOJ regulation simply clarified existing law, and it plainly

says nothing about how DHS satisfies the two INA provisions from which Plaintiffs' contend DHS's disclosure obligations arise.[5]

All told, Plaintiffs fail to provide even one specific example of the application of the purported "nondisclosure policy" to them, nor do they allege a policy whereby Defendants decline to produce, in the immigration proceeding itself, material required to be disclosed by the two INA provisions they cite, 8 U.S.C. § 1229a(b)(4)(B) and § 1229a(c)(2)(B). Because neither of those INA provisions expressly provides for the disclosure of the entire A-file, Plaintiffs are left complaining about DHS's interpretation of the Ninth Circuit's *Dent* decision. But an APA case in Massachusetts is no place to resolve principled disputes about the reach of a Ninth Circuit decision. Plaintiffs' claim premised on the two INA provisions and on removal proceedings should be dismissed.

## II.   Plaintiffs' Claim Premised on the Due Process Clause Should Be Dismissed.

The Court has already concluded "that Plaintiffs' APA claim satisfies the zone of interests test as to the INA provisions and DHS regulation," MTD Order at 10, but fails the zone of interests test as to the Due Process Clause. *Id*. It accordingly dismissed the "APA claim to the extent it relies upon a violation of third-party due process rights." *Id*. Nonetheless, Plaintiffs' amended complaint

---

[5] Amended complaint paragraph 31 includes a "see also" cite to 8 C.F.R. § 1240.69. This regulation, however, applies only to applications for suspension of deportation or special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act. 8 C.F.R. § 1240.69. Very generally, these are benefits or relief from removal that are available to noncitizens from select countries who applied for asylum decades ago. *Id*. §§ 1240.61, 1240.65, 1240.66; *see also* USCIS, Humanitarian, Nicaraguan Adjustment and Central American Relief Act (NACARA) 203, https://perma.cc/4KEC-9DTY. Although the regulation indicates that nothing in that "subpart shall be construed to entitle the applicant to conduct discovery," it contains no reference to the FOIA. *Id*. And Plaintiffs have not otherwise identified a disclosure obligation within that subpart potentially curtailed by the language relating to discovery. *Id*. Thus, this regulation does not describe a policy purportedly directing noncitizens and their counsel to the FOIA instead of meeting alleged disclosure obligations in the immigration proceeding itself.

continues to contain allegations about a noncitizen's due process rights and explicitly relies on those rights to support the APA claim.

For example, the Prayer for Relief and paragraph 8 of the amended complaint seek an order requiring DHS to comply with its "constitutional disclosure obligations" and the "Constitution," respectively. Amended complaint paragraphs 3, 38, and 95 all expressly refer to a noncitizen's due process rights and contend that the alleged practice violates or impedes those rights. And paragraphs 32, 48, 64, 65, and 89 reference immigration proceedings—removal based on a prior removal order and bond hearings—without a corresponding disclosure-related statute or regulation that has purportedly been violated. The Court has already dismissed the portion of Plaintiffs' complaint that "relies upon a violation of third-party due process rights," MTD Order at 10, and it should do so again here. Such a dismissal would, at a minimum, strike paragraphs 32, 38, 48, 65 and 89 in their entirety, and those portions of paragraphs 3, 8, 39, 41, 42, 49, 56, 58, 64, 66, 94, and 95 and the Prayer for Relief that rely on a noncitizens' due process rights.

Plaintiffs contend that they are not "seek[ing]" to "make a claim of a 'violation of third-party due process rights.'" Am. Compl. at 30-31 n.9 (quoting MTD at 10). Instead, their "claim is that the Nondisclosure Policy is an arbitrary and capricious means of providing records to noncitizens, including complying with regulatory, statutory, and *constitutional disclosure obligations* that arise in a range of immigration proceedings." *Id*. (emphasis added). But the only "constitutional disclosure obligations" Plaintiffs allege are grounded in their clients' due process rights.  *See, e.g.*, Am. Compl. ¶¶ 3, 38, 95.  Thus, even taking Plaintiffs' explanation at face value, their claim still impermissibly relies on noncitizens' due process rights and, as a result, conflicts with this Court's holding. *Id*. at 30 n.9. Moreover, the amended complaint continues to allege that

the purported policy is "unconstitutional" and asks that the Court order Defendants' compliance "with constitutional disclosure obligations." *Id*. ¶ 95 and Prayer for Relief.

In any event, Plaintiffs' attempt to bury their due process arguments in the APA's arbitrary-and-capricious review standard is barred by Supreme Court precedent.  In *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009), the Court explained that a challenge to "unlawful" action, and not arbitrary-and-capricious action, is "the only context in which constitutionality bears upon judicial review of authorized agency action." *Id*. (observing that the APA provided separately for arbitrary-and-capricious review and "for setting aside agency action that is 'unlawful' . . . which of course includes unconstitutional action"); s*ee also Nazareth Hosp. v. Sebelius*, No. 10-3513, 2012 WL 4889278, at *3 n. 10 (E.D. Pa. Oct. 16, 2012) ("Under the APA's standards, 5 U.S.C. § 706(2)(A), whether an agency's action was arbitrary or capricious is a separate question from whether the action may be set aside as 'unlawful' because it is unconstitutional."); *Dial v. Holder*, No. 12-13452, 2013 WL 607836, at *3 (E.D. Mich. Feb. 19, 2013) (noting distinction between an alleged arbitrary and capricious action and those with an alleged constitutional problem.).

The Court should again dismiss Plaintiffs' attempt to rely on the due process clause as a basis to pursue their claim.[6]

---

[6] Because the Court dismissed the APA claim to the extent that it relies on a noncitizen's due process rights, it did not reach the alternative argument regarding discrete agency action. To the extent the Court were to allow Plaintiffs to rely on the due process rights of their clients, contrary to its previous opinion, it should still dismiss that basis for the claim for failure to allege a discrete agency action capable of review. *See* Def's Mem. at 20-21; Defs.' Reply at 2-6, ECF No. 42.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss with

prejudice those portions of Plaintiffs' claim premised on removal proceedings and the Due Process

Clause.

Respectfully submitted

March 14, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on this 14th day of March 2022 that I have filed this Memorandum with the

Court's ECF system, which sends notice to Plaintiffs' Counsel identified on the NEF.

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney