**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al*.<br><br>Defendants. | Case No.: 1:21-cv-10083-DJC |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

ARGUMENT ........................................................................................................................5

I.      THE AMENDED COMPLAINT ALLEGES A DISCRETE AGENCY ACTION. ..........5

        A.      Plaintiffs' Amended Complaint Describes the Nondisclosure Policy with
                Reference to Agency Guidance and Other Documents..........................................6

        B.      The Nondisclosure Policy Reflected in the ICE Documents is Discrete
                Agency Action that Plaintiffs May Challenge in an APA Suit. ...........................9

II.     DEFENDANTS' ARGUMENTS ARE PREMATURE AT THIS STAGE OF
        THE PROCEEDINGS AND OTHERWISE FAIL TO REBUT THE
        ADEQUACY OF THE ALLEGATIONS IN THE AMENDED COMPLAINT. ...........11

        A.      Defendants' Arguments about the Scope of the Government's Discovery
                Obligations and Arbitrary and Capricious Review Are Premature at the
                Motion to Dismiss Stage. ...................................................................................12

        B.      Defendants Barely Dispute that Plaintiffs Have Failed to Meet the
                Standard Articulated by this Court for a Discrete Agency Action. .....................14

III.    PLAINTIFFS' REFERENCES TO DUE PROCESS ARE PERMISSIBLE. .................16

CONCLUSION...................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aracely, R. v. Nielsen,*
  319 F. Supp. 3d 110 (D.D.C. 2018) ................................................................. 9

*Atieh v. Riordan,*
  727 F.3d 73 (1st Cir. 2013) ........................................................................... 12

*Clark v. Martinez,*
  543 U.S. 371 (2005) ...................................................................................... 17

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) ........................................................................................ 2

*Dent v. Holder,*
  627 F.3d 365 (9th Cir. 2010) ................................................................ *passim*

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ................................................................................ 14, 17

*Judulang v. Holder,*
  565 U.S. 42 (2011) ............................................................................ 1, 12, 14

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ................................................................................ 10, 11

*Menard v. CSX Transp., Inc.,*
  698 F.3d 40 (1st Cir. 2012) ........................................................................... 13

*New York v. United States Dep't of Homeland Sec.,*
  969 F.3d 42 (2d Cir. 2020) ........................................................................... 12

*Nightingale v. USCIS,*
  507 F. Supp. 3d 1193 (N.D. Cal. 2020) .................................................... 8, 15

*Phoenix Herpetological Soc'y, Inc. v. United States Fish & Wildlife Serv.,*
  No. 19-cv-00788, 2021 WL 620193 (D.D.C. Feb. 17, 2021) ....................... 10, 11

*R.I.L.-R v. Johnson,*
  80 F.Supp.3d 164 (D.D.C. 2015) .................................................................. 9, 11

*Ramirez v. United States Immigration & Customs Enf't,*
  310 F. Supp. 3d 7 (D.D.C. 2018) ................................................................ 10, 11

*Xie v. Kerry*,
    780 F.3d 405 (D.C. Cir. 2015) .......................................................................................9

**Statutes**

8 U.S.C. § 1229a ...............................................................................................................6, 10

**Other Authorities**

8 C.F.R. § 103.2 .......................................................................................................................10

8 C.F.R. § 208.12 ..................................................................................................................4, 16

8 C.F.R. § 240.69 ..................................................................................................................4, 16

8 C.F.R. § 1208.12 .............................................................................................................4, 8, 16

8 C.F.R. § 1240.69 ....................................................................................................................16

65 Fed. Reg. 76121 (Dec. 6, 2000) ...........................................................................................16

68 Fed. Reg. 9824 (Feb. 28, 2003) ...........................................................................................16

## INTRODUCTION

Plaintiffs are immigration firms and attorneys who bring an Administrative Procedure Act ("APA") claim challenging Defendants' policy of refusing to provide documents to noncitizens in immigration proceedings (the "Nondisclosure Policy" or "go file a FOIA" policy), and instead channeling all discovery through the Freedom of Information Act ("FOIA"). Through their Nondisclosure Policy, Defendants withhold documents and other evidence that could not only aid noncitizens in their immigration proceedings but could also form the very basis of their claims, defenses, and relief. Defendants' Policy—by confining disclosure to the wholly ineffective FOIA process—violates the APA as an arbitrary and capricious agency action that lacks any nexus to "the purposes of the immigration laws or the appropriate operation of the immigration system." *See Judulang v. Holder*, 565 U.S. 42, 55 (2011).

In its Memorandum and Order of January 14, 2022, the Court denied Defendants' motion to dismiss with respect to asylum proceedings, but granted the motion as it pertains to removal and other immigration proceedings—with leave to amend to permit Plaintiffs to provide further details sufficient to allege discrete agency action appropriate for judicial review. ECF No. 50. While the issue presented at this stage should be a narrow one under the Court's decision—namely, whether the Amended Complaint alleges a reviewable agency action—Defendants have filed a motion that barely discusses that question. Defendants do not contest the central premise that DHS withholds documents and instead requires noncitizens and their counsel to seek them through a FOIA process that frequently fails to provide them in a timely fashion. Defendants' brief even gives its own name for the policy, which they term "defaulting to the FOIA." ECF No. 63 at 12.

But Defendants move to dismiss the remainder of the Amended Complaint—everything that does not pertain to asylum proceedings—for failure to state a claim that the Nondisclosure Policy is arbitrary and capricious. Defendants' motion has no merit for the following reasons:

*First*, Plaintiffs' Amended Complaint adequately alleges a discrete agency action that is "presumptively reviewable" under the APA. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). The Amended Complaint provides detailed allegations describing the Nondisclosure Policy's operation in guidance, instructions, and a form letter articulating the "go file a FOIA" Policy that were distributed to agency attorneys across the country. These written statements, and the reasonable inferences they support, as well as other allegations of the policy of channeling all disclosure to the FOIA in immigration proceedings, allege discrete agency action under the APA.

*Second*, rather than dispute that Plaintiffs' Amended Complaint alleges a discrete agency action, Defendants insist that "defaulting to the FOIA" is not arbitrary and capricious agency policy. Defendants suggest the agency guidance and instructions relied on in the Amended Complaint show a Nondisclosure Policy that is limited to requests for entire A-files and is therefore narrower than the one that Plaintiffs allege exists. And Defendants contend that narrower version of the Nondisclosure Policy is not arbitrary and capricious. These arguments misunderstand Plaintiffs' claim and are, in any event, premature. They seek a resolution of the ultimate question in this case, i.e., whether the challenged policy is arbitrary and capricious—a matter that should be addressed at summary judgment on a complete administrative record.

*Third*, relying on this Court's prior dismissal of Plaintiffs' APA claim "to the extent it relies upon a violation of third-party due process rights," ECF No. 50 at 10, Defendants contend that Plaintiffs are still advancing a due process-based claim. They seek to dismiss it and even to preclude Plaintiffs from mentioning "due process" or fundamental fairness. But Plaintiffs' due process *references*—there is no due process *claim*—simply provide relevant context about the immigration system's legal regime and the operation of the Nondisclosure Policy.

Accordingly, and as set forth more fully below, Defendants' partial motion to dismiss the remainder of Plaintiffs' Amended Complaint should be denied.

## BACKGROUND

Plaintiffs filed their original Complaint for declaratory and injunctive relief on January 15, 2021.  *See* ECF No. 1.  As alleged in that Complaint, Plaintiffs represent noncitizens in immigration proceedings before U.S. Citizenship and Immigration Services ("USCIS") and the Executive Office for Immigration Review ("EOIR") in which timely access to information is critical to their ability to protect their clients' statutory and constitutional rights.  Instead of producing documents that are in their possession to attorneys and noncitizens in immigration proceedings, Defendants direct Plaintiffs to the general transparency provisions of the FOIA.  But despite relying on the FOIA as the sole means for providing documents necessary to litigate immigration proceedings, Defendants recognize no duty to ensure that FOIA responses comport with the schedule set in those proceedings or even contain the necessary documents.  Consequently, FOIA responses often arrive too late to be of any use to Plaintiffs in representing noncitizens.  ECF No. 57 ¶¶ 51-60.

The Nondisclosure Policy applies across several of Defendants' interactions with noncitizens.  For example, DHS withholds information from noncitizens in removal proceedings.  Immigration and Customs Enforcement ("ICE") recognizes no obligation to disclose records to a noncitizen or their counsel—even when the records would help defeat removability or demonstrate eligibility for relief or when disclosure is required by statute and due process.  ICE continues to withhold records after a noncitizen has a final order of removal, often making it impossible for Plaintiffs to assess whether a motion to reopen or other challenge to removal is possible.  DHS also withholds information that may be used to deny USCIS benefits applications, including for asylum.  In asylum adjudications, a USCIS regulation disavows the right of any applicant to

"conduct discovery directed toward the records," providing instead that "[p]ersons may continue to seek documents available through a [FOIA] request."  8 C.F.R. § 208.12.  Plaintiffs alleged that Defendants' Nondisclosure Policy is arbitrary and capricious, an abuse of discretion and otherwise incompatible with the law in violation of the Administrative Procedure Act.  *See* ECF No. 1 ¶¶ 1-8; 86-87.

Defendants moved to dismiss Plaintiffs' Complaint.  At issue was whether Plaintiffs: 1) satisfied the "zone of interest" test; 2) had an "alternative adequate remedy" to bring their claim; and 3) alleged discrete agency action.

On January 14, 2022, the Court issued a decision ruling that Plaintiffs fall within the "zone of interests" of the INA, and that Plaintiffs had no adequate alternative remedy to redress the harm generated by the Nondisclosure Policy.  ECF No. 50 at 5-10, 11-13.  The Court denied Defendants' motion to dismiss as to affirmative asylum proceedings before USCIS, concluding that "Plaintiffs have plausibly alleged an agencywide policy with respect to" affirmative asylum proceedings based on Plaintiffs' citation of 8 C.F.R. §§ 208.12 and 240.69.  *Id.* at 15.  However, the Court granted the motion with respect to other immigration proceedings because the Complaint did not "describe[] the Policy with reference to a specific guidance document or plan."  *Id.*  To the extent the Policy was unwritten, the Court explained that Plaintiffs must still "point to a specific final agency action that has an actual or immediately threatened effect."  *Id.* at 16 (cleaned up) (citations omitted).  The Court granted Plaintiffs' leave to amend the Complaint to "allege the existence of a discrete agency action under the APA" as to removal and other proceedings.  *Id.* at 17.  The Court also dismissed "Plaintiffs' APA claim to the extent it relies on the violation of third-party due process rights."  *Id.* at 10.

4

On February 14, 2022, Plaintiffs filed an Amended Complaint, which added paragraphs 41-50 and added material to paragraphs 30-31.  These additions cite to regulations, guidance documents, and other documents that reflect the operation of the Nondisclosure Policy.  Several of these documents were previously obtained through FOIA requests by others and represent only a partial record of DHS's administration of the Nondisclosure Policy.

On March 14, 2022, Defendants moved to dismiss the Amended Complaint in all respects except with regard to asylum proceedings.   For the reasons below, the motion should be denied.

## ARGUMENT

## I.    THE AMENDED COMPLAINT ALLEGES A DISCRETE AGENCY ACTION.

This Court's Memorandum and Order determined that Plaintiffs' original Complaint failed to sufficiently allege a discrete agency action underlying DHS's Nondisclosure Policy with respect to removal and other proceedings (aside from affirmative asylum proceedings).  The Court stated that Plaintiffs might show discrete agency action "[a]s to the other proceedings described in the complaint," including removal proceedings, by "point[ing] to a regulation or describ[ing] the Policy with reference to a specific guidance document or plan."  *Id.* at 15.  Acknowledging a discrete agency action might also be unwritten, the Court stated that, "Plaintiffs have not alleged the action's actual or threatened effects on immigration proceedings or allege[d] specific proceedings in which Plaintiffs were denied access to records based upon the purported Policy in these other proceedings."  ECF No. 50 at 16.

Plaintiffs have now satisfied the standard articulated by the Court.  In accordance with the Court's ruling, the Amended Complaint references agency documents that provide clear guidance to ICE attorneys to rely on the FOIA for the production of records.  *See* ECF No. 57 ¶¶ 41-50.  Plaintiffs' new allegations supplement the allegations they previously included in their original Complaint, which highlight their experiences with DHS withholding information and records in

benefits proceedings before USCIS, in removal proceedings before EOIR, and in cases involving the execution of prior removal orders. *See* Am. Compl., ECF No. 57 ¶¶ 29-40, 76-91. These allegations describe the Nondisclosure Policy "with reference to a specific guidance document or plan" as the Court required, and demonstrate that the Policy is discrete agency action challengeable under the APA. *See* ECF No. 50 at 15.

> ### A. Plaintiffs' Amended Complaint Describes the Nondisclosure Policy with Reference to Agency Guidance and Other Documents.

Plaintiffs amended their Complaint to add material alleging that DHS has articulated a policy of channeling all discovery in immigration proceedings through FOIA. These new allegations include "specific guidance document[s]" from ICE's Office of the Principal Legal Advisor ("OPLA")[1] to ICE attorneys that corroborate the existence, operation, and consequences of the Nondisclosure Policy. *See* ECF No. 50 at 15. For example, Plaintiffs describe a form letter that ICE provided to its attorneys in the aftermath of the Ninth Circuit's decision in *Dent v. Holder*.[2] The form letter states: "I received your letter dated Month Date, 2011, requesting that the [ICE] Office of Chief Counsel copy and provide you with your client's A-file. At this time, I must decline your request." It continues, "general requests for an entire A-file are appropriately processed pursuant to a Freedom of Information Act (FOIA) request[.]" *See* ECF No. 57 ¶ 45. This form letter demonstrates that ICE instructed its attorneys to direct requests for A-file materials

---

[1] OPLA is the largest legal program at DHS, employing over 1,250 attorneys. "OPLA serves as the exclusive representative of DHS in immigration removal proceedings," and "provides legal advice and prudential counsel to ICE personnel" on their "immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics," and other subjects. ICE, *Office of the Principal Legal Advisor*, ice.gov/about-ice/opla (last visited Apr. 4, 2022).

[2] In *Dent v. Holder*, 627 F.3d 365, 374 (9th Cir. 2010), the Ninth Circuit interpreted 8 U.S.C. § 1229a(c)(2)(B) as a "mandatory access law" that entitles noncitizens to their A-files. The INA gives noncitizens in removal proceedings a "reasonable opportunity to examine the evidence against" them, and when noncitizens seek to demonstrate their lawful presence, the INA provides they "shall have access" to non-confidential "records and documents . . . pertaining to [their] admission or presence in the United States." 8 U.S.C. §§ 1229a(b)(4), (c)(2)(B).

to the FOIA process.  Plaintiffs cite this letter not to establish some violation of *Dent*, as Defendants appear to contend, but instead to establish the existence of this "go file a FOIA" policy.

Illustrating the application of this policy, Plaintiffs allege that in 2013, in response to an attorney's request for the A-file of a client in removal proceedings, the San Francisco Office of the Chief Counsel of ICE sent a letter to the  attorney stating  that A-file requests are "appropriately processed pursuant to a Freedom of Information (FOIA) request[.]"  *See id.* ¶ 4.  An immigration clinic requesting records was similarly informed by ICE attorneys that it was ICE's policy not to release asylum officer notes, but that they could file a FOIA.

Plaintiffs allege that in 2013, ICE sent its attorneys formal guidance entitled, "Responding to Requests for Documents from Respondents in Removal Proceedings."  The guidance stated that in response to requests for A-file materials, ICE attorneys may respond that "a request under the Freedom of Information Act (FOIA) is the appropriate recourse."  *See id.* ¶ 46.[3]  This instruction, as well as the letters referenced above, are exactly the type of "specific guidance document[s]" that the Court previously found lacking.  *See* ECF No. 50 at 15.

To be sure, the discrete guidance documents and other records created in response to *Dent* do not necessarily represent the complete record of the relevant agency action.  It is reasonable to infer that the complete agency record would disclose the full dimensions of the Nondisclosure Policy, its legal rationale, the details of its implementation, and the basis for any changes or refinements in the Policy.   Even so, the Amended Complaint shows how—following the *Dent* decision—DHS reasserted the "go file a FOIA" policy that applied nationwide.

---

[3] While the 2013 guidance to ICE attorneys also encouraged the disclosure of certain specific documents to noncitizens who requested them, Plaintiffs allege—based on their experience—that departures from the policy of blanket nondisclosure, in response to "a narrow request for a single document," are "rare."  ECF No. 57 ¶¶ 47, 82.  Plaintiffs allege, on information and belief, that the portion of the 2013 guidance encouraging limited disclosures is not in effect, or not followed.  *Id.* ¶ 47.

As Plaintiffs allege, the Nondisclosure Policy is so firmly established that other government agencies recognize its existence and impact.  For example, in 2019, the Office of Government Information Services sent a letter to Congress "question[ing] why FOIA is being used in immigration proceedings as the primary mechanism for accessing A-files," and noting that obtaining A-Files through FOIA is a lengthy process.  *See* ECF No. 57 ¶ 50; *see also* 8 C.F.R. § 1208.12(b) (cited at ECF No. 57 ¶ 31) (reflecting DOJ's institutional awareness of DHS's Nondisclosure Policy in regulation providing that asylum seekers in immigration court cannot obtain discovery and are limited to "continu[ing] to seek documents" through the FOIA).

Finally, although this Court determined that—to the extent Plaintiffs alleged an unwritten policy—the original complaint did not sufficiently allege "the action's actual or threatened effects on immigration proceedings," ECF No. 50 at 16, the Amended Complaint includes such allegations.  Plaintiffs allege that, because of the challenged policy, ICE attorneys have been instructed to direct Plaintiffs and others to the FOIA process rather than provide documents, and they have followed that instruction in declining to produce A-file materials.  ECF No. 57 ¶¶ 43-48.  These consequences were recently confirmed by the court in *Nightingale v. USCIS*, which explained that "FOIA is the primary, if not the only, mechanism for accessing A-Files" by noncitizens "applying for immigration benefits, challenging removal orders, or seeking release from detention." 507 F. Supp. 1193, 1199 (N.D. Cal. 2020); *see* ECF No. 57 ¶ 49.  As Plaintiffs allege, the Nondisclosure Policy results in long wait times to obtain documents through FOIA, an inability to get sufficient information from FOIA due to redactions, an inability to obtain documents in time for hearings or other deadlines, an inability to adequately prepare for hearings or anticipate the evidence ICE attorneys will present, an inability to prepare motions to reopen, and harm to the integrity of the immigration system as a whole.  *See* ECF No. 57 ¶¶ 51-75.  The

policy harms attorneys and organizations like Plaintiffs, who must expend additional resources to combat the effects of the Nondisclosure Policy.  ECF No. 57 ¶¶ 76-92.  It also harms noncitizens, who could end up prejudiced in proceedings, denied a benefit, or detained or removed.  *See id.* ¶¶ 61-69.

> **B.** **The Nondisclosure Policy Reflected in the ICE Documents is Discrete Agency Action that Plaintiffs May Challenge in an APA Suit.**

DHS's Nondisclosure Policy—now described in the context of the "specific guidance document or plan," the Court required, *see* ECF No. 50 at 15—is discrete agency action in the form of a specific and consequential internal policy that is reviewable under the APA.  Plaintiffs anticipate that the full administrative record will reveal even more information about the Nondisclosure Policy, including the extent to which it may be both written and unwritten.  As the Court noted in its Memorandum and Opinion, however, an agency policy does not need to be a written policy to constitute discrete agency action.  *See* ECF No. 50 at 15-16 (citing *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018)).

Even to the extent that aspects of the policy may be unwritten, APA challenges of an unwritten agency policy or practice are permissible, as the Court recognized in its Memorandum and Order.  ECF No. 50 at 15-16.  *See Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015) (finding discrete agency action where plaintiff challenged Department of State's failure to comply with certain INA requirements when reviewing visa applications); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 174 (D.D.C. 2015) (finding that plaintiffs showed a reviewable unwritten "DHS policy direct[ing] ICE officers to consider deterrence of mass migration as a factor in their custody determinations" as underlying the plaintiffs' detention); *Ramirez v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018) (differentiating broad programmatic attacks from "claims that many people were injured in similar ways by the same type of agency action");

*Phoenix Herpetological Soc'y, Inc. v. United States Fish & Wildlife Serv.*, No. 19-cv-00788, 2021 WL 620193, at *6 (D.D.C. Feb. 17, 2021) (allowing APA claim where plaintiffs challenged "the legality of a specific ongoing policy when that policy has concretely injured the plaintiff in the past and promises to do so again in the future") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990)).  Thus, even to the extent that aspects of the Nondisclosure Policy are unwritten, Plaintiffs plausibly allege the existence of a discrete agency action by referencing guidance and letters from ICE, and describing the specific harms caused by the Nondisclosure Policy.  *See* ECF No. 57 ¶¶ 44-47, 57-75.

Plaintiffs' claim is therefore unlike the claim in *Lujan v. National Wildlife Federation*, which challenged the "*wholesale* improvement" of a "land withdrawal review program." 497 U.S. at 890-91.  Plaintiffs challenge the implementation of a single policy dealing with one discrete aspect of immigration proceedings—the process for obtaining relevant records.  As alleged in the Amended Complaint, the Nondisclosure Policy is reflected in specific agency guidance and other agency documents.  *See, e.g.*, ECF No. 57 ¶¶ 45-46.  Among other things, the Policy determines the manner in which DHS officials purport to discharge specific statutory and regulatory disclosure provisions, including under 8 U.S.C. § 1229a(b)(4)(B) and 8 C.F.R. § 103.2(b)(16).  And it has actual and immediate effect on immigration proceedings by causing DHS officials to decline to disclose records and instead to refer noncitizens and their counsel to a separate proceeding under FOIA, which in turn leaves to chance whether noncitizens will obtain relevant records and frequently forces noncitizens to proceed without vital documents that are critical to their cases. *See, e.g.*, *Ramirez*, 310 F. Supp. at 21 (allowing challenge of policy that caused "similar, discrete purported injuries" to many people); *R.I.L.-R*, 80 F. Supp. at 184 (allowing facial challenge to ICE

detention policy that "has profound and immediate consequences for Central American asylum seekers").

That this single, specific policy affects numerous proceedings makes the policy very important, but not less discrete. Plaintiffs' case seeks only to vacate the discrete challenged policy and require Defendants to implement a non-arbitrary means of providing documents to noncitizens, including complying with disclosure obligations. Plaintiffs do not seek "general judicial review" of the "day-to-day operations" of DHS, *Lujan*, 497 U.S. at 899, and do not threaten to "entangle[]" the Court "in [the] daily management of [an] agency's business," *Phoenix Herpetological Soc'y*, 2021 WL 620193, at *6 (cleaned up) (citations omitted). Because Plaintiffs have adequately alleged discrete agency action that is reviewable under the APA, Defendants motion to dismiss should be denied.

## II.   DEFENDANTS' ARGUMENTS ARE PREMATURE AT THIS STAGE OF THE PROCEEDINGS AND OTHERWISE FAIL TO REBUT THE ADEQUACY OF THE ALLEGATIONS IN THE AMENDED COMPLAINT.

Defendants' motion to dismiss largely avoids the significance of Plaintiff's amended allegations of fact and the agency action issue presented by the Court's Memorandum and Order. *See* ECF No. 50 at 17. Defendants advance arguments that are premature at the motion to dismiss stage, including attempting to litigate the precise scope of the government's statutory disclosure obligations and contending that the Nondisclosure Policy is not "an unlawful or arbitrary and capricious policy." *See* ECF No. 63 at 2. Defendants' memorandum scarcely addresses, let alone refutes, Plaintiffs' argument that they have alleged a discrete and reviewable agency action.

A.   **Defendants' Arguments about the Scope of the Government's Discovery Obligations and Arbitrary and Capricious Review Are Premature at the Motion to Dismiss Stage.**

Defendants' motion to dismiss appears largely focused on advancing the governments' view of the *merits* of Plaintiffs' arbitrary and capriciousness claim.  Defendants attempt to defend the rationality of what they term the policy of "defaulting to the FOIA," in part by arguing that their statutory disclosure obligations after *Dent v. Holder* are narrow, and that it is lawful to have a policy of not providing A-files.  Defendants might intend to press those arguments at summary judgment, but they have no bearing on whether Plaintiffs have plausibly alleged that the Nondisclosure Policy is a reviewable discrete agency action and are not appropriately addressed at the motion to dismiss stage.

For example, Defendants assert that "Plaintiffs' allegations do not describe a practice that is arbitrary, capricious, or contrary to existing law." ECF No. 63 at 2.   But whether Plaintiffs are entitled to prevail in their claim of arbitrary and capriciousness is not at issue during a motion to dismiss.  *See Atieh v. Riordan,* 727 F.3d 73, 76 (1st Cir. 2013) ("APA review presents no need for screening.  It follows that the plausibility standard has no place in APA review.").  At the motion to dismiss stage, Plaintiffs must allege the existence of an agency policy that is reviewable under the APA.  Plaintiffs have alleged a discrete agency action and whether Defendants can provide any reasoned explanation for the Policy that satisfies the APA remains to be seen.  *See Judulang*, 565 U.S. at 64.[4]

---

[4] Plaintiffs believe the record at summary judgment will demonstrate that the Nondisclosure Policy—which makes a critical aspect of the fairness of immigration proceedings turn on the happenstance of whether a separate FOIA process produced relevant documents—is arbitrary and capricious because the policy lacks any reasoned explanation and bears no connection to "the purposes of the immigration laws or the appropriate operation of the immigration system." *Judulang*, 565 U.S. at 55; *see also New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 81 (2d Cir. 2020).

Defendants assert that Plaintiffs contest DHS's interpretation of the Ninth Circuit's ruling in *Dent v. Holder*, which Defendants argue is narrow. But the Amended Complaint does not seek to define the scope of discovery obligations under *Dent*. Rather, its references to *Dent* are *allegations of fact*; they allege that, in the wake of *Dent*, DHS issued policy guidance and a series of instructions concerning the nondisclosure of documents in removal proceedings. *See* ECF No. 57 ¶¶ 41-45. While Defendants limited the application of *Dent* to the Ninth Circuit, the Amended Complaint alleges that the Defendants' post-*Dent* instructions apply nationwide. Those instructions tell attorneys representing the government in removal proceedings to implement the "go file a FOIA" policy. As explained in Section I above, the instructions and form letters used by OPLA attorneys consistently provide that the FOIA is the mechanism available for access to A-File materials. *See* ECF No. 57 ¶¶ 41-45. These allegations concerning Defendants' actions after *Dent* demonstrate that OPLA distributed policy "guidance" instructing that ICE attorneys should channel disclosure to the FOIA, especially requests for the A-File. *See* ECF No. 50 at 15.

In addition to their arguments regarding the scope of their disclosure obligations, Defendants also focus on the whether the Nondisclosure Policy contains an exception allowing for the disclosure of a limited list of documents—a possibility that Plaintiffs dispute.[5] These arguments reflect a central error in Defendants' efforts to defend the Nondisclosure Policy. Defendants apparently seek to show that the Nondisclosure Policy is not arbitrary and capricious

---

[5] Defendants label Plaintiffs' allegation, "[o]n information and belief," that any such exception is not in effect as "insufficient" "conclusory statements." ECF No. 63 at 13 (referring to ECF No. 57 ¶ 47). But Plaintiffs' allegations are amply supported in the Amended Complaint itself. *See, e.g.*, ECF No. 57 ¶ 82. And while "information and belief does not mean pure speculation," "'[s]ome latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where . . . some of the information needed may be in the control of [the] defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44-45 (1st Cir. 2012) (internal citations omitted). Such is the case here. What is more, the two sentences on which this argument is focused concern only the precise scope of the Nondisclosure Policy and whether it contains an exception for a limited list of documents. Even if these sentences were entirely ignored, that could not impact the numerous other allegations of a discrete and challengeable policy of refusing to produce A-file materials, which undisputedly rise above "pure speculation."

by arguing that it is not in conflict with statutory disclosure obligations.  But Plaintiffs need not show any predicate violation of an immigration statute in order to demonstrate, at summary judgment, that Defendants' policy is arbitrary and capricious.  *See* ECF No. 63 at 18 (noting distinction between "unlawful" and "arbitrary and capricious" action) (citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009)).   And although disclosure obligations exist and are relevant to this case, Plaintiffs contend that requiring noncitizens to use a separate FOIA process in order to obtain relevant records would be arbitrary and capricious even if no specific disclosure obligations existed.  *See* ECF No. 57 ¶ 95 n.9.  Thus, for that same reason that Defendants' focus on the scope of their disclosure obligations is premature and beside the point, so too are Defendants' arguments about the scope of the Nondisclosure Policy.  Even if the Nondisclosure Policy implemented by DHS contained an exception encouraging the disclosure of certain specific documents, whether that exception rendered the policy "rational" and sufficiently connected "to the purposes of the immigration laws or the appropriate operation of the immigration system would still need to be determined at summary judgment.  *See Judulang*, 565 U.S. at 55.

### B.   Defendants Barely Dispute that Plaintiffs Have Failed to Meet the Standard Articulated by this Court for a Discrete Agency Action.

Defendants do not meaningfully argue that Plaintiffs' factual allegations, taken together, fail to allege a discrete agency action challengeable under the APA.  Instead—relying on their merits argument that the policy revealed in these documents is not "arbitrary and capricious"— Defendants proceed by setting completely aside Plaintiffs' allegations that ICE has provided written guidance to its attorneys to deny A-file requests and rely on the FOIA.  Having set aside these critical paragraphs, Defendants then contend that Plaintiffs presented only "general allegations" that "fail to describe an unlawful or arbitrary and capricious policy" and that Plaintiffs presented only "one example" of the Nondisclosure Policy "applying to a third party."  ECF No.

14

63 at 9, 14.  This contention is incorrect, and proceeds only by incorrectly discounting each of Plaintiffs' factual allegations.

The Court's Memorandum and Order required Plaintiffs to "describe[] the Policy with reference to a specific guidance document or plan" or point to a "specific final agency action that has an actual or immediately threatened effect," and noted that "Plaintiffs have not alleged the action's actual or threatened effects on immigration proceedings or allege[d] specific proceedings in which Plaintiffs were denied access to records based upon the purported Policy in these other proceedings."  ECF No. 50 at 15-16 (cleaned up) (citations omitted).  Plaintiffs have now amply satisfied the Court's standard.  They have pointed to written agency instructions and direct effects that cause ICE's attorneys to withhold A-file materials and instead point noncitizens and their counsel to the FOIA—consequences acknowledged by the findings of the court in *Nightingale* and consistent with the Plaintiffs' own experiences.  *See, e.g.,* ECF No. 57 ¶¶ 43-50, 52, 55-69; *Nightingale*, 507 F. Supp. 3d at 1202-04.  These allegations are more than sufficient to satisfy the Court's standard in the Memorandum and Order.  Defendants are not entitled to ignore these *factual allegations* simply because they intend to argue—at summary judgment—that the policy of "defaulting to the FOIA" is not arbitrary and capricious.  *See* ECF No. 63 at 12.

Defendants' efforts to cast aside other factual allegations are also without merit.

First, in response to the allegations that an ICE attorney admitted a policy of not producing asylum interview notes and directed the requester to use the FOIA, Defendants contend that disclosure of asylum notes is not required by statute.  ECF No. 63 at 13-14.  But that contention is irrelevant to whether the allegations help to illustrate the *existence* of a discrete and challengeable agency policy requiring the use of the FOIA in the first place.

15

Second, Defendant criticize Plaintiffs' citation of certain regulations, in particular 8 C.F.R. § 1208.12, the DOJ analogue to 8 C.F.R. § 208.12—on which the Court relied in concluding that Plaintiffs had alleged a discrete agency action with regard to asylum proceedings, ECF No. 50 at 13. *See* ECF No. 63 at 14-16. Sections 208.12 and 1208.12 provide that discovery is unavailable both in affirmative asylum proceedings before USCIS and in connection with asylum claims in immigration court. They provide that noncitizens may "continue to seek documents available through a [FOIA] request." 8 C.F.R. §§ 208.12, 1208.12. These regulations are, respectively, a reflection of USCIS's implementation of the Nondisclosure Policy and a reflection of the DOJ's *awareness* of *ICE*'s implementation of the Nondisclosure Policy in the removal context.[6] Together with Plaintiffs' other allegations, they help demonstrate the existence of a discrete agency policy of Nondisclosure.

## III.     PLAINTIFFS' REFERENCES TO DUE PROCESS ARE PERMISSIBLE.

In the last section of their motion, Defendants seek to dismiss "Plaintiffs' Claim Premised on the Due Process Clause." Plaintiffs have no such claim. To the extent the government seeks to preclude Plaintiffs from mentioning the very existence of due process rights or fairness concerns in their amended complaint or during future stages of this case, that request should be denied.

This Court previously "dismiss[ed] Plaintiffs' APA claim *to the extent* it relie[d] upon a violation of third-party due process rights," ECF No. 50 at 10 (emphasis added). Plaintiffs' Amended Complaint expressly clarified that Plaintiffs do not seek to assert such a claim. ECF No. 57 ¶ 95, n.9. That should have been the end of the matter.

---

[6] Indeed, these regulations were previously a single DOJ regulation, when the Immigration and Naturalization Service was part of the DOJ. See 65 Fed. Reg. 76121, 76126, 76133 (Dec. 6, 2000). Upon the creation of DHS, the regulations were duplicated as DHS and DOJ regulations. See 68 Fed. Reg. 9824, 9824, 9834 (Feb. 28, 2003). The Amended Complaint also cites 8 C.F.R. § 240.69, a USCIS regulation involving certain other applications (non-asylum), and its DOJ analogue, 8 C.F.R. § 1240.69, which applies in the removal context. *See* ECF No. 57 ¶¶ 30-31. These regulations contain similar language to §§ 208.12 and 1208.12 with regard to the unavailability of discovery.

Defendants nevertheless persist, asking the Court to dismiss a purported claim premised on the Due Process Clause. Referring number by number to paragraphs that contain the word "due process" or impliedly deal with considerations of fairness—even as part of background factual allegations regarding the operation of the Nondisclosure Policy—Defendants insist that Plaintiffs "impermissibly rel[y] on noncitizens due process rights" and contend that more than a dozen paragraphs should be stricken from the Amended Complaint either in whole or in part.[7]

These arguments are without merit. The Court need not reach into the ether to dismiss a claim that Plaintiffs have expressly disavowed. Defendants and the Court are entitled to rely on Plaintiffs' representation that they do not seek to make a claim premised on a violation of third-party due process rights. If, at summary judgment, Plaintiffs seek to assert  a claim that they have disavowed, incorrectly ask this Court to employ the "heightened standard" for arbitrary-and-capricious review that the Supreme Court rejected in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009), or otherwise seek a remedy that they are not entitled to, Defendants will surely point out these errors to the Court. But Plaintiffs' concession does not entitle Defendants to wordsmith Plaintiffs' complaint, limit future briefing, or insist that the Court consider the issues in this case only after crossing out all references to the human beings and constitutional interests that are implicated by the Nondisclosure Policy.

## <u>CONCLUSION</u>

For the reasons provided herein, the court should deny Defendants' Motion to Dismiss.

---

[7] While Defendants' intentions may be unclear, the apparent request for a bar on all mentions of due process surely could not preclude the Court from analyzing the issues in this case and interpreting statutes using ordinary tools of statutory construction at its disposal, including applying the canon of constitutional avoidance. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (holding that courts deciding the meaning of a statute must avoid an interpretation that raises serious constitutional concerns when another interpretation is available, regardless whether any parties whose constitutional rights are at issue are before the court).

17

Dated: April 4, 2022

Respectfully submitted,

/s/   Adriana Lafaille
Matthew R. Segal (BBO #654489)
Adriana Lafaille (BBO #680210)
Krista Oehlke (BBO #707566)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
ALafaille@aclum.org

/s/   John T. Montgomery
John T. Montgomery (BBO #352220)
Amanda L. Pine (BBO #707611)
Thanithia Billings (BBO #699018)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000
John.Montgomery@ropesgray.com

Meghan Gilligan Palermo (admitted pro hac vice)
Deanna Minasi (admitted pro hac vice)
Lauren Bergelson (admitted pro hac vice)
Ricardo Mullings (admitted pro hac vice)
Phillip Kraft (admitted pro hac vice)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
Meghan.GilliganPalermo@ropesgray.com