# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GREATER BOSTON LEGAL SERVICES, *et al*.,

           Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND
    SECURITY, *et al*.,

           Defendants.

**DEFENDANTS' REPLY IN
SUPPORT OF PARTIAL
MOTION TO DISMISS**

Case No.: 1:21-cv-10083-DJC

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.   Plaintiffs' Claim Pertaining to Removal Proceedings Should be Dismissed Because They Have Not Identified a Cognizable Policy or Practice that is Arbitrary and Capricious or Not in Accordance With Law ..................................................................... 2

    II.  Plaintiffs Cannot Challenge Document Production In All Civil Immigration Proceedings. ............................................................................................................... 8

    III. The Portion of Plaintiffs' Claim that Relies on the Due Process Clause Has Been Dismissed and May Not be Resuscitated. ..................................................................... 10

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Atieh v. Riordan*,
　727 F.3d 73 (1st Cir. 2013) ............................................................................ 3, 4, 9

*Dent v. Holder*,
　627 F.3d 365 (9th Cir. 2010) ............................................................................. 1, 3

*Judulang v. Holder*,
　565 U.S. 42 (2011) ............................................................................................ 6, 7

*Lujan v. Nat'l Wildlife Fed'n*,
　497 U.S. 871 (1990) ............................................................................................... 7

*Norton v. So. Utah Wilderness All.*,
　542 U.S. 55 (2004) ................................................................................................ 7

*R.J. Reynolds Tobacco Co. v. United States Dep't of Agric.*,
　130 F. Supp. 3d 356 (D.D.C. 2015) ...................................................................... 5

*Zixiang Li v. Kerry*,
　710 F.3d 995 (9th Cir. 2013) ............................................................................. 4, 5

**Statutes**

5 U.S.C. § 706 ...................................................................................................... 4, 5, 10

8 U.S.C. § 1229a ......................................................................................................... 3, 6

**Rules**

Fed. R. Civ. Proc. 26-37 ................................................................................................. 8

## INTRODUCTION

Throughout this litigation, Plaintiffs have been clear that they challenge the Department of Homeland Security's ("DHS's") purported policy of failing to honor disclosure obligations set forth in the Immigration and Nationality Act ("INA") in the immigration proceeding itself and instead instructing noncitizens (and, here, their attorneys) to submit Freedom of Information Act ("FOIA") requests for those records. *See* Pls.' Opp'n to First Mot. to Dismiss ("Pls.' First Opp.") at 5, ECF No. 37 (contending that Defendants are "circumventing their disclosure obligations through FOIA"). Against that framework, the Court permitted Plaintiffs' claims to proceed with respect to an alleged discrete disclosure obligation Plaintiffs identified in affirmative asylum proceedings, and granted leave to amend to identify similarly discrete disclosure obligations and a policy of meeting them through FOIA in removal proceedings. January 14, 2022 Mem. and Order on Mot. to Dismiss ("MTD Order"), at 17-18, ECF No. 50.

Plaintiffs' new allegations fail to allege any such obligations, and therefore do not identify an actionable policy for purposes of review under the Administrative Procedure Act ("APA"). Instead, they principally allege that DHS produces entire A-files through the FOIA. Am. Compl. ¶¶ 41-50, ECF No. 57. But there is nothing unlawful about referring people to the FOIA—Congress's generally applicable statutory mechanism for release of agency records—when no statute, regulation, or rule otherwise requires the production of records. And Plaintiffs' amended complaint fails to marry a specific INA disclosure obligation applicable to removal proceedings, including any purported obligation to disclose the entire A-file, with a policy of meeting that obligation through FOIA.

Defendants moved to dismiss and pointed this out, including by addressing DHS's implementation of the Ninth Circuit's decision in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010), but Plaintiffs fail to meaningfully respond to those arguments. Instead, they argue that any such

1

discussion reflects an impermissible attempt to reach the merits of their claim principally because that claim does not rise and fall on disclosure obligations. Pls.' Opp'n to Defs.' Partial Mot. to Dismiss ("Pls.' Second Opp.") at 6-7, 13-14, ECF No. 67. This argument—in addition to marking a significant departure from their previous position and the allegations in the amended complaint—is simply wrong.

The question of whether Plaintiffs have or have not identified a disclosure obligation, and then properly alleged a national policy of requiring individuals to obtain those records through the FOIA, goes to the *legal* sufficiency, not factual sufficiency or merits, of the amended complaint. Indeed, in the absence of an INA statutory or regulatory disclosure obligation, the purported policy Plaintiffs describe is nothing more than an expression of Defendants' implementation of the FOIA, which is not arbitrary, capricious, or contrary to law. A motion to dismiss for failure to state a claim is a proper vehicle for testing that claim.

Lastly, Plaintiffs invite the Court to expand the scope of this case to "discovery" in all civil immigration proceedings. Given that neither Plaintiffs' amended complaint nor their opposition identify an applicable discovery rule in the first instance, the Court should decline this invitation. All told, except for the part of Plaintiffs' claim that the Court has already allowed, Defendants respectfully request that the rest of the amended complaint be dismissed for failure to state a claim upon which relief can be granted.

## ARGUMENT

**I.    Plaintiffs' Claim Pertaining to Removal Proceedings Should be Dismissed Because They Have Not Identified a Cognizable Policy or Practice that is Arbitrary and Capricious or Not in Accordance With Law.**

Defendants' opening brief established that the amended complaint fails to allege a discrete policy or practice of DHS directing noncitizens to submit FOIA requests to obtain records for removal proceedings that is arbitrary, capricious, or contrary to law. Defendants first showed that

the two INA provisions that Plaintiffs rely on, 8 U.S.C. § 1229a(b)(4)(B) and § 1229a(c)(2)(B), do not, by their terms, require production of the entire A-file to noncitizens in removal proceedings, a proposition with which Plaintiffs do not disagree. Defs.' Mem. in Supp. of Partial Mot. to Dismiss ("Defs.' Mem."), at 9-16, ECF No. 63. Defendants then explained that DHS has taken the position that the affirmative obligation to produce the A-file that the court in *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010), found applies to 8 U.S.C. § 1229a(c)(2)(B) extends only to certain documents in the A-file that are relevant to particular removal proceedings. Defs.' Mem. at 12-13. And Defendants cited multiple courts that have agreed with DHS's position. *Id*. The new allegations in paragraphs 41-50 of the amended complaint allege no more than that. But interpreting a judicial opinion in a way that multiple courts have *agreed with* is not arbitrary and capricious agency action, even if the alleged policy is "discrete." *Id*. at 9-16. Plaintiffs' claim with respect to removal proceedings must therefore be dismissed.

In response, Plaintiffs contend that Defendants' argument is premature because it goes to the merits of the arbitrary and capricious claim. Pls.' Second Opp. at 12. But this is incorrect. Defendants' argument goes to whether Plaintiffs have stated a claim—whether they have alleged arbitrary and capricious agency action, or agency action not in accordance with law. Plaintiffs contend that all they have to do at the motion to dismiss stage is "allege the existence of an agency policy that is reviewable under the APA." *Id*. Plaintiffs must, however, plausibly allege that the policy is arbitrary and capricious or not in accordance with law to state a claim under the APA, as discussed below.

Merely saying that a policy is arbitrary and capricious or not in accordance with law is not sufficient—a plaintiff must plausibly allege as much. Plaintiffs oppose this bedrock proposition based on *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). Pls.' Second Opp. at 12. In *Atieh*, a

noncitizen filed suit in district court to set aside a Board of Immigration Appeals ("BIA") decision holding that the noncitizen had failed to establish that their marriage was bona fide. *Atieh*, 727 F.3d at 75. The district court dismissed the complaint for failing to plausible allege arbitrary and capricious decision-making. *Id.* at 76. The First Circuit reversed, finding that the agency's decision-making should have been judged on the basis of the administrative record, not the complaint. *Id*. The court held that "the plausibility standard does not apply to a complaint for judicial review of final agency action," *id.*, but it included a footnote with an important caveat, *id*. at n.4. That footnote explained that the court's decision "does not mean . . . that Rule 12(b)(6) can never be in play in an APA appeal. . . .[S]uch a motion might lie where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id.* (citing *Zixiang Li v. Kerry*, 710 F.3d 995, 1000-01 (9th Cir. 2013)).

That footnote applies here, as demonstrated by the case the court cited, *Zixiang*, which is analogous to the instant case. *Zixiang* was a class action claiming that the government did not correctly allocate immigrant visas to eligible applicants. *Zixiang*, 710 F.3d at 998. The plaintiffs brought an APA claim pursuant to 5 U.S.C. § 706(2)(A), alleging "that USCIS violated the law, and acted arbitrarily and capriciously," by failing to establish and maintain adequate systems to account or monitor the priority of immigrant visa applications. *Id*. at 1000. The district court granted the government's motion to dismiss for failure to state a claim. *Id.* at 998. And the Ninth Circuit affirmed, explaining that "Plaintiffs provide no authority, and we can locate none, suggesting that USCIS has a specific duty to maintain such an elaborate system for monitoring priority dates or the number of pending applications. Instead, USCIS's responsibilities are carefully circumscribed and tied to the actions of other agencies." *Id*. at 1001. The court concluded as follows: "Plaintiffs essentially ask us to hold that USCIS could be acting arbitrarily and

4

capriciously by failing to create a system, or complying with vague standards, not required by law. We decline their invitation, and we hold that Plaintiffs failed to state a claim against USCIS." *Id.*

Plaintiffs' claim here, that DHS instructs individuals to submit FOIA requests to obtain agency records, is similar to the claim at issue in *Zixiang*. FOIA is a generally applicable statute that provides individuals the right to request records from agencies; there is nothing inherently unlawful or arbitrary and capricious about an agency employing that statutory scheme where there is otherwise no applicable disclosure obligation. Whether DHS is violating any legal obligation by deferring to the FOIA goes to whether the amended complaint states a claim under 5 U.S.C. § 706, just as it did in *Zixiang*. *See also R.J. Reynolds Tobacco Co. v. United States Dep't of Agric.*, 130 F. Supp. 3d 356, 369-70 (D.D.C. 2015) (Jackson, J.) (holding that it is appropriate to decide a Rule 12(b)(6) motion to dismiss in an APA case when the arguments are "about the legal conclusions to be drawn about the agency action.") (cleaned up).

Nonetheless, Plaintiffs contend that they do not have to allege the violation of any legal disclosure obligation. Pls.' Second Opp. at 14. They argue that "although disclosure obligations exist and are relevant to this case, Plaintiffs contend that requiring noncitizens to use a separate FOIA process in order to obtain relevant records would be arbitrary and capricious even if no specific disclosure obligations existed." *Id.* As an initial matter, this is inconsistent with the amended complaint, which asserts that directing noncitizens to submit FOIA requests for records relevant to immigration proceedings is arbitrary and capricious and contrary to law *because* the government is obligated to disclose those records by the statutes and regulations that govern such proceedings. The thrust of that complaint is a challenge to a purported nondisclosure policy that "applies notwithstanding legal obligations to disclose information," Am. Compl. ¶ 37, that operates to permit Defendants to "ignore their legal obligations . . . to disclose records," *id.* ¶ 3,

5

that applies even though Plaintiffs allege DHS has "a duty to disclose relevant records in any individual matter," *id*. ¶ 4, and that "interferes with Plaintiffs' ability to protect and secure" their clients' "rights under existing statutory and regulatory obligations to disclose records," *id*. ¶ 95. Further, the Prayer for Relief requests that the Court "order compliance by Defendants with regulatory, statutory, and constitutional disclosure obligations." Am. Compl. at Prayer for Relief.[1]

Contrary to the allegations in the amended complaint, Plaintiffs suggest in their opposition brief that the so-called nondisclosure policy is arbitrary and capricious—not because it violates any disclosure obligations—but because it "bears no connection to 'the purposes of the immigration laws or the appropriate operation of the immigration system.'" Pls.' Second Opp. at 12 n. 4 (quoting *Judulang v. Holder*, 565 U.S. 42, 55 (2011)); *see also id*. at 1, 12, 14. Plaintiffs do not cite their amended complaint for this argument. They instead cite *Judulang*, in which the Supreme Court explained that the BIA's approach for determining whether a noncitizen was eligible for discretionary relief from deportation in accordance with INA § 212(c) "must be based on non-arbitrary, relevant factors . . . which here means that the BIA's approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration

---

[1] Indeed, Plaintiffs have argued from the start of the case that the crux of their claim was Defendants' choice to use FOIA to satisfy pre-existing statutory, regulatory, or constitutional disclosure obligations. *See*, *e.g.*, July 22, 2021 Hearing Transcript at 17:25-18:5 (Mr. Montgomery: "The nondisclosure policy rests on a recognition, I think Ms. Snyder shares it, that the government has some disclosure obligations in immigration proceedings. But the policy reflects a choice to satisfy those obligations in a particular way for the most part, and that is through FOIA. And that's what we say is unlawful."). *See also* Pls.' First Opp. at 2 ("Noncitizens' rights to documents in immigration proceedings—and Defendants' corresponding legal obligations—are enshrined across a constitutional, statutory, and regulatory framework."), *id*. at 3 ("Instead of fulfilling their disclosure obligations in each immigration proceeding, Defendants direct Plaintiffs to the general transparency provisions of the FOIA."); *id*. at 5 ("Defendants' pattern of circumventing their disclosure obligations through FOIA prevents noncitizens and their counsel . . ."); *id*. at 20, n. 9 ("Plaintiffs' claim is anchored to obligations contained within the INA and its regulations, *see* Compl. ¶ 39," citing 8 U.S.C. §§ 1229a(b)(4), (c)(2)(B) and 8 C.F.R. § 103.2(b)(16)).

system. A method for disfavoring deportable aliens that bears no relation to these matters[, such as a coin flip]—that neither focuses on nor relates to an alien's fitness to remain in the country—is arbitrary and capricious." *Judulang*, 565 U.S. at 55 (cleaned up). Thus, it is § 212, and the agency's implementation of that section, that serves as the legal baseline from which to determine if the agency's action is fulfilling the purposes of the immigration laws and the appropriate operation of the immigration system in a way that is not arbitrary and capricious. *Judulang* therefore acknowledges the need to establish some legal obligation in the INA that requires DHS to disclose the entire A-file to noncitizens in the course of removal proceedings in order to provide a baseline from which the operation and purpose of the immigration system can be measured.

It is worth pausing to note the far-reaching implications of Plaintiffs' new theory. A theory that it is arbitrary to rely on FOIA for the production of records not otherwise required to be produced can be extrapolated to virtually any agency with a FOIA backlog and any request for agency records where the requester needs them for an impending purpose. Once unmoored from any discrete disclosure obligation or discovery rule, this new theory is a broad challenge to how documents are exchanged in removal proceedings, as well as the effectiveness of FOIA generally. It impermissibly asks the Court to weigh in on programmatic changes, which, if at all, should be made in "the offices of the Department or the halls of Congress" and not by court decree. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Plaintiffs are again asking the Court to entangle itself in the "day-to-day" management of individual immigration proceedings to determine which documents might be "relevant" in a particular proceeding or helpful to a particular noncitizen's case, even if otherwise not required to be produced. *Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 67 (2004). Thus, Plaintiffs' assertion that they "challenge the implementation of a single policy

dealing with one discrete aspect of immigration proceedings—the process for obtaining relevant records" is incorrect. Pls.' Second Opp. at 10.

## II.     Plaintiffs Cannot Challenge Document Production In All Civil Immigration Proceedings.

Instead of focusing on removal proceedings, as the Court directed in its Order, MTD Order at 17-18, Plaintiffs allege a purported policy of "channeling all discovery in immigration proceedings through FOIA." Pls.' Second Opp. at 6. This allegation suffers from the same infirmity as the prior ones. Rather than identifying a "disclosure obligation," Plaintiffs now insist that they may simply object to DHS using FOIA to "channel[] all discovery" in all immigration proceedings, across the board. "Discovery," of course, is a general category of information exchange, to which various rules apply. *See generally* Fed. R. Civ. Proc. 26-37. But Plaintiffs fail to identify any information-exchange rule with respect to these other (undefined) immigration proceedings. And it is not unlawful or arbitrary and capricious to rely upon the comprehensive statutory scheme Congress established via the FOIA to provide agency records when *no rules otherwise apply*. This is precisely why the Court ordered Plaintiffs to identify a specific policy of meeting disclosure obligations through FOIA. MTD Order at 14-17; Am Compl. ¶ 37. But Plaintiffs have not done so, and therefore their claim must fail.

Indeed, Plaintiffs effectively concede this point by asking the Court to "infer" from the ICE guidance documents referenced in paragraphs 45-47 of the amended complaint "that the complete agency record would disclose the full dimensions of the Nondisclosure Policy, its legal rationale, the details of its implementation, and the basis for any changes or refinements in the Policy." Pls.' Second Opp. at 7. But that does not meet the pleading standards. Plaintiffs must identify the dimensions and implementation of the purported policy in order to meet the requirement of alleging discrete, unlawful, final agency action. They have not done so, nor do they explain how

these ICE documents that explicitly reference removal proceedings can somehow be imputed to other proceedings or, even if so, the impact of such an inference.[2]

This "sort it out later" approach is both impermissible and a practical dilemma. If Plaintiffs cannot now describe the "dimensions" of the policy they challenge, Defendants stand little chance of both identifying an unwritten (but discrete) policy about them *not* doing something (*i.e.,* producing documents) and then compiling an administrative record about the thing they allegedly *do not* do, without further controversy and disputes. The task is made even more complicated because, as discussed above, Plaintiffs have not identified any disclosure obligation, and, indeed, not only have failed to narrow the types of immigration proceedings at issue but have broadened their claim to cover the entirety of the immigration process. Pls.' Second Opp. at 7-14. Nor is discovery in this proceeding the answer. It is generally not permitted in APA cases, *Atieh*, 727 F.3d at 76, as the complaint should identify the challenged policy with enough specificity to enable the defendant to identify it and compile the record.

Again, the Court's instruction was for Plaintiffs to identify a purported policy of impermissibly meeting disclosure obligations applicable to removal proceedings through FOIA. To be sure, Plaintiffs allege that the *Nightingale* court and others, *see* Am. Compl. ¶¶ 49-50, have either noted that, or questioned why, the primary means of obtaining A-files in civil immigration proceedings is through the FOIA, but that observation, without a citation to some discovery rule

---

[2] Nor does Plaintiffs' allegation in paragraph 48—that, on information and belief, the ICE guidance and "form letter" apply to proceedings different from removal proceedings—change the analysis. Am. Compl. ¶ 48. The Court has already rejected this type of conclusory statement. MTD Order at 14-17. And nothing about Plaintiffs' other factual allegations suggest that these ICE documents that specifically reference only removal proceedings somehow extend to other proceedings.

or other disclosure obligation, does not permit the Court to infer that Defendants are channeling all "discovery" through the FOIA, much less in a way that is unlawful.

### III.    The Portion of Plaintiffs' Claim that Relies on the Due Process Clause Has Been Dismissed and May Not be Resuscitated.

Even though the Court dismissed Plaintiffs' APA claim to the extent that it relied upon noncitizens' due process rights, MTD Order at 10, Plaintiffs' amended complaint continues to ask the Court to "order compliance by Defendants with . . . constitutional disclosure obligations," Am. Compl. at Prayer for Relief, and continues to allege that the purported policy violates the APA because it "is . . . unconstitutional." *Id.* ¶ 95; *see also* 5 U.S.C. § 706(2)(A), (B) (Separate from arbitrary and capricious review, the APA authorizes a court to set aside an agency action that is, among other things, "not in accordance with law" and "contrary to constitutional right."). Because of those references and the other references to the Due Process Clause, the amended complaint's footnote, Am. Compl. at 30-31 n.9, acknowledging the Court's order and indicating compliance seemed unclear. This is particularly so since it goes on to reference "constitutional disclosure obligations." *Id.*

Plaintiffs now affirm that they do not intend to press that portion of their claim that relies on the Due Process Clause. Pls.' Second Opp. at 16-17. Defendants will not therefore respond in any answer to those portions of Plaintiffs' complaint that still seemingly rely on the Due Process Clause, including those paragraphs identified in Defendants' opening brief.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice those portions of Plaintiffs' claim that remained after the Court's January order on Defendants' first motion to dismiss.

Respectfully submitted,

April 25, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify on this 25th day of April 2022 that I have filed this Reply with the Court's

ECF system, which sends notice to Plaintiffs' Counsel identified on the NEF.

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney