UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREATER BOSTON LEGAL SERVICES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 21-cv-10083-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                       **March 16, 2023**

**I.   Introduction**

After the Court allowed the motion to dismiss the original complaint, D. 1, filed by Defendants, D. 50, in part without prejudice to amend, Plaintiffs filed an amended complaint. D. 57. Defendants have now moved to dismiss the APA claim regarding removal proceedings that the Court had dismissed from the original complaint on the grounds that it still fail the Rule 12(b)(6) standard. D. 62. For the reasons stated below, the Court ALLOWS the motion, so that the APA challenge to the "Policy"[1] in removal proceedings remain dismissed (as well as any APA

---

[1] Here, the "Policy" has the same meaning as addressed in the Court's prior Memorandum and Order. That is, as alleged by Plaintiffs, "a policy and practice . . . of refusing to turn over records that may aid the noncitizen in these proceedings and directing [them] or their counsel to file a . . . [FOIA] request." D. 50 at 3.

1

claim based upon due process rights, now not pressed by Plaintiffs, D. 67 at 6, 20-21). Accordingly, for the reasons stated in D. 50 and in this Memorandum and Order, the only claim that will proceed is Plaintiffs' APA claim as to asylum proceedings. D. 50 at 15.

## II.     Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III.    The Court's Ruling on the Prior Motion to Dismiss

In its Memorandum and Order, D. 50, the Court ruled that Plaintiffs had standing and were within the zone of interests under the Immigration and Nationality Act of 8 U.S.C. § 1229a(b)(4)(B) and § 1229a(c)(2)(B), and a DHS regulation, 8 C.F.R. § 103.2(b)(16), because in their role as attorneys, they articulated an interest that is not derivative of their clients, but rather their own interest in effectuating the attorney-client relationship in immigration proceedings. D. 50 at 5–10. Plaintiffs, however, failed to allege how they fell within the zone of interests of the

Due Process Clause, and therefore, the Court dismissed Plaintiffs' APA claim to the extent it relied upon a violation of third-party due process rights. Id. at 10.

The Court also ruled that it could review Plaintiffs' APA challenge to the Policy because Defendants failed to point to any alternative remedy or to any contrary legislative intent for Plaintiffs to seek relief. Id. at 10–13. The Court, therefore, considered whether Plaintiffs adequately alleged the existence of a discrete agency action, rather than a broad programmatic challenge, which the APA does not permit. Id. at 13–17. Plaintiffs' complaint cited DHS regulations, 8 C.F.R. §§ 208.12, 240.69, which allow asylum officers to "rely on material provided by the Department of State, other USCIS officers, or other credible sources," but do not "entitle the [asylum] applicant to conduct discovery directed towards the records, officers, agents or employees of the Service, the Department of Justice, or the Department of State." Id. at 15. Instead, 8 C.F.R. §§ 208.12, 240.69 directs asylum applicants to seek documents through FOIA. Id.

The Court reasoned that by identifying DHS regulations that direct asylum applicants to file FOIA requests instead of seeking discovery, Plaintiffs plausibly alleged an agencywide policy with respect to asylum proceedings. Id. The Court, however, allowed Defendants' motion to dismiss with respect to removal and other immigration proceedings, because Plaintiffs failed to cite a regulation or to describe Defendants' policy with reference to a specific guidance document or plan. Id. at 15–17. Accordingly, the Court dismissed that claim without prejudice and allowed Plaintiffs to amend their complaint to allege the existence of policies with respect to these proceedings. Id. at 17–18. To address this issue, Plaintiffs filed an amended complaint, D. 57. Defendants, now move to dismiss the portion of the amend complaint that asserts an APA claim as to removal proceedings, arguing not only has the amended pleading failed to identify a discrete

3

agency action of the Policy, but also that it is not plausibly alleged that any such policy is arbitrary, capricious or otherwise contrary to law.  D. 63 at 15-22.  Defendants also seek to dismiss any portion of the amended complaint that seeks to reassert an APA claim based upon due process rights.  D. 63 at 22-23.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 76.

## IV. Factual Background

The Court will not repeat the allegations asserted by Plaintiffs as they largely remain the same in the amended complaint, D. 57, but will instead focus on the additional allegations now made in regard to the existence of a discrete agency action as to removal proceedings, D. 57 ¶¶ 30-31, 41–50, the basis upon which the Court had previously dismissed such claim in Defendants' challenge to the original complaint.  D. 50 at 15-17.

For the existence of a discrete agency action, Plaintiffs allege that after the Ninth Circuit's ruling in Dent v. Holder, 627 F.3d 365 (9th Cir. 2010), Defendants updated their internal guidance implementing the Policy directing noncitizens and their counsel to FOIA in response to document requests, specifically documents in the A-file.  D. 57 ¶¶ 41–45.

## V. Discussion

### A. Discrete Agency Action

Courts have consistently held that "agency action need not be in writing to be judicially reviewable as a final action."  Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 138–39 (D.D.C. 2018) (collecting cases).  "An agency action is reviewable 'to the extent that, specific 'final agency action' has an actual or immediately threatened effect.'"  Id. at 139 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 894 (1990)).

Plaintiffs now allege that Defendants issued a nationwide policy guidance and a series of instructions to implement the Policy in removal proceedings, in response to the Ninth Circuit's ruling in Dent, 627 F.3d at 374–75. D. 57 ¶¶ 4, 41–45. Dent's removal proceedings, initiated after his conviction for aggravated felony, turned upon whether he was an American citizen since he claimed that he had been adopted by a U.S. citizen as a child. Despite extensive efforts by Dent acting *pro se,* to provide proof of same in the removal proceeding, "[u]nknown to [him] documents existed in [his] A-file," including the naturalization application that his adoptive petition filed by his adoptive mother, that related to his claim. The government had not provided them to Dent. Id. at 369-70. An A-file is a file containing an individual's official record regarding immigration history. Dent, 627 F.3d at 372 & n. 12. It contains "material such as naturalization certificates; various forms (and attachments, e.g., photographs), applications and petitions for benefits under the immigration and nationality laws, reports of investigations, statements, reports, correspondence, and memoranda on each individual for whom INS has created a record under the Immigration and Nationality Act." Id. The Ninth Circuit held that Dent was entitled to his A-file given 8 U.S.C. § 1229a(c)(2)(B) that provides that where an alien bears the burden of showing that he is lawfully present in the U.S., he "shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States." 8 U.S.C. § 1229a(c)(2)(B); Dent, 627 F.3d at 374–75.

As Plaintiffs allege, Defendants took specific, discrete action after the Ninth Circuit's ruling in Dent in 2010, and that the Policy has had and continues to have an "immediately threatened effect" in removal proceedings. In the wake of Dent, Plaintiffs allege that Defendants narrowly interpreted Dent "[e]ven within the Ninth Circuit" to apply to a limited set of documents

5

(i.e., not the entirety of the A-file) and continued to direct non-citizens and/or their counsel to resort to a FOIA request for "[g]eneral requests for an entire A-file." D. 57 ¶ 44. As further alleged, Defendant DHS issued formal policy statements and form letters to this effect for use in its offices nationwide. Id. ¶ 45. Similarly, post-Dent, ICE distributed similar guidance to its field offices that as to requests for "the entire A-file," "repeated requests for confidential documents or documents not contained in the A-file," or dissatisfaction with the documents produced, ICE attorneys may respond that a FOIA request would be the appropriate alternative. Id. ¶ 46. Plaintiffs further allege that this Policy is widely known within the federal government. Id. ¶ 50 (citing letter from the Office of Government Information Services to the Chairman of a Congressional Committee on Homeland Security). Plaintiffs assert that the "immediate threatened effect," of the Policy is that it deprives counsel from obtaining sufficient information in a timely manner to adequately prepare for removal hearings. Id. ¶¶ 49 (citing Nightingale v. U.S. Citizenship & Immigr. Servs., 507 F. Supp. 3d 1193, 1199, 1205 (N.D. Cal. 2020)), 51–92; D. 67 at 12–13.

### B. Claim Regarding Removal Proceedings is Still Not Plausibly Alleged

Even assuming that Plaintiffs has now plausibly alleged discrete agency action as to the Policy for removal proceedings, Defendants also challenge whether they have stated a claim where it is not plausibly alleged that such Policy in removal proceeding is arbitrary and capricious as they must for an APA claim. D. 63 at 16, 18, 22; D. 68 at 5–10; see 5 U.S.C. 706(2)(A) (requiring the court to "hold unlawful and set aside agency action, findings and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Specifically, Defendants assert that Plaintiffs' amended complaint fails to state a claim because as a matter of law, there is nothing unlawful or arbitrary and capricious about the Policy where

Plaintiffs cannot point to a disclosure obligation that Defendants are required to provide (unlike asylum matters where, under 8 C.F.R. § 103.2(b)(16), USCIS has a duty to allow asylum applicants to "inspect the record of proceeding which constitutes the basis for the decision," D. 1 ¶ 32; D. 57 ¶ 30 and although asylum officers can rely on records from other agencies and credible sources, the applicant is directed that he/she may seek documents through FOIA, id.). D. 68 at 8.

Plaintiffs' retort to this challenge is that a Rule 12(b)(6) motion is not the juncture to challenge whether the Policy arbitrary or capricious. D. 67 at 16. Plaintiffs rely in part upon Atieh v. Riordan, 727 F.3d 73, 76 n.4 (1st Cir. 2013) in which the court held that "the plausibility standard does not apply to a complaint for judicial review of final agency action and that the district court therefore erred in invoking it." Id. Even as the court made this ruling, it was careful to make note of an exception to this rule: "[t]his does not mean, however, that Rule 12(b)(6) can never be in play in an APA appeal. Such a motion may be appropriate in circumstances. For example (and without limiting the generality of the foregoing), it is possible that such a motion might lie where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." Id. at n.4 (citing Zixiang Li v. Kerry, 710 F.3d 995, 1000–01) (9th Cir. 2013) as an example). In Zixiang Li, upon which Defendants rely, the Ninth Circuit affirmed dismissal of plaintiffs' claims where they asked the court to hold that USCIS could be acting arbitrarily and capriciously by failing to create systems that monitor the priority dates of individuals who are applying for immigrant visas and the number of immigrant petitions that are pending before the agency. Id. at 1001. In reaching this conclusion, the court reasoned that plaintiffs there provided no authority "suggesting that USCIS has a specific duty to maintain such an elaborate system for monitoring priority dates or the number of pending applications" and as such plaintiffs "essentially ask us to hold that USCIS could be acting arbitrarily and capriciously

7

by failing to create a system, or complying with vague standards, not required by law" and declining to do so. Id.

Citing Zixiang Li, Defendants assert that Plaintiffs also impermissibly ask the Court to hold that Defendants could be acting arbitrarily and capriciously by failing to adopt a disclosure policy, particularly as to the disclosure of the entirety of the A-file, in removal proceedings, apart from resort to FOIA, even as Plaintiffs cannot point to any law that suggests such obligation. D. 68 at 5–10. Plaintiffs retort to this largely relies upon language from Judulang v. Holder, 565 U.S. 42, 55 (2011), that agency action "must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." D. 67 at 16, 18 (citing Judulang, 565 U.S. at 55). There, the Court was addressing the BIA's approach for determining whether noncitizens were eligible for discretionary relief from deportation under a (now repealed) provision, INA § 212(c) which "authorized the Attorney General to admit certain excludable aliens." Judulang, 565 U.S. at 46. Given this discretionary authority, the court concluded that even as the BIA may have "legitimate reasons for limiting § 212(c)'s scope in deportation cases," it must do so "in some rational way. . . . because agency action must be based on non-arbitrary, relevant factor, . . . which here means that the BIA's approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system. A method for disfavoring deportable aliens that bears no relation to these matters—that neither focuses on nor relates to an alien's fitness to remain in the country—is arbitrary and capricious." Id. at 55. The scenario in Judulang, however, is not implicated here where the baseline determining whether the agency's action was arbitrary and capricious was the authority granted under § 212(c) where no such legal obligation is provided here as to the Policy alleged, even post-Dent, in removal proceedings. See Zixiang Li, 710 F.3d at 1001.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 62, as to as much of the amended complaint that asserts an APA claim regarding removal proceedings or relies upon an alleged violation of due process rights. For the reasons stated in D. 50 and in this Memorandum and Order, the only claim that will proceed is Plaintiffs' APA claim as to asylum proceedings.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
