# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al*., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al*., <br><br> Defendants. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b), OR IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE COURT'S MARCH 16, 2023 MEMORANDUM AND ORDER** <br><br> Case No.: 1:21-cv-10083-DJC |

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................iii

INTRODUCTION .......................................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.   The Court Should Deny Plaintiffs' Motion for Reconsideration.......................................2

        A.    The Court did not Misconstrue Plaintiffs' Claim as a Failure-to-Act Claim. .............3

        B.    The Court did not Improperly Discount Plaintiffs' Allegations About Disclosure
            Obligations..................................................................................................................4

        C.    The Court did not Interpret *Atieh* in a Manner that is Inconsistent with the APA and
            Supreme Court Precedent. ..........................................................................................5

    II.  The Court Should Not Certify Plaintiffs' Questions for Interlocutory Appeal. .................8

        A.    Plaintiffs' Proposed Questions Are Not Controlling Questions of Law As To Which
            There Are Substantial Grounds for Differences of Opinion.......................................9

        B.    An Immediate Appeal Will Not Materially Advance the Ultimate Termination of
            the Litigation............................................................................................................12

    CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. California,*
  460 U.S. 605 (1983) ............................................................................................. 2

*Atieh v. Riordan,*
  727 F.3d 73 (1st Cir. 2013) ........................................................................... *passim*

*Boniface v. Viliena,*
  417 F. Supp. 3d 113 (D. Mass. 2019) ...................................................................... 2

*Camacho v. P.R. Ports Auth.,*
  369 F.3d 570 (1st Cir. 2004) .................................................................................. 8

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800, (1988) .............................................................................................. 2

*Dent v. Holder,*
  627 F.3d 365 (9th Cir. 2010) ................................................................... 4, 6, 7, 10

*Dep't of Homeland Sec. v. Regents of the Univ. of California*
  140 S. Ct. 1891 (2020) .................................................................................. 5, 7, 8

*Dowd v. New England Tel. & Tel.,*
  No. CIV. A. 89-705, 1989 WL 118795 (D. Mass. Aug. 3, 1989) .......................... 13

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.,*
  609 F. Supp. 3d 17 (D. Mass. 2022) ....................................................................... 9

*Johansen v. Liberty Mut. Grp., Inc.,*
  No. 15-cv-12920-ADB, 2017 WL 937712 (D. Mass. Mar. 9, 2017) ..................... 10

*Judulang v. Holder,*
  565 U.S. 42 (2011) .............................................................................................. 6, 7

*Kenney v. State St. Corp.,*
  No. CIV.A. 09-10750-DJC, 2011 WL 4344452 (D. Mass. Sept. 15, 2011) ............... 9, 10, 12

*McGillicuddy v. Clements,*
  746 F.2d 76 (1st Cir. 1984) ................................................................................... 12

*Norton v. Southern Utah Wilderness Alli.*
  542 U.S. 55 (2004) .................................................................................................. 3

*Pérez-Ruiz v. Crespo-Guillén,*
  25 F.3d 40 (1st Cir. 1994) ....................................................................................... 2

*R.J. Reynolds Tobacco Co. v. United States Dep't of Agric.,*
  130 F. Supp. 3d 356 (D.D.C. 2015) ...................................................................... 10

*S. Orange Chiropractic Ctr., LLC v. Cayan LLC*,
  No. CV 15-13069-PBS, 2016 WL 3064054 (D. Mass. May 31, 2016) ................................ 12

*Union of Concerned Scientists v. Wheeler*,
  954 F.3d 11 (1st Cir. 2020) ......................................................................................... 5

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) .......................................................................... *passim*

**Statutes**

5 U.S.C. § 706 ................................................................................................. 3, 6, 11

8 U.S.C. § 1229a ..................................................................................................... 4

28 U.S.C. § 1292 ........................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12 ............................................................. 1, 5, 10

**Other**

16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ............................................................. 13

## INTRODUCTION

The Court should deny Plaintiffs' motion to certify an interlocutory appeal or for reconsideration of the March 2023 Memorandum and Order ("March 2023 Order"), ECF No. 80. Plaintiffs meet neither the high standards for certification nor the high standards for reconsideration. As to reconsideration, the Court did not err, let alone clearly err, in its March 2023 Order. The Court did not misconstrue Plaintiffs' claim as a failure-to-act claim, fail to take into consideration Plaintiffs' allegations about disclosure obligations, or interpret *Atieh v. Riordan*, 727 F.3d 73, 76 n.4 (1st Cir. 2013), in a way that is inconsistent with the Administrative Procedure Act ("APA") and Supreme Court precedent. The Court should therefore deny Plaintiffs' motion for reconsideration.

As to certification of an interlocutory appeal, the two questions posed by Plaintiffs are not controlling questions of law as to which there are substantial grounds for dispute. The First Circuit, in *Atieh*, has already provided guidance regarding exceptions to its rule that "the plausibility standard has no place in APA review," that authorize dismissal of a claim prior to review of the administrative record. Plaintiffs' second question, regarding whether they must show the challenged policy violates a statute, regulation, or some other legal duty, is not controlling here. Additionally, the Court applied the First Circuit's guidance in considering Plaintiffs' Amended Complaint, ECF No. 57 ("Am. Compl."), and that guidance is not the subject of significant dispute, as other courts agree that legally insufficient APA complaints, even those challenging an action as arbitrary and capricious, can be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Moreover, an immediate appeal of the March 2023 Order will not materially advance the ultimate termination of the litigation because it is entirely possible that the surviving claim regarding asylum proceedings will be ripe for decision before the First Circuit even issues its opinion on any

interlocutory appeal. The Court should deny Plaintiffs' motion to certify the identified questions for interlocutory appeal, as well.

## ARGUMENT

### I.    The Court Should Deny Plaintiffs' Motion for Reconsideration.

Plaintiffs ask the Court to reconsider its March 2023 Order based on a clear error of law. But the Court got it right, and Plaintiffs fail to identity any error of law warranting reconsideration. As such, their motion for reconsideration should be denied.

Although a district court has the discretion to reconsider interlocutory orders and revise them prior to final judgment, *Pérez-Ruiz v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994), the Supreme Court has cautioned that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). Thus, "a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Boniface v. Viliena*, 417 F. Supp. 3d 113, 117–18 (D. Mass. 2019) (citation omitted).

Plaintiffs argue that the Court made several clear errors of law and should reconsider its decision partially dismissing their amended complaint. They contend that the Court (1) misconstrued Plaintiffs' challenge as a claim that DHS acted arbitrarily and capriciously by failing to adopt a disclosure policy, (2) disregarded the legal obligations Plaintiffs pointed to for a disclosure obligation, and (3) interpreted *Atieh* in a manner that is inconsistent with Supreme Court precedent and the APA. *See* Pls.' Memorandum of Law in Support of Their Motion to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b), or in the Alternative, for Reconsideration of the

2

Court's March 16, 2023 Memorandum and Order ("Pls.' Mem.") at 10, ECF No. 88. But the Court did none of those things.

### A.   The Court did not Misconstrue Plaintiffs' Claim as a Failure-to-Act Claim.

Plaintiffs argue that the Court erroneously interpreted their claim as a failure to adopt a disclosure policy and erroneously dismissed it as a failure-to-act claim that was not linked to a duty to act. Pls.' Mem. at 10-12. The APA divides the scope of judicial review into two categories: agency inaction and agency action. Compare 5 U.S.C. § 706(1) with *id.* § 706(2). The failure to act (like, not adopting a policy or not reaching a final decision), can be challenged under 5 U.S.C. § 706(1) as agency *inaction*. *Id.* § 706(1). In order to prevail in such a challenge and survive a motion to dismiss, a plaintiff would generally need to show that an agency action was "unlawfully withheld or unreasonably delayed." *Id.* § 706(1). That is, a plaintiff would need to establish that an agency failed to take some discrete action that it was required by law to do. *Norton v. Southern Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004). In contrast, a final decision to deny a request or a final decision not to do something typically qualifies as agency *action* that, assuming properly pleaded and assuming compliance with the other APA requirements, can be challenged under 5 U.S.C. § 706(2) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*; *see also SUWA*, 542 U.S. at 62-63 (explaining difference between failure to act and denial).

Plaintiffs allege only a claim under § 706(2) for allegedly improper agency action. Am. Compl. § 94. They seek to have the purported "nondisclosure policy" (newly rebranded as the "go file a FOIA policy," *see* Pls.' Mem. at 1) enjoined and for the Court to "order compliance by Defendants with regulatory, statutory, and constitutional disclosure obligations." Am. Compl. at Prayer for Relief. Accordingly, as the Court held in conjunction with Defendants' original motion

3

to dismiss, the complaint had to identify a discrete, final agency action (not agency inaction). January 2022 Memorandum and Order ("January 2022 Order"), ECF No. 50.

And in its order that Plaintiffs seek reconsideration of, the Court assumed that Plaintiffs plausibly alleged discrete agency action with respect to the removal proceedings claim, through their citation of Immigration and Customs Enforcement ("ICE") guidance documents implementing *Dent v. Holder,* 627 F.3d 365 (9th Cir. 2010), as not requiring the production of the entire A-file in every case. March 2023 Order at 6. Plaintiffs do not assert that was error. Their argument that the Court misconstrued their claim as a failure-to-act claim simply cannot be squared with this part of the Court's decision, which they do not contest.

B. The Court did not Improperly Discount Plaintiffs' Allegations About Disclosure Obligations.

Nor are Plaintiffs right that the Court failed to credit the allegations in the amended complaint that 8 U.S.C. §§ 1229a(b)(4) and (c)(2)(B) constitute disclosure obligations for purposes of their claim that the alleged nondisclosure policy was arbitrary and capricious. *See* Pls.' Mem. at 12-13. As DHS previously argued, those statutory provisions do not require the production of the entire A-file to noncitizens in removal proceedings, and Plaintiffs did not, and do not here, argue otherwise. Defs.' Mem. In Support of Partial Mot. to Dismiss, ECF No. 63, at 9-16; Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply"), ECF No. 68, at 2-3. Rather, the affirmative obligation recognized in *Dent* extends only to certain documents in the A-file relevant to particular removal proceedings, as courts have held. *Id*. Plaintiffs have not identified any legal obligation that requires DHS to produce the entire A-file to a noncitizen, other than FOIA of course (subject to any applicable exemptions), and the Court was right to so hold.

    C.  <u>The Court did not Interpret *Atieh* in a Manner that is Inconsistent with the APA and Supreme Court Precedent.</u>

Plaintiffs next contend that the Court misinterpreted the *Atieh* decision and applied it in a manner inconsistent with the Supreme Court's decision in *Department of Homeland Sec. v. Regents of the University of California* ("*Regents*"), 140 S. Ct. 1891 (2020), and general APA law. Pls.' Mem. at 13-14. In *Atieh*, the First Circuit identified an exception to its holding that the plausibility standard on a motion to dismiss does not apply to a complaint for judicial review of final agency action. In a footnote, the court explained that that holding "does not mean . . . that Rule 12(b)(6) can never be in play in an APA appeal. Such a motion . . . might lie where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported). *See, e.g.*, *Zixiang Li v. Kerry*, 710 F.3d 995, 1000–01 (9th Cir. 2013)." 727 F.3d at 76 n.4. In their motion for reconsideration, Plaintiffs assert that this footnote "can only have legitimate application in 'legally flawed' cases in which no administrative record could support a conclusion of arbitrary and capriciousness." Pls.' Mem. at 13-14. They further argue that "this Court's ruling that an APA claim is 'legally flawed' if Plaintiffs allege that a policy is arbitrary and capricious without also alleging a violation of a separate legal requirement is inconsistent with the Supreme Court precedent and the text of the APA." *Id*. at 14. Plaintiffs' arguments obfuscate APA jurisprudence and the purported policy that they challenge.

To start, the Court did not hold that an arbitrary and capricious challenge to an agency policy necessarily requires a plaintiff to allege a violation of a separate legal requirement. It is true that statutes and regulations play starring roles in APA actions to "guide [a court] in assessing the propriety of an agency's procedures in a matter." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21-22 (1st Cir. 2020) (acknowledging that all previous APA cases have relied on substantive, non-APA statutes or regulations in assessing the claim and reserving whether a "pure

APA" case could proceed without reference to a non-APA substantive statute). In the absence of any such guiding statute or regulation, a court generally has no means to measure whether the agency relied on improper factors, failed to consider aspects of the problem, offered a rationale contradicting the evidence before it, or reached an implausible conclusion. *See Lunney v. United States,* 319 F.3d 550, 559 n.5 (2d Cir. 2003) ("We ... note that the APA's 'arbitrary and capricious' standard, *see* 5 U.S.C. § 706(2)(a), cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action.").

Accordingly, in the *Zixiang Li* case cited in the *Atieh* footnote, the Ninth Circuit properly dismissed the complaint because it had no means to evaluate whether the agency's system complied with "vague standards" not required by law. *Zixiang Li*, 710 F.3d at 1001. Similarly, the Court here dismissed Plaintiffs' claim because Plaintiffs' novel theory, which it newly advanced in opposition to Defendants' partial motion to dismiss, that the *Dent* guidance could be arbitrary and capricious even in the absence of a disclosure obligation, is not rooted in any law or regulation upon which the Court could evaluate the alleged policy. *See* March 2023 Order at 8 (distinguishing the case at bar from the Supreme Court's holding in *Judulang v. Holder*, 565 U.S. 42 (2011), because that case implicated DHS's implementation of a statutory provision).

Plaintiffs' argument that the Court clearly erred because of what Plaintiffs hypothesize the administrative record here may contain is also flawed. *See* Pls.' Mem. at 14. The claim that the Court dismissed, as presently articulated by Plaintiffs, is that it is arbitrary and capricious for DHS to ask noncitizens to submit FOIA requests for their entire A-files even though there is no independent obligation to produce the entire A-file in removal proceedings. As Defendants previously explained, FOIA is "Congress's generally applicable statutory mechanism for release of agency records," thus the challenged nondisclosure policy "is nothing more than an expression

of Defendants' implementation of the FOIA, which is not arbitrary, capricious, or contrary to law[]" as a matter of law. Defs.' Reply at 1-2. If reliance on FOIA for the production of records not otherwise required to be produced states an arbitrary and capricious claim, every agency with an alleged FOIA backlog and requesters who profess to urgently need records would be subject to the same claim. As presently constituted, Plaintiffs' claim would clearly not be a challenge to a discrete agency action but rather to the effectiveness of the FOIA as a means to obtain records from the government, and subject to dismissal as such. *See id.* at 7-8. That is so whether or not the administrative record here "could reveal" that DHS relies on FOIA to produce the entire A-file "based upon an erroneous analysis of available data regarding the timelines for FOIA." Pls.' Mem. at 14.

Having failed to convince the Court that *Judulang* supports the proposition that the *Dent* guidance could be arbitrary and capricious even in the absence of a disclosure obligation, Plaintiffs shift gears again. They now rely on *Regents*, a case they did not cite in their opposition to Defendants' partial motion to dismiss. In *Regents*, the Court held that it was arbitrary and capricious for DHS to rescind the Deferred Action for Childhood Arrivals ("DACA") program, which had two components, a forbearance policy in which certain noncitizens' removal was deferred, and the extension of certain benefits, such as Social Security and Medicare, to those same noncitizens.  140 S. Ct. at 1901-02. When DHS rescinded the program in its entirety, the Secretary did not separately address the forbearance policy nor reliance interests on the DACA program. *Id.* at 1912-13. The Court held that an agency cannot fail to consider an important part of the original program or ignore potential reliance interests "[w]hen an agency changes course, as DHS did" with its DACA program. *Id.*

Plaintiffs attempt to stretch this holding to somehow signify that arbitrary-and-capricious review must always be available whether or not there exists any underlying legal obligation against which to weigh the agency's action, by arguing that there was no legal requirement that DHS provide noncitizens with the benefits they were afforded under the DACA program and yet the Court found DHS's action to be arbitrary and capricious. Pls.' Mem. at 14. But this was not the Court's holding; what animated *Regents* was DHS's failure to consider (1) keeping the forbearance policy, not the benefits part of the program which DHS *did* consider, and (2) reliance interests in changing its course. *See Regents*, 140 S. Ct. at 1912 (noting DHS had to consider and address its "earlier judgment that forbearance" was "especially justified" for young people). Not so here, where DHS's purported policy has been consistent over time, and in accord with reliance interests by relying on the widely known and accepted mechanism for obtaining records from the government—the FOIA. *Regents* is inapposite.

Finally, in a footnote, Plaintiffs continue to complain that the Court dismissed their claims as to other immigration proceedings. *See* Pls.' Mem. at 15 n.6. Plaintiffs allege no documents or evidence to suggest that some statute, regulation, or rule requires the production of the entire A-file in those immigration proceedings and DHS, in considering that operative law, opted to produce the A-file via FOIA. At most, they have alleged that noncitizens regularly obtain their entire A-file through FOIA. But all that shows is that DHS complies with its FOIA obligations. The Court should deny Plaintiffs' motion for reconsideration.

## II.     The Court Should Not Certify Plaintiffs' Questions for Interlocutory Appeal.

Plaintiffs also ask the Court to certify two questions for interlocutory appeal under 28 U.S.C. § 1292(b), but they fall far short of meeting the requirements for such a certification. Indeed, the First Circuit describes interlocutory appeals under § 1292(b) as "hen's-teeth rare," *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004), and district courts in the First

Circuit routinely deny such requests. *See, e.g., Kenney v. State St. Corp.*, No. CIV.A. 09-10750-DJC, 2011 WL 4344452, at *6 (D. Mass. Sept. 15, 2011) (Casper, J) (declining to certify an interlocutory appeal and noting that such certifications are rare in the First Circuit); *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 21 (D. Mass. 2022) (denying motion to certify interlocutory appeal even though the case posed some difficult and novel questions of law because that alone did not "present the sort of exceptional circumstances warranting certification.").

Section 1292(b) authorizes a district court to certify a question to the Court of Appeals only if it is "of the opinion that [an otherwise unappealable] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiffs' motion should be denied because (1) the Court's March 2023 Memorandum and Order does not involve a controlling question of law as to which there is substantial ground for difference of opinion, and (2) an immediate appeal will not materially advance the ultimate termination of this case.

A.    <u>Plaintiffs' Proposed Questions Are Not Controlling Questions of Law As To Which There Are Substantial Grounds for Differences of Opinion.</u>

Plaintiffs ask the Court to certify the following questions:

1. Whether there is an exception to the First Circuit's rule that "the plausibility standard has no place in APA review," *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013), and, if so, under what circumstances that exception authorizes dismissal of a claim prior to review of the administrative record; and

2. Whether and under what circumstances a plaintiff challenging an affirmative agency policy as arbitrary and capricious must also demonstrate that the policy violates a statute, regulation, or some other legal duty.

Pls. Mem. at 3-5. But the First Circuit has already answered the first question. As discussed above, in *Atieh* the First Circuit identified an exception to its general rule regarding the plausibility standard and APA review. 727 F.3d at 76 n.4. It explained that the exception applies, even when

a plaintiff challenges an agency policy as arbitrary and capricious, "where the agency claims that the underlying premise of the complaint is legally flawed (rather than factually unsupported)." *Id*. And then the court provided a "see, e.g.," citation to *Zixiang Li*, and noted that the case at hand was not such a case. *Id*.

After considering that exception, the Court here dismissed Plaintiffs' APA challenge to the ICE guidance documents issued after the Ninth Circuits' decision in *Dent* even though that guidance arguably reflected discrete agency action. *See* March 2023 Order at 6-9; *see also* Am. Compl. ¶¶ 41-47. Given that the First Circuit has answered Plaintiffs' proposed question and that the Court was able to consider that answer in reviewing the amended complaint here, Plaintiffs' motion to certify the first question should be denied. *See Kenney*, 2011 WL 4344452, at *6 (declining to certify interlocutory appeal because First Circuit provided guidance on the applicable issue); *Johansen v. Liberty Mut. Grp., Inc.*, No. 15-cv-12920-ADB, 2017 WL 937712, at *1 (D. Mass. Mar. 9, 2017) ("A controlling question of law usually involves a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than an application of law to the facts.") (citation omitted). Moreover, the First Circuit's guidance is not especially novel or controversial, as the Ninth Circuit, *see Zixiang Li*, 710 F.3d 1000-01, and other courts agree that a 12(b)(6) dismissal is appropriate when an APA complaint challenging agency policy as arbitrary and capricious is legally flawed. *See, e.g., R.J. Reynolds Tobacco Co. v. United States Dep't of Agric.*, 130 F. Supp. 3d 356, 369-70 (D.D.C. 2015) (Jackson, J.) (collecting D.C. Circuit cases and holding that it is appropriate to decide a Rule 12(b)(6) motion to dismiss in an APA case without the administrative record when the arguments are "about the legal conclusions to be drawn about the agency action.") (cleaned up and citation omitted).

Plaintiffs, nonetheless, argue that the First Circuit "has not decided whether an exception to the 'no plausibility review in APA cases' rule actually exists nor defined that potential exception's scope" by italicizing the words "may" and "possible" in the footnote and claiming that the footnote "had no bearing on the holding in *Atieh*." Pls.' Mem. at 4. This argument elevates form over substance. If the First Circuit intended to create a bright-line rule prohibiting lower courts from considering the plausibility standard in any and every APA case, then it would not have included the footnote. The footnote provides guidance, and the guidance indicates that such an exception exists when the complaint is legally (as opposed to factually) flawed, as was the case in *Zixiang Li*.

Plaintiffs further attempt to distinguish *Zixiang Li* as involving a challenge to an agency's failure to take action that it had no duty to take, rather than a challenge to an agency's affirmative policy. Pls.' Mem. at 4. Their point here seems to be that because *Zixiang Li* is distinguishable, the exception's scope is uncertain. But if *Zixiang Li* were distinguishable, it would only mean that the Court was potentially wrong in applying the exception here and not that the First Circuit has not provided guidance. In all events, *Zixiang Li* is not in fact distinguishable, and this Court correctly applied the exception.

In *Zixiang Li*, plaintiffs claimed that USCIS acted arbitrarily and capriciously by not maintaining a system for correctly monitoring the priority dates of individuals who apply for immigrant visas and the number of pending applications. *Zixiang Li*, 710 F.3d at 1000-01 (describing Plaintiffs' claim as based under 5 U.S.C. § 706(2)(A), permitting challenges to agency actions). Here, Plaintiffs complain that DHS acted arbitrarily and capriciously by not producing noncitizens' entire A-files in the context of removal proceedings and requiring them to instead submit FOIA requests for their entire A-files. Either claim can be described as a decision not to do

something, but both fail for the same legal deficiency—that there is no authority requiring the agency to maintain the monitoring system or produce entire A-files in the context of removal proceedings. *Zixiang Li* is therefore on point, making the Court's reliance on the footnote correct.

As explained above, Plaintiffs' second proposed question misconstrues both the Court's holding and the Ninth Circuit's decision in *Zixiang Li. See supra* 5-6. As a result, it is not a controlling question of law. Because Plaintiffs identify only questions that do not control here and questions for which the First Circuit has already provided guidance and for which there is not room for substantial disagreement, Plaintiffs have not established "exceptional circumstances" warranting interlocutory appeal. *See McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984) (explaining that interlocutory certification "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority."); *Kenney*, 2011 WL 4344452, at *6 (declining to certify interlocutory appeal because First Circuit provided guidance on the applicable issue); *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. CV 15-13069-PBS, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016) (noting that there is substantial ground for difference of opinion "when the circuits are divided and a court follows the minority view" or "where the caselaw in the district courts nationwide is divided."). As such, the Court should deny Plaintiffs' motion to certify an interlocutory appeal.

### B.   An Immediate Appeal Will Not Materially Advance the Ultimate Termination of the Litigation.

An immediate appeal will not materially advance the ultimate termination of this litigation. Notably, Plaintiffs have neither requested a complete stay of these proceedings pending any First Circuit review nor suggested a more modest stay to govern through the Court's consideration of

their current motion.[1] Nonetheless, Plaintiffs contend that certifying their questions for appeal will avoid piecemeal litigation and prevent the parties from having to litigate issues twice. Pls.' Mem. at 9. But that is not so.

Because district court proceedings are not automatically stayed when an interlocutory appeal is certified, the parties would continue to litigate Plaintiffs' APA claim as to affirmative asylum proceedings in the district court concurrently with any interlocutory appeal. 28 U.S.C. § 1292(b) ("The application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."). Based on the schedule the parties proposed (and the Court adopted), the Court may well decide the surviving APA claim before the First Circuit issues a decision on any interlocutory appeal. *See* Amended Joint Statement and (Proposed) Scheduling Order, ECF No. 86, (noting that, assuming no dispute on the sufficiency of the record, summary judgment will likely be fully briefed by the Fall). Additionally, there is no trial or discovery in an APA case, and it is often the timing and energy associated with those tasks that animate whether an interlocutory appeal might advance the termination of the litigation. *See* 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) (noting that "[t]he tradeoff [in considering an interlocutory appeal] is between the risk of an unnecessary trial and the risk of two or more appeals in the same case."). Given the parties' proposed schedule and that this case does not involve trials and discovery, an interlocutory appeal would not materially advance the ultimate termination of this case. *See Dowd v. New England Tel. & Tel.,* No. CIV. A. 89-705,

---

[1] Plaintiffs are wrong to suggest that Defendants have "implicitly acknowledged" the accuracy of Plaintiffs' position. *See* Pls.' Mem. at 9. Defendants oppose Plaintiffs' motion and do not believe that an interlocutory appeal will advance the ultimate termination of this litigation or otherwise result in efficiencies.

1989 WL 118795, at *3 (D. Mass. Aug. 3, 1989) (denying motion to certify in part because an interlocutory appeal would not have "avoided expensive or protracted litigation.").

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Respectfully submitted,

May 8, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify on this 8th day of May 2023 that I have filed this Opposition with the Court's ECF system, which sends notice to Plaintiffs' Counsel identified on the NEF.

/s/ Hilarie Snyder
HILARIE SNYDER
Trial Attorney