**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LEGAL SERVICES, *et al*.

        Plaintiffs,

   v.

UNITED STATES DEPARTMENT OF HOMELAND
    SECURITY, *et al*.

        Defendants.

Case No.: 1:21-cv-10083-DJC

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN ORDER
<u>TO COMPLETE AND/OR SUPPLEMENT THE ADMINISTRATIVE RECORD</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

LEGAL STANDARD ............................................................................................... 4

I.  APA REVIEW AND THE ADMINISTRATIVE RECORD ...................... 4

II.  CHALLENGING THE SUFFICIENCY OF THE ADMINISTRATIVE
RECORD ...................................................................................................... 5

ARGUMENT ............................................................................................................ 6

I.  THE CURRENT ADMINISTRATIVE RECORD IS NOT SUFFICIENT
FOR EFFECTIVE JUDICIAL REVIEW ................................................... 6

    A.  The Current Administrative Record Fails to Explain the Relevant
Factors Relied Upon by DHS in Implementing the Nondisclosure
Policy ............................................................................................... 6

    B.  Plaintiffs Have Identified Specific Documents That May Have
Influenced the Challenged Agency Action but Were Omitted from the
Record ............................................................................................. 8

II.  THE COURT SHOULD GRANT LEAVE FOR PLAINTIFFS TO
CONDUCT LIMITED DISCOVERY, INCLUDING DEPOSITIONS, TO
DETERMINE WHAT MATERIALS ARE NECESSARY TO COMPLETE
OR SUPPLEMENT THE ADMINISTRATIVE RECORD ........................ 9

III.  PLAINTIFFS SHOULD BE PERMITTED TO COMPLETE AND/OR
SUPPLEMENT THE ADMINISTRATIVE RECORD FOLLOWING
DISCOVERY .............................................................................................. 14

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ammex, Inc. v. United States*,
62 F. Supp. 2d 1148 (Ct. Int'l Trade 1999) ..........................................................................7

*Banner Health v. Sebelius*,
945 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................................16

*Boston Redev. Auth. v. Nat'l Park Serv.*,
125 F. Supp. 3d 325 (D. Mass. 2015) ..........................................................2, 4, 6, 9

*Camp v. Pitts*,
411 U.S. 138 (1973) ..........................................................................1, 2, 4, 12

*Center for Food Safety v. Vilsack*,
No. 15-cv-01590, 2017 WL 1709318 (N.D. Cal. May 3, 2017) ..........................................15

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ..........................................................................6, 16

*City of Waltham v. U.S. Postal Serv.*,
786 F. Supp. 105 (D. Mass. 1992) ..........................................................9, 14

*Dolphin Park TT, LLC v. United States*,
162 Fed. Cl. 248 (Fed. Cl. 2022) ..........................................................13, 16

*Dopico v. Goldschmidt*,
687 F.2d 644 (2d Cir. 1982) ..........................................................1, 9, 10, 12

*Emhart Indus. v. New England Container Co.*,
No. C.A. 06-218, 2014 WL 2815674 (D.R.I. June 20, 2014) ..........................................10

*Home Box Off., Inc. v. FCC*,
567 F.2d 9 (D.C. Cir. 1977) ..........................................................1, 14

*Judulang v. Holder*,
565 U.S. 42 (2011) ..........................................................................4, 6, 16

*Maine v. McCarthy*,
No. 1:14-cv-00264-JDL, 2016 WL 6838221 (D. Me. Nov. 18, 2016) ..............................5, 7, 15

*Manker v. Spencer*,
No. 3:18-cv-372, 2019 WL 5846828 (D. Conn. Nov. 7, 2019) ..........................................10, 11

*Miami Nation of Indians of Indiana v. Babbitt,*
  979 F. Supp. 771 (N.D. Ind. 1996) ...........................................................11, 15, 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983)...........................................................................................4, 15

*Northwest Bypass Grp. v. U.S. Army Corps of Eng'rs,*
  No. 06-cv-00258, 2007 WL 1447687 (D.N.H. May 14, 2007) .............................5

*Olsen v. U.S.,*
  414 F.3d 144 (1st Cir. 2005) ............................................................................5, 6

*Penobscot Air Servs., Ltd. v. FAA,*
  164 F.3d 713 (1st Cir. 1999) .................................................................................1

*Pension Benefit Guar. Corp. v. LTV Steel Corp.,*
  119 F.R.D. 339 (S.D.N.Y. 1988) ...........................................................9, 10, 11, 12

*Public Power Council v. Johnson,*
  674 F.2d 791 (9th Cir. 1982) ...............................................................................12

*Regents of Univ. of California v. DHS,*
  No. C 17-05211, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017)............................15

*Sierra Club v. United States Army Corps of Engineers,*
  No. 2:20-cv-00396-LEW, 2022 WL 2953075 (D. Me. July 26, 2022) .......... *passim*

*U.S. v. Bell Petroleum Services, Inc.,*
  718 F. Supp. 588 (W.D. Tex. 1989).....................................................................11

*Univ. of Colorado Health at Mem'l Hosp. v. Burwell,*
  151 F.Supp.3d 1 (D.D.C. 2015) ......................................................................15, 16

*Valley Citizens for a Safe Env't v. Aldridge,*
  886 F.2d 458 (1st Cir. 1989) .................................................................................5

*Vidal v. Duke,*
  No. 16-cv-4756, 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017) ......................10, 11

**Statutes**

5 U.S.C. § 706(2) .......................................................................................4, 5, 6, 15

**Other Authorities**

8 C.F.R. § 103.2(b)(16).......................................................................... *passim*

8 C.F.R. § 208.12 .................................................................................................3, 13

8 C.F.R. § 240.69 .................................................................................................................3

Fed. R. Civ. P. 26 ...............................................................................................................11

Peter C. Alter, *A Record of What? The Proper Scope of an Administrative Record for Informal Agency Action*, 10 U.C. Irvine L. Rev. 1045 (2020) ...........................................10

## PRELIMINARY STATEMENT

Plaintiffs—an immigration law firm, attorneys, and a nonprofit legal services organization—challenge through this Administrative Procedure Act ("APA") action a Department of Homeland Security ("DHS") policy that directs noncitizens and their attorneys to utilize the Freedom of Information Act ("FOIA") to obtain documents that are essential to noncitizens' affirmative asylum proceedings (the "Nondisclosure Policy" or "Policy"). *See* Amend. Compl., ECF No. 57. Plaintiffs seek limited discovery to permit the Court to complete and/or supplement the administrative record (the "Record") produced by Defendants with materials necessary to permit judicial review of the challenged Policy.

"The task of a court reviewing agency action under the APA's 'arbitrary and capricious' standard is to determine whether the agency has examined the pertinent evidence, considered the relevant factors, and 'articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 719 (1st Cir. 1999) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983)). At the center of that review, and essential to it, is an adequate record of the challenged agency action. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Home Box Off., Inc. v. FCC*, 567 F.2d 9, 54 (D.C. Cir. 1977). Where a record is not adequate to permit judicial review—a situation that is more likely occur in cases involving informal agency policies such as this one, as opposed to individual adjudications or formal rulemaking—courts have ordered limited discovery to allow the record to be completed or supplemented with additional materials. *See, e.g.*, *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982).

That relief is warranted here. The administrative record for the Nondisclosure Policy produced by Defendants will frustrate effective judicial review of Plaintiffs' APA claim because it fails to shed *any* light on the agency's adoption of the challenged Policy. The Record contains

no documents, communications, memoranda, or any other agency records from which the Court can discern the relevant factors the agency relied upon when making the decision to adopt the Nondisclosure Policy. It contains nothing that explains *why* one of the Plaintiff attorneys was recently told, at the Boston Asylum Office, that FOIA was the only way to view her clients' Record of Proceeding. Ex. A. Nor does it contain a single reference to 8 C.F.R. § 103.2(b)(16), which the Court has recognized imposes an affirmative disclosure obligation on Defendants, *see* ECF No. 80.

These flaws require correction. Without a complete or adequate administrative record on the decision to implement and utilize the Nondisclosure Policy in affirmative asylum proceedings, there is no effective means through which the Court can determine whether "the agency relie[d] on improper factors" or "failed to consider pertinent aspects of the problem" in adopting it. *See Boston Redev. Auth. v. Nat'l Park Serv.*, 125 F. Supp. 3d 325, 330 (D. Mass. 2015). On the other hand, limited discovery is essential to allowing this case to proceed. It will shed light on the appropriate scope of an adequate record, and allow the parties and the Court to complete and/or supplement the existing record with the materials necessary for meaningful judicial review.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2022 and again on March 16, 2023, this Court granted Defendants' motion to dismiss as it pertains to removal and other immigration proceedings, but allowed Plaintiffs' claim concerning affirmative asylum proceedings to proceed. *See* ECF Nos. 50, 80. Following the Court's March 16 Memorandum and Order, Defendants were required to produce the administrative record—the record of an agency's action or decision that serves as the "focal point" for a court's review on summary judgment in an APA action. *See Camp*, 411 U.S. at 142.

On May 24, 2023, Defendants produced to Plaintiffs the Record and filed a certified index of the Record with the Court. ECF No. 96. The Record consists primarily of proposed rules,

interim rules, and rulemaking comments for what ultimately became 8 C.F.R. §§ 208.12 and 240.69[1]; forms used by applicants in the affirmative asylum process; instructions on how to complete those application forms; discrete portions of the Affirmative Asylum Procedures Manual; and examples of notices sent to asylum applicants during the application and interview process. On June 30, 2023, Plaintiffs notified Defendants by letter of their objections to the sufficiency of the Record. See Ex. B. On July 14, 2023 and July 21, 2023, the Parties met and conferred to discuss Defendants' objections to the sufficiency of the Record. On August 3, 2023, Plaintiffs provided a second letter to Defendants concerning their position on the scope of the administrative record. *See* Ex. C. This letter renewed the same objections Plaintiffs articulated in their June 30 letter, further elaborated on Plaintiffs' objections to the Record, and made several additional requests to supplement or complete the Record.

On September 12, 2023, Defendants sent a letter responding to Plaintiffs' June 30 and August 3 letters. *See* Ex. D. In its response, the government largely denied that the Record was incomplete or needed supplementation. The government did agree to produce two additional pages from the Affirmative Asylum Procedures Manual, and filed an updated certification and index of the Record on September 28, 2023. ECF No. 106.

On September 21, 2023, counsel for Plaintiffs had a final meet and confer with counsel for Defendants, at which time the parties agreed they were at an impasse concerning the scope of the administrative record.

---

[1] The Court's decision denying Defendants' motion to dismiss with regard to asylum proceedings relied in part on 8 C.F.R. §§ 208.12 and 240.69, which "direct asylum applicants to seek documents through FOIA." ECF No. 80 at 3.

<u>**LEGAL STANDARD**</u>

**I.     APA REVIEW AND THE ADMINISTRATIVE RECORD**

Under the APA, a court may set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). In determining whether an agency decision should be set aside under 5 U.S.C. § 706(2), a Court must examine whether the agency "relie[d] on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Boston Redev. Auth.,* 125 F. Supp. 3d at 330; *see also Judulang v. Holder*, 565 U.S. 42, 55 (2011) (policy was not based on relevant factors where it was too disconnected from the "appropriate operation of the immigration system"); *State Farm*, 463 U.S. at 43 (explaining that the agency must "examine the relevant data and articulate a satisfactory explanation for its action").

"[T]he focal point for judicial review" in an APA action brought under 5 U.S.C. § 706(2) is the administrative record. *Camp*, 411 U.S. at 142; *Boston Redev. Auth.*, 125 F.Supp.3d at 330 ("Ordinarily, APA review is limited to the administrative record."). The administrative record consists of "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." *Sierra Club v. United States Army Corps of Engineers*, No. 2:20-cv-00396-LEW, 2022 WL 2953075, at *1 (D. Me. July 26, 2022) (quoting *Maine v. McCarthy*, No. 1:14-cv-00264-JDL, 2016 WL 6838221, at *1 (D. Me. Nov. 18, 2016)). In other words, "[t]he complete or 'whole record' for APA review consists of all the documents and materials that were 'before the agency at the time the decision was made,' which includes 'all documents and materials directly or indirectly considered by the agency.'" *Id.* (internal citations omitted). In compiling the administrative record, "an agency may not skew the [administrative record] in its favor by excluding pertinent but unfavorable information[,] and may not exclude

4

information on the grounds that it did not rely on that information for its final decision." *McCarthy*, 2016 WL 6838221, at *2 (internal quotation marks and citation omitted).

## II.     CHALLENGING THE SUFFICIENCY OF THE ADMINISTRATIVE RECORD

Although agencies are entitled to a "presumption of regularity," in determining whether the administrative record they have compiled is complete, *see Northwest Bypass Grp. v. U.S. Army Corps of Eng'rs*, No. 06-cv-00258, 2007 WL 1447687, at *2 (D.N.H. May 14, 2007), "[t]he fact that review sometimes or often focuses on the initial administrative record does not mean it must, or always, will do so." *Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989). Courts in the First Circuit, as well as in most jurisdictions, recognize a number of circumstances where it might be necessary to order the modification of the administrative record compiled by the agency upon a motion from the party challenging the agency action.

Specifically, upon a showing that an agency record is or may be incomplete or otherwise insufficient to allow for effective judicial review, courts may (1) authorize *limited discovery* to determine the scope of the complete administrative record, and whether supplementation or completion is necessary; (2) *complete the administrative record* with documents that the agency improperly excluded from the record, despite the fact that the document might have influenced the agency's policy or decisions; or (3) *supplement the administrative record* with additional evidence where the record is insufficient to allow for effective judicial review under 5 U.S.C. § 706(2). *See, e.g., Olsen v. U.S.,* 414 F.3d 144, 155-56 (1st Cir. 2005) ("[S]upplementation of the record may be permissible" where there is a "failure to explain administrative action as to frustrate effective judicial review," or a showing that the agency acted in bad faith) (citation omitted)*; S*ierra Club, 2022 WL 2953075, at *2 ("if a court determines that a party has rebutted the presumption of regularity by showing that documents were actually within the 'whole record' but were omitted from the documents the agency certified, a court can order an agency to add the

documents to complete the true administrative record.”); *Boston Redev. Auth*, 125 F.Supp.3d at 330 (“[L]imited discovery may be necessary when a plaintiff shows that it will find material in the agency’s possession indicative of an incomplete record.”).

## ARGUMENT

### I. THE CURRENT ADMINISTRATIVE RECORD IS NOT SUFFICIENT FOR EFFECTIVE JUDICIAL REVIEW

#### A. The Current Administrative Record Fails to Explain the Relevant Factors Relied Upon by DHS in Implementing the Nondisclosure Policy

The Record compiled by Defendants fails to explain the relevant factors relied upon by the agency implementing the Nondisclosure Policy, such that meaningful review under 5 U.S.C. § 706(2) will be frustrated. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971); *Olsen*, 414 F.3d at 155-56. Most critically, the current Record is devoid of any explanation for DHS’s decision to implement and utilize the Nondisclosure Policy in affirmative asylum proceedings. While the current record contains a few references to the agency’s Policy of requiring affirmative asylum applicants to seek documents through FOIA,[2] the Record contains no indication of the reasoning behind the agency’s decision to enact the Nondisclosure Policy, or the “relevant factors” it considered in adopting the Policy. *See Judulang*, 565 U.S. at 55.

This deficiency is illustrated by a recent experience of one of the Plaintiff attorneys in this action, who was informed by an employee at the Boston Asylum Office that if she wanted to review a client’s Record of Proceeding, she would need to submit a FOIA request. *See* Ex. A. The instruction apparently came from a supervisor at the Boston Asylum Office. *Id.* Although

---

[2] For example, one document in the Record—a section of the Affirmative Asylum Procedures Manual—states that in certain circumstances, the asylum officer can give applicants a copy of sworn statements from asylum interviews “without requiring the applicant to file a request under the Freedom of information Act.” *See* ECF No. 106.

this instruction was consistent with the attorney's experience, *id.* at ¶ 5, and the allegations in the Amended Complaint, it is unexplained by the current record. Simply nothing in that record sheds any light on the basis for the Policy that the supervisor was applying—a significant obstacle to meaningful judicial review.

One evident deficiency in the record is Defendants' admitted failure to account for 8 C.F.R. § 103.2(b)(16) (*see* Ex. D at 2), which, as this Court noted in its March 16, 2023 Memorandum and Order, requires that in "asylum matters . . . , USCIS has a duty to allow asylum applicants to 'inspect the record of proceeding which constitutes the basis for the decision.'" ECF No. 80 at 7. The current Record does not contain a single mention of USCIS's duty under 8 C.F.R. § 103.2(b)(16), any explanation of USCIS's understanding of this regulation's requirements, or any indication of whether compliance with this disclosure obligation was considered by the agency when it adopted the Nondisclosure Policy. Without documents concerning 8 C.F.R. § 103.2(b)(16) and DHS's disclosure obligations, and without any explanation of the relevant factors considered by DHS in employing the Nondisclosure Policy, the current Record certified by Defendants is certainly incomplete and insufficient for effective judicial review. S*ee Sierra Club*, 2022 WL 2953075, at *1 ("The whole record 'should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision.'") (citation omitted); *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (Ct. Int'l Trade 1999) ("If the relevant agency decisionmakers considered, even indirectly, any internal guidelines, memoranda, manuals or other materials in reaching its decision, those materials should be included in the record."); *McCarthy*, 2016 WL 6838221, at *2 ("An agency 'may not skew the [administrative record] in its favor by excluding pertinent but unfavorable information.") (citation omitted).

**B.    Plaintiffs Have Identified Specific Documents That May Have Influenced the Challenged Agency Action but Were Omitted from the Record**

The insufficiency of the current Record is further highlighted by Defendants' exclusion of portions of three agency manuals from the Record. Although the agency included parts of these manuals in the Record—thereby seeming to acknowledge that they were "before the agency" when it adopted the Nondisclosure Policy—the agency has refused Plaintiffs' requests to produce the complete manuals.

First, Defendants included in the Record ten sections of the Affirmative Asylum Procedures Manual, along with the manual's table of contents, *see* ECF No. 106, but excluded the majority of the manual from the Record. *See* Ex. C, at 4-5. Some of the withheld sections appear clearly relevant to USCIS's consideration of the Nondisclosure Policy, such as those regarding "file management," "confidentiality," and various other asylum processes that may involve USCIS's handling and disclosure of applicant records. *Id.* Plaintiffs were able to obtain a publicly available copy of a previous version of the Affirmative Asylum Procedures Manual. In a section entitled "Termination Of An Asylum Approval," the manual states that after an asylee receives a Notice of Intent to Terminate ("NOIT") their asylum status, "an asylee or his or her representative *may file a request for information in the asylee's file pursuant to the Freedom of Information Act (FOIA).*" Ex. E, at 8 (emphasis added). But Defendants excluded this relevant portion of the manual from the Record.

Second, Defendants provided only one substantive section of the USCIS Records Manual, along with its table of contents and table of revisions, withholding over 100 sections of the Records Manual. *See* ECF No. 106. The USCIS records manual, which appears to contain written policies concerning the agency's handling of noncitizens' records—including the records of affirmative

asylum applicants and recipients—could well contain information that USCIS considered, or should have considered, in adopting the challenged Policy. *See* Ex. C, at 7-11.

Third, Defendants only included in the record one part of the "Refugee, Asylum and International Operations Directorate Officer Training Asylum Division Officer Training Course." *See* ECF. No. 106. Defendants did not include in the Record a table of contents, so Plaintiffs are unable to determine the subject matter of any other part of the training course. That said, asylum officer training courses, which very likely contain information about DHS's policies in asylum proceedings, could also be relevant to the Court's review of the challenged Policy.

Defendants do not appear to contend that these manuals and training materials were not "before the agency" in its implementation of the Nondisclosure Policy, as Defendants have included very limited portions of these materials in the current Record. *See* ECF No. 106. If these materials were "before the agency" when it decided to implement the Nondisclosure Policy, as Defendants appear to concede, then they must be included in the Record, and their current exclusion provides clear evidence that the current Record is incomplete. *See City of Waltham v. U.S. Postal Serv.*, 786 F. Supp. 105, 116 (D. Mass. 1992); *Sierra Club*, 2022 WL 2953075, at *1.

## II. THE COURT SHOULD GRANT LEAVE FOR PLAINTIFFS TO CONDUCT LIMITED DISCOVERY, INCLUDING DEPOSITIONS, TO DETERMINE WHAT MATERIALS ARE NECESSARY TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD

Limited discovery is appropriate here because, as Plaintiffs have demonstrated, "there is a strong suggestion that the record before the Court [is] not complete," *Dopico*, 687 F.2d at 654, and Plaintiffs are challenging an agency-wide action rather than a specific adjudication.[3] Deposition

---

[3] *See also Boston Redev. Auth.*, 125 F. Supp. 3d at 330 ("[L]imited discovery may be necessary when a plaintiff shows that it will find material in the agency's possession indicative of an incomplete record."); *Pension Benefit Guar. Corp. v. LTV Steel Corp.*, 119 F.R.D. 339, 342 (S.D.N.Y. 1988) ("[T]he absence of both a formal agency proceeding and formal administrative findings suggests that some limited discovery will be useful to ensure that all matters considered

testimony and other discovery will permit the Court to determine whether the record before it will ultimately allow it to conduct the review the APA requires—*i.e.*, to decide whether USCIS acted arbitrarily in light of available information—and to efficiently complete or supplement that record as needed to conduct its review.

Courts have not hesitated to order discovery where needed to preserve their ability to conduct APA review, particularly in cases involving agency-wide policies, as opposed to individual adjudications or formal agency rulemaking.[4] When a plaintiff challenges an agency-wide policy or action rather than a single, formal agency adjudication, limited discovery may be necessary "where the administrative record does not contain evidence of the challenged action," *see Manker v. Spencer*, No. 3:18-cv-372, 2019 WL 5846828, at *19 (D. Conn. Nov. 7, 2019), or "to ensure that all matters considered by [the agency] are brought before the court," *Pension Benefit Guar. Corp.*, 119 F.R.D. at 342; *see also Dopico*, 687 F.2d at 654 (explaining that the determination of what constitutes the "whole" administrative record "may itself present a disputed issue of fact when there has been no formal administrative proceeding").

In *Vidal v. Duke*, for example, the court permitted discovery where the plaintiffs challenged specific agency actions taken by the government after ending the DACA program and the record produced by the defendants "shed[] no light on why the Government allegedly made these collateral decisions." *Vidal v. Duke*, No. 16-cv-4756, 2017 WL 8773110, at *2 (E.D.N.Y. Oct. 17, 2017). The court noted that "[i]nquiry outside the administrative record is appropriate in certain circumstances, including when . . . the absence of formal administrative findings makes such

---

by the [agency] are brought before the court."); *Emhart Indus. v. New England Container Co.*, No. C.A. 06-218, 2014 WL 2815674, at *2 (D.R.I. June 20, 2014) (allowing discovery to determine whether administrative record must be supplemented).

[4] *See* Peter C. Alter, *A Record of What? The Proper Scope of an Administrative Record for Informal Agency Action*, 10 U.C. Irvine L. Rev. 1045 (2020).

investigation necessary in order to determine the reasons for the agency's choice." *Id*. at \*3 (citation omitted); *see also Manker,* 2019 WL 5846828, at \*1-2, 19.

The same is true here. Plaintiffs' challenge is not to a single agency adjudication—like a social security or ERISA proceeding, or even a decision on a single asylum application—where the record underlying the agency's decision will be more clearly defined. Because there appear to be no formal agency findings in connection with the challenged Policy, and nothing in the record sheds light on the reasons for the challenge Policy, limited discovery is appropriate so the parties— and the Court—can determine what a "complete" record should be comprised of. *See, e.g.*, *U.S. v. Bell Petroleum Services, Inc.*, 718 F. Supp. 588, 591 (W.D. Tex. 1989) (allowing discovery "to determine whether the administrative record is complete"); *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 776 (N.D. Ind. 1996) ("[I]t would be improper for this court to allow the federal defendants to determine unilaterally what shall constitute the administrative record and thereby limit the scope of the court's inquiry. For that reason, plaintiffs are entitled to discover any materials, including internal memoranda, guidelines, or hearing transcripts, that are necessary to complete the administrative record."); *Pension Benefit Guar. Corp.*, 119 F.R.D. at 343 ("The underlying rationale for permitting some limited discovery in this action is to ensure the completeness of the administrative record before the court.").

Because the record is so devoid of information explaining the agency's action at issue, a brief discovery period would be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, a limited schedule of deposition and document discovery—even as short as 90 or 120 days, depending on Defendants' ability to respond promptly—would permit the Court to determine the appropriate scope of the complete administrative record, and to ensure that the reasons underlying the challenged Policy are sufficiently explained by Defendants.

For example, deposition testimony of supervisors at the Boston Asylum Office or others in supervisory positions at USCIS may help the parties—and the Court—understand what sources of information the agency considered in implementing the Nondisclosure Policy. *See Dopico*, 687 F.2d at 654 (citing *Citizens to Preserve Overton Park*, 401 U.S. at 420) ("Determining what constitutes an agency's informational base is vital, for review must be based on the whole administrative record[.]"). For one thing, testimony from the supervisor who recently informed one of the plaintiffs that she would need to use FOIA to see the Record of Proceedings for a client's case would help the Court understand what agency guidance—formal or informal—the asylum officer supervisors relied on, which would in turn inform the Court's determination about the appropriate record that must be compiled to permit judicial review. *See Pension Benefit Guar. Corp.*, 119 F.R.D. at 341-42 (permitting "limited discovery," including "testimonial discovery," to "ensure the completeness of the administrative record before the court").

Moreover, if the complete Record—like the current Record—does not adequately "explain administrative action as to frustrate effective judicial review," then deposition discovery also is appropriate to obtain "additional explanation of the reasons for the agency decision." *See Camp*, 411 U.S. at 142-43. "[E]ven when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery. The broadest exception . . . is one which permits expansion of the record when necessary to explain agency action. When there is "such a failure to explain administrative action as to frustrate effective judicial review," the court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary." *Public Power Council v. Johnson*, 674 F.2d 791, 793-94 (9th Cir. 1982) (citation omitted). In this action, deposition testimony may shed some light on the relevant factors

the agency considered (or failed to consider) in implementing the Nondisclosure Policy, especially because the Record compiled by the agency otherwise fails to do so.  *See, e.g.*, *Dolphin Park TT, LLC v. United States*, 162 Fed. Cl. 248, 256 n.3 (Fed. Cl. 2022) (allowing deposition testimony to supplement the administrative record).

In addition to depositions, the Court should allow limited document discovery to ensure that it has an adequate and whole record available for its review.  Such limited written discovery would be informed by deposition testimony, but might include: (1) Requests for Production relating to 8 C.F.R. § 103.2(b)(16), and the extent to which any of that regulation was considered in adopting or implementing DHS's document disclosure policies; (2) Requests for Production for complete versions of the Affirmative Asylum Procedures Manual, the USCIS Records Manual, and the Refugee, Asylum and International Operations Directorate Officer Training Asylum Division Officer Training Course, produced in part by DHS, and other related materials that were before the agency but not yet produced; (3) Requests for Production for any emails or documents to or from DHS leadership or asylum office supervisors discussing the disclosure-related provisions of 8 C.F.R. § 208.12 or 8 C.F.R. § 103.2(b)(16), particularly as they relate to one another and to other disclosure policies; and (4) Interrogatories to DHS requesting information regarding the inclusion of go-file-a-FOIA instructions in 8 C.F.R. § 208.12 and elsewhere, and the agency's application of 8 C.F.R. § 103.2(b)(16).

## III. PLAINTIFFS SHOULD BE PERMITTED TO COMPLETE AND/OR SUPPLEMENT THE ADMINISTRATIVE RECORD FOLLOWING DISCOVERY

Following the completion of limited discovery, Plaintiffs should be permitted to complete and/or supplement the Record with materials necessary to allow this Court to engage in effective judicial review.[5]

*First*, this Court should allow Plaintiffs to complete the Record with any relevant information, documents, or communications that are revealed through limited discovery to have been "before the agency." Without such relief, the Court will be unable to carry out its "obligation" to "test the actions" of the agency against "'the full administrative record that was before [the agency] at the time'" of its decision. *Home Box Off.*, 567 F.2d at 54 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 420). In this case, at a minimum, the withheld portions of the Affirmative Asylum Procedures Manual, the USCIS Records Manual, and the Refugee, Asylum and International Operations Directorate Officer Training Asylum Division Officer Training Course appear to have been "before the agency," when the Nondisclosure Policy was implemented.[6] Limited discovery is also likely to uncover other materials that were "before the agency" in its implementation of the Nondisclosure Policy, and those materials should therefore be added to the Record to ensure that the Court's review is based upon a "complete" administrative record. *See, e.g.*, S*ierra Club*, 2022 WL 2953075, at *6 (holding that plaintiffs could complete

---

[5] The Court may reserve judgment on whether to permit completion and/or supplementation of the administrative record with additional materials until after Plaintiffs have engaged in limited discovery.

[6] Completion of the Record with the withheld portions of these manuals and trainings is appropriate regardless whether the Court finds that limited discovery is inappropriate. *See City of Waltham*, 786 F. Supp. at 116; *Sierra Club*, 2022 WL 2953075, at *1. Therefore, at a minimum, Plaintiffs are entitled to complete the Record with the excluded sections of the asylum manuals and materials described above.

the administrative record with documents that were improperly excluded); *McCarthy*, 2016 WL 6838221, at *2 (holding agency must add document to administrative record).[7]

*Second*, the Court should allow Plaintiffs to supplement the administrative record with any additional materials obtained through discovery that—while not part of the record "before the agency"—nevertheless help explain DHS's decision to implement the Nondisclosure Policy. Supplementation of the administrative record is appropriate where gaps in the record "present[] a patent obstacle to effective judicial review." *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F.Supp.3d 1, 20 (D.D.C. 2015).

Because the current Record entirely fails to explain the relevant factors relied upon by the agency implementing the Nondisclosure Policy—including whether the agency considered how it would meet its duty to permit inspection of the Record of Proceeding as required by 8 C.F.R. § 103.2(b)(16)—supplementation may well be necessary to ensure the Court's ability to conduct the review that 5 U.S.C. § 706(2) requires. For example, documents and communications concerning 8 C.F.R. § 103.2(b)(16) should supplement the administrative record even if they were not "before the agency," as DHS's lack of consideration of its obligations under this regulation would be pertinent to the analysis of whether DHS considered all relevant factors when implementing the Nondisclosure Policy. *See State Farm*, 463 U.S. at 43 (agency action is arbitrary

---

[7] *See also Center for Food Safety v. Vilsack*, No. 15-cv-01590, 2017 WL 1709318, at *6 (N.D. Cal. May 3, 2017) (granting motion to complete administrative record so agency can ensure "that it includes all documents and materials considered by the agency"); *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 778 (N.D. Ind. 1996) (granting plaintiff's motion to complete the administrative record with materials such as draft reports and agency notes, logs, guidelines, directives, and manuals); *Regents of Univ. of California v. DHS*, No. C 17-05211, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) (granting motion to complete administrative record upon evidence that relevant materials were excluded from the record, and requiring Defendants "to complete the administrative record by adding to it all emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision").

and capricious if agency "entirely failed to consider an important aspect of the problem"); *see also Judulang*, 565 U.S. at 55. Even beyond § 103.2(b)(16), the record is devoid of agency guidance concerning the reasons for the adoption of document disclosure policies, such as internal agency memoranda and communications regarding document disclosure policies, procedures, and practices. But USCIS's document disclosure policies and practices in immigration proceedings— including in affirmative asylum proceedings—are especially pertinent to this action, and materials that discuss any such policies and procedures should supplement the Record. The Court should allow Plaintiffs to supplement the Record with any additional, relevant materials that are uncovered in limited discovery that would help to explain the "factors that were considered," and not considered, by Defendants in implementing the Nondisclosure Policy. *See Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420.[8] Without the addition of such materials to the current Record, there cannot be effective judicial review of the challenged Policy.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiff's Motion for leave to conduct limited discovery in order to complete and/or supplement the administrative record.

---

[8] *See also Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996) ("[T]he court cannot determine whether the final agency decision reflects the rational outcome of the agency's consideration of all relevant factors when the court has no idea what factors or data were in fact considered by the agency."); *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 26 (D.D.C. 2013) (allowing supplementation of the administrative record because the agency excluded from the record documents that may have been adverse to its decision); *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 20 (D.D.C. 2015) (granting motion to supplement administrative record because gaps in record were an "obstacle to effective judicial review"); *Dolphin Park TT, LLC v. U.S.*, 162 Fed. Cl. 248, 256 n.3 (Fed. Cl. 2022) (granting motion to supplement the administrative record because without supplementation, the Court is unable "to perform an effective review").

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs respectfully request oral argument on this motion in order to assist the Court in its consideration of the issues.

Dated: November 10, 2023                    Respectfully submitted,

*/s/ Adriana Lafaille*
Adriana Lafaille (BBO #680210)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
ALafaille@aclum.org

*/s/ John T. Montgomery*
John T. Montgomery (BBO #352220)
Thanithia Billings (BBO #699018)
Amanda L. Pine (BBO #707611)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000
John.Montgomery@ropesgray.com

Meghan Gilligan Palermo (admitted pro hac vice)
Deanna Minasi (admitted pro hac vice)
Phillip Kraft (admitted pro hac vice)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
Meghan.GilliganPalermo@ropesgray.com