**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LEGAL SERVICES, *et al.*,

                Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF HOMELAND
        SECURITY, *et al.*,

                Defendants.

**DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
LEAVE TO CONDUCT LIMITED
DISCOVERY IN ORDER TO
COMPLETE AND/OR
SUPPLEMENT THE
ADMINISTRATIVE RECORD**

Case No.: 1:21-cv-10083-DJC

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
BRIGHAM J. BOWEN
Assistant Branch Directors

HILARIE SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 305-0747
hilarie.e.snyder@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT .......................................................................................................................... 8

    I.   Plaintiffs Have Not Met Their Burden to Show that Discovery is Necessary Based on the Incompleteness of the Record. ...................................................................................... 8

    II.  Plaintiffs Have Not Met Their Burden to Show That the Record Requires Supplementation or Completion. ................................................................................... 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Air Transport Ass'n of America, Inc. v. Nat'l Mediation Bd*,
    663 F.3d 476 (D.C. Cir. 2011) ............................................................................ 7

*Atieh v. Riordan*,
    727 F.3d 73 (1st Cir. 2013) ........................................................................... 6, 12

*Banner Health v. Sebelius*,
    945 F. Supp. 2d 1 (D.D.C. 2013), *vacating decision in part on reconsideration*,
    No. 10-01638, 2013 WL 11241368 (D.D.C. July 30, 2013) .................................. 15

*Bar MK Ranches v. Yuetter*,
    994 F.2d 735 (10th Cir. 1993) ...................................................................... 6, 15

*Boston Redevelopment Auth. v. Nat'l Park Serv.*,
    838 F.3d 42 (1st Cir. 2016) ............................................................................ 7, 12

*Camp v. Pitts*,
    411 U.S. 138 (1973) ........................................................................................... 6

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ........................................................................................... 6

*City of Taunton v. U.S. Env't Prot. Agency*,
    895 F.3d 120 (1st Cir. 2018) ..................................................................... 6, 14, 15

*City of Waltham v. U.S. Postal Serv.*,
    786 F. Supp. 105 (D. Mass. 1992), *aff'd*, 11 F.3d 235 (1st Cir. 1993) ...................... 6

*Dent v. Holder*,
    627 F.3d 365 (9th Cir. 2010) .............................................................................. 3

*Dolphin Park TT, LLC v. United States*,
    162 Fed. Cl. 248 (Fed. Cl. 2022) ...................................................................... 12

*Dopico v. Goldschmidt*,
    687 F.2d 644 (2d Cir. 1982) .............................................................................. 12

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ........................................................................................... 6

*Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan*,
    937 F. Supp. 2d 202 (D.P.R. 2012), *aff'd*, 802 F.3d 99 (1st Cir. 2015) ...................... 7

iii

*Manker v. Spencer*,
   No. 3:18-cv-372, 2019 WL 5846828 (D. Conn. Nov. 7, 2019)................................ 13

*Marcum v. Salazar*,
   751 F. Supp. 2d 74 (D.D.C. 2010) ................................................................. 15

*Miami Nation of Indians of Ind. v. Babbitt*,
   979 F. Supp. 771 (N.D. Ind. 1996) ................................................................ 12

*Nat'l Mining Ass'n v. Jackson*,
   856 F. Supp. 2d 150 (D.D.C. 2012) ............................................................... 15

*NVE Inc. v. Dep't of Health & Hum. Servs.*,
   436 F.3d 182 (3d Cir. 2006)................................................................... 6, 7

*Olsen v. United States*,
   414 F.3d 144 (1st Cir. 2005) ............................................................. 6, 7, 14

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
   448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................. 15

*Pension Benefit Guaranty Corp. v. LTV Steel Corp.*,
   119 F.R.D. 339 (S.D.N.Y 1988) ................................................................... 13

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   No. 2:20-cv-00396, 2022 WL 2953075 (D. Me. July 26, 2022) ................... 6, 7, 14

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
   10 F.4th 869 (D.C. Cir. 2021)..................................................................... 13

*United States v. Bell Petroleum Services, Inc.*,
   718 F. Supp. 588 (W.D. Tex. 1989)................................................................ 12

*Univ. of Colo. Health at Mem'l Hosp. v. Burwell*,
   151 F. Supp. 3d 1 (D.D.C. 2015), *granting motion for reconsideration*,
   164 F. Supp. 3d 56 (D.D.C. 2016) ............................................................. 7, 15

*USA Grp. Loan Servs., Inc. v. Riley*,
   82 F.3d 708 (7th Cir. 1996) ......................................................................... 7

*Vidal v. Duke*,
   No. 16-CV-4756, 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017).......................... 12

**STATUTES**

5 U.S.C. § 706.............................................................................................. 6

iv

**REGULATIONS**

8 C.F.R. § 103.2 ................................................................................................ 9, 10

8 C.F.R. § 208.11 ................................................................................................... 9

8 C.F.R. § 208.12 ........................................................................................... *passim*

8 C.F.R. § 240.69 ............................................................................................ 3, 5, 9

## INTRODUCTION

The claim in this case has been narrowed, through two rounds of motions to dismiss, to Plaintiffs' claim that Defendants have a so-called "Nondisclosure Policy" pursuant to which they ignore their legal obligations to disclose records during the affirmative asylum process and instead tell noncitizens and their counsel to file a Freedom of Information Act ("FOIA") request for the records. Plaintiffs contend that this so-called policy is arbitrary and capricious and contrary to law, in violation of the Administrative Procedure Act ("APA"). This being an APA case, judicial review is based on the Administrative Record for the challenged policy. The purported "Nondisclosure Policy," however, is a policy of Plaintiffs' own invention and does not exist—a position that Defendants have consistently taken in this case. Thus, the Administrative Record does not contain material the agency considered or relied upon in adopting the purported Nondisclosure Policy, because it does not exist, and instead contains information about Defendants' actual policy, which is to produce certain information during the ordinary course of U. S. Citizenship and Immigration Services' ("USCIS's") consideration of an affirmative asylum application and generally prohibit other discovery, with FOIA being available to fill the gap.

In the instant motion, Plaintiffs claim the Administrative Record is incomplete and seek discovery to determine what a complete record should consist of, principally because the Record does not contain the reasoning behind the agency's purported decision to enact the "Nondisclosure Policy" or the relevant factors the agency considered in adopting the "Nondisclosure Policy." But discovery is disfavored in APA cases, and it is simply not possible to create an Administrative Record for a non-existent policy. Nor does the Record Defendants did compile frustrate judicial review of Plaintiffs' claim. Armed with that Record, Plaintiffs are free to argue at summary judgment that USCIS's actual disclosure policy is arbitrary and capricious or contrary to law.

Plaintiffs also speculate that portions of two agency manuals and training documents should have been included in the Record, but their rank speculation is insufficient to overcome the presumption of regularity afforded to Defendants' designation of the Record. The Record is complete, and Plaintiffs' motion should be denied.

## <u>BACKGROUND</u>

Plaintiffs' original complaint was a sweeping challenge to the alleged "systematic failure of the Department of Homeland Security ('DHS') to produce to noncitizens and their counsel the records that are necessary to support their claims and defenses or eligibility for benefits in a range of civil immigration proceedings." Compl. ¶ 1, ECF No. 1. The crux of the complaint was that DHS has a so-called "Nondisclosure Policy" of denying noncitizens and their counsel timely access to relevant records in violation of (largely undefined) disclosure obligations and instead directing Plaintiffs to request those records through FOIA. *Id*. ¶¶ 1-4. Plaintiffs asserted that the alleged policy violated the APA because it was "arbitrary, capricious, an abuse of discretion, unconstitutional and otherwise incompatible with law," and asked the Court to enjoin it and order DHS to comply with its disclosure obligations. *Id*. ¶¶ 86-87, and Prayer for Relief.

DHS moved to dismiss the complaint. ECF No. 23. Among other things, DHS argued that despite Plaintiffs' labeling an alleged practice across individual immigration proceedings a policy and giving it a name—the "Nondisclosure Policy"—the complaint was actually a broad, programmatic challenge rather than a challenge to discrete agency action, a requirement for an APA claim. In response to this argument, the Court allowed the APA claim as to USCIS's consideration of affirmative asylum applications based on the complaint's citation to DHS regulations "that direct asylum applicants to file FOIA requests instead of seeking discovery for relevant documents to which the regulations purportedly require access . . . ." Mem. & Order at

15, ECF No. 50 (citing 8 C.F.R. §§ 208.12; 240.69). As to the other proceedings described in the complaint, namely removal proceedings, the Court held the complaint did not point to comparable regulations and thus failed to allege the existence of a discrete agency action. *Id*. at 15-17.

Plaintiffs filed an amended complaint and DHS again moved to dismiss. DHS argued that the amended complaint failed to identify any statute or regulation requiring DHS to produce in removal proceedings the entire contents of a non-citizen's A-file (the records Plaintiffs claim must be produced in removal proceedings). Rather, the amended complaint merely took issue with how DHS interpreted and implemented a Ninth Circuit decision about the provision of A-files in removal proceedings, *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010). DHS explained why its interpretation of *Dent* as requiring it to produce only those documents in the A-file that are relevant to the particular removal proceedings, as opposed to the entirety of the A-file in every case—a position that multiple courts have agreed with—and defaulting to FOIA for the remainder of the A-file, is sensible and therefore not arbitrary and capricious or contrary to law. Defs.' Mem. in Supp. of Partial Mot. to Dismiss at 9-16, ECF No. 63; *see also* Defs.' Reply in Supp. of Partial Mot. to Dismiss at 2-8, ECF No. 68. DHS emphasized in its reply brief that relying on FOIA in this way could not be arbitrary and capricious or contrary to law, as a matter of law, because "FOIA is a generally applicable statute that provides individuals the right to request records from agencies; there is nothing inherently unlawful or arbitrary and capricious about an agency employing that statutory scheme where there is otherwise no applicable disclosure obligation." ECF No. 68 at 5. If it could be arbitrary and capricious to rely on FOIA for the production of records not otherwise required to be produced, such a theory would amount to a broad programmatic challenge to how documents are exchanged in removal proceedings and to the effectiveness of FOIA generally— i.e., not discrete agency action. *Id*. at 7.

In a decision issued on March 16, 2023, the Court agreed with DHS that the amended complaint fails to plausibly allege a claim regarding removal proceedings. Mem. & Order at 5-9, ECF No. 80. Plaintiffs moved for reconsideration or for certification of an interlocutory appeal. Pls.' Mem. of Law in Supp. of their Mot. to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b), or in the Alternative, for Reconsideration of the Court's March 16, 2023 Mem. & Order, ECF No. 88. The Court denied both requests. Electronic Order, ECF No. 103 (Sept. 5, 2023). In the meantime, DHS answered the surviving portions of the amended complaint—that is, allegations related to Plaintiffs' APA claim about a "Nondisclosure Policy" allegedly applied by USCIS in adjudicating affirmative asylum applications. Defs.' Answer at 1, ECF No. 90. In the Answer, DHS denied that it has a "Nondisclosure Policy" pursuant to which it ignores its legal obligations to disclose records in affirmative asylum proceedings and instead responds to any suggestion that DHS has a duty to disclosure records in those proceedings by telling noncitizens and their lawyers to "go file a FOIA [request]." *See, e.g.*, Am. Compl. for Declaratory & Injunctive Relief ¶ 4, ECF No. 57; ECF No. 90 ¶¶ 3, 4, 26, 27, 30.

DHS also produced the Administrative Record for the surviving claim to Plaintiffs and filed the Index for the Administrative Record. Defs.' Notice of Filing of Index of Certified Admin. Record, ECF No. 96. The index lists 49 records. Index of Certified Admin. Record, ECF No. 96-1. Because there is no "Nondisclosure Policy" of denying noncitizens and their counsel access to records during the affirmative asylum process and requiring them instead to file a FOIA request for those records, there can be no documents or materials directly or indirectly considered by agency decision-makers in adopting that purported policy. Rather than submitting nothing, DHS compiled the Administrative Record for its actual policy, which is that USCIS produces certain documents in the normal course of its consideration of an affirmative asylum application. Thus,

4

the administrative record consists of the agency's guidance and procedures for exchanging information and documents with affirmative asylum applicants and their counsel during USCIS's adjudication of the asylum application, as well as the regulatory history for the two regulations the Court relied on in allowing this claim to proceed, 8 C.F.R. §§ 208.12; 240.69. Defendants' Certification ¶ 3, attached hereto as Exhibit A; *see also* Pls.' Ex. D at 1, ECF No. 110-4; ECF No. 96-1.

Plaintiffs contended that the record was incomplete, and the parties met and conferred. Pls.' Exs. B-D, ECF No. 110-2 – 110-4. As a result of those conferrals, DHS added two documents to the Administrative Record and filed an Amended Index. ECF No. 106. The certification that accompanied the amended Administrative Record stated that the Amended Index, ECF No. 106-1, reflects:

> a true and complete description of the non-privileged documents that were directly or indirectly considered in connection with the promulgation of 8 C.F.R. § 208.12(b) and 8 C.F.R. § 240.69, as well as the agency's guidance and procedures regarding exchanging information and documents with affirmative asylum applicants and their counsel during USCIS's adjudication of the applicant's Form I-589, Application for Asylum and for Withholding of Removal.

Exhibit A, Defendants' Certification ¶ 3.

Unsatisfied, Plaintiffs filed the instant motion for leave to conduct limited discovery in order to complete and/or supplement the Administrative Record. ECF No. 109. They claim that the Administrative Record is incomplete because it does not contain any documents showing the factors that the agency considered or relied on when making the decision to adopt the "Nondisclosure Policy" that Plaintiffs invented. The motion does not seek as relief the addition of certain materials to the Record, but rather seeks leave to conduct discovery to ascertain "what a 'complete' record should be comprised of." Pls.' Mem. of Law in Supp. of their Mot. for Leave to

Conduct Limited Discovery in Order to Complete and/or Suppl. the Admin. R. at 11, ECF No. 111.

## STANDARD OF REVIEW

The APA instructs a court reviewing agency action to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. That "record consists of all documents and materials directly or indirectly considered by agency decision-makers" in making the challenged decision. *City of Waltham v. U.S. Postal Serv.*, 786 F. Supp. 105, 116 (D. Mass. 1992) (cleaned up), *aff'd*, 11 F.3d 235 (1st Cir. 1993). The agency's designation of the record is entitled to a presumption of regularity that a party can overcome only by "clear evidence" to the contrary. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) ("the Secretary's decision is entitled to a presumption of regularity"); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *Sierra Club v. U.S. Army Corps of Eng'rs*, No. 2:20-cv-00396, 2022 WL 2953075, at *1 (D. Me. July 26, 2022).

Because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), discovery is generally not necessary and is often prohibited in APA cases. *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) ("APA review, however, involves neither discovery nor trial."). If "'the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *City of Taunton v. U.S. Env't Prot. Agency*, 895 F.3d 120, 127 (1st Cir. 2018) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005). Thus, there is a "strong presumption against discovery into administrative proceedings," *NVE Inc. v. Dep't of Health &*

*Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006); *see also USA Grp. Loan Servs., Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996) ("Discovery is rarely proper in the judicial review of administrative action."); *Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan*, 937 F. Supp. 2d 202, 204-05 (D.P.R. 2012) ("[T]he narrowness of the APA action for judicial review weighs heavily against discovery."), *aff'd*, 802 F.3d 99 (1st Cir. 2015).

Accordingly, the standard for conducting discovery in an APA case is high. *See Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 48 (1st Cir. 2016) (noting discovery is rare in APA cases). Courts have allowed limited discovery "where . . . the complaining party has insinuated either that the agency acted in bad faith or that the administrative record is incomplete." *Id*. And a party is required to make a "significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of one" of those exceptions. *Air Transport Ass'n of America, Inc. v. Nat'l Mediation Bd*, 663 F.3d 476, 487-88 (D.C. Cir. 2011); *see also Olsen*, 414 F.3d at 155-56 (affirming district court decision denying motion to conduct discovery in an APA case because plaintiff made "scant showing" that "information he would have sought related to the question of whether" the agency abused its discretion). After discovery, courts occasionally exercise their discretion to (1) supplement the record with extra-record evidence that was not before the decisionmaker or (2) order the government to complete or correct the record with material that should have been included because the decisionmaker considered it but was nonetheless omitted. *See Sierra Club*, 2022 WL 2953075, at *1, 2 (distinguishing between completing and supplementing the record); *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015) (distinguishing the two ways in which a litigant may seek to add to an administrative record), *granting motion for reconsideration*, 164 F. Supp. 3d 56, 68-69 (D.D.C. 2016).

## ARGUMENT

I.    **Plaintiffs Have Not Met Their Burden to Show that Discovery is Necessary Based on the Incompleteness of the Record.**

Plaintiffs do not attempt to show any bad faith or improper behavior by Defendants in compiling the record. Rather, their request to conduct discovery in this APA case is based on their tautological contention that the record is incomplete because they insist the Administrative Record "contains no indication of the reasoning behind the agency's decision to enact the Nondisclosure Policy, or the 'relevant factors' it considered in adopting the Policy." ECF No. 111 at 6. But that is because there is no Nondisclosure Policy to begin with, as DHS has consistently maintained in this case. The agency cannot manufacture reasoning, much less a record, for a policy that does not exist and that it did not adopt in the first place. Thus, there is not a policy requiring that noncitizens and their counsel obtain all affirmative-asylum-related documents and information through FOIA. USCIS's actual policy is that in considering an affirmative asylum application, USCIS produces, without requiring a FOIA request, certain documents to the noncitizen and their counsel in conjunction with its normal case processing procedures. Beyond that, FOIA provides individuals the right to request and receive, unless exempt, records from agencies.

Given these realities, the Administrative Record includes the guidance provided to asylum officers about when and what documents should be exchanged between USCIS and the applicants and their counsel. *See* Exhibit A, Defendants' Certification ¶ 3 (Administrative Record includes "agency's guidance and procedures regarding exchanging information and documents with affirmative asylum applicants and their counsel."). It also includes the materials that the decisionmaker considered, directly or indirectly, in promulgating 8 C.F.R. § 208.12(b), which provides that asylum applicants are not entitled to conduct discovery during the affirmative asylum

process but are free to use FOIA to obtain documents.[1] Nonetheless, Plaintiffs believe there should be more documents containing the agency's "reasoning" that FOIA is the vehicle for requesting documents not normally produced, ECF No. 111 at 6. Contrary to Plaintiffs' counterfactual insistence, the reasoning is self-evident. FOIA provides a statutory right to request records from any agency across the federal government, for any purpose, and 8 C.F.R. § 208.12(b)'s reference to FOIA clarifies that the affirmative asylum-related regulations do not adversely impact that right.

DHS will argue at summary judgment that the information it routinely exchanges with noncitizens and their counsel during the course of its consideration of an affirmative asylum application meets any applicable statutory or regulatory disclosure requirements. For example, in compliance with 8 U.S.C. § 103.2(b)(7), an applicant need not file a FOIA request to obtain a copy of a sworn statement. *See* Administrative Record ("AR") at USCIS3219-20 (Administrative Record excerpts attached hereto as Exhibit B). *See also, e.g., id.* at USCIS3229 (noting production of Department of State Bureau of Democracy, Human Rights and Labor comments in compliance with 8 C.F.R. § 208.11(c)). Plaintiffs are free to argue otherwise but have not explained why the Administrative Record the agency compiled prevents them from doing so.

Plaintiffs further complain that the Administrative Record does not contain any records about USCIS's understanding of the requirements of 8 C.F.R. § 103.2(b)(16), which provides that an applicant "shall be permitted to inspect the record of proceeding which constitutes the basis for the decision," with certain exceptions. *See also* ECF No. 80 at 7 (citing 8 C.F.R. § 103.2(b)(16)).

---

[1] Out of an abundance of caution, DHS included in the Administrative Record materials the decisionmaker considered, directly or indirectly, in promulgating 8 C.F.R. § 240.69 because the Court and Plaintiffs cited that section. Section 240.69, however, by its terms applies to a determination as to whether an applicant is eligible for suspension of deportation or special rule cancellation of removal, not USCIS's consideration of an affirmative asylum application. In contrast, 8 C.F.R. § 208.12, by its terms, applies to an asylum application.

In relevant part, § 103.2(b)(16) states:

> Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
> (i)     Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

8 C.F.R. § 103.2(b)(16). Contrary to Plaintiffs' argument, the Administrative Record includes information about what the record of proceeding (ROP) is and what types of records it may contain, such as immigration benefit applications, the notice of intent to deny ("NOID"), responses to the NOID, interview notices, sworn statements, and decision letters. Exhibit B, AR at USCIS3326-28, 3371. It also includes information about what types of records are *not* considered part of the ROP, such as the asylum officer's interview notes and memoranda to file. *Id*. And it contains information about when the agency generally discloses to the noncitizen the types of records contained in the ROP, including guidance about the timing and contents of the NOID, which identifies negative information and provides the applicant a chance to respond, and about the timing and contents of the agency's decision letter. *Id*. at USCIS3228-30, 3235-50, 3265-95, 3305-06; *see also* ECF No. 106-1 at 2-3. Thus, there are documents in the Administrative Record that address the ROP, which is the subject of Plaintiffs' declaration of Stefanie Fisher. *See* ECF No. 110-1 (asserting that Fisher was denied access to a ROP at a USCIS asylum office and told to file a FOIA request for it). And, once again, the Administrative Record contains the materials the decisionmaker considered in promulgating 8 C.F.R. § 208.12(b), which provides that asylum applicants are not entitled to

conduct discovery during the affirmative asylum process but are free to use FOIA to obtain documents.[2]

Plaintiffs also point as evidence that the Record is incomplete to the fact that DHS only included portions of two manuals and a training document in the Record, rather than the two manuals in their entirety and all trainings. ECF No. 111 at 8-9. But Plaintiffs provide nothing more than their own rank speculation that excluded portions of the manuals and trainings were considered or relied upon by the agency in deciding what information to provide to noncitizens and their counsel during the  asylum process—the standard for inclusion in the Record. DHS included in the Record the portions of the manuals and the training document that speak to information and document exchange among USCIS and the applicant and their counsel, along with the manuals' table of contents, and excluded the rest as outside the scope of the action challenged. *See* Exhibit A, Certification; *see also* Pls' Ex. D, Sept. 12, 2023 Snyder Letter, ECF No. 110-4. The only concrete example Plaintiffs provide of a portion of these documents that should have been included in the Record is a section in the Affirmative Asylum Procedures Manual entitled "Termination Of An Asylum Approval." ECF No. 111 at 8. But Plaintiffs' claim is that "DHS withholds information that may be used to deny [asylum] applications with USCIS." ECF No. 57 ¶ 30. *See also* ECF No. 50 at 15 (citing paragraph 32 of the original complaint). It does not extend to the termination of an already-approved asylum application. Moreover, the cited provision does not speak to any agency decision about the exchange of documents and, instead, merely provides

---

[2] As a practical matter, according to the few details provided in Ms. Fisher's declaration, it is unlikely that the ROP for the case Ms. Fisher inquired about would have contained much beyond the asylum application submitted by her client and the Form G-28, Notice of Entry of Appearance, that she submitted. The case was ongoing, so there would not have been a notice of intent to deny or a decision letter. Nor would any notes taken by the asylum officer during her client's first two interviews, or other work papers, have been part of the ROP. Exhibit B, AR at USCIS3328, 3371.

logistical instructions for instances in which a noncitizen happens to have a pending FOIA request. *See* Pls.' Ex. E, ECF No. 110-5.

For all the above reasons, Plaintiffs have not shown that they will find material in the agency's possession indicative of an incomplete record. The cases on which Plaintiffs rely where discovery was permitted based on a finding that the record was incomplete are therefore inapposite. For example, in *Dopico v. Goldschmidt*, 687 F.2d 644 (2d Cir. 1982), a case upon which Plaintiffs principally rely, the Second Circuit held that the district court improperly granted summary judgment because it did not permit the plaintiffs some limited discovery to explore whether some portions of the administrative record were not provided on the basis that there was a "strong suggestion" that the record was incomplete because of the absence of a specific document that was "fundamental" to the decision making. *Id.* at 654. *See also Dolphin Park TT, LLC v. United States*, 162 Fed. Cl. 248, 257 n.3 (Fed. Cl. 2022) (allowing discovery only after finding "numerous and significant inconsistences, conflicts, and contradictions currently within the record"); *Vidal v. Duke*, No. 16-CV-4756, 2017 WL 8773110, at *2 (E.D.N.Y. Oct. 17, 2017) (allowing discovery only as to non-APA, constitutional and equitable claims relating to collateral decisions that were not reflected in the administrative record); *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 776 (N.D. Ind. 1996) (allowing discovery after finding AR incomplete).[3]

---

[3] Plaintiffs also cite *United States v. Bell Petroleum Services, Inc.*, 718 F. Supp. 588 (W.D. Tex. 1989). ECF No. 111 at 11. That court seemingly allowed discovery without ever addressing whether the plaintiffs made the requisite showing of incompleteness. 718 F. Supp. at 591 (authorizing discovery because "the discovery process is meant to give litigants an opportunity to leave no stone unturned."). This holding is inconsistent with First Circuit precedent that generally precludes discovery in APA cases, *see Atieh*, 727 F.3d at 76, unless the administrative record is likely incomplete. *Boston Redevelopment Auth.*, 838 F.3d at 48.

Moreover, Plaintiffs' are wrong that discovery is appropriate because courts do not "hesitate[]" to order discovery "in cases involving agency-wide polices." ECF No. 111 at 10. The opposite is true. Courts routinely rely on administrative records in cases involving agency-wide policies. *See, e.g., Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 872, 878 (D.C. Cir. 2021) (labor unions challenge to national risk reduction regulation limited to administrative record). The cases that Plaintiffs cite where discovery was permitted are easily distinguishable. In *Manker v. Spencer*, a class action, the court allowed limited discovery because the agency's administrative record included only the individual adjudications of the two named plaintiffs, as opposed to any records regarding the challenged national policy or the rest of the class. No. 3:18-cv-372, 2019 WL 5846828, at *19-20 (D. Conn. Nov. 7, 2019). And in *Pension Benefit Guaranty Corp. v. LTV Steel Corp.*, the court allowed limited discovery after describing the circumstances there as "unusual," noting the "relatively small number" of agency-created documents in the administrative record, identifying the absence of "formal administrative findings," and evaluating the case as one of first impression that raised novel and complex issues. 119 F.R.D. 339, 342 (S.D.N.Y 1988). Here, Plaintiffs do not identify any "unusual" circumstances or a particularly small number of documents, and the Administrative Record includes the records relating to USCIS's national disclosure policies. Moreover, to the extent that Plaintiffs challenge the general bar to discovery in § 208.12(b), they contest a decades-old notice-and-comment regulation for which the Record includes the relevant "findings." *See* Exhibit A, Defendants' Certification.

An additional reason to reject Plaintiffs' request is that they do not in fact seek "limited" discovery—even though they concede that their request should be so limited. Despite calling it "limited," the discovery Plaintiffs' seek is constrained only by the amount of time they expect it

13

to last—"as short as 90 to 120 days"—but even that is only if Defendants satisfy their view of promptness.  ECF No. 111 at 11. The scope of discovery Plaintiffs seek is broad and expansive and includes depositions and document discovery. *Id*. at 11-13. It is clear from their request that Plaintiffs want to conduct a fishing expedition to try to find a non-existent policy, contrary to the Administrative Record that contains the contours and basis for the actual policy. This is sure to mire the parties and the Court in discovery for an extended period of time. The Court should deny Plaintiffs' request to conduct "limited discovery."

## II.    Plaintiffs Have Not Met Their Burden to Show That the Record Requires Supplementation or Completion.

In a footnote, Plaintiffs claim that "[c]ompletion of the Record with the withheld portions of [the two USCIS manuals and additional trainings] is appropriate regardless whether the Court finds that limited discovery is inappropriate," *id.* at 14 n.6, despite the fact that their motion only asks for discovery to determine the appropriate scope of the Record and to supplement the Record with any additional materials obtained through discovery. Even if this were sufficient to raise supplementation or completeness now as the relief sought, Plaintiffs do not meet the standard for supplementing or completing the Record with the full manuals and all training documents.

Courts occasionally exercise their discretion to (1) supplement the record with extra-record evidence that was not before the decisionmaker or (2) order the government to complete or correct the record with material that should have been included because the decisionmaker considered it but was nonetheless omitted. *See Sierra Club*, 2022 WL 2953075, at *1-2. Courts "may consider supplemental evidence [of extra-record material] to facilitate [their] comprehension of the record or the agency's decision" when "faced with a 'failure to explain administrative action as to frustrate effective judicial review.'" *City of Taunton*, 895 F.3d at 127 (quoting *Olsen*, 414 F.3d at 155-56).

14

This supplementation is the exception and not the rule. *Id*. And, as explained above, supplementation is not appropriate here because the Administrative Record explains DHS's disclosure policies and does not frustrate judicial review of those policies.

Further, because the administrative record is entitled to a presumption of regularity, *Bar MK Ranches*, 994 F.2d at 740, courts require completion only when a "plaintiff [ ] put[s] forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Univ. of Colo. Health*, 151 F. Supp. 3d at 13 (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)). To make that showing, "a plaintiff must do more than simply assert," as Plaintiffs do here, *see* ECF No. 111 at 8-9, "that materials were relevant or were before an agency when it made its decision." *Univ. of Colo. Health*, 151 F. Supp. 3d at 13 (citation omitted); *see also Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) ("It is not enough for the plaintiffs to assert that 'the [agency] knew about these' documents[.]"). "Instead, the plaintiff 'must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record.'" *Marcum,* 751 F. Supp. 2d at 78 (quoting *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)).

Plaintiffs suggest (ECF No. 111 at 9) that the omitted portions of these materials "could well contain information that USCIS considered, or should have considered, in adopting the challenged Policy" and that the missing materials "very likely contain information about DHS's policies in asylum proceedings, [that] could also be relevant to the Court's review of the challenged Policy." But this speculation falls well short of meeting their high burden to overcome the presumption of regularity that accompanies an Administrative Record. *See Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 17 (D.D.C. 2013) (a challenger must "identify the materials allegedly

15

omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record."), *vacating decision in part on reconsideration*, No. 10-01638, 2013 WL 11241368 (D.D.C. July 30, 2013).  Accordingly, Plaintiffs' request to supplement or complete the Administrative Record with the full manuals and training documents should be denied.

Even more unsubstantiated is Plaintiffs' request to be allowed to supplement the Administrative Record with whatever unknown "information, documents, or communications that are revealed through limited discovery" that were before the agency and that Plaintiffs deem to be relevant. ECF No. 111 at 14. They provide no authority or basis for asking the Court to issue an order now giving Plaintiffs carte blanche to add whatever records they like to the Administrative Record at some point in the future.  The Court should reject this boundless request as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

//

//

//

//

//

//

//

//

16

December 7, 2023                              Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             MARCIA BERMAN
                                             BRIGHAM J. BOWEN
                                             Assistant Branch Directors

                                             /s/ Hilarie Snyder
                                             HILARIE SNYDER
                                             Trial Attorney
                                             U.S. Department of Justice
                                             Civil Division
                                             Federal Programs Branch
                                             1100 L Street NW
                                             Washington, DC 20005
                                             (202) 305-0747
                                             hilarie.e.snyder@usdoj.gov