# Exhibit 9



U.S. Citizenship and Immigration Services

# RAIO DIRECTORATE – OFFICER TRAINING

## *RAIO Combined Training Program*

# NOTE-TAKING

## TRAINING MODULE

USCIS00008040

*This Page Left Blank Intentionally*

USCIS: RAIO Directorate – Officer Training                     DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                            Page 2 of 40

USCIS00008041

RAIO Directorate – Officer Training / *RAIO Combined Training Program*

<div style="border:1px solid black;background:#e8f5e0;padding:1em;text-align:center">

# NOTE-TAKING

## Training Module

</div>

## MODULE DESCRIPTION:

This module outlines the importance of taking clear and comprehensive notes during the interview, the characteristics of proper notes, and procedures for proper note-taking.

## TERMINAL PERFORMANCE OBJECTIVE(S)

When interviewing in the field, you will be able to create in your notes a clear record of all relevant information necessary to adjudicate the immigration benefit, petition, protection determination, or other immigration-related request.

## ENABLING PERFORMANCE OBJECTIVES

1. Explain the importance and purpose of creating an accurate written record of an interview.

2. Write or type comprehensive and readable interview notes, following proper procedures for note-taking.

3. Explain which parties may have access to your interview notes.

4. Separate inappropriate inferences which should not be recorded from objective observations which may be documented.

5. Explain when you are required to switch your note-taking to a more detailed question-and-answer format of note-taking.

6. Explain the importance of using note-taking techniques that do not interfere with the interview.

## INSTRUCTIONAL METHODS

- Interactive presentation
- Practical exercises

USCIS00008042

## METHOD(S) OF EVALUATION

- Written exam
- Practical application during mock interview exam

## REQUIRED READING

1.

2.

**Required Reading – International and Refugee Adjudications**

**Required Reading – Asylum Adjudications**

## ADDITIONAL RESOURCES

1.

2.

**Additional Resources – International and Refugee Adjudications**

**Additional Resources – Asylum Adjudications**

## CRITICAL TASKS

| Task/ Skill # | Task Description |
|---|---|
| ITK7 | Knowledge of strategies and techniques for note-taking (4) |
| ITS10 | Skill in taking notes to capture information (4) |

USCIS: RAIO Directorate – Officer Training                     DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                                 Page 4 of 40

USCIS00008043

## SCHEDULE OF REVISIONS

| Date | Section (Number and Name) | Brief Description of Changes | Made By |
|------|---------------------------|------------------------------|---------|
| 12/12/2012 | Entire Lesson Plan | Lesson Plan published | RAIO Training |
| 6/06/2013 | Throughout document | Corrected minor typos, formatting, cites identified by OCC-TKMD. | MMorales, RAIO Training |
| 6/12/2015 | 3.1.2 – Sworn Statements and ASM supplement | Removed outdated procedural information | RAIO Training |
| 12/20/2019 | Entire Lesson Plan | Minor edits to reflect changes in organizational structure of RAIO; no substantive updates | RAIO Training |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

USCIS00008044

# Table of Contents

1   INTRODUCTION .................................................................................................8

2   THE IMPORTANCE OF PROPER NOTE-TAKING ...........................................9

2.1   Notes Serve as a Record ..................................................................................9

2.2   Access to an Officer's Notes ............................................................................9

3   CHARACTERISTICS OF PROPER INTERVIEW NOTES ...............................11

3.1   Format...............................................................................................................11

    3.1.1   Modified Q&A Format ............................................................................12
    3.1.2   Sworn Statements ...................................................................................12

3.2   Requirements for Proper Note-Taking ........................................................14

    3.2.1   Notes Must Be Legible ...........................................................................14
    3.2.2   Notes Must Accurately Reflect the Questions You Ask and the Interviewee's
Response ...........................................................................................................14
    3.2.3   Notes Must Not Include the Officer's Opinions, Suppositions, or Personal Inferences16
    3.2.4   Notes Must Include What the Interviewee Did Not Say, When Appropriate ...........17
    3.2.5   Notes Must Identify the Speaker if More than One Person Is Providing Testimony .19
    3.2.6   Notes Must Include Certain Identifying Information on Each Page ................19
    3.2.7   Notes Must Not Include Abbreviations that a Reviewer Will Not Understand ........19
    3.2.8   Record Administration of Oath and Use of Interpreter ..............................19
    3.2.9   Notes Must Indicate Instances When the Officer Confronts Interviewee with Adverse
Information .......................................................................................................20
    3.2.10  Notes Must Substantiate the Analysis ..................................................21
    3.2.11  Notes May Refer to Any Document Deficiencies in the File....................21

4   EFFECTIVE NOTE-TAKING METHODS AND TECHNIQUES ........................21

4.1   Develop Non-Intrusive Note-Taking Techniques .......................................22

    4.1.1   Officers May Refer to the Notes at Any Time During the Interview.......................22

5   CONCLUSION ..................................................................................................23

6   SUMMARY ......................................................................................................23

6.1   The Importance of Proper Note-Taking ......................................................23

6.2   Characteristics of Proper Interview Notes ..................................................23

6.3   Effective Note-Taking Methods and Techniques.........................................25

USCIS: RAIO Directorate – Officer Training       DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                             Page 6 of 40

USCIS00008045

6.4   Refer back to your notes during the interview and at the conclusion of the interview to ensure completeness and accuracy. ...................................................................................25

PRACTICAL EXERCISES ...................................................................................26

OTHER MATERIALS ...................................................................................27

SUPPLEMENT A – INTERNATIONAL AND REFUGEE ADJUDICATIONS...................................33

Required Reading ...................................................................................33

Additional Resources ...................................................................................33

Supplements ...................................................................................33

SUPPLEMENT B – ASYLUM ADJUDICATIONS ...................................................37

Required Reading ...................................................................................37

Additional Resources ...................................................................................37

Supplements ...................................................................................37

USCIS00008046

Throughout this training module, you will come across references to adjudication-specific supplemental information located at the end of the module, as well as links to documents that contain adjudication-specific, detailed information. You are responsible for knowing the information in the referenced material that pertains to the adjudications you will be performing.

For easy reference, supplements for international and refugee adjudications are in pink and supplements for asylum adjudications are in yellow.

You may also encounter references to the legacy Refugee Affairs Division (RAD) and the legacy International Operations Division (IO). RAD has been renamed the International and Refugee Affairs Division (IRAD) and has assumed much of the workload of IO, which is no longer operating as a separate RAIO division.

---

Officers in the RAIO Directorate conduct interviews primarily to determine eligibility for immigration benefits or requests; to corroborate information provided by applicants, petitioners, and beneficiaries; and/or to establish whether a person understands the consequences of his or her actions.

The modules of the RAIO Directorate – Officer Training Program and the adjudication-specific training courses constitute primary field guidance for all officers who conduct interviews for the RAIO Directorate. The USCIS Adjudicator's Field Manual (AFM) also provides guidance for officers when conducting interviews, particularly for officers serving in RAIO's international offices. There may be some instances where the guidance in the AFM conflicts with guidance provided by the RAIO Directorate. If this is the case, you should follow the RAIO guidance. Further guidance regarding interviews for specific applications will be discussed during adjudication-specific trainings.

In this module, the term "interviewee" is used to refer to an individual who is interviewed by an officer in the RAIO Directorate for an official purpose.

# 1    INTRODUCTION

This module is part of a series of interviewing modules that discuss various topics, including the basic principles and components of conducting a non-adversarial interview, the goals and techniques of eliciting information, and considerations when conducting an interview through an interpreter. This module provides guidance on creating a written record documenting the testimony and events that occur during an interview, and

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                              Page 8 of 40

USCIS00008047

explains effective note-taking techniques. Please refer to the other interviewing modules for additional guidance on conducting RAIO interviews.

- *Interviewing – Introduction to the Non-Adversarial Interview*
- *Interviewing – Note-Taking*
- *Interviewing – Working with an Interpreter*
- *Interviewing – Interviewing Survivors of Torture*

## 2    THE IMPORTANCE OF PROPER NOTE-TAKING

### 2.1    Notes Serve as a Record

The two main purposes of taking notes during an interview are to:

- Support the decision regarding the interviewee's eligibility for the immigration benefit, petition, protection determination, or other immigration-related request

- Enable a reviewer to reconstruct what transpired during an interview

It is critical that you take clear and legible notes. Officers in the RAIO Directorate conduct several different types of interviews. In all interviews, notes must reflect what transpired during the interview and support the decision. In many instances, there may be a delay between the interview and when a final determination is made in a case. You may have to refer back to your interview notes to substantiate your analysis. In addition, your notes will be reviewed by others, such as supervisors and headquarters staff.

> The importance of taking accurate notes that provide a full picture of the interview cannot be overstated. In most cases, the subsequent reviewers were not present during the interview and must rely on your notes to adjudicate the case. It is important to remember that each part of your analysis must be supported by evidence in the record, and that your notes will form the primary record of the interview.

### 2.2    Access to an Officer's Notes

The following people may have access to an Officer's interview notes:

#### *USCIS Field Office staff*

**Refugee, Asylum, and International Operations (RAIO) Directorate:** Other Officers within the RAIO Directorate review interview notes when conducting re-interviews, reviewing Requests for Review, adjudicating the case at a later date, or conducting quality assurance (QA) review. Supervisors also review the interview notes when

USCIS: RAIO Directorate – Officer Training                     DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                     Page 9 of 40

USCIS00008048

reviewing the decision. Other staff, including field management, Training Officers (TOs), Fraud Detection and National Security (FDNS) Officers, and locally engaged staff (LES), may also review the notes in certain cases.

**Field Operations:** USCIS domestic Field Operations staff will also access and review interviewing Officer notes during subsequent adjudications, including adjustment of status and naturalization.

### USCIS Headquarters (HQ) staff

RAIO HQ staff, including Officers who conduct training and QA review, Division Managers, and the RAIO Research Unit review interview notes. On occasion, the Office of the Chief Counsel (OCC) reviews cases, including interview notes. In addition, the Administrative Appeals Office (AAO) reviews appeals of certain petitions and applications.

### Interviewees and representatives

The Freedom of Information Act (FOIA) provides access to all federal agency records that are not protected from release by exemptions.[1] An applicant or his or her attorney of record may request a review or a copy of the record of proceedings. This includes any written record of an interview you conduct. Although generally interview notes are not provided in response to a FOIA request, notes have occasionally been provided.

(For additional information regarding your responsibilities under FOIA/Privacy Act, please see RAIO Training Module, Overview of Alien Registration Files (A-Files) and Handling Records.)

### Department of State (DOS)

Department of State (DOS) staff may have access to electronic files. This includes access to interview assessments and interview notes. For example, DOS staff may access I-604 adoption investigation interview notes, I-130 interview notes, I-407 notes, or notes pertaining to a refugee interview in the Worldwide Refugee Admissions Processing System (WRAPS) database. At times, staff from the Bureau of Population, Refugees, and Migration (PRM) may review interview notes if there is a particularly sensitive issue to resolve in a refugee case.

### Courts and lawyers

If an asylum applicant is placed in immigration proceedings, a number of people may have access to the interview notes. Immigration Judges, part of the Executive Office for Immigration Review (EOIR) conduct immigration court proceedings. In these proceedings, Immigration and Customs Enforcement (ICE) trial attorneys represent the

---

[1] 5 U.S.C. § 552.

USCIS: RAIO Directorate – Officer Training          DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                    Page 10 of 40

USCIS00008049

Department of Homeland Security (DHS). The ICE trial attorney reviews the notes, and if he or she introduces the interview notes as evidence, all parties to the proceeding, including the Immigration Judge, will have access to the interview notes.

The Board of Immigration Appeals (BIA) is EOIR's appellate component and has jurisdiction over appeals of decisions by Immigration Judges. As part of their review process, BIA Board Members and staff may review interview notes contained in the record.

If the BIA ruling is appealed, attorneys representing the government in the U.S. Courts of Appeals may have access to interview notes.

In the event that an interviewee is at some point in time identified as a possible human rights violator, your interview notes may be accessed by attorneys of the ICE Human Rights Law Division (HRLD) and ICE Human Rights Violators and War Crimes Center (HRVWCC). These units are charged with investigation, litigation, and removal of human rights violators.

In rare circumstances, courts hearing cases unrelated to immigration benefits may have access to the interviewing officer's notes.

### *Other U.S. Government officials*

Certain Government officials and contractors may have a need to examine information in connection with an asylum and/or refugee application, as well as a need to review information pertaining to certain asylum, refugee, credible fear, and reasonable fear applications, and as such, may have access to your notes.[2]

For example, in certain situations, interview notes may be shared with law enforcement personnel, or with DHS employees outside of USCIS.


## 3    CHARACTERISTICS OF PROPER INTERVIEW NOTES

### 3.1    Format

There is no standardized format for interview notes. While all notes must conform to certain requirements, many different formats are used by officers. As you become more familiar with interviewing and taking notes, you will find the format that works best for you. There are three examples of interview notes taken in different formats in the Other Materials section of this module. For asylum adjudications, Format Example #1 is strongly suggested.

---

[2]  8 C.F.R.§ 208.6.

USCIS00008050

Regardless of how you format your interview notes, you must maintain an accurate written record of information elicited during the interview. Although you are not always required to keep a verbatim record of the interview, you must ensure that the notes are representative of the interviewee's testimony.

### 3.1.1 Modified Q&A Format

Officers adjudicating I-590s are required to take notes in modified Q&A format. Officers adjudicating other form types are encouraged to use this format. Notes taken in modified Q&A format contain both the question asked by the officer and the interviewee's response. In modified Q&A format, it is not necessary to write down every word spoken. Rather, you should capture what was discussed during the interview to the fullest extent possible without interfering with the flow of the interview. If you are able to record a verbatim record, you may do so.

For instance, rather than writing, "Have you ever applied for a visa to the United States?" you can write, "Visa to U.S.?" If the applicant responds: "I applied for a visa in Bangkok in March 2004, but the Consular Officer denied me. I applied again in New Delhi in September 2006, and I was granted the visa," the written notes could state: "Applied, Bangkok, 3/04, denied. Applied, New Delhi, 9/06, granted."

At the end of the interview, you should review your notes and correct any typographical errors, grammatical mistakes, or spelling errors that distort the meaning of what was said at the interview. If typing your notes, be mindful that the autocorrect and spell-check functions on your word processing program may have altered words that you did not intend to change.

### 3.1.2 Sworn Statements

You are usually not required to take verbatim notes. However, there may be certain instances in interviews when it is essential to capture every word. In such instances, officers adjudicating asylum and other form types should take sworn statements. In the refugee context, officers should take notes in greater detail in the modified Q&A format.[3] (Note: do not confuse a sworn statement as a note-taking format with the Form G-646 *Sworn Statement of Refugee Applying for Entry into the United States*, which is sometimes referred to by the same name.)

Sworn statements are taken in Q&A format. However, in contrast to the modified Q&A format, sworn statements reflect a verbatim record of the specific questions asked, and the interviewee's answers. At the end of the interview, you must review the sworn statement with the interviewee and representative, if applicable, and have the interviewee

---

[3] In general, officers adjudicating I-590s do not use sworn statements. Officers are required to follow the I-730 SOP when conducting I-730 (V92/93) interviews, which requires the use of sworn statements in the circumstances outlined above. For more information, please refer to the Division-specific training on I-730 interviews.

USCIS00008051

initial each page and sign the final page to attest that the sworn statement is true and correct.

### *Circumstances Requiring Sworn Statements or Increased Detail in Note-Taking*

Each Division has specific guidance on the requirement for extra detail when recording notes under certain circumstances. In addition, you must switch to a more detailed format of note-taking if any of the following circumstances arise during the interview:

- The interviewee admits, or there are serious reasons to believe, that he or she is or has been associated with an organization included on either the Foreign Terrorist Organizations List or the Terrorist Exclusion List (available at http://www.state.gov/s/ct/), or that he or she is or has been a member of any other terrorist organization.

- The interviewee admits, or there are serious reasons to believe, that he or she is, or has been, involved in terrorist activities.

- The interviewee admits, or there are serious reasons to believe, that he or she assisted or otherwise participated in the persecution of others on account of one of the five protected grounds in the refugee definition.

- The interviewee admits, or there are serious reasons to believe, that he or she assisted or otherwise participated in the commission of torture.

- There are serious reasons for considering the interviewee a threat to U.S. national security.

- The interviewee admits, or there are serious reasons to believe, that he or she committed or was convicted of a serious crime outside the U.S. and the file does not contain a record of the conviction.

- The interviewee admits, or there are serious reasons to believe, that he or she committed human rights abuses.

- When the officer believes it is appropriate to take notes in a more detailed format in his or her discretion.

While there are adjudication-specific guidelines on ways in which to take notes, all of these circumstances have in common: serious reasons to believe, or an admission by the interviewee, that he or she has committed acts that may render the interviewee ineligible for the benefit sought because he or she:

- Is inadmissible to the United States;

- Is subject to a mandatory bar; and/or

- May be subject to a discretionary denial

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                              Page 13 of 40

USCIS00008052

Please see the supplements at the end of the module for adjudication-specific guidance regarding note-taking. [International and Refugee Adjudications Supplement – Increased Detail in Note-Taking, International and Refugee Adjudications Supplement – Sworn Statements; Asylum Adjudications Supplement – Sworn Statements]

## 3.2    Requirements for Proper Note-Taking

### 3.2.1    Notes Must Be Legible

As noted above, a number of persons may read your interview notes during the life cycle of a case. Accordingly, interview notes taken by hand must be legible so that a reviewer can easily read and understand what was written. There is no requirement to use a specific penmanship style for interview notes; however, printed handwritten text tends to be more legible than cursive text.

Writing too small is a common mistake that officers make when taking interview notes by hand. Make sure that your writing is clear and large enough to read. Taking notes on lined paper may help you prevent your handwriting from becoming too small.

The consequences of developing a record that is not legible are significant. For example, in the asylum context, Immigration Judges or ICE trial attorneys may simply disregard an officer's notes, if illegible. In the refugee context, an officer adjudicating a Request for Review (RFR) who is unable to read the interviewing officer's notes will often send the case back for a reinterview because he or she is unable to concur that the decision is supported by the record. An officer reviewing material support exemptions may have to request a reinterview if he or she is unable to read the notes taken at the time of interview.

If you write your notes by hand, you must evaluate your handwriting and adapt your writing style so that your notes are legible to others. Remember, the purpose of taking interview notes is to create a record. Notes are often scanned into an electronic version and reprinted, which decreases the quality of the image. Therefore, notes that are barely legible may become even harder to read. Remember, if your notes are not legible, you have, in effect, failed to create that record.

Officers who have access to a government-issued computer and printer should follow their Division's guidance as to whether interview notes should be typed or handwritten.

### 3.2.2    Notes Must Accurately Reflect the Questions You Ask and the Interviewee's Response

A reviewer should be able to reconstruct what occurred during the interview by reading the interview notes. The interview notes must support the officer's decision.

USCIS00008053

You may conduct multiple interviews in a day, and the facts of one case can blur with the facts of another. Also, circumstances may delay the writing of an assessment or completion of a worksheet, or require another officer to complete a case. Thus, relying on your memory of what happened in a particular interview is inappropriate. It is imperative that notes be detailed and clear.

It is very difficult to place an interviewee's answers in context if the questions you ask are not also recorded. What at first glance appears to be a discrepancy in the applicant's testimony is often the result of an ambiguously worded question. Recording your questions in the interview notes is helpful in assessing the reliability of the applicant's testimony.

Accurate interview notes are crucial for analyzing the internal consistency of an interviewee's testimony, as well as other concerns about credibility that may arise during the interview. It is essential to document any credibility issues that arise during the interview in your notes. [See Section 4.1.1 below on referencing notes during the interview.]

If you repeat a question, but change the wording of the question to help the applicant understand, your notes should reflect the change in wording. This will both reflect accurately what occurred during the interview and show your efforts to be understood.

### *Example*

| Officer | Interviewee |
|---|---|
| Duties in the military? | Was a cook. |
| What did you do as cook? | Cooked for Officers |
| Did you do anything else other than cook for Officers during your day? | No |
| Can you tell me about what types of things you do when you cook for Officers? | Just cook. |
| Do you purchase the ingredients, or wash dishes, or serve the food? | Just cook. |

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                    Page 15 of 40

USCIS00008054

| I have asked you many questions about your five years of service in the Iraqi military. So far, you have told me the only thing you did during the five years was cook for officers, without providing me with any detail. I would think that someone who served in the military for five years would be able to tell me more details about what he or she did during that time than just cook for Officers. Could you explain why you cannot provide more detail? | I cooked for Officers, nothing else. |
|---|---|

### *Example*

| **Officer** | **Interviewee** |
|---|---|
| Duties in military? | Cook. |
| (Repeat Q) or (Repeat Q 3X) | same answers |

The first example above accurately reflects the officer's effort to elicit detailed testimony regarding the interviewee's duties in the military and the interviewee's unwillingness or inability to provide sufficient detail. These notes, along with other examples from the interview, may help support a negative credibility determination based on lack of material detail.

The second example from the same interview would not support a negative credibility determination. It appears as if the officer asked, "What were your duties in the military?" three times, without varying the question. Example #2 does not show that attempts were made to rephrase questions, or elicit more detail regarding the subject.

### 3.2.3   Notes Must Not Include the Officer's Opinions, Suppositions, or Personal Inferences

Your opinions, suppositions, or personal inferences must not be included in the interview notes. This should not be confused with subjective statements that the interviewee may make, which should be included in the notes.

You must ensure that your notes are an accurate and objective written record of the interview. For example, an exclamation point placed next to a portion of the interviewee's testimony would be inappropriate, as it might suggest bias.

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                      Page 16 of 40

USCIS00008055

### 3.2.4 Notes Must Include What the Interviewee Did Not Say, When Appropriate

It is sometimes important to include information in your notes other than the applicant's testimony. This includes noting questions that the applicant does not answer, and certain non-verbal communication that occurs during the interview. This helps put the interview notes in context. Any important observations an officer makes that are relevant to the decision should be recorded in the notes. These may include indications that the applicant is silent or non-responsive to a question; or engages in any other non-verbal actions, such as crying, that could affect the interview in any way. It is important to be as objective as possible when writing such notes. The purpose of including this information is to create a complete picture of the interview and allow reviewers to reconstruct what occurred during the interview. The observations included in your notes during the interview are also evidence with regard to the interviewee's claim, application, or petition. You may need to record non-verbal communication in your notes in situations like the ones described here.

*Example*

| Officer | Interviewee |
|---|---|
| When was your home attacked? | [Applicant is crying] |

*Example*

| Officer | Interviewee |
|---|---|
| What is your middle son's name? | (silence) |
| Can you tell me your second son's name? | (long pause) John. |

It is best to put such information in parentheses or brackets to set it apart from the rest of the notes.

*Example*

| Officer | Interviewee |
|---|---|

USCIS00008056

| How long did you know your wife before you proposed? | (30 second pause) (glanced towards wife)<br><br>Wife: We knew each other for seven months<br><br>App: Umm—seven months |
|---|---|
| (Instructed wife not to respond on husband's behalf.) | |
| Who was the best man at your wedding? | (looks to wife) (silence) |
| Did you have a best man at your wedding? | Yes |
| What was his name? | (looks to wife) (silence) |

Any interpreter comments or questions directed at an officer should also be recorded in your notes.

### *Examples*

| Officer | Interviewee |
|---|---|
| | (Interpreter indicated that a particular word could have two possible meanings in his language and requested that the Officer clarify the applicant's testimony) |

| Officer | Interviewee |
|---|---|
| | (Interpreter asked applicant follow-up questions several times) |
| (Reminded interpreter of her role during the interview) | |

USCIS00008057

Without this information in the record, it would be difficult for a reviewer to determine that there were problems with the interpretation.

### 3.2.5    Notes Must Identify the Speaker if More than One Person Is Providing Testimony

You should record in your notes the names of everyone present at the interview and the reasons for their presence at the interview, if necessary. Witnesses may provide testimony on behalf of the interviewee. The officer may make a statement he or she wants recorded in the notes. The principal applicant's family members may be interviewed. In addition, if there is a representative, he or she may make a statement at the end of the interview, or may ask the interviewee additional questions. In these situations, you should clearly identify in the notes who is speaking, and note, when it is required, that an oath was administered prior to taking testimony [see section 3.2.8 below].

### 3.2.6    Notes Must Include Certain Identifying Information on Each Page

You must include certain identifying information on each page of the interview notes, regardless of whether your notes are typed or handwritten. There is always a risk that the interview notes may be placed out of order, or even become separated from the file. For these reasons, it is important to record a page number as well as identifying information, such as an A-number, on each page of your notes. Refer to adjudication-specific guidance for further information.

[International and Refugee Adjudications Supplement - Requirements for Each Page of Interview Notes; Asylum Adjudications Supplement – Include Identifying Information on Each Page].

### 3.2.7    Notes Must Not Include Abbreviations that a Reviewer Will Not Understand

If you use any abbreviations in your notes, they should be few in number and should be clear enough that anyone who reviews the interview notes will easily understand what they mean. Shorthand should never be used. To avoid confusion, you may include a key for common abbreviations in your interview notes.

### 3.2.8    Record Administration of Oath and Use of Interpreter

The fact that the interview is being conducted under oath must be recorded. If you are taking notes in a sworn statement, or are taking down verbatim a question-and-answer statement, the exact wording of the oath should be included in your notes. If you are taking notes in a less formal modified Q&A format, your interview notes should simply reflect that the interviewee was placed under oath. In overseas refugee processing, you are not required to note that the interview is being conducted under oath in the written record; instead, you must check the appropriate boxes on the front page of the Refugee Application Assessment to indicate that the oath was administered, and whether the

USCIS00008058

interviewee understands the interpreter or officer. You are also required to fill in the interviewee's native language and the language in which the interview was conducted.[4]

In asylum processing, if you are fluent in a language other than English, you must obtain certification before you are permitted to conduct interviews in that language. In overseas refugee processing, you are not required to obtain language certification, but you are generally discouraged from conducting interviews in languages other than English. If an interview is conducted without the use of an interpreter, you must make a clear notation of the language you and the interviewee spoke during the interview. Please see the RAIO Training Module, *Interviewing – Working with an Interpreter* for adjudication-specific guidance on conducting an interview in a language other than English. [Asylum Adjudications Supplement - Oath and Interpreter]

### 3.2.9 Notes Must Indicate Instances When the Officer Confronts Interviewee with Adverse Information

During the interview, the officer must provide the interviewee with an opportunity to explain any discrepancy or inconsistency that is relevant to the determination of eligibility. The interviewee may have a reasonable explanation for the discrepancy, or there may have been a misunderstanding between you and the interviewee. Therefore, it is critical that your interview notes clearly reflect your questions regarding the potentially adverse information, as well as the interviewee's responses. [International and Refugee Asylum Supplement - Recording Credibility]

The example below involves an interview with a birth parent in an adoption case to determine whether the child meets the legal definition of an orphan:

*Example*

| Officer | Interviewee |
|---------|-------------|
| Where is Mr. Khamar, your husband and the father of your child, currently living? | He passed away in 2000. |
| Can you tell me what the cause of death was? | He had lung cancer. |
| Are you certain of the cause of death and date? | Yes. I was there at the hospital when he passed away. |

---

[4] Refugee Application Assessment SOP; Refugee Application Assessment.

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                    Page 20 of 40

USCIS00008059

| | |
|---|---|
| Ms. Khamar, in the statement you submitted previously you stated that the child's father, your husband, was killed in a car accident in 2002. Today you stated that your husband died of lung cancer in 2000. Can you explain why the information you provided me today is different from what you stated previously? | I don't know. |

### 3.2.10  Notes Must Substantiate the Analysis

Your interview notes substantiate your decision. You must record in your notes all of the information that you elicit during the interview regarding the interviewee's eligibility for a benefit, petition, or request. Your decision about the interviewee's eligibility must be supported by the record you create of the interview. As stated previously, the record includes your notes. Therefore, you must not include any information in the assessment or worksheet that is not reflected in your notes, or is not otherwise part of the record. [Asylum Adjudications Supplement – Important Information to Record]

### 3.2.11  Notes May Refer to Any Document Deficiencies in the File

Upon thorough review of the case file, you may identify missing documents or other such deficiencies and make reference to this in your notes. The interview notes should also reflect that you asked the interviewee for the missing documentation and that the interviewee was afforded a reasonable period of time to submit that documentation.[5]

For example, upon reviewing and preparing for an I-730 (V92/V93) interview, you may notice that the file does not contain any documentary evidence to support the identity of the beneficiary. Before the interview, you may make a notation in your notes and on the corresponding V92/V93 worksheet.[6] During the interview, the notation should remind you to ask about the deficiency. You must clearly distinguish your pre-interview notations from your discussion of the issue with the interviewee.

## 4       EFFECTIVE NOTE-TAKING METHODS AND TECHNIQUES

---

[5] USCIS, BASIC Participant Guide, Module 208A Part 1, "Interviewing Techniques," January 2010, EPO C, (7), pg. 10.

[6] Note for officers adjudicating I-730s: Officers should use the V92/V93 Interview Worksheets when conducting interviews of all I-730 beneficiaries. The worksheets are intended to guide these interviews. Please refer to the I-730 Standard Operating Procedure.

USCIS00008060

## 4.1    Develop Non-Intrusive Note-Taking Techniques

It is important to develop a note-taking technique that allows you to create an accurate record while maintaining rapport with the interviewee. Your technique should not distract the interviewee from providing responses to your questions.

If you focus more on note-taking than on the interviewee, it may appear as if you are not listening, which can be very disconcerting to the interviewee. Officers must develop skills to accurately take notes while maintaining a non-adversarial approach and rapport with the interviewee. Note-taking must never interfere with conducting the interview.

If an interpreter is used, you can use the time when the interpreter is speaking to write notes. When interviewing in English, it may be best to write your notes while the interviewee is responding to your questions so that you can write as much of what the interviewee says as possible and ensure that your notes are as accurate as possible. When writing notes in this manner, you will need to be careful to maintain rapport with the interviewee so that the interviewee can tell that you are paying attention to him or her.

Note-taking may be intimidating to the interviewee; he or she may wonder what you are going to do with your notes and if government officials from his or her country will have access to your notes. During your introduction, you should explain that you will be taking notes during the interview, as well as the purpose of taking notes and any applicable confidentiality provisions.

Whether handwriting or typing notes, you must become comfortable with taking notes in a manner that does not interrupt the flow of the interview. For example, if typing notes, the computer monitor should be positioned at an angle that will help maintain eye contact with the interviewee.

At the conclusion of the interview, typed notes should be saved immediately, printed, and placed in the file as soon as possible. As noted earlier, you should review your notes and correct any errors that might distort the meaning of what was said at the interview, taking into account that autocorrect and spell-check functions on your word processing program may have altered words.

**Note:** You may only use Government-issued computers (including laptops), VPN tokens, USB flash drives, and printers to type and print notes.[7]

## 4.1.1    Officers May Refer to the Notes at Any Time During the Interview

You may refer back to your notes during the course of the interview. For example, you might do this to clarify contradictory information provided during another part of the interview. This is a recommended practice. If you find that you cannot take notes fast enough, it may help if you read a section of the notes you have already taken, and

---

[7] DHS Sensitive Systems Policy Directive 4300A, Version 11.0, January 14, 2015, Section 4.8.3.b.

USCIS00008061

confirm with the interviewee that what you wrote is correct. This will allow you extra time to catch up with your notes when the interpreter is repeating the information back to the interviewee in his or her language. This practice will also enable you to make sure that you have recorded the interviewee's testimony correctly. In addition, prior to concluding the interview, it is helpful to review your notes to ensure that you have captured all information necessary to complete your adjudication.

# 5    CONCLUSION

Officers in the RAIO Directorate will conduct interviews for a variety of reasons. Creating a comprehensive and accurate written record of an interview is essential. You must be familiar with RAIO's requirements for notes, along with effective note-taking techniques. Finally, you must understand what information must be elicited and recorded in your interview notes, along with appropriate procedures for taking notes in a more detailed format, such as Q&A or a sworn statement.

You should apply the principles, techniques, and guidelines on note-taking set forth in this module to all interviews conducted within Refugee, Asylum and International Operations.

# 6    SUMMARY

## 6.1    The Importance of Proper Note-Taking

**Notes Serve as a Record**

- Your notes must support the decision regarding the interviewee's eligibility for the immigration benefit, petition, protection determination, or other immigration-related request.
- Your notes must enable the reviewer to reconstruct what transpired during an interview

**Access to Your Notes**

- Your notes could potentially be reviewed by many people, both within USCIS and the RAIO Directorate, and outside.

## 6.2    Characteristics of Proper Interview Notes

**Format**

- Modified Q&A

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                      Page 23 of 40

USCIS00008062

Officers adjudicating I-590s are required to take notes in modified Q&A format. Asylum Officers and International Operations Officers are encouraged to take notes in modified Q&A format.

- Sworn Statements

Switch to a more detailed format of note-taking (see adjudication-specific materials) if any of the following circumstances arise during the interview:

> ➤ The interviewee admits, or there are serious reasons to believe, that he or she is associated with a terrorist organization, or that he or she is or has been a member of any terrorist organization.

> ➤ The interviewee admits, or there are serious reasons to believe, that he or she is, or has been, involved in terrorist activities.

> ➤ The interviewee admits, or there are serious reasons to believe, that he or she assisted or otherwise participated in the persecution of others on account of one of the five protected grounds in the refugee definition.

> ➤ The interviewee admits, or there are serious reasons to believe, that he or she assisted or otherwise participated in the commission of torture.

> ➤ There are serious reasons for considering the interviewee a threat to U.S. national security.

> ➤ The interviewee admits, or there are serious reasons to believe, that he or she committed or was convicted of a serious crime outside the U.S., and the file does not contain a record of the conviction.

> ➤ The interviewee admits, or there are other serious reasons to believe, that he or she committed human rights abuses.

> ➤ When the Officer believes it is appropriate to take notes in a more detailed format, in his or her discretion.

**Requirements for Proper Note-Taking**

The interview record must:

- Be legible

- Accurately reflect the questions you ask and the interviewee's response

- Not include your opinions, suppositions, or personal inferences

- Include what the interviewee did not say, when appropriate

- Identify the speaker if more than one person is providing testimony

- Include certain identification information on each page

- Not include abbreviations that a reviewer will not understand

- Indicate that the oath was administered and whether an interpreter was used

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                              Page 24 of 40

USCIS00008063

- Indicate instances in which the interviewee is confronted with adverse information

- Substantiate your analysis

- Refer to any document deficiencies in the file, if material

- Adhere to any adjudication-specific guidance on note-taking.

## 6.3    Effective Note-Taking Methods and Techniques

**Develop Non-Intrusive Note-Taking Techniques**

- When an interpreter is present, you can use the time when the interpreter is speaking to write your notes.

- Keep in mind that note-taking may be intimidating to the interviewee. Explain the purpose of note-taking and applicable rules of confidentiality to reassure the interviewee.

- Whether handwriting or typing notes during the interview, ensure that your manner of note-taking does not interfere with the flow of the interview.

**Refer to your notes at any time during the interview**

Refer back to your notes during the interview and at the conclusion of the interview to ensure completeness and accuracy.

USCIS: RAIO Directorate – Officer Training                    DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                                                          Page 25 of 40

USCIS00008064

## PRACTICAL EXERCISES

There are no Practical Exercises for this module.

USCIS00008065

## OTHER MATERIALS

The following sample interview excerpts are the same interview presented in different formats. These samples of note-taking formats are based on a refugee interview. RAIO interviews cover a variety of adjudications. These various interview types, as well as the issues presented within any given interview, will affect the level of detail, topics and extent of follow-up required.

## FORMAT Example #1

This simple table format allows you to tab quickly (if typing) between your questions and the interviewee's responses. In addition, this format provides a clear delineation between what you say and what the interviewee says. Use of this format is strongly suggested when adjudicating asylum cases.

> Note: These samples demonstrate the acceptable use of acronyms. The abbreviations (BM/Burma, MO/mother, and SI/sister) are from the Worldwide Refugee Admissions Processing System (WRAPS).

MY-000000
04/25/11
RO Smith
SOE, Christina

| Officer | Interviewee |
|---|---|
| Why left BM? | I was about to be arrested by BM military. |
| Why? | They accused me of helping my MO escape from their hand. |
| How you know? | My auntie informed me, "The BM military were looking for you." |
| Where looked for you? | My house. |
| Auntie live there? | Yes. |
| Where were you? | I was at boarding hostel with my SI. |
| Why want to arrest MO? | BM military accused her of defying their order for refusing to send car for BM porter. |
| Did you help MO escape? | Only because she was sick, she had to be transferred to another hospital. I helped my MO transfer to another hospital. That's why they accused me of helping her escape from their hand. |
| Boarding hostel and your house in same town? | Yes. Falam. |
| I know you were not there, but what did auntie tell you about the soldiers' visit? | My auntie came to me and said "BM military came to our house looking for you b/c you helped your MO escape from their hand. They left message that if you come back you should |

USCIS00008066

| | |
|---|---|
| | report to the military." |
| Did auntie agree to do anything? | No. |
| Did auntie tell them where you were? | No. She said I was traveling. |
| Did auntie say she would tell you to report yourself to the military? | Yes. |
| What you do? | I decided to run away. |
| When? | Same day auntie told me, March 15, 2007. |
| Activities between March 15 and April 17 when you crossed border? | I went to Kalaymyo where I was hiding for 2 wks. And about 2 wks in Rangoon. |
| Travel with anyone? | My MO and my SI. |
| MO and SI stay with you whole time? | Yes. |
| Time of day when auntie told you? | Evening. |
| Where? | At boarding hostel. |
| Time fled? | About 3 hours from the inform. I got from my auntie. |
| Why thought you would be arrested? | b/c they already see us as who is against their order. |
| Can you go back to BM? | No. |
| What would happen? | Military would arrest and imprison me. |
| Reason? | 1st, since they are already see us as people against their order, they see us as enemy. 2nd, b/c we run away from BM. |
| Problem with running away from BM? | They think all of us who run away are enemy. |
| Why? | They are gov't. We run away from them. So they think we are against what they do. |
| Are you against gov't? | It's not that I'm against them. |
| Work in BM? | Just before I left I was a teacher at boarding school. And in Rangoon I was an assistant accountant. |
| Ever involved in any protests/political activities? | No. |

USCIS00008067

## FORMAT Example #2

MY-000000
4/25/11
RO Smith
SOE, Christina

Why left Burma? I was about to be arrested by BM military.
Why? They accused me of helping my MO escape from their hands.
How do you know? My auntie informed me, "The BM military were looking for you."
Where looked for you? My house.
Auntie live there? Yes.
Where were you? I was at boarding hostel with my SI.
Why want to arrest MO? BM military accused her of defying their order for refusing to send car for BM porter.
Did you help MO escape? Only because she was sick, she had to be transferred to another hospital. I helped my MO transfer to another hospital. That's why they accused me of helping her escape from their hand.
Boarding Hostel and your home in same town? Yes, Falam.
I know you were not there, but what did auntie tell you about the soldiers' visit? My auntie came to me and said, "BM military came to our house looking for you b/c you helped your MO escape from their hand. They left message that if you come back you should report to the military."
Did auntie agree to do anything? No.
Did auntie tell them where you were? No. She said I was traveling.
Did auntie say she would tell you to report yourself to the military? Yes.
What you do? I decided to run away.
When? The same day.
Activities between March 15 and April 17 when you crossed border? I went to Kalaymo where I was hiding for 2 wks. And about 2 wks in Rangoon.
Travel with anyone? My MO and my SI.
MO and SI stay with you whole time? Yes.
Time of day when auntie told you? Evening.
Where? Boarding hostel.
Time fled? About 3 hours from the inform. I got from my auntie.
Why thought you would be arrested? b/c they already see us as who is against the government.
Can you go back to BM? No.
What would happen? Military would arrest and imprison me.
Reason? 1st, since they already see us as people against their order, they see us as enemy. 2nd, b/c we run away from BM.
Problem with running away from BM? They think all of us who run away are enemy.
Why? They are gov't. We run away from them. So they think we are against what they do.
Are you against gov't? It's not that I am against them.
Work in BM? Just before I left I was a teacher at boarding school. And in Rangoon I was an assistant accountant.

USCIS00008068

Case 1:21-cv-10083-DJC    Document 139-9    Filed 11/22/24    Page 31 of 41

Ever involved in any protests /political activities? No.

USCIS00008069

**FORMAT Example #3**

MY-000000
4/25/11
RO Smith
SOE, Christina

Q. Why left Burma?
A. I was about to be arrested by BM military.
Q. Why?
A. They accused me of helping my MO escape from their hands.
Q. How do you know?
A. My auntie informed me, "The BM military were looking for you."
Q. Where looked for you?
A. My house.
Q. Auntie live there?
A. Yes.
Q. Where were you?
A. I was at boarding hostel with my SI.
Q. Why want to arrest MO?
A. BM military accused her of defying their order for refusing to send car for BM porter.
Q. Did you help MO escape?
A. Only because she was sick, she had to be transferred to another hospital. I helped my MO transfer to another hospital. That's why they accused me of helping her escape from their hand.
Q. Boarding Hostel and your home in same town?
A. Yes, Falam.
Q. I know you were not there, but what did auntie tell you about the soldiers' visit?
A. My auntie came to me and said, "BM military came to our house looking for you b/c you helped your MO escape from their hand. They left message that if you come back you should report to the military."
Q. Did auntie agree to do anything?
A. No.
Q. Did auntie tell them where you were?
A. No. She said I was traveling.
Q. Did auntie say she would tell you to report yourself to the military?
A. Yes.
Q. What you do?
A. I decided to run away.
Q. When?
A. The same day.
Q. Activities between March 15 and April 17 when you crossed border?
A. I went to Kalaymo where I was hiding for 2 wks. And about 2 wks in Rangoon.
Q. Travel with anyone?
A. My MO and my SI.
Q. MO and SI stay with you whole time?
A. Yes.

USCIS00008070

**Other Materials**                                                      Note-Taking

Q. Time of day when auntie told you?
A. Evening.
Q. Where?
A. Boarding hostel.
Q. Time fled?
A. About 3 hours from the inform. I got from my auntie.
Q. Why thought you would be arrested?
A. b/c they already see us as who is against the government.
Q. Can you go back to BM?
A. No.
Q. What would happen?
A. Military would arrest and imprison me.
Q. Reason?
A. 1st, since they already see us as people against their order, they see us as enemy. 2nd, b/c we run away from BM.
Q. Problem with running away from BM?
A. They think all of us who run away are enemy.
Q. Why?
A. They are gov't. We run away from them. So they think we are against what they do.
Q. Are you against gov't?
A. It's not that I am against them.
Q. Work in BM?
A. Just before I left I was a teacher at boarding school. And in Rangoon I was an assistant accountant.
Q. Ever involved in any protests /political activities?
A. No.

USCIS00008071

## SUPPLEMENT A – INTERNATIONAL AND REFUGEE ADJUDICATIONS

The following information is specific to international and refugee adjudications. Information in each text box contains adjudication-specific procedures and guidelines related to the section from the Training Module referenced in the subheading of the supplement text box.

### REQUIRED READING

    1.

    2.

### ADDITIONAL RESOURCES

    1.

    2.

### SUPPLEMENTS

---

**International and Refugee Adjudications Supplement – Requirements for Each Page of Interview Notes**

Officers interviewing refugees overseas should leave a margin at the top and bottom of each page of interview notes of about one inch (2.54 cm), for both handwritten and typed notes. This is to accommodate the use of A4-sized paper in most overseas locations. The Refugee Application Assessment and the notes of the interview are scanned into the Worldwide Refugee Application Processing System (WRAPS). If the interviewer takes notes on A4-sized paper without paying attention to margins, a person located in the United States who is printing the notes from the scanned document will not be able to read the portion of the notes that is outside the margin size of 8 ½ × 11- inch paper.

Each page of notes must identify the RSC case number and the page number.

---

**International and Refugee Adjudications Supplement – Recording Credibility**

**Notes Must Indicate Instances When the Interviewee Was Confronted with**

---

USCIS00008072

**Adverse Information**

The Refugee Application Assessment has a box the officer must check to confirm that the interviewee was confronted during the interview with any potentially adverse information. However, checking the box does not take the place of recording in the interview notes all instances in which the interviewee was confronted with any adverse information.

Please see RAIO Training Module *Introduction to the Non-Adversarial Interview* for more information about confronting an interviewee about potentially adverse information.

**International and Refugee Adjudications Supplement – Increased Detail in Note-Taking**

When you are interviewing refugees overseas, you must use a more detailed form to record your notes when the interviewee indicates that he or she has taken part in any activities listed in Section 3.1.2 Circumstances Requiring Sworn Statements or Increased Detail in Note-Taking. It is not necessary to record verbatim everything that is said; however, your notes must contain an accurate representation of every question asked and every response given using the wording and vocabulary used by the interviewee (most often through the interpreter). Once you have gone into the more detailed method of recording your interview notes, you must remain in that mode until the interview is completed. The interview for an I-590 application does not use the sworn-statement format used for asylum adjudications because refugee interviews take place outside the United States, and it is very unlikely that a refugee would appear in a U.S. Court.

**International and Refugee Adjudications Supplement – Sworn Statements**

With certain adjudications overseas, such as I-730 interviews, when you have reason to believe that the interviewee has taken part in certain activities listed in Section 3.1.2 Sworn Statements, you must switch your note-taking format to that of a sworn statement.

Note: In addition to the list in section 3.1.2, you must also take a sworn statement in certain I-730 (V9293) cases:

If in the normal course of the interview, the beneficiary's responses to the officer's questions regarding the beneficiary's own eligibility for derivative asylum or refugee status cause the officer to have significant concerns about possible fraud

USCIS00008073

having occurred in the adjudication of the principal's case. Often, a sworn statement by the Petitioner or Beneficiary is required to support a Consular Return based on document fraud; and/or

If in the normal course of the interview, the beneficiary admits that he or she is not the person listed as the beneficiary of the I-730 or that the required relationship does not exist.

Please see legacy IO Field Guidance: Overseas Processing of Asylee and Refugee Derivatives: Form I-730 Beneficiaries (Visas 92/93).

Sworn statements are of greater evidentiary value in a subsequent proceeding. They include having the interviewee initial and sign the statement. Note that not all testimony recorded in a Q&A format is considered a sworn statement. Notes taken in full Q&A format do not constitute a sworn statement unless and until they are reviewed and signed, page by page, by the interviewee.

### Format for Sworn Statements

Officers should use the full Q&A format when preparing a sworn statement. The interview notes do not have to verbatim but should be as close as possible to a verbatim record of everything said at the interview, and must provide an accurate and detailed record of the specific questions asked and the interviewee's answers. This format leaves less room for misinterpretation or for claims that important information given to an officer has been omitted or misunderstood.

When you find you have to begin taking notes as a sworn statement, you draw a diagonal line through the remaining page of notes at the point at which you stop taking notes to signify the change of format to a sworn statement.  The sworn statement should begin on a separate page from the earlier interview notes and should continue through to the conclusion of the interview.

Each page should include the same information that must be contained in regular interview notes: A-number or other identifying number, date, page number, name of applicant, name and number of the officer.

### Content of Sworn Statements

The sworn statement should generally be developed in chronological and logical sequence with respect to all pertinent details. You should avoid pursuing lines of questioning that are not relevant to the interviewee's eligibility for the benefit. It is important that the officer use the particular phraseology of the interviewee and his or her exact words, to the extent possible, when recording the Q&A statement. This will avoid any implication that the statement was not made freely and voluntarily, or that it does not represent a true record of the exchange between the officer and the interviewee.

USCIS00008074

> ### Proper Execution of Sworn Statements
>
> At the conclusion of the interview, the officer should review the sworn statement with the interviewee and representative, if applicable, and make any corrections requested, and the corrections should be initialed by both the officer and the interviewee. Each page of the Q&A statement should be signed or initialed by the person being interviewed to demonstrate that he or she has reviewed the statement, understood the contents of the statement, and consented to any and all changes to the statement. All pages of the statement should be signed in the presence of the officer taking the statement.
>
> Both the officer and the interviewee should print and sign the last page of the Q&A sworn statement and attest that the interviewee acted of his or her own free will and acknowledged the statement to be true and correct. As with the procedure for regular interview notes, the officer should draw a diagonal line from the end of the testimony to the bottom of the page to prevent any substitutions or alterations to the statement.
>
> Once all these steps are completed, the statement taken by the officer in Q&A format is considered to be a sworn statement.

USCIS00008075

SUPPLEMENT B – ASYLUM ADJUDICATIONS

The following information is specific to asylum adjudications. Information in each text box contains adjudication-specific procedures and guidelines related to the section from the Training Module referenced in the subheading of the supplement text box.


## REQUIRED READING

    1.

    2.


## ADDITIONAL RESOURCES

    1.

    2.


## SUPPLEMENTS

> **Asylum Adjudications Supplement – Oath And Interpreter**
>
> **Notes Must Include a Notation that Oath Was Administered and Indicate When Interpreter Was Present**
>
> - Include a Notation that the Oath was Administered to the Interpreter Monitor
>
>   On some occasions during an asylum interview, a professional interpreter will be used to monitor (via telephone) the interpretation by the applicant's interpreter. As the interpreter monitor is not present at the interview to sign an oath form, the notes must indicate that the oath was administered to the interpreter monitor.
>
> - Include Both Interpretations Where There is a Dispute in Interpretation Between the Applicant's Interpreter and the Interpreter Monitor
>
>   When using a professional interpreter to monitor the interpretation of the interpreter provided by the applicant, there may be instances in which a dispute in interpretation between the interpreter monitor and the applicant's interpreter arise. If there is such a dispute, the asylum officer must give the applicant's interpreter an opportunity to provide a reasonable explanation for the discrepancy. If the

USCIS00008076

applicant's interpreter is unable to do so and the interpreted testimony will be used in the assessment, the asylum officer must use the interpreter monitor's interpretation of the applicant's testimony in the assessment; however, the interview notes must preserve both the interpretation given by the applicant's interpreter and the interpreter monitor, clearly indicating which interpretation was provided by the monitor and which was provided by the applicant's interpreter.

Officers should consult the Affirmative Asylum Procedures Manual for note-taking procedures relating to the Use of Monitoring Services in Asylum Interviews.[8]

**Asylum Adjudications Supplement – Include Identifying Information on Each Page**

Each page should have the following information clearly written or typed in the top right-hand corner:

- A Number, Case Number or NIV Receipt number, depending on the type of case being interviewed

- Date of the interview

- Page number in the following format: 1 of 13, 3 of 15, etc.

- Officer's Name and ID number, if applicable

- Name of Applicant

**Asylum Adjudications Supplement –Important Information to Record**

**Elements that Must be Included in the Notes**

It is imperative that the interview notes be sufficiently detailed and clear. Furthermore, accurate interview notes are crucial for probing into the internal consistency of an applicant's claim.

Interview notes should include the following:

- Factors that address the elements of the refugee definition

- Factors that affect credibility, including the applicant's opportunity to respond to any

---

[8] Affirmative Asylum Procedures Manual, Section II.J.4.b.v.

USCIS00008077

perceived inconsistencies

- Factors that relate to mandatory bars and discretionary denials

- Indications that the officer pursued all relevant lines of questioning, followed-up on relevant points, and provided the applicant an opportunity to add additional information before the conclusion of the interview

- The applicant's (and any dependent's) current immigration status

- Factors that relate to the one-year filing deadline


**Asylum Adjudications Supplement – Sworn Statements[9]**

When adjudicating asylum cases, when you have reason to believe that the interviewee has taken part in certain activities listed in Section 3.1.2 Sworn Statements, you must switch your note-taking format to that of a sworn statement. Sworn statements are of greater evidentiary value in a subsequent proceeding. They include having the interviewee initial and sign the statement. Note that not all testimony recorded in a Q&A format is considered a sworn statement. Notes taken in full Q&A format do not constitute a sworn statement unless and until they are reviewed and signed, page by page, by the interviewee.

**Format for Sworn Statements**

Officers should use the full Q&A format when preparing a sworn statement. The interview notes should be as close as possible to a verbatim record of everything said at the interview, and must provide an accurate and detailed record of the specific questions asked and the interviewee's answers. This format leaves less room for misinterpretation or for claims that important information given to an officer has been omitted or misunderstood.

When you find you have to begin taking notes as a sworn statement, you draw a diagonal line through the remaining page of notes at the point at which you stop taking notes to signify the change of format to a sworn statement. The sworn statement should begin on a separate page from the earlier interview notes and should continue through to the conclusion of the interview.

Each page should include the same information that must be contained in regular interview notes: A-number or other identifying number, date, page number, name

---

[9] Information about sworn statements is also available in the Affirmative Asylum Procedures Manual.

USCIS00008078

of applicant, name and number of officer.

### Content of Sworn Statements

The sworn statement should generally be developed in chronological and logical sequence with respect to all pertinent details. You should avoid pursuing lines of questioning that are not relevant to the interviewee's eligibility for asylum. It is important that the officer use the particular phraseology of the interviewee and his or her exact words, to the extent possible, when recording the Q&A statement. This will avoid any implication that the statement was not made freely and voluntarily, or that it does not represent a true record of the exchange between the officer and the interviewee.

### Proper Execution of Sworn Statements

At the conclusion of the interview, the officer should review the sworn statement with the interviewee and representative, if applicable, and make any corrections requested, and the corrections should be initialed by both the officer and the interviewee. Each page of the Q&A statement should be signed or initialed by the person being interviewed to demonstrate that he or she has reviewed the statement, understood the contents of the statement, and consented to any and all changes to the statement. All pages of the statement should be signed in the presence of the officer taking the statement. Please see Affirmative Asylum Procedures Manual, Appendix 63 for sample sworn statement.

Both the officer and the interviewee should print and sign the last page of the Q&A sworn statement and attest that the interviewee acted of his or her own free will and acknowledged the statement to be true and correct. As with the procedure for regular interview notes, the officer should draw a diagonal line from the end of the testimony to the bottom of the page to prevent any substitutions or alterations to the statement.

Once all these steps are completed, the statement taken by the officer in Q&A format is considered to be a sworn statement.

USCIS: RAIO Directorate – Officer Training                     DATE (see schedule of revisions): 12/20/2019
*RAIO Combined Training Program*                               Page 40 of 40

USCIS00008079