**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LEGAL SERVICES, *et al.*,

    Plaintiffs,

  v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,

    Defendants.

Case No.: 1:21-cv-10083-DJC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Andrew Rising*
ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 12520
Washington, D.C. 20005
Phone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

   I.   Statutory and Regulatory Background ..........................................................................2

   II.   Defendants' Policy Permitting Inspection of Records During the Application Process ........5

   III.   Procedural History ....................................................................................................8

LEGAL STANDARD ............................................................................................................9

ARGUMENT .......................................................................................................................10

   I.   Plaintiffs Have Not Demonstrated the Existence of a "Nondisclosure Policy" Where FOIA is the Sole or Primary Means of Inspecting the Record of Proceeding Which Constitutes the Basis for USCIS's Decision on an Affirmative Asylum Application. ..................................10

   II.   The Manner in Which USCIS Permits Affirmative Asylum Applicants to Inspect the Record of Proceeding is Consistent With 8 C.F.R. § 103.2(b)(16). ...........................................11

       A.   The disclosure obligation of Section 103.2(b)(16) is only implicated when USCIS issues "the decision" approving or denying an affirmative asylum application ........................12

       B.   USCIS's provision of multiple opportunities to inspect the record of proceeding exceeds its obligation under 8 C.F.R. § 103.2(b)(16). ..............................................................16

       C.   To the extent that Section 103.2(b)(16) is ambiguous, USCIS's reasonable interpretation of its own regulations is entitled to deference ...............................................................21

   III.   The Manner in Which USCIS Permits Affirmative Asylum Applicants to Inspect the Record of Proceeding is Neither Arbitrary nor Capricious. ...................................................23

       A.   The manner in which USCIS permits inspection is committed to agency discretion. ......23

       B.   In any event, USCIS provided rational reasons for adopting its inspection process. .......25

CONCLUSION .....................................................................................................................31

## TABLE OF AUTHORITIES

**Cases**

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States,*
340 U.S. 593 (1951) ............................................................................................................ 19

*Atieh v. Riordan,*
797 F.3d 135 (1st Cir. 2015) ............................................................................................. 26

*Auer v. Robbins,*
519 U.S. 452 (1997) ...................................................................................................... 21, 22

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ....................................................................................................... 15

*Chrysler Corp. v. Brown,*
441 U.S. 281 (1979) ...................................................................................................... 23, 24

*Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n,*
59 F.3d 284 (1st Cir. 1995) .......................................................................................... 25, 30

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ...................................................................................................... 10, 23

*City of Providence v. Barr,*
954 F.3d 23 (1st Cir. 2020) ............................................................................................... 14

*Cobell v. Norton,*
428 F.3d 1070 (D.C. Cir. 2005) ........................................................................................ 27

*Concilio De Salud Integral De Loiza, Inc. v. Dep't of Health & Hum. Servs.,*
538 F. Supp. 2d 139 (D.D.C. 2008) .................................................................................. 23

*Cowels v. FBI,*
327 F. Supp. 3d 242 (D. Mass. 2018) ............................................................................... 25

*Cowels v. FBI,*
936 F.3d 62 (1st Cir. 2019) ............................................................................................... 25

*Dep't of Comm. v. New York,*
588 U.S. 752 (2019) ........................................................................................................... 30

*DHS v. Regents of the Univ. of Cal.,*
140 S. Ct. 1891 (2020) ......................................................................................................... 9

*Dhakal v. Sessions,*
895 F.3d 532 (7th Cir. 2018) ............................................................................................ 16

*FCC v. Prometheus Radio Project,*
592 U.S. 414 (2021) ........................................................................................................... 25

*Ghaly v. INS,*
48 F.3d 1426 (7th Cir. 1995) ....................................................................................... 17, 18

*Hassan v. Chertoff,*
593 F.3d 785 (9th Cir. 2010) ....................................................................................... 17, 18

*Heckler v. Chaney,*
  470 U.S. 821 (1985) ................................................................................25

*In re Firmery,*
  2006 WL 901430 (BIA Feb. 28, 2006) .....................................................17

*In re Liedtke,*
  2009 WL 5548116 (BIA Dec. 31, 2009) ...................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.,*
  582 F.3d 156 (1st Cir. 2009) ...................................................................12

*Int'l Brotherhood of Teamsters v. U.S. Dep't of Transp.,*
  861 F.3d 944 (9th Cir. 2017) ...................................................................24

*John Doe Agency v. John Doe Corp.,*
  493 U.S. 146 (1989) ..................................................................................8

*Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior,*
  88 F.3d 1191 (D.C. Cir. 1996) .................................................................22

*Kisor v. Wilkie,*
  588 U.S. 558 (2019) ......................................................................14, 21, 22

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020) .................................................................................25

*Loving v. United States,*
  116 S. Ct. 1737 (1996) .............................................................................18

*Lunney v. United States,*
  319 F.3d 550 (2d Cir. 2003) .....................................................................24

*Mangwiro v. Johnson,*
  554 F. App'x 255 (5th Cir. 2014) .............................................................17

*Marasco & Nesselbush, LLP v. Collins,*
  327 F. Supp. 3d 388 (D.R.I. 2018) ...........................................................24

*Minuteman Health, Inc. v. Dep't of Health & Human Servs.,*
  291 F. Supp. 3d 174 (D. Mass. 2018) ........................................................9

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.,*
  463 U.S. 29 (1983) ..................................................................................30

*New Ikor, Inc. v. McGlennon,*
  466 F. Supp. 136 (D. Mass. 1978) ...........................................................14

*New Prime Inc. v. Oliveira,*
  139 S. Ct. 532 (2019) ..............................................................................15

*Noel Canning v. NLRB,*
  705 F.3d 490 (D.C. Cir. 2013) .................................................................13

*Ogbolumani v. Napolitano,*
  557 F.3d 729 (7th Cir. 2009) ...................................................................17

*Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,*
    400 U.S. 62 (1970) ......................................................................................................16

*Ramirez v. U.S. Immigr. & Customs Enf't,*
    568 F. Supp. 3d 10 (D.D.C. 2021) ..............................................................................26

*Reno v. Flores,*
    507 U.S. 292 (1993) .......................................................................................................1

*River St. Donuts, LLC v. Napolitano,*
    558 F.3d 111 (1st Cir. 2009) .................................................................................... 9, 10

*Rosenberg v. XM Ventures,*
    274 F.3d 137 (3d Cir. 2001) ........................................................................................14

*Rudisill v. McDonough,*
    601 U.S. 294 (2024) .....................................................................................................14

*Sturgeon v. Frost,*
    577 U.S. 424 (2016) .....................................................................................................18

*Textron, Inc. v. Comm'r,*
    336 F.3d 26 (1st Cir. 2003) ..........................................................................................12

*U.S. Dep't of Labor v. Wolf Run Mining Co., Inc.,*
    446 F. Supp. 2d 651 (N.D. W. Va. 2006) .....................................................................22

*United States v. Gadson,*
    77 F.4th 16 (1st Cir. 2023) ...........................................................................................21

*Watervale Marine Co. v. Dep't of Homeland Sec.,*
    55 F. Supp. 3d 124 (D.D.C. 2014) ...............................................................................24

*Webster v. Doe,*
    486 U.S. 592 (1988) .....................................................................................................24

**Statutes**

5 U.S.C. § 552 ................................................................................................................... 8, 10

5 U.S.C. § 552(a) ...................................................................................................................28

5 U.S.C. § 552(b) .............................................................................................................. 8, 28

5 U.S.C. § 552(c) .............................................................................................................. 8, 28

5 U.S.C. § 701(a)(2) ........................................................................................................ 23, 24

5 U.S.C. § 706 ..........................................................................................................................9

5 U.S.C. § 706(2)(A) ..............................................................................................................23

6 U.S.C. § 271(b) .....................................................................................................................2

8 U.S.C. § 1101(a)(42) .............................................................................................................2

8 U.S.C. § 1101(b)(4) ........................................................................................................... 2, 5

8 U.S.C. § 1158(b) ................................................................................................................. 2, 7

8 U.S.C. § 1229(a) ................................................................................................................. 2, 7

**Regulations**

6 C.F.R. § 5.1(a)(1) ...................................................................................................................... 8

8 C.F.R. Part 208 .........................................................................................................................14

8 C.F.R. § 103.2(b)(16) ....................................................................................................... *passim*

8 C.F.R. § 208.12 .........................................................................................................................28

8 C.F.R. § 208.12(a) ......................................................................................................................4

8 C.F.R. § 208.12(b) ............................................................................................................ *passim*

8 C.F.R. § 208.14(a) ......................................................................................................................3

8 C.F.R. § 208.14(b) ......................................................................................................................5

8 C.F.R. § 208.14(c) ......................................................................................................................5

8 C.F.R. § 208.9 ........................................................................................................................ 2, 6

8 C.F.R. § 103.39 ..........................................................................................................................8

8 C.F.R. § 103.42 ..........................................................................................................................8

8 C.F.R. part 103 .........................................................................................................................28

59 Fed. Reg. 14779 (Mar. 30, 1994) ................................................................................... *passim*

59 Fed. Reg. 62284 (Dec. 5, 1994) ...................................................................................... *passim*

62 Fed. Reg. 10312 (Mar. 6, 1997) .............................................................................................28

65 Fed. Reg. 76121 (Dec. 6, 2000) ..............................................................................................29

## INTRODUCTION

This Administrative Procedure Act ("APA") case involves Plaintiffs' claim—limited to the affirmative asylum process by prior briefing—challenging Defendants' policies for disclosing records to asylum applicants and their counsel pursuant to 8 C.F.R. § 103.2(b)(16), which provides that an applicant "shall be permitted to inspect the record of proceeding which constitutes the basis for the decision," subject to exceptions. Plaintiffs do not challenge Defendants' failure to permit inspection of the record of proceeding in any individual asylum case. Rather, they mount a facial challenge to Defendants' affirmative asylum record inspection practices, alleging that Defendants maintain a purported "unwritten policy of declining to give asylum applicants and their counsel access to the records before the asylum officer, and directing these applicants to make any requests for documents through [the Freedom of Information Act (FOIA)]," which they argue is contrary to regulation and arbitrary or capricious. Pls.' Mot. Summ. J. ("Pls.' MSJ") at 5, ECF No. 137. In order to prevail on their challenge, Plaintiffs must therefore "establish that no set of circumstances exists under which the [policy] would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993). Since they fail to do so, Plaintiffs' motion for summary judgment should be denied and Defendants' motion should be granted.

At the outset, Plaintiffs' motion fails to establish that Defendants actually maintain an unwritten "nondisclosure policy," as they contend. To the contrary, the undisputed evidence demonstrates that the Asylum Division of the United States Citizenship and Immigration Services ("USCIS") permits applicants to inspect the record of proceeding at multiple points during the application process—namely during the asylum interview, through the exchange of records and notices between the applicant and the agency, and through an online account where applicable—while FOIA merely remains available to applicants as an independent, additional means of accessing records.

That policy meets and exceeds the requirements of 8 C.F.R. § 103.2(b)(16), which by its plain text limits Defendants' inspection obligation to only those instances when the Asylum Division

1

renders the final decision on the application, and commits the choice of *how* and *when* to permit applicants to inspect records to agency discretion. While Plaintiffs may be unhappy with the methods USCIS has chosen to permit inspection of records, the regulation provides no substantive standards upon which to further judge the policy's sufficiency, leaving no law to apply for purposes of Plaintiffs' challenge. Even if Plaintiffs had identified such a standard, however, their dissatisfaction with the policy does not make it arbitrary or capricious, because the agency adequately considered the benefits and drawbacks of increased disclosure during the 1994 regulatory reforms on which its current policy is based. Plaintiffs' claims therefore lack merit, and the Court should enter judgment for Defendants.

## **BACKGROUND**

### I. **Statutory and Regulatory Background**

USCIS's Asylum Division adjudicates affirmatively-filed applications for asylum. *See* 6 U.S.C. § 271(b). USCIS has discretion to grant asylum to an applicant who demonstrates that they are a "refugee" not subject to one of the mandatory bars to asylum, and warrant a favorable exercise of discretion. 8 U.S.C. §§ 1101(a)(42), 1158(b). As part of that process, an asylum applicant submits a comprehensive application ("Form I-589"), along with supporting materials, which the asylum officer reviews and evaluates in conjunction with the applicant's interview testimony in order to determine whether asylum should be granted. 8 U.S.C. § 1158(b)(1). A key component of the affirmative asylum application process is the interview, where an applicant meets with the asylum officer to review their application and supporting documents. During the interview, the asylum officer elicits all relevant and useful information bearing on the applicant's eligibility for asylum by discussing the records constituting the basis for the decision in a nonadversarial setting, 8 C.F.R. § 208.9, subject to certain exceptions prohibiting disclosure. *See* 8 C.F.R. § 103.2(b)(16)(i)-(iv). USCIS may make a determination based upon the applicant's testimony during the interview, or request additional documentation from the applicant when such testimony fails to sustain the applicant's burden. 8 U.S.C. § 1158(b)(1)(B)(ii).

USCIS's current policies for processing affirmative asylum applications, including its policies permitting the inspection of records pursuant to 8 C.F.R. § 103.2(b)(16), stem from the agency's effort to reform the asylum process in 1994. *See* Ex. A, D.P. Tr. at 154:8-21, 155:13-19. Prior to 1994, asylum officers issued the final decision on all asylum applications in the form of either a grant or denial. *See* 8 C.F.R. § 208.14(a) (1993). As a result, if an asylum officer did not intend to grant asylum to an applicant, whether removable or not, the officer was first required to issue a resource-intensive notice of intent to deny ("NOID"), explaining the grounds for proposed denial, and if the applicant did not overcome the proposed grounds, a final denial. Afterward, the applicant had the right to file an asylum application *de novo* with an immigration judge if exclusion or deportation proceedings were initiated. As explained in its 1994 proposed rule, the Government determined that this "existing system for adjudicating asylum claims [could] not keep pace with incoming applications" due to the agency's "limited resources" and "the effort [required] to meet procedural requirements imposed by [then-] current regulations." *Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization*, 59 Fed. Reg. 14779, 14780 (Mar. 30, 1994) (proposed rule).

In order to "streamline the asylum adjudications process," the agency thus proposed "several principal reforms." 59 Fed. Reg. at 14783. "First," it introduced the concept of a "referral" of asylum applications in order "to allow the Officers to address a greater volume of applications and to concentrate their efforts on approving meritorious claims." *Id.* at 14780. Under this new system, officers were authorized to refer to immigration court applicants who were not granted asylum in the affirmative process and lacked an underlying lawful immigration status or still had a valid grant of parole, without issuing a NOID or final decision on the application. *Id.* at 14779. "Second," the agency formalized the application and supporting materials as the primary "part of the record of proceedings" to be inspected at the asylum interview, in order "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration

Judges that differ from the claims they filed before Asylum Officers." *Id.* at 14780; *see also id.* at 14782 (requiring "that the signatures on the application are made under penalty of perjury and may form the basis for denial if the applicant later expresses ignorance of the contents of the application"). The agency also proposed amending the text of then-8 C.F.R. § 208.12(a) "to eliminate the provisions requiring an Asylum Officer to provide the applicant with an opportunity to inspect, explain, or rebut the material(s) relied upon to find that the applicant's claim has not been approved. The Asylum Officer will continue to rely upon materials provided by the Department of State, the District Director, or other credible sources in making a decision to grant asylum, to refer the case to an Immigration Judge, or to deny asylum for applicants having another lawful immigration status." *Id.* at 14783.

While some commenters argued that additional inspection opportunities would better protect the rights of applicants and promote more accurate decisions, the agency declined to retain the inspection procedures previously contained in 8 C.F.R. § 208.12(a), reasoning that the additional disclosure requirements sought by commenters were "not necessary" to "improve the fairness, quality, and accuracy of decisions" because referred applicants would still "have a full opportunity to present their claim to an immigration judge, with all the procedural protections of a full adversarial proceeding," including "the right to examine and rebut all evidence and materials that are introduced in opposition to the asylum claim." 59 Fed. Reg. 62284, 62293-94 (Dec. 5, 1994) (final rule); *Id.* at 14783 ("The applicant will have the opportunity to review such materials to the extent they are relied upon in the course of proceedings before an Immigration Judge."). The agency also emphasized that "modification of this section [was] pivotal to the streamlining of the asylum process." *Id.* at 62293.

As a result of the 1994 reforms, there are now three possible outcomes to USCIS's review of a properly-filed affirmative asylum application. For those applications where USCIS issues the final decision, an asylum officer will grant or deny the application, with all denials preceded by issuance of a detailed NOID disclosing all information which constitutes the basis for the proposed denial and

4

providing the applicant an opportunity to respond. *See* 8 C.F.R. §§ 208.14(b)-(c), 103.2(b)(16). Alternatively, USCIS may refer the applicant to immigration court without issuing a NOID or making a final determination about the applicant's eligibility for asylum or about whether the applicant merits a favorable exercise of discretion to receive asylum, if the applicant is not granted asylum in the affirmative process and lacks an underlying lawful immigration status or still-valid grant of parole. *See* 8 C.F.R. § 208.14(c). Jurisdiction then passes to a Department of Justice immigration judge for adjudication of the referred applicant's asylum application *de novo*. 8 U.S.C. §§ 1101(b)(4), 1229(a).

**II. Defendants' Policy Permitting Inspection of Records During the Application Process**

While an affirmative asylum applicant is not permitted "to conduct discovery directed toward the records, officers, agents, or employees of [USCIS], the Department of Justice, or the Department of State," 8 C.F.R. § 208.12(b), USCIS's affirmative asylum application process does permit applicants to "inspect the record of proceeding which constitutes the basis for the decision except as provided in the following paragraphs." 8 C.F.R. § 103.2(b)(16). Subpart (i) of Section 103.2(b)(16) provides that "[i]f the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by [USCIS] and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered[.]" *Id.* Any such rebuttal information submitted by the applicant is included in the record of proceeding. *Id.* This rule of disclosing unknown derogatory information and allowing applicants to rebut applies to any information that may form the basis of the decision, except as provided in the other exceptions. *Id.* Subpart (ii) in turn provides an exception for "[d]etermination[s] of statutory eligibility," which "shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner," unless classified. *Id.* Finally, subparts (iii) and (iv) deal with "classified information," providing that USCIS may base its decision on classified information not disclosed to the applicant in certain circumstances. *Id. See* Pls. MSJ at 20

(recognizing these "exceptions for classified information that Plaintiffs do not challenge here").

As a matter of long-standing USCIS policy and as a result of the 1994 asylum reforms, the inspection opportunity permitted by the introductory clause of Section 103.2(b)(16) occurs primarily through the asylum interview described above, where the main documents comprising the record of proceeding and constituting the basis for the decision on the application—the comprehensive I-589 asylum application and any supporting materials—are reviewed and signed by the applicant in the presence of the asylum officer. *See supra* 3-4 (explaining that the agency formalized the I-589 and supporting materials as the primary "part of the record of proceedings" to be inspected and signed at the interview in order to "streamline" the process and "encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers." (quoting 59 Fed. Reg. at 14780)). As Defendants' Rule 30(b)(6) witness confirmed, "the inspection actually takes place with the asylum officer," and the key documents forming the record of proceeding which constitutes the basis for the decision are "inspected during the asylum interview with the asylum officer. And as part of that process, the inspection is formalized through signature [] [a]nd then reviewed for completeness following the interview." Ex. A, D.P. Tr. at 149:22-150:7; *id.* at 147:5-151:11 (explaining the inspection process); 8 C.F.R. § 208.9; Pls.' Ex. 2, AAPM at USCIS00004111-32, ECF No. 139-2.

During the asylum interview, USCIS policy dictates that the asylum officer "review[] and explain[] to the applicant any corrections, additions, or changes made to the I-589 and numbers each correction, addition, or change," and memorialize the completion of the inspection through the signing of the application itself. Pls.' Ex. 2, AAPM at USCIS00004132. While "[a]sylum officers aren't instructed to go through the supplemental . . . materials that don't pertain to the applicant," "those records that pertain to the applicant, asylum officers are generally going through those documents with the applicant, whether it's identity documents or personal statements," unless classified. Ex. A,

D.P. Tr. at 150:19-151:2. And "the record of proceeding would include those documents, and that action of going through the documents would be the inspection under 103.2(b)(16)." *Id.* at 151:8-11. In addition, if there is derogatory information, the officer will inform the applicant during the interview and provide them with an opportunity to explain. *Id.* at 264:10-265:22, 180:3-182:13. As necessary, the officer may also issue a Request for Evidence ("RFE") requesting additional information for the applicant to submit for consideration in their application. 8 U.S.C. § 1158(b)(1)(B). Even if an officer does not issue a RFE, an applicant may submit additional evidence for consideration.

Following the interview, an applicant facing a denial is also provided a NOID which explains the basis for the proposed denial and provides the applicant an opportunity to respond, satisfying the agency's obligations regarding the disclosure of derogatory information and determinations of statutory eligibility under 8 C.F.R. § 103.2(b)(16)(i)-(ii). Ex. A, D.P. Tr. at 308:18-309:3. The non-application documents referenced by Plaintiffs, including those containing material that is derogatory or could lead to statutory ineligibility such as records of "prior interactions with U.S. agencies, including other immigration applications filed with USCIS, visa applications filed with the Department of State, records of encounters with U.S. Customs and Border Protection ("CBP") at the U.S.-Mexico border, and background and security checks," Pls.' MSJ at 4, are accordingly disclosed to the applicant in the interview and NOID in a manner upheld by courts across the country. *Infra* 17-18 (citing cases).

In addition to the inspection occurring at the interview itself and the NOID for applicants facing denial, USCIS also permits affirmative asylum applicants to inspect documents comprising the record of proceeding through the exchange of those documents in the course of the application process. For instance, USCIS policy ensures that the "notices . . . and decision letter[s] and other documents [] that provide information on the formal decision-making process and the formal steps of the affirmative asylum process in the course of adjudication" are "sent to the applicant" during the process. Ex. A, D.P. Tr. at 180:11-21; *see also id.* at 126:14-127:24. While not required by agency policy,

asylum office personnel also have the "the ability and authority" to provide copies of documents to applicants upon request in addition to permitting applicants to inspect those records upon initial receipt and at the interview. *Id.* at 129:12-130:2. USCIS also provides applicants who apply using the USCIS online filing system a copy of their filing with supporting documents, as well as copies of any notices issued to the applicant and any responses submitted by them. All such notices are posted to the applicant's online account (and to their representative's account if available). The online account provides applicants additional opportunities to access their records on demand and inspect such records anew. *See* Ex. B, Defs.' Responses to Pls.' 3rd Set of Interrogatories, Response to Interrogatory No. 2 (listing documents viewable in online account). This system is available to all applicants who choose to file online, and USCIS is also digitizing paper-filed documents. Ex. A, D.P. Tr. at 99:9-100:15 (applicants who can access records online are "a large portion of the total pending cases").

Finally, USCIS independently provides asylum applicants access to records, including those beyond the limited subset that form "the record of proceeding with constitutes the basis of the decision," 8 C.F.R. § 103.2(b)(16), through its FOIA request process in accordance with FOIA's disclosure requirements. *See* 8 C.F.R. § 208.12(b) ("Persons may continue to seek documents available through a [FOIA] request pursuant to 8 CFR part 103."); 8 C.F.R. §§ 103.42; 103.39. FOIA establishes a statutory right of public access to Executive Branch information. *See* 5 U.S.C. § 552; *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 150 (1989) ("the fundamental principle of public access to Government documents [] animates the FOIA."). Pursuant to FOIA, any person has a right to obtain access to federal agency records subject to the Act for any reason, except to the extent that any portions of such records are protected from public disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(b), (c). All federal agencies have FOIA offices and regulations designed to respond to FOIA requests, making FOIA an always-available means of accessing government records. *See, e.g.,* 6 C.F.R. § 5.1(a)(1).

### III.    Procedural History

8

Plaintiffs filed their initial complaint on January 15, 2021, asserting that Defendants had a policy or practice, which Plaintiffs call a "Nondisclosure Policy," of "denying noncitizens and their counsel timely access to relevant records in the government's possession" during immigration proceedings and instead directing Plaintiffs to request those records through the FOIA, in violation of the APA. Compl. ¶ 1-4, ECF No. 1. Defendants filed two motions to dismiss Plaintiffs' claims, ECF Nos. 23 and 62, which the Court granted as to removal and other immigration proceedings, allowing only Plaintiffs' APA claim concerning the affirmative asylum process to continue. *See* ECF Nos. 50, 80. On May 24, 2023, the Government produced the administrative record, ECF No. 96, which Plaintiffs challenged for sufficiency. ECF No. 109. The Court allowed Plaintiffs to supplement the administrative record with limited discovery. *See* ECF No. 115. Plaintiffs filed their motion for summary judgment on November 22, 2024. ECF Nos. 136-139. On December 10, 2024, the parties jointly moved to amend the briefing schedule, ECF No. 141, and Defendants now bring this cross-motion for summary judgment and response to Plaintiffs' motion to the Court's consideration.

## LEGAL STANDARD

When agency action is challenged under the APA, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Minuteman Health, Inc. v. Dep't of Health & Human Servs.*, 291 F. Supp. 3d 174, 189–90 (D. Mass. 2018). Under the APA, an agency action may not be set aside unless it is "arbitrary," "capricious," or "not in accordance with law." 5 U.S.C. § 706. APA review of final agency action is highly deferential, and the agency's actions are presumed to be valid. *See River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). "[A] court is not to substitute its judgment for that of the agency," *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (citation omitted), but instead to assess only whether the decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," *id.*

(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Thus, a reviewing court's only role is to "determine whether the agency's decision is supported by a rational basis, and if so, [it] must affirm." *River St. Donuts*, 558 F.3d at 114 (citation omitted).

## ARGUMENT

I.     **Plaintiffs Have Not Demonstrated the Existence of a "Nondisclosure Policy" Where FOIA is the Sole or Primary Means of Inspecting the Record of Proceeding Which Constitutes the Basis for USCIS's Decision on an Affirmative Asylum Application.**

Plaintiffs purport to challenge an "unwritten" nondisclosure policy, by which they contend Defendants utilize FOIA as the sole or primary means of permitting affirmative asylum applicants to inspect the record of proceeding that constitutes the basis for the decision on their case, pursuant to 8 C.F.R. § 103.2(b)(16). Pls.' MSJ at 5. But their alleged "nondisclosure policy" is a strawman, as evidenced by the undisputed facts and evidence in this case. *See, e.g., supra* 5-8; Ex. A, D.P. Tr. at 147:5-151:11, 295:9-300:15, 308:18-309:3; Pls.' Ex. 5, K.S. Tr. at 78:3-79:15, ECF No. 139-5.

Rather than utilizing FOIA as the primary means of permitting inspection, USCIS has structured its affirmative asylum application process so as to build the required inspection opportunity into the process itself. The main point at which the inspection of the record of proceeding occurs is during the asylum interview, where the asylum officer and applicant review the completed application and any supporting materials on which the agency's decision on the application is based, subject to the exceptions and additional disclosure requirements contained in the subparts of 8 C.F.R. § 103.2(b)(16), and memorialize that inspection process with the asylum applicant via signature by the applicant and officer. *See supra* 6-7. While FOIA establishes separate obligations relating to the disclosure of documents, *see* 5 U.S.C. § 552, including documents which may comprise the record of proceeding and documents beyond that, FOIA is merely an independent and alternative method of document access, in addition to the inspection afforded affirmative asylum applicants by USCIS through the asylum interview and other means described above. *See* Ex. A, D.P. Tr. at 252:1-3 ("FOIA

is a separate way to obtain contents of the A-file, including the record of proceeding").

Plaintiffs admit that applicants are permitted to inspect the record of proceeding as a matter of USCIS policy. As Plaintiffs concede in their motion, such an inspection opportunity is built into the affirmative asylum application process, and occurs "*during the asylum interview itself*," Pls.' MSJ at 8. While Plaintiffs contest whether disclosure of such records during the interview is adequate as a matter of law and policy, *see, e.g.,* Pls.' MSJ at 24-25 (complaining that USCIS's policy of providing an inspection opportunity during the interview "leaves applicants and their counsel to walk in and be surprised with questions"), the fact that such records are disclosed at the interview (and again in the RFE (where issued) and NOID, if the agency proposes to deny the application) is undisputed. *See* Pls.' MSJ at 8, 12, 13; *see also id.* at 7 (conceding that USCIS policy dictates that the officer "discuss[] the content of the documents that constitute the applicant's record of proceeding with the applicant during that applicant's affirmative asylum interview"). Plaintiffs have adduced no evidence to the contrary. Indeed, USCIS's policy of satisfying its 8 C.F.R. § 103.2(b)(16) obligations by disclosing the records forming the basis for USCIS's decision to the applicant during the interview and through the NOID is longstanding and has been approved by numerous courts. *See infra* 17-18 (citing cases).

Plaintiffs' failure to engage with the substance of USCIS's *actual* longstanding policy for record inspection is fatal to their APA claim. *See* Pls.' MSJ at 16-20 (contending that USCIS utilizes FOIA as the primary means of record inspection, while omitting reference to the opportunity to inspect at the asylum interview entirely). While Plaintiffs may be unhappy with the inspection opportunity provided by USCIS during the asylum application process, that does not make for a successful APA challenge. USCIS's decision to build the inspection opportunity into its affirmative asylum application process is neither arbitrary nor capricious, nor contrary to 8 C.F.R. § 103.2(b)(16), as explained below.

## II.    The Manner in Which USCIS Permits Affirmative Asylum Applicants to Inspect the Record of Proceeding is Consistent With 8 C.F.R. § 103.2(b)(16).

By its terms, Section 103.2(b)(16) provides only a limited right to inspection over a subset of

documents—those which form "the record of proceeding which constitutes the basis for the decision"—and is only triggered when the Asylum Division issues "the decision" as to the affirmative asylum application in question. 8 C.F.R. § 103.2(b)(16). USCIS satisfies its obligations under Section 103.2(b)(16) by providing applicants the opportunity to inspect the record of proceeding through the exchange of application documents between the applicant and agency, during the interview, and through the RFE (where issued) and the NOID as explained above. *See supra* 5-8, 10-11. As a matter of policy, USCIS also *exceeds* the requirements of the regulation by providing that same interview inspection opportunity to applicants regardless of whether they will ultimately receive a final decision on their application from USCIS or merely be referred to an immigration judge for adjudication. *See* Ex. A, D.P. Tr. at 78:8-19. And if there were any doubt as to whether the inspection opportunity permitted by USCIS as a routine part of the application process were sufficient to satisfy Section 103.2(b)(16), USCIS also independently provides applicants the ability to access records any time through their USCIS online account (if the applicant chooses to file electronically), or by filing a request pursuant to FOIA (which also provides general access to records beyond the limited subset of documents comprising the record of proceeding constituting the basis for the agency's decision).

### A. The disclosure obligation of Section 103.2(b)(16) is only implicated when USCIS issues "the decision" approving or denying an affirmative asylum application.

Like any other question of interpretation, the Court's analysis of 8 C.F.R. § 103.2(b)(16) begins with the text, and "if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 168 (1st Cir. 2009) (quoting *Textron, Inc. v. Comm'r*, 336 F.3d 26, 31 (1st Cir. 2003)). By its plain text, the introductory clause of Section 103.2(b)(16)—upon which Plaintiffs rely to establish the disclosure obligation at issue, *see* Pls.' MSJ at 1—requires the existence of "the decision" as a condition precedent to an applicant's right "to inspect the record of proceeding which constitutes [its] basis[.]" *See* 8 C.F.R. § 103.2(b)(16) (permitting inspection of "the record of

proceeding which constitutes the basis for the decision"). A plain reading of the text thus indicates that USCIS's inspection obligation does not attach unless and until "the decision" has been reached on the asylum application. And in the context of Section 103.2(b)(16), "the decision" means a denial or approval of the application, not a mere referral of an application to an immigration judge. Because Section 103.2(b)(16) provides no inspection right for applications that are neither approved nor denied by USCIS, but instead merely referred to an immigration judge for adjudication, Plaintiffs' claim, which is predicated on the existence of such an obligation, fails as to all such applicants.

Contrary to Plaintiffs' suggestion that "the decision" referenced in Section 103.2(b)(16) can be merely interlocutory (such as a decision to refer an application to an immigration judge for adjudication), *see* Pls.' MSJ at 28 (arguing that "[a]ll of these outcomes are *a 'decision'* under the plain language definition of the term" (emphasis added)), the regulation itself does not use the words *a decision*, and thus does not encompass the interlocutory meaning Plaintiffs seek to impart through their use of the word "a." Instead, Section 103.2(b)(16) is conditioned on the presence of "*the* decision," connoting the decision's finality and uniqueness. As the D.C. Circuit explained when considering the meaning of "the Recess" in Article II, Section 2, Clause 3 of the Constitution: "[t]hen, as now, the word "the" was and is a definite article. Unlike "a" or "an," that definite article suggests specificity." *Noel Canning v. NLRB*, 705 F.3d 490, 500 (D.C. Cir. 2013) (citing 2 Samuel Johnson, A Dictionary of the English Language 2041 (1755) (defining "the" as an "article noting a *particular* thing" (emphasis added))). "This is not an insignificant distinction. In the end it makes all the difference," *id.*, because "the decision" on an affirmative asylum application is its approval or denial. 8 C.F.R. § 103.2(b)(16).

A comparison to the language of subparts (i) and (ii) of 8 C.F.R. § 103.2(b)(16) strengthens this interpretation. Subpart (i) states that its specific provisions apply "before the decision is rendered." *Id.* § 103.2(b)(16)(i). If the inspection rights conferred by the introductory clause of 8 C.F.R. § 103.2(b)(16) also attached "before the decision is rendered," as Plaintiffs wrongly contend, then this

language in subpart (i) would constitute impermissible surplusage. *See City of Providence v. Barr*, 954 F.3d 23, 37 (1st Cir. 2020) (courts "must read statutes, whenever possible, to give effect to every word and phrase"); *Rosenberg v. XM Ventures*, 274 F.3d 137, 141-42 (3d Cir. 2001) (this rule "applies to the interpretation of regulations as well"). Unlike (i), subpart (ii) does not expressly require that "information [concerning statutory eligibility] contained in the record of proceeding" be disclosed to the applicant before the final decision is made. 8 C.F.R. § 103.2(b)(16)(ii). It requires only that the information be "disclosed to the applicant" *Id.* The agency's deliberate use of the phrase "before the decision is rendered" in subpart (i) and conspicuous omission of any similar language from the introductory clause and subpart (ii) establishes that subpart (i) diverges from the general rule that the inspection rights conferred by 8 C.F.R. § 103.2(b)(16) do not attach unless and until the final decision has been made. *See New Ikor, Inc. v. McGlennon*, 466 F. Supp. 136, 140 (D. Mass. 1978) ("where a term is carefully employed in one place and excluded in another, it should not be implied where excluded.") (citations omitted); *Rudisill v. McDonough*, 601 U.S. 294, 308 (2024) (similar).

The regulatory history of 8 C.F.R. Part 208 further supports this plain reading of the text, and confirms that the inspection obligation cited by Plaintiffs is triggered only in the presence of "the decision" to approve or deny asylum—but not a referral. *See Kisor v. Wilkie*, 588 U.S. 558, 589-90 (2019) (courts should interpret the meaning of regulations "based on indicia like text, structure, history, and purpose"). Prior to the agency's 1994 reforms, asylum officers issued the final "decision" on all asylum applications—in the form of either a grant or denial of asylum—regardless of the applicant's immigration status. *See supra* 3-5. Through its 1994 reforms, the agency introduced the concept of the "referral." *Id.* Under this new system, asylum officers were authorized to refer to an immigration judge for adjudication applicants who were not approved in the affirmative process and who lacked an underlying lawful immigration status or still-valid grant of parole, in lieu of issuing the final decision on the merits of the application. 59 Fed. Reg. at 14783. Unlike a denial, a referral

represents neither a determination that an applicant is not eligible for asylum, nor a decision that discretion should not be exercised to grant asylum. Rather, when USCIS refers an applicant, it is because USCIS has not determined conclusively that the applicant is in fact eligible or that it should exercise discretion to grant asylum and is referring the application to the immigration judge to make the necessary determinations about eligibility and the exercise of discretion in a *de novo* proceeding.

This referral process did not exist at the time of 8 C.F.R. § 103.2(b)(16)'s promulgation in 1964. Accordingly, "the decision" referenced in Section 103.2(b)(16) could only have referred to the agency's approval or denial of an application for immigration benefits. That is, "the decision" could not have meant a referral to immigration court as Plaintiffs contend, because referral was simply not an option prior to 1994. Plaintiffs' citation to modern dictionary definitions of the word "decision" are therefore inapposite. *See* Pls.' MSJ at 27. Whatever a term "might call to mind" when heard by "ears today" makes no difference because "modern intuition" is irrelevant, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019). Rather, "the law's ordinary meaning at the time of enactment usually governs," and in this case, the words "*the decision*" could have only referred to approval or denial of asylum—not referral—at the time of enactment. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020).

In any event, the modern dictionary definitions cited by Plaintiffs are not inconsistent with Defendants' interpretation of "the decision." *See* Pls.' MSJ at 27. As Plaintiffs' note, Black's Law Dictionary defines "decision" as "[a] judicial or agency determination after consideration of the facts and the law," and "judgment on a disputed matter, action of deciding." *Decision*, Black's Law Dictionary (12th ed. 2024) (cited at Pls.' MSJ at 27). But in the case of referrals, USCIS does *not* render a judgment on the matter in dispute (an applicant's claim for asylum), but instead refers the applicant to immigration court to render judgment on the application. Moreover, a referral (unlike a denial) does not involve a decision that is "adverse to the applicant" as a legal matter because it does not determine the applicant's "rights or obligations" or "whether . . . legal consequences will flow from the agency

15

action." *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970); *see also Dhakal v. Sessions*, 895 F.3d 532, 540 (7th Cir. 2018) (USCIS's adjudication of an asylum application is not final agency action subject to APA review because "the executive branch simply has not completed its review of [plaintiff]'s claims" in light of his ability to seek asylum from an immigration judge should he be placed into removal proceedings).

### B. USCIS's provision of multiple opportunities to inspect the record of proceeding exceeds its obligation under 8 C.F.R. § 103.2(b)(16).

Even assuming, *arguendo*, that the Court interprets the disclosure obligation of 8 C.F.R. § 103.2(b)(16) to apply to affirmative asylum applicants who are referred to immigration court as well as those for whom "the decision" is issued (approval or denial of asylum), USCIS's policy would still be permissible because it permits both groups of applicants to inspect the record of proceeding that constitutes the basis of the decision as a matter of course. Namely, USCIS has structured its affirmative asylum application process so as to permit all such applicants to inspect the record of proceeding which constitutes the basis for the decision during the interview and through the exchange of documents between USCIS and the applicant, and by posting notices and copies of the Form I-589 and supporting materials to the USCIS online account, with FOIA available as additional independent means of accessing records. *See supra* 5-8. Even under Plaintiffs' misguided interpretation of the regulation as applying to referrals as well as "the decision," Pls.' MSJ at 27-29, USCIS has thus satisfied its regulatory obligation by permitting applicants to inspect the record of proceeding during the course of the application process, regardless of whether their applications are approved, denied, or referred.

The plain language of the regulatory text requires only that an affirmative asylum applicant be "permitted to inspect the record of proceeding which constitutes the basis for the decision" at least once after the final decision on the application (or, in cases where there is derogatory information unknown to the applicant that will form the basis for an adverse decision, to have an opportunity to be apprised of and rebut such information before the final decision is issued). 8 C.F.R. § 103.2(b)(16)

16

does not require that inspection of the record of proceeding be permitted on-demand, an infinite number of times, in any specific manner, or at any specific point in time during the life of the application process. *Accord supra* 12-16 (Section 103.2(b)(16) requires the existence of "the decision" as a condition precedent to the inspection right). Though Plaintiffs contest this interpretation, *see* Pls.' MSJ at 24-29, their reading of the regulation is divorced from text and contrary to caselaw.

***First***, in order to manufacture an unlimited on-demand inspection obligation where none exists in the text, Plaintiffs argue that the opportunity to "inspect" encompasses more than an opportunity to be presented with and discuss the contents of such records during the affirmative asylum interview (and, for records constituting "[d]erogatory information unknown to petitioner or applicant" under 8 C.F.R. § 103.2(b)(16)(i), to have that information disclosed again in the NOID). Pls.' MSJ at 24-25. But that argument flies in the face of precedent interpreting USCIS's disclosure obligations under Section 103.2(b)(16) and its subparts. Courts across the country have held that while USCIS must describe the information upon which a decision is based, 8 C.F.R. § 103.2(b)(16) "does not require USCIS to provide, in painstaking detail, the evidence" itself to the applicant for inspection. *Ogbolumani v. Napolitano*, 557 F.3d 729 (7th Cir. 2009), *see also Mangwiro v. Johnson*, 554 F. App'x. 255, 261, n.29 (5th Cir. 2014) (unpublished) (same, citing cases). The Board of Immigration Appeals has reached the same conclusion. *See In re Liedtke*, 2009 WL 5548116, at 2 (BIA Dec. 31, 2009) (unpublished) ("the regulations do not place upon USCIS a requirement that the actual documents be provided"); *In re Firmery*, 2006 WL 901430, at 2 (BIA Feb. 28, 2006) (unpublished) (same).

Illustratively, in *Ghaly v. INS*, 48 F.3d 1426, 1434 (7th Cir. 1995), a case seeking review of a revoked Immigrant Petition for Alien Workers, the Seventh Circuit explained that 8 C.F.R. § 103.2(b)(16) does not mandate that applicants be permitted to view "each and every" piece of derogatory information relied upon in a denial. Rather, the regulation requires only "a summary of the grounds sufficient in detail to explain its reasoning." *Id.*; *see also Hassan v. Chertoff*, 593 F.3d 785, 789

(9th Cir. 2010) (applicant's awareness of basis for decision provided, *e.g.,* through questioning, may be sufficient to satisfy requirements of Section 103.2(b)(16)).[1] Plaintiffs' argument to the contrary, which again relies exclusively on dictionary definitions of the word "inspect" that postdate the enactment of Section 103.2(b)(16) by decades, Pls.' MSJ at 24-25, fails to grapple with this case law at all.

The limited nature of the inspection right also is confirmed by reference to other regulations. 8 C.F.R. § 208.12(b) clarifies that within the affirmative asylum process, "[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of [USCIS] the Department of Justice, or the Department of State," 8 C.F.R. § 208.12(b). *Cf. Loving v. United States*, 116 S. Ct. 1737, 1749 (1996) ("[S]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."). Adopting Plaintiffs' interpretation of Section 103.2(b)(16) as providing a limitless inspection right would run afoul of Section 208.12(b) by affording applicants an essentially unlimited discovery right as to all records related to their asylum process. Such a result is inconsistent with both Section 208.12(b) and Section 103.2(b)(16) itself, which limits inspection to only "the record of proceeding which constitutes the basis for the decision," and does not mandate that USCIS provide unlimited on-demand inspection opportunities throughout the application process. Defendants' interpretation is thus justified by the Supreme Court's instruction to interpret different statutes or regulations to avoid conflicts between them. *See, e.g., Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("[s]tatutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (citation omitted)).

---

[1] *Ghaly* also squarely considered and rejected another contention made by Plaintiffs—that any unclassified record containing information relied upon by an officer during the adjudication process must necessarily be included in the record of proceeding disclosed to the applicant for visual inspection. *See id.* ("The regulations do not mandate that Dr. Ghaly must be provided an opportunity to view each and every sworn statement" that provides grounds for the agency's adjudicative action).

*Second*, Plaintiffs contend that USCIS's disclosure process is contrary to Section 103.2(b)(16) because they argue that the regulation permits the inspection not only of records which actually "constitute[] the basis for the decision" in accordance with the regulatory text, 8 C.F.R § 103.2(b)(16), but also those documents which merely "*might* serve as the basis for the asylum officer's decision", even if such documents do not ultimately constitute the basis for USCIS's decision on a given application. Pls.' MSJ at 23 (emphasis added). But Plaintiffs' attempt to expand the universe of records encompassed by Section 103.2(b)(16) to include all documents which "might" constitute the basis for the agency's decision on an application is entirely atextual, and would require the Court to distort the regulation beyond its plain meaning. The Court may not do so. *Cf. 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) (courts are not "to add nor to subtract, neither to delete nor to distort [the words]" used).

USCIS agrees that the inspection obligation imposed by Section 103.2(b)(16) includes those records which actually do constitute the basis of the decision (subject to the exceptions contained in subparts (i)-(iv) of the rule), consisting of "the organized official documents that are either received from the applicant or provided by USCIS asylum offices to the applicant in the course of the adjudication of the asylum [] application." Ex. A, D.P. Tr. at 227:11-16. *See also id.* at 295:9-299:15 (listing the contents of the record of proceeding); *id.* at 259:3-263:14 (explaining the basis for the Asylum Division's record of proceeding interpretation (quoting 59 Fed. Reg. 14780)). And, as a matter of USCIS policy, those documents are inspected through receipt by the applicant, disclosed during the interview, disclosed through a RFE (when issued), and disclosed again in the NOID if the agency is proposing to deny asylum, and applicants are provided an opportunity to respond to or rebut that information. *See supra* 5-8. But the regulation plainly does not require the inspection of *all* documents in USCIS's possession related to the applicant, or even those documents which merely "*might*" form the basis for the agency's ultimate decision on the application, as Plaintiffs contend. Pls.' MSJ at 23.

19

Of course, the record of proceeding which constitutes the basis for the agency's decision will contain different records for different applicants. And because the application and any supporting documents are always the primary element of the record of proceeding that constitutes the basis for any decision, USCIS policy dictates that they are inspected during the interview and "formalized through signature" in accordance with the intent of the agency's 1994 regulatory reforms. *See* Ex. A, D.P. Tr. at 149:16-150:7; 59 Fed. Reg. at 14780-82 (highlighting the application and supporting documents as the main part of the record of proceeding, affirmed by signature, "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers"); *supra* 2-8. If the record of proceeding includes additional records, such as derogatory information unknown to the applicant which constitutes the basis for a denial like the "other immigration applications filed with USCIS, visa applications filed with the Department of State, records of encounters with [CBP] at the U.S.-Mexico border, and background and security checks run on the applicant," Pls.' MSJ at 4, USCIS policy permissibly dictates that the applicant be presented with such information at the interview and in the NOID and given a chance to respond, in accordance with the requirements of 8 C.F.R. § 103.2(b)(16)(i)-(iv). *See* Ex. A, D.P. Tr. at 180:3-182:13, 264:10-265:22, 308:18-309:3; *supra* 17-18 (citing cases upholding this practice).

***Third and finally***, Plaintiffs' argument that Section 103.2(b)(16) applies not only to instances where asylum is approved or denied, but also where the application is referred to an immigration judge for adjudication, is both unsupported by text and beside the point. *See* Pls.' MSJ at 22. As explained above, the text and regulatory history confirm that the disclosure obligation of Section 103.2(b)(16) applies to decisions of approval or denial, but not to referrals. *See supra* 12-16. Even if Plaintiffs were correct, however, their claim would still fail because approved, denied, and referred affirmative asylum applicants are all permitted the opportunity to inspect the record of proceeding as a matter of USCIS

policy. *Supra* 5-8. And the fact that USCIS also provides applicants with additional opportunities to access records associated with their asylum applications through their online account and/or FOIA (with FOIA even encompassing records beyond the limited set of that constitute the basis of the agency's decision) demonstrates that USCIS satisfies its obligation to allow for the inspection of records even if Plaintiffs were correct about the scope of that obligation.

### C. To the extent that Section 103.2(b)(16) is ambiguous, USCIS's reasonable interpretation of its own regulations is entitled to deference.

Assuming the Court finds Section 103.2(b)(16) ambiguous with respect to any of the interpretations Plaintiffs contest, an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see also Kisor*, 588 U.S. at 569 ("We have explained *Auer* deference . . . as rooted in a presumption about congressional intent—a presumption that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities."). The Supreme Court has clarified that the application of *Auer* deference turns on whether "a regulation is genuinely ambiguous." *Kisor*, 588 U.S. at 573. *See also United States v. Gadson*, 77 F.4th 16, 20 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 823 (2024). As the *Kisor* Court observed when upholding *Auer*, "[d]eference to reasonable agency interpretations of ambiguous rules pervades the whole corpus of administrative law." 588 U.S. at 587.

Here, assuming Section 103.2(b)(16) is ambiguous with respect to either the scope of the disclosure obligation (whether it applies only to approvals and denials, or also to referrals) or the nature of the obligation itself (whether it may be satisfied through USCIS's policy of inspection during the interview, or requires infinite on-demand access to all documents related to an applicant, as Plaintiffs suggest), the agency's interpretation, which is articulated by its 1994 regulations and reflected in its AAPM today, *see* Ex. A, D.P. Tr. at 154:8-21, 155:13-19, is reasonable and entitled to deference. *See also* Pls.' Ex. 11, April 20, 2007, USCIS Memo Re: Amend. of Section XVII of the ABC-NACARA Procedures Manual ("2007 Memo") at USCIS00007658, ECF No. 139-11 (explaining that "Asylum

Office personnel are not required to provide copies of the I-589 and any supporting documents to non-ABC-eligible asylum applicants." Such documents are already inspected at the interview by agency policy); SOF ¶¶ 47-48; *Kisor*, 588 U.S. at 570 ("Want to know what a rule means? Ask its author.").

The agency received public comment on its 1994 reform efforts, which included the decision to create a new category of referred applicants (who would not receive a NOID), and to limit an applicant's primary inspection opportunity to the interview where the application and supporting materials would constitute the record of proceeding. *See* 59 Fed. Reg. at 14780 (explaining that treating the application and supporting documents as the record of proceeding serves "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers"). Some commenters opposed this process, suggesting that the additional disclosure opportunity provided by the NOID for referred applicants would better protect applicants' rights and promote accuracy. *See* 59 Fed. Reg. at 62293. The agency considered but rejected these concerns, explaining that its proposals were nonetheless consistent with its disclosure obligations. *See id.* ("Applicants who are not granted asylum by the asylum officer will have a full opportunity to present their claim to an immigration judge, with all the procedural protections of a full adversarial proceeding.").

When an agency discusses its views on a prior regulation in the context of a new regulation, that language can have "independent legal effect," *Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1223 (D.C. Cir. 1996), or may also inform the proper interpretation of a regulation. *See U.S. Dep't of Labor v. Wolf Run Mining Co., Inc.*, 446 F. Supp. 2d 651, 654 (N.D. W. Va. 2006). Because USCIS's interpretation of its disclosure obligations was officially memorialized in its 1994 regulatory reform process, its 2007 Memo, and the AAPM today, *see* Ex. A, D.P. Tr. at 154:8-21, 155:13-19, 135:9-139:10; 2007 Memo at USCIS00007658, and because that interpretation is not clearly erroneous, the Court should uphold it if it finds the regulation ambiguous in any respect. *Auer*, 519 U.S. at 461.

III.    **The Manner in Which USCIS Permits Affirmative Asylum Applicants to Inspect the Record of Proceeding is Neither Arbitrary nor Capricious.**

Just as Plaintiffs cannot show that Defendants' inspection procedures are contrary to regulation, so too do they fail to demonstrate that the inspection process established by USCIS for affirmative asylum applications is arbitrary or capricious. *See* Pls.' MSJ at 14-20. At the threshold, Plaintiffs' claim fails because the manner in which USCIS permits affirmative asylum applicants to inspect the record of proceeding is committed to agency discretion, and Plaintiffs have identified no substantive standard upon which the Court can rely to evaluate the process chosen by the agency. But even assuming, *arguendo*, Plaintiffs had identified such a standard, Defendants proffered a full and rational explanation for its inspection procedures, and Plaintiffs' arguments do not establish otherwise.

### A.    **The manner in which USCIS permits inspection is committed to agency discretion.**

At the threshold, Plaintiffs' arbitrary or capricious claim fails as a matter of law under the APA. Plaintiffs argue that the manner in which USCIS permits affirmative asylum applicants to inspect the record of proceeding, which they mischaracterize as a "nondisclosure policy," is arbitrary or capricious in violation of 5 U.S.C. § 706(2)(A). *See* Pls.' MSJ at 14-20. But they provide no substantive standard against which to judge whether the manner in which USCIS permits applicants to inspect the record is in fact arbitrary or capricious. Indeed, one of the exceptions to APA review is where agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2)—*i.e.*, "where statutes are drawn in such broad terms that in a given case there is no law to apply." *Chrysler Corp. v. Brown*, 441 U.S. 281, 317 (1979) (cleaned up) (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 410). Such is the case here.

For the APA to allow for judicial review in the first place, there must be "substantive" "standards limiting agency conduct which might constitute 'law to apply.'" *Id.* at 317-18. In other words, "the APA's arbitrary and capricious standard cannot be sufficient by itself to provide the requisite meaningful standard for courts to apply in evaluating the legality of agency action." *Concilio De Salud Integral De Loíza, Inc. v. Dep't of Health & Hum. Servs.*, 538 F. Supp. 2d 139, 147 (D.D.C. 2008)

(cleaned up); *see Lunney v. United States*, 319 F.3d 550, 559 n.5 (2d Cir. 2003); *Int'l Brotherhood of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017) ("arbitrary and capricious review does not apply in the absence of a statutory benchmark against which to measure an agency's exercise of discretion"). That standard must come from another source of authority. *See Webster v. Doe*, 486 U.S. 592, 598-601 (1988) (arbitrary or capricious review is not "law to apply"); *Watervale Marine Co. v. Dep't of Homeland Sec.*, 55 F. Supp. 3d 124, 138 (D.D.C. 2014) (Jackson, Ketanji, J.) (regulations contained no applicable "limits, requirements, or criteria that provide[d] any guideposts" for judicial review).

Section 103.2(b)(16) does not provide such a substantive standard. By its terms, the regulation merely requires that USCIS "permit" applicants "to inspect the record of proceeding which constitutes the basis for the decision," but it does not dictate how such an inspection must occur or precisely what documents are included. 8 C.F.R. § 103.2(b)(16). In the absence of "substantive" standards limiting the agency's discretion to choose how such inspection will be permitted, there is no law for the Court to apply in evaluating the USCIS's selection of a specific inspection procedure, *Chrysler Corp.*, 441 U.S. at 317-18, and the choice of *how* to permit inspection is thus "committed to agency discretion." 5 U.S.C. § 701(a)(2).[2] *Cf. Marasco & Nesselbush, LLP v. Collins*, 327 F. Supp. 3d 388, 396-97 (D.R.I. 2018) (finding "no law to apply" where the "language of [the provision] suggests that its implementation was committed to agency discretion by law." (citation omitted)).

Plaintiffs identify no portion of Section 103.2(b)(16) which constrains USCIS's discretion to choose the manner in which it will permit applicants "to inspect the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16). Thus, as long as the agency permits *an* inspection, *see supra* 5-8 (explaining USCIS's inspection processes), the Court's inquiry is complete,

---

[2] "Even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Webster*, 486 U.S. at 599-600 (citation omitted). Such is the case here.

because Plaintiffs have failed to identify any standard for use in further evaluating the agency's selection. *See Cowels v. FBI*, 327 F. Supp. 3d 242, 249 (D. Mass. 2018), *aff'd*, 936 F.3d 62 (1st Cir. 2019) (because the DNA Identification Act merely authorized the FBI to create a database that meets certain minimum standards, but does not require the inclusion of any material in that database, the statute provides no meaningful standard against which to judge the agency's exercise of discretion in choosing which material to include). Section 103.2(b)(16) "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," and USCIS's decision to permit inspection though the interview, the NOID, and the exchange of documents between the applicant and the agency, with FOIA and an applicant's online account available as additional means of record access, is thus unreviewable under the APA. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

**B.  In any event, USCIS provided rational reasons for adopting its inspection process.**

Even assuming, *arguendo*, that Plaintiffs had identified a standard against which to judge the manner USCIS permits affirmative asylum applicants to inspect the record of proceeding, the method USCIS has chosen satisfies the "highly deferential" requirements of arbitrary and capricious review. *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 290 (1st Cir. 1995). Under this standard, the agency need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020) (quotation omitted). The court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

As Defendants' Rule 30(b)(6) witness explained, USCIS's decision to use the asylum application and supporting documents as the primary components of the record of proceeding, with inspection permitted during the interview and "formalized through signature," traces back to the agency's effort to streamline the asylum process during its 1994 reforms by creating a new category of

referred applicants to whom no NOID would be issued. *See* Ex. A, D.P. Tr. at 150:2-7, 93:3-94:4; *see id.* at 153:24-154:21 (the "regulatory framework set by asylum reform . . . in order to streamline the process, is the basis [of] the current AAPM guidance in relation to 103.2(b)(16)"), 155:13-19 (similar). As the agency itself explained in its proposed rule, this policy was chosen to "streamline the asylum adjudication process" because "[t]he existing system for adjudicating asylum claims [could] not keep pace with incoming applications" due to "limited resources" and "the effort [required] to meet procedural requirements imposed by [then-]current regulations." 59 Fed. Reg. at 14780.[3]

"First," the agency introduced the concept of a "referral" of asylum applications in order "to allow the Officers to address a greater volume of applications and to concentrate their efforts on approving meritorious claims." *Id.* Under this new system, asylum officers were authorized to refer to immigration court applicants who were not granted asylum in the affirmative process and who lacked an underlying lawful immigration status, in lieu of issuing a NOID and final decision on the merits of the application. *See id.* at 14779; *supra* 3-5. "Second," the agency formalized the asylum application and supporting materials as the primary "part of the record of proceedings," to be inspected and signed at the asylum interview, in order to "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers." 59 Fed. Reg. at 14780. The agency's contemporaneous explanation for its inspection procedures satisfies the highly deferential standard of review. *See Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (a court must uphold agency action if it is "supported by any rational view of the record"); *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 42 (D.D.C. 2021) ("the Court must endeavor to avoid involving itself in the minutiae of

---

[3] Even with the benefit of the 1994 reforms, external geopolitical factors driving mass migration and an accompanying massive increase in annual affirmative asylum filings has prevented USCIS from keeping up with the pace of filings, making the streamlining of asylum application and record inspection policies accomplished by the 1994 reforms all the more crucial today. *See* SOF ¶ 18.

agency decision making, particularly when it concerns 'the allocation of scarce resources' at issue here.") (quoting *Cobell v. Norton*, 428 F.3d 1070, 1073 (D.C. Cir. 2005)).

For their part, Plaintiffs contend that USCIS's inspection process is arbitrary and capricious for a number of reasons, but none is persuasive. At bottom, all of Plaintiffs' arbitrary and capricious arguments are focused on contesting a strawman "nondisclosure policy," whereby Plaintiffs contend that FOIA serves as the "primary means" of inspecting the record of proceeding, Pls.' MSJ at 16, 18, but which the evidence demonstrates is not USCIS's policy. *See supra* 10-11; Pls.' MSJ at 8 (conceding that applicants are permitted to inspect documents comprising the record of proceeding "*during the asylum interview itself*"). As explained above, Defendants' actual policy, whereby USCIS permits applicants the opportunity to inspect the record of proceeding that forms the basis of the decision during the course of the application process (namely the interview, *inter alia*), with FOIA available as an independent means of accessing records, is adequately explained. *See supra* 5-8; 59 Fed. Reg. at 14780 (decision to increase the importance of the application and supporting materials, which are signed under penalty of perjury and inspected at the interview, was intended "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers"); Ex. A, D.P. Tr. at 153:24-154:21 (the "regulatory framework set by asylum reform . . . in order to streamline the process, is the basis [of] the current AAPM guidance in relation to 103.2(b)(16)").

Indeed, the arbitrary and capricious section of Plaintiffs' motion fails to acknowledge that applicants are permitted to inspect the record of proceeding during the interview *at all*, and thus forfeits any argument as to why that policy is arbitrary or capricious. *See generally* Pls.' MSJ at 14-20.

To the extent that Plaintiffs contest Defendants' utilization of FOIA as an *additional* way for applicants to access records beyond inspection at the interview, that argument fails because the agency has also adequately explained its decision to maintain the availability of FOIA as an independent

27

means of accessing records related to an affirmative asylum application. FOIA itself imposes a separate statutory obligation on USCIS to make a wide array of documents available upon request, subject to various exemptions. *See* 5 U.S.C. § 552(a)-(c). USCIS's decision to provide applicants records through FOIA as an *additional* means of accessing records is thus merely a reflection of the agency's intent to comply with FOIA, even as it independently permits the inspection of records that constitute the basis for the agency's decision during the interview and through notices as described above, pursuant to 8 C.F.R. § 103.2(b)(16). The agency codified this explanation in 8 C.F.R. § 208.12(b), which states that:

> Nothing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of [USCIS], the Department of Justice, or the Department of State. Persons may continue to seek documents available through a [FOIA] request pursuant to 8 CFR part 103.

8 C.F.R. § 208.12(b). Plaintiffs cite this section as evidence of a change in policy to utilizing FOIA as the means of inspection, and argue it is arbitrary or capricious because it is unexplained. *See* Pls.' MSJ at 16. But the regulatory history for Section 208.12(b) disproves Plaintiffs' argument on both counts.

The regulatory history confirms that USCIS's decision to clarify the continued availability of FOIA as an additional means of accessing records was merely intended to address comments received during the rulemaking process to implement the Illegal Immigration Reform and Immigration Responsibility Act in 1997. *See* Ex. A, D.P. Tr. at 289:12-292:10. As the agency explained at the time in response to comments to its 1997 proposed rule that would form the basis for 8 C.F.R. § 208.12(b):

> Some commenters expressed concern about the statement in 8 C.F.R. § 208.12 that "[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed towards the records, officers, agents, or employees of [USCIS], the Department of Justice or the Department of States." Specifically, they feared that the provision would preclude someone from seeking, or excuse [USCIS] from providing, information under [FOIA]. This fear is totally groundless. FOIA provisions are covered under separate statutory and regulatory bases. The [agency] is guided by 5 U.S.C. 522 and 8 CFR 103 with regard to FOIA matters, *neither of which are in any way affected by this rulemaking.*

62 Fed. Reg. 10312, 10316-17 (Mar. 6, 1997) (emphasis added). Therefore, "in response to [the] comment," the agency subsequently revised paragraph (b) of Section 208.12 "to clarify that a

prohibition on discovery of information does not include requests for information made under [FOIA]." 65 Fed. Reg. 76121, 76126 (Dec. 6, 2000). Rather than making FOIA the sole means of accessing records, as Plaintiffs claim, then, Section 208.12(b) merely clarified that FOIA remains available as an independent records access mechanism, which operates in *addition* to USCIS's policy of permitting the inspection required by Section 103.2(b)(16) at the asylum interview, *inter alia*.

Plaintiffs' other arbitrary and capricious arguments are equally unpersuasive. While Plaintiffs complain that Defendants' policy of fulfilling its disclosure obligation at the interview and also permitting the use of FOIA as independent means of accessing documents makes it more difficult for affirmative asylum applicants to prepare for interviews, Pls.' MSJ at 17-19, USCIS adequately explained that other factors, such as the need to streamline the process in light of resource constraints, outweighed the desire for additional inspection opportunities during the 1994 rulemaking upon which USCIS's current inspection process is based. *See, e.g.,* 59 Fed. Reg. at 62293 (reasoning that "modification of this section [was] pivotal to the streamlining of the asylum process."); *supra* 3-8; Ex. A, D.P. Tr. at 134:8-23 (one factor influencing the policy was the timeline imposed by the 1994 rule under which the agency was to complete work on each asylum application within "60 days" of filing).

Like Plaintiffs, some commenters criticized the agency's proposal at the time, arguing that more disclosure via the issuance of a NOID for referrals protected the rights of applicants and promoted more accurate decisions. 59 Fed. Reg. at 62293. Nonetheless, the agency declined to retain this procedure in its final rule, reasoning that the additional disclosure requirements sought were "not necessary" to "improve the fairness, quality, and accuracy of decisions made by [] officers," because:

> Applicants who are not granted asylum by the asylum officer will have a full opportunity to present their claim to an immigration judge, with all the procedural protections of a full adversarial proceeding. This includes, of course, the right to examine and rebut all evidence and materials that are introduced in opposition to the asylum claim . . .The Department has considered seriously the objections stated to this proposal but believes that the interests of all asylum applicants will best be served by eliminating the NOID requirement [for referrals]

59 Fed. Reg. at 62293-94. That same reasoning underpins USCIS's process for inspection of the record

of proceeding pursuant to 8 C.F.R. § 103.2(b)(16), as Defendants' Rule 30(b)(6) witness confirmed. *See* Ex. A, D.P. Tr. at 154:8-21 ("that principle and regulatory framework set up by asylum reform . . . in order to streamline the process, is the basis [of] the current AAPM guidance in relation to 103.2(b)(16)"); *id.* at 155:13-19 ("The main underlying policy is that which is described [] in the 1994 asylum reform regulations and regulatory history."). Plaintiffs' argument that Defendants failed to explain or consider "important factors," such as its other regulatory obligations and the ease of inspection, is thus misplaced. Pls.' MSJ at 17-20.[4] The agency's reasoned explanation for its decision in light of the record before it meets the "highly deferential" standard for arbitrary-and-capricious review. *Citizens Awareness Network, Inc.,* 59 F.3d at 290.[5]

At bottom, the inspection process challenged by Plaintiffs represents a carefully considered balance of interests. While Plaintiffs may dislike that the primary inspection opportunity occurs at an asylum applicant's interview and through the ordinary exchange of documents and notices between the applicant and the agency, or disagree with the balance chosen by Defendants in crafting the process during its 1994 reforms, the APA does not permit a plaintiff or a court to "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983). Because the agency "examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made,'" Plaintiffs' arbitrary and capricious challenge would fail even if they had identified substantive standards to apply. *Dep't of Comm. v. New York*, 588 U.S. 752, 773 (2019) (quoting *State Farm*, 463 U.S. at 43).

---

[4] Plaintiffs also argue that Defendants' inspection processes are arbitrary and capricious because they are contrary to 8 C.F.R. § 103.2(b)(16). *See* Pls.'s MSJ at 19. But this claim merely recycles Plaintiffs' "contrary to law" arguments, *id.* at 20-29, and fails for the reasons set forth above. *Supra* 11-22.

[5] It also bears noting that an asylum applicant's access to records under FOIA is not limited to instances where "the decision" is issued, or to those documents that form the "record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16). The document disclosure afforded by FOIA thus is *broader* than the inspection right conferred by Section 103.2(b)(16), further refuting Plaintiffs' suggestion that FOIA is an ineffective additional means of disclosure.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs'

motion for summary judgment and grant judgment to Defendants.


Dated: January 13, 2025                        Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Principal Deputy Assistant Attorney General

                                               MARCIA BERMAN
                                               Assistant Branch Director

                                               */s/ Andrew Rising*
                                               ANDREW J. RISING
                                               Trial Attorney
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street, NW, Rm. 12520
                                               Washington, D.C. 20005
                                               Phone:   (202) 514-0265
                                               E-mail:   andrew.j.rising@usdoj.gov

                                               *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that I have filed this Memorandum with the Court's ECF system, which sends

notice to Plaintiffs' Counsel identified on the NEF.

                                               */s/ Andrew Rising*
                                               ANDREW J. RISING
                                               Trial Attorney

31