**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

GREATER BOSTON LEGAL SERVICES, *et al*.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al*.,

Defendants.

Case No.:  1:21-cv-10083-DJC

**PLAINTIFFS' OPPOSITION AND RESPONSE TO DEFENDANTS' RULE 56.1**
**STATEMENT OF MATERIAL FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local

Rules of the United States District Court for the District of Massachusetts, Plaintiffs respond to

Defendants' Statement of Material Facts in support of their cross-motion for summary judgment

and in Opposition to Plaintiffs' motion for summary judgment.

As a preliminary matter, Defendants opted not to respond to Plaintiffs' Statement of

Undisputed Material Facts (ECF No. 138) ("Pl. SOF") and have directly responded to and disputed

only ¶ 51 of Pl. SOF (*see* ¶ 41 herein). Because the facts articulated in Pl. SOF are therefore

deemed admitted, *see Summers v. City of Fitchburg*, 325 F. Supp. 3d 203, 206-7 (D. Mass. 2018)

(Casper, J.), the factual assertions Defendants make herein should be construed consistently with

these admissions. Additionally, to the extent that the Government has advanced facts that are

unsupported by the sources it cites to as support, such facts should be disregarded by the Court as

noncompliant with Local Rule 56.1.

**Relevant Background Facts Concerning the Affirmative Asylum Process**

1.     The United States Citizenship and Immigration Services ("USCIS") is a component

agency of United States Department of Homeland Security ("DHS"). The Asylum Division of

USCIS is responsible for reviewing affirmatively-filed asylum applications and determining eligibility for asylum. 6 U.S.C. § 271(b).

**RESPONSE:  Admitted.**

2.    USCIS has discretion to grant asylum to an affirmative asylum applicant who demonstrates that they are a "refugee"—generally, someone who has suffered persecution or has a "well-founded fear of persecution" in their home country on account of a protected ground—and that they are not subject to one of the mandatory bars to asylum and warrant a favorable exercise of discretion. 8 U.S.C. §§ 1101(a)(42), 1158(b).

**RESPONSE:  Admitted.**

3.    As part of the affirmative asylum application process, an applicant submits a comprehensive application, designated as Form I-589, Application for Asylum and for Withholding of Removal, along with supporting materials, which a USCIS asylum officer reviews and evaluates in conjunction with the applicant's interview testimony in order to determine whether asylum should be granted. 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.9. See also https://www.uscis.gov/sites/default/files/document/forms/i-589.pdf (sample Form I-589).

**RESPONSE:  Admitted in part, with two clarifications.**

First, the Form I-589 and supporting materials and the interview testimony are not the only materials an asylum officer reviews and evaluates to determine whether asylum should be granted, as the USCIS asylum officer will examine numerous other documents before determining whether the application should be granted, including: background check information; visa records and other State Department records; any Fraud Detection and National Security Directorate memorandum; the I-213;  the record of inquiry; and other records relating to the applicant. *See* Ex. 15, Stefanie Fisher Declaration, Dated November 19, 2024 ("2024 Fisher Declaration") at ¶¶ 2-3; Ex. 6, John Willshire-Carrera Declaration, Dated November 21, 2024 ("2024 Willshire-Carrera Declaration")

at ¶ 2; Ex., Response to Interrogatory No. 1; Ex. 5, Excerpts of the Deposition Transcript of Kim Sicard, dated August 2, 2024 ("K.S. Tr.") at 105:3-9, 20-24; 116:5-7, 13-17; 123:3-10; 126:11-24, 127:1-6; 130:22-24, 131: 1-15.[1]

Second, although Defendants characterize the I-589 form as "comprehensive," that subjective characterization has no certain meaning and Plaintiffs do not adopt it. Plaintiffs instead refer the Court to the form itself, which has space for a brief description of the factual basis for an asylum claim. *See* uscis.gov/sites/default/files/document/forms/i-589.pdf.

4.    Prior to 1994, asylum officers issued the final decision on all asylum applications in the form of either a grant or denial. As a result, if an asylum officer did not intend to grant asylum to an applicant, whether removable or not, the officer was first required to issue a resource-intensive notice of intent to deny the application ("NOID"), explaining the grounds for proposed denial, and if the applicant did not overcome the proposed grounds, a final denial. Afterward, the applicant had the right to file an asylum application *de novo* with an immigration judge if exclusion or deportation proceedings were initiated. *See* 8 C.F.R. § 208.14(a) (1993); 8 C.F.R 103.2(b)(16).

**RESPONSE:  Admitted in part, denied in part.**

Admitted as to the fact that prior to 1994, asylum officers issued the decision on asylum applications in the form of a grant or denial. Admitted that for applicants to whom the asylum officer did not intend to grant asylum, the officer was required to submit a notice of intent to deny ("NOID") to the applicant, and then a denial if the applicant did not overcome the grounds for denial. Admitted that prior to 1994, applicants had the right to file an asylum application *de novo* with an immigration judge if exclusion or deportation proceedings were initiated.

---

[1] Plaintiffs' citations to exhibits in this response to the Government's Statement of Material Facts are references to Plaintiffs' exhibits that were filed by Plaintiffs with their summary judgment submission. *See* ECF 139..

Denied that the "NOID" process was a "result" of the fact that an asylum officer could adjudicate cases by issuing a grant or a denial, as the record only reveals that these were two features of pre-1994 asylum procedures. *See* ECF No. 146 at 3. Plaintiffs also clarify that a decision by asylum officers denying an asylum claim was a "final" decision only to the extent that this does not suggest that the noncitizen could not later be awarded asylum by an immigration court, as Defendants acknowledge they could. *See* ECF No. 146 at 3.

5.      In 1994, the agency issued new regulations to "amend existing regulations to streamline the adjudication of asylum applications submitted to Asylum Officers[.]" *Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization* 59 Fed. Reg. 14,779 (Mar. 30, 1994) (proposed rule). This proposal was designed to "streamline the asylum adjudications process by making several principal reforms." *Id*. at 14780.

**RESPONSE:  Admitted, with the clarification** that asylum procedures frequently take many years notwithstanding the stated intention to streamline them in certain respects.[2]

6.      These 1994 reforms form the basis for USCIS's current policies regarding processing of affirmative asylum applications, including its policies permitting affirmatives asylum applicants to inspect the record of proceeding that constitutes the basis for the decision on their asylum application pursuant to 8 C.F.R 103.2(b)(16). *See* Ex. A, Excerpts of the Rule 30(b)(6) Deposition Transcript of Special Assistant David Pilotti, dated June 28, 2024 ("D.P. Tr.") at 153:24-154:21 ("that principle and regulatory framework set up by asylum reform . . . in order to streamline the process, is the basis [of] the current [Affirmative Asylum Procedures Manual

---

[2] *See* Noah Schofield and Amanda Yap, Asylees: 2023, DHS, OFFICE OF HOMELAND SECURITY STATISTICS (Oct. 2024) at 7, ohss.dhs.gov/sites/default/files/2024-10/2024_1002_ohss_asylees_fy2023.pdf (showing pending affirmative asylum cases by year of filing, including that the majority of cases filed in 2016 and 2017 were still pending as of March 2024).

("AAPM")] guidance in relation to 103.2(b)(16)"); *id*. at 155:13-19 ("The main underlying policy is that which is described [] in the 1994 asylum reform regulations and regulatory history.").

**RESPONSE:  Admitted in part, denied in part.**

Plaintiffs admit that the 1994 reforms serve as the basis for at least some of USCIS's current policies with regard to the processing of affirmative asylum applications, and acknowledge the Government's position in this litigation that these reforms are the source of its policies with regard to the obligation to permit "inspection of the record of proceeding which constitutes the basis for the decision," under 8 C.F.R. § 103.2(b)(16). To the extent Defendants suggest current policy does in fact "permit[]" applicants to inspect the record in accordance with 8 C.F.R. § 103.2(b)(16), Plaintiffs dispute that contention for the reasons articulated in their accompanying summary judgment briefing, and based upon the facts advanced in Pl. SOF. *See* Ex. 4, D.P. Tr. at 135:2-16; Ex. 12, August 14, 2023 Email at USCIS00004384-85; *see also* Ex. 7, 2023 Fisher Declaration at ¶ 2; Ex. 6, 2024 Willshire-Carrera Declaration at ¶¶ 1-2; Ex. 5, K.S. Tr. at 56:16-21; 79:13-15; 81:3-15; Ex. 2, AAPM at USCIS00004192, USCIS00004306.

7.     The first reform instituted by the agency's 1994 rulemaking introduced the concept of a "referral" of asylum applications in order "to allow the Officers to address a greater volume of applications and to concentrate their efforts on approving meritorious claims." 59 Fed. Reg. at 14,780.

**RESPONSE:  Admitted.**

8.     Under this new system, asylum officers were authorized to refer to immigration court applicants who were not granted asylum in the affirmative process and who lacked an underlying lawful immigration status, without issuing a resource-intensive notice of intent to deny or a final decision on the merits of the referred application. 59 Fed. Reg. at 14,779.

**RESPONSE:  Admitted for the most part, with two clarifications.**

First, "resource-intensive" is a subjective characterization of uncertain meaning, that Plaintiffs do not admit. Second, with regard to the "final[ity]" of an asylum adjudicator's decision, an asylum officer issues a decision on the merits in every case (except, *e.g.*, if it is administratively closed), and that decision is the final decision of USCIS with regard to that applicant's asylum application. 8 C.F.R. § 208.14(b)-(c). But in cases where USCIS decides not to grant asylum, a noncitizen can still seek asylum in immigration court if placed in removal proceedings, and once there, would receive a *de novo* determination of asylum from an immigration judge. *Id.* §§ 208.14(a), 1208.14(a); 85 Fed. Reg. 36,275, 36,289. In the case of a noncitizen without underlying status, a referral to removal proceedings in immigration court is automatic if USCIS decides not to grant asylum. *Id.* § 208.14 (c)(1). In the case of an applicant who has lawful status, if USCIS decides not to grant asylum, the agency issues a denial. *Id.* § 208.14 (c)(2). But if that lawful status later expires or is terminated and the noncitizen is in removal proceedings, the noncitizen can apply for asylum and the immigration judge would consider their application *de novo*. 8 C.F.R. §§ 208.14(a), 1208.14(a); 85 Fed. Reg. 36,275, 36,289.

9.    The agency proposed amending the text of then-8 C.F.R. § 208.12(a) "to eliminate the provisions requiring an Asylum Officer to provide the applicant with an opportunity to inspect, explain, or rebut the material(s) relied upon to find that the applicant's claim has not been approved. The Asylum Officer will continue to rely upon materials provided by the Department of State, the District Director, or other credible sources in making a decision to grant asylum, to refer the case to an Immigration Judge, or to deny asylum for applicants having another lawful immigration status. The applicant will have the opportunity to review such materials to the extent they are relied upon in the course of proceedings before an Immigration Judge." 59 Fed. Reg. at 14,783.

**RESPONSE**:  **Admitted, with the following clarification**.

While the agency proposed amending and ultimately did amend the specific provisions of 8 C.F.R. § 208.12(a)—which provided notice, inspection, and rebuttal procedures with regards to asylum cases that the agency intended to deny—the agency did not propose to amend and did not ultimately amend 8 C.F.R. § 103.2(b)(16)'s inspection requirements, or 8 C.F.R. § 1292.4(b)'s requirement to permit a noncitizen or their attorney "to examine the record of proceeding in a Service office" during the pendency of a case. *See generally* 62 Fed. Reg 10312-10395; 59 Fed. Reg. 14,760-14,789.

10.    The second reform instituted by the agency's 1994 rulemaking formalized the asylum application and supporting materials as the primary "part of the record of proceedings" to be inspected at the asylum interview, requiring "that the signatures on the application are made under penalty of perjury and may form the basis for denial if the applicant later expresses ignorance of the contents of the application," *inter alia*. 59 Fed. Reg. at 14,780, 14782. See also Ex. A, D.P. Tr. at 259:3-263:14, 93:3- 94:4.

**RESPONSE: Denied.**

The Government's citations at 59 Fed. Reg. at 14,780, 14,782 have nothing to do with the materials that are "inspected" at the asylum interview. The regulatory changes referenced relate to the decision in the 1994 rulemaking that the asylum application submitted to the INS would be signed under penalty of perjury and forwarded to the immigration court, in order to "encourage the filing of complete and responsive applications" before the INS and "discourage applicants" from filing different asylum claims in immigration court. The statement that the application "shall form part of the record of proceedings" refers to the fact that the application would be sent to the immigration court. 59 Fed. Reg. at 14,780.

Moreover, nothing in the 1994 rulemaking labels the asylum application and supporting materials as the "primary" part of the record of proceeding, whether before the immigration court or before USCIS. *Id*. Although the Government's 30(b)(6) witness stated that the 1994 reforms "used as the primary part of the record of proceeding as the filed I-589 and its contents," and that the I-589 was "a significant part of the record of proceeding," Defs. Ex. A, D.P. Tr. at 93:18-93:4, the record establishes that in addition to the asylum application, the asylum officer will rely on numerous other documents, including: background check information; State Department records, including visa documents; any Fraud Detection and National Security Directorate memorandum; the I-213; arrest records; criminal history; records of interactions with U.S. officials at the U.S. border; the record of inquiry; documents relating to certain prior applications submitted by the applicant; and other records relating to the applicant. *See* Ex. 15, 2024 Fisher Declaration at ¶¶ 2-3; Ex. 6, 2024 Willshire-Carrera Declaration at ¶ 2; Ex., Response to Interrogatory No. 1; Ex. 5, K.S. Tr. at 105:3-9, 20-24; 116:5-7, 13-17; 123:3-10; 126:11-24, 127:1-6; 130:22-24, 131: 1-15.

11.     The agency explained that these reforms were necessary because its "existing system for adjudicating asylum claims [could] not keep pace with incoming applications" due to the agency's "limited resources" and "the effort [required] to meet procedural requirements imposed by [then-]current regulations." 59 Fed. Reg. at 14,780.

**RESPONSE:  Admitted in part, denied in part.**

Plaintiffs do not contest the contents of the quotation from 59 Fed. Reg. at 14,780 stating reasons for the 1994 reforms, but deny the Government's assertion that the agency "explained" the reforms were "necessary."

12.     The agency's decision to formalize the I-589 asylum application and supporting materials as the primary component of the record of proceeding, to be inspected and signed at the interview, was further intended to streamline the application process by reducing the number of

documents in the process, *see* Ex. A, D.P. Tr. at 260:23-261:6, and "to encourage the filing of complete and responsive applications in the first instance and to discourage applicants from filing claims before Immigration Judges that differ from the claims they filed before Asylum Officers." 59 Fed. Reg. at 14,780.

**RESPONSE: Denied.**

Nothing in the 1994 rulemaking addresses the materials that are "inspected" at the asylum interview or suggests that the I-589 is the "primary component of the record of proceeding." The 1994 regulations involved an effort to "streamline" asylum procedures by eliminating the requirement to provide a NOID to every applicant who had not met their burden to demonstrate that they should receive asylum. 59 Fed. Reg. at 14,780.  The reforms also provided that the asylum application submitted to the INS would be signed under penalty of perjury and forwarded to the immigration court, in order to "encourage the filing of complete and responsive applications" before the INS and "discourage applicants" from filing different asylum claims in immigration court. *Id* at 14,782, 14,786.

13.    In response to the agency's 1994 proposed rule, some commenters argued that additional inspection opportunities (previously provided by the NOID for referred applicants) would better protect the rights of applicants and promote more accurate decisions.  *See* 59 Fed. Reg. 62,284, 62,293-94 (Dec. 5, 1994) (final rule).

**RESPONSE: Admitted, with two clarifications.**

First, Defendants' reference to "for referred applicants" was probably meant to be outside the parenthetical. Second, although Defendants refer here to "inspection opportunities," the NOID process then in use under 8 C.F.R. § 208.12(a) was not solely an inspection process, but a process with specific requirements for providing notice, an opportunity to inspect documents, and an

opportunity to rebut particular evidence in the case of asylum applications not initially determined to merit the grant of asylum. 59 Fed. Reg. at 14,783. That process differed from the requirements of 8 C.F.R. § 103.2(b)(16).

14.    The agency considered these arguments and chose to finalize its proposals despite the objections, explaining that its proposed rule was both "pivotal to the streamlining of the asylum process" and consistent with its disclosure obligations, as "[a]pplicants who are not granted asylum by the asylum officer will have a full opportunity to present their claim to an immigration judge, with all the procedural protections of a full adversarial proceeding. This includes, of course, the right to examine and rebut all evidence and materials that are introduced in opposition to the asylum claim." 59 Fed. Reg. at 62,293-94. *See also* Ex. A, D.P. Tr. at 134:8-23 (explaining that another factor influencing the policy was the timeline imposed by the 1994 reforms under which the agency was to complete its work on each asylum application within "60 days" of its filing).

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs do not contest the Government's quotations from the Federal Register. However, the citations provided by the Government do not support the statement that the proposed rule was "consistent with its disclosure obligations." Nowhere in the Federal Register citations does the agency express that it considered any regulatory disclosure obligations—other than the NOID disclosure process that it was eliminating for most cases— in its finalization of the proposed rule.

15.    As a result of the 1994 rulemaking, asylum officers may now refer applicants to immigration court without issuing a NOID and without making a final determination about the applicant's eligibility for asylum or about whether the applicant merits a favorable exercise of discretion to receive asylum, if the applicant is not granted asylum in the affirmative process and lacks an underlying lawful immigration status or still-valid grant of parole. *See* 8 C.F.R. § 208.14(c).

**RESPONSE:  Admitted, with a clarification.**

Regardless of whether an applicant has underlying status, the asylum officer makes a decision on the merits of the case that constitutes the final determination of USCIS as to their asylum case, but an immigration judge may reach a different determination. *See* ¶ 8 Response.

16.    Jurisdiction over a referred application then passes to a Department of Justice immigration judge for adjudication of the referred applicant's asylum application *de novo*. 8 U.S.C. §§ 1101(b)(4), 1229(a).

**RESPONSE:  Admitted.**

17.    For those applications where USCIS does issue a final decision, an asylum officer will grant or deny the application, with all denials preceded by issuance of a detailed NOID disclosing all information which constitutes the basis for the proposed denial and providing the applicant an opportunity to respond. See 8 C.F.R. §§ 208.14(b)-(c), 103.2(b)(16).

**RESPONSE: Admitted in part, denied in part.**

First, the issuance of NOIDs preceding denials occurs in a tiny percentage of the cases adjudicated by USCIS.[3] Second, to the extent Defendants suggest that only grants or denials are "final" decisions as to USCIS, Plaintiffs deny this, and provide the same response given to ¶ 8 herein. Third, Plaintiffs admit that NOIDs should be "detailed," but the cited documents do not establish whether they in fact are. *See also* Ex. 4, D.P. Tr. 247:20-24, 248:1-3; Ex. 2, AAPM at USCIS00004145.

---

[3] *See*  USCIS, U.S. Citizenship and Immigration Services I-159 Affirmative Asylum Summary Overview: FY2022 Q1 (Oct 1, 2021 – Dec. 31, 2021) at 3, uscis.gov/sites/default/files/document/data/Asylum_Division_Quarterly_Statistics_Report_FY22_Q1_V4.pdf (showing referrals constituted 0.6% of all decisions during the relevant period).

18.     Even with the benefit of the 1994 regulatory reforms, external geopolitical factors driving mass migration and an accompanying massive increase in annual affirmative asylum filings has prevented USCIS from keeping up with the pace of new filings—at the end of November 2024, there were 1,410,151 affirmative asylum applications pending adjudication. See USCIS, Asylum Division Monthly Statistics Report. Fiscal Year 2025. November 2024 (Dec. 19, 2024), https://www.uscis.gov/sites/default/files/document/data/asylumfiscalyear2025todatestats_241130.xlsx (Tab: I-589_Pending_FY25YTD). This renders continued adherence to the streamlined adjudication and inspection process established by the 1994 reforms all the more crucial today in order to serve the interests of the agency and affirmative asylum applicants alike. *See* 59 Fed. Reg. at 14,780 (reforms enacted because the "existing system for adjudicating asylum claims [could] not keep pace with incoming applications" due to the agency's "limited resources" and "the effort [required] to meet procedural requirements imposed by [then-]current regulations.").

**RESPONSE: Admitted in part, denied in part**.

Plaintiffs do not dispute that there were 1,410,151 affirmative asylum applications pending adjudication in November 2024. However, Plaintiffs dispute that "external geopolitical factors driving mass migration" have caused an increase in affirmative asylum filings, as the Government cites no evidence from the factual record to support this assertion. Plaintiffs further deny that the number of pending affirmative asylum applications "renders continued adherence to the streamlined adjudication and inspection process established by the 1994 reforms all the more crucial today in order to serve the interests of the agency and affirmative asylum applicants alike," as this statement is a conclusory argument for which the Government provides no evidentiary support.

19.     In 1997, the agency issued an interim rule that would ultimately form the basis for 8 C.F.R. § 208.12(b), which today provides that "[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of [USCIS], the Department of Justice, or the Department of State. Persons may continue to seek documents available through a [FOIA] request pursuant to 8 CFR part 103." *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures* 62 Fed. Reg. 10,312 (Mar. 6, 1997).

**RESPONSE:  Admitted.**

20.     At the time, "[s]ome commenters expressed concern about the statement in 8 C.F.R § 208.12 that '[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed towards the records, officers, agents, or employees of [USCIS], the Department of Justice or the Department of States.' Specifically, they feared that the provision would preclude someone from seeking, or excuse [USCIS] from providing, information under [FOIA]." 62 Fed. Reg. at 10,316-17.

**RESPONSE:  Admitted.**

21.     Noting these comments, the agency explained that "[t]his fear [wa]s totally groundless.  FOIA provisions are covered under separate statutory and regulatory bases. The [agency] is guided by 5 U.S.C. 522 and 8 CFR 103 with regard to FOIA matters, neither of which are in any way affected by this rulemaking." *Id*.

**RESPONSE:  Admitted.**

22.     To address commenters' concern regarding the continued availability of FOIA, the agency subsequently revised paragraph (b) of Section 208.12 "to clarify that a prohibition on discovery of information does not include requests for information made under the Freedom of Information Act." *Asylum Procedures*, 65 Fed. Reg. 76,121, 76,126 (Dec. 6, 2000).

**RESPONSE:  Admitted.**

23.    The language in 8 C.F.R. § 208.12(b) stating that "[p]ersons may continue to seek documents available through a [FOIA] request pursuant to 8 CFR part 103" therefore merely clarifies that FOIA remains available as an independent disclosure mechanism, which operates in addition to USCIS's policy of permitting the affirmative asylum applicants multiple opportunities to inspect the record of proceeding that forms the basis of the decision as described below. *See* 65 Fed. Reg. at 76,126; *see also* Ex. A, D.P. Tr. at 290:5-292:10.

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs admit that the quotation from the Federal Register is accurate. Plaintiffs deny that USCIS has a policy of "permitting the affirmative asylum applicants multiple opportunities to inspect the record of proceeding that forms the basis of the decision," to which FOIA operates as an additional disclosure mechanism, for the reasons amply described in Plaintiffs' summary judgment briefing. *See* ECF No. 137 at 5-16; Pl. SOF ¶¶ 29-50.

Although the Government has attempted in this case to present that the review and signing of an asylum application at an asylum interview, the applicant's initial submission of documents, and the agency's initial mailing of notices are opportunities to inspect the record of proceeding that constitutes the basis for the decision, the Government maintains a policy that uses FOIA as the primary means to provide access (albeit incomplete and often untimely) to documents from the record of proceeding. *See Ex.* 11, April 20, 2007, USCIS Interoffice Memorandum Re: Amendment of Section XVII of the ABC-NACARA Procedures Manual (HQRIAO 120/13) (the "2007 Memo") at USCIS00007656-64; Ex. 4, D.P. Tr. at 135:2-16; Ex. 12, August 14, 2023 Email at USCIS00004384-85; *See* Ex. 7, 2023 Fisher Declaration at ¶ 2; Ex. 5, K.S. Tr. at 56:16-21; 79:13-15; 81:3-15; Ex. 2, AAPM at USCIS00004192, USCIS00004306. That is why the Government routinely directs applicants to FOIA to "access [] any documents [USCIS] can

provide." Ex. 12, August 14, 2023 Email at USCIS00004384; *see also* Ex. 4, D.P. Tr. at 159:11-18; 160:2-11 (stating that "for cases that are only on paper, then FOIA would be the process that asylum offices would generally inform the applicant it's available to them to access their records").

**USCIS Policies Permitting Affirmative Asylum Applicants to Inspect the Record of Proceeding that Constitutes the Basis for the Decision**

24.    8 C.F.R. § 103.2(b)(16) provides that applicants shall be permitted "inspect the record of proceeding which constitutes the basis for the decision except as provided in the following paragraphs," with subparts (i) and (ii) of the regulation providing specific exceptions for disclosure of derogatory information unknown to the applicant and information forming the basis for a determination of statutory eligibility, and subparts (iii) and (iv) providing further exceptions allowing USCIS to utilize classified information in making its decision on an application without disclosure of that information to the applicant in certain circumstances. 8 C.F.R. § 103.2(b)(16).

**RESPONSE:  Admitted, with the following clarification.**

As explained in *Boateng v. Holder*, No. CV 12-10057-FDS, 2012 WL 12893987, at *4 (D. Mass. Aug. 16, 2012), subparts (i) and (ii) "do not contradict or limit the requirement of inspection," but instead "add additional disclosure requirements in certain situations." They are "'exceptions'" in the sense that "they modify the general rule established in § 103.2(b)(16)" with additional requirements.[4]

25.    Plaintiffs do not purport to challenge Defendants' practices regarding nondisclosure of classified information pursuant to the exceptions to 8 C.F.R. § 103.2(b)(16). *See* Pls.' Mot. for Summ. J. ("Pls.' MSJ") at 20, ECF No. 137 (acknowledging "exceptions for classified information that Plaintiffs do not challenge here").

---

[4] Plaintiffs also note that Defendants' quotation of § 103.2(b)(16) is missing a comma after "decision."

**RESPONSE: Admitted, with the clarification** that Plaintiffs assume "practices regarding nondisclosure of classified information" refers to practices *only* as to classified information.

26.    USCIS provides affirmative asylum applicants multiple opportunities to inspect the record of the proceeding that constitutes the basis for the decision on their application during the affirmative asylum application process. See Ex. A, D.P. Tr. at 295:9-299:15, 308:18-309:3 (listing the documents which might be contained within a given applicants' record of proceeding, and listing the asylum interview, the exchange of records between applicants and USCIS, the USCIS online account system, FOIA, and service of the NOID as different ways in which an applicant is permitted to inspect such records); *id.* at 147:5-151:11 (explaining the inspection process). *See also* Pls.' Ex. 5, Excerpts of the Deposition Transcript of K.S., dated August 2, 2024 ("K.S. Tr.") at 78:3-79:15, ECF No. 139-5 (listing the exchange of documents between applicant and agency, the interview, the NOID, and the USCIS online account, *inter alia*, as opportunities for applicants to inspect the record of proceeding).

**RESPONSE: Denied**.

Plaintiffs do not dispute that asylum applicants and their counsel have an opportunity to see documents that they themselves send to USCIS just before they are sent, to see notices that they initially receive from USCIS, or to see an asylum application when it is reviewed with them at an interview. *See* Pl. SOF ¶¶ 67-68, 70. Plaintiffs also do not dispute that, in a minority of cases, the USCIS online account system provides applicants and counsel who use the system an opportunity to view certain documents. *See* Pl. SOF ¶ 111. And Plaintiffs do not dispute that FOIA requests can be used to obtain some records, although often not in a timely fashion. *See* Pl. SOF ¶ 56. However, for the reasons described in detail in Plaintiffs' summary judgment briefing, Plaintiffs deny that this limited exchange of information "provides affirmative asylum applicants

multiple opportunities to inspect the record of the proceeding that constitutes the basis for the decision on their application during the affirmative asylum application process." *See* ECF No. 137 at 11-35; Pl. SOF ¶¶ 16-114.

Rather, Defendants' policies fail to provide a single opportunity for applicants and their counsel to inspect the complete record that constitutes the basis for the decision on their application, as the documents provided by the above means do not comprise the entirety of the record. *See* Ex. 4, D.P. Tr. at 75:22-77:4 ("[There are] steps in the [affirmative asylum] process . . . for cases that end in a denial or a grant to allow . . . the applicant to inspect the <u>parts</u> of the record . . . that are included within the record of proceeding.") (emphasis added); *see also id.* at 107:3-8; Ex. 11, 2007 Memo at USCIS00007658 ("Asylum Office personnel are not required to provide copies of the I-589 and any supporting documents to non-*ABC*-eligible asylum applicants.") (emphasis in original); Ex. 1, Response to Interrogatory No. 1; Ex. 2, USCIS00004238-39; Ex. 3, USCIS Records Policy Manual ("Records Manual") at USCIS00016456-57; Ex. 5, K.S. Tr. at 130:23-131:23; Ex. 6, Willshire-Carrera Declaration at ¶¶ 8-9.

27.    As a result of the 1994 asylum reform rulemaking, USCIS utilizes the asylum interview as the primary opportunity where an affirmative asylum applicant is permitted to inspect the record of proceeding that constitutes the basis for the decision pursuant to 8 C.F.R. 103.2(b)(16). *See* Ex. A, D.P. Tr. at 150:1-7 ("the inspection takes place with the asylum officer;" the documents forming the record of proceeding which constitutes the basis for the decision are "inspected during the asylum interview with the asylum officer. And as part of that process, the inspection is formalized through signature [] [a]nd then reviewed for completeness following the interview."); *id*. at 151:8-11 (the "action of going through the documents [at the interview] would be the inspection under 103.2(b)(16)").

**RESPONSE:  Admitted in part, denied in part.**

Admitted that the asylum interview is the primary opportunity provided, but denied that any inspection that occurs at the interview provides anything approximating the opportunity "to inspect the record of proceeding which constitutes the basis for the decision" required by 8 C.F.R. § 103.2(b)(16), for the reasons detailed in Plaintiffs' summary judgment briefing. Ex. A, John Willshire-Carrera and Nancy Kelly Declaration, Dated February 20, 2025 ("2025 Willshire-Carrera & Kelly Declaration"); Ex. B, Annelise Araujo Declaration, Dated February 20, 2025 ("2025 Araujo Declaration"); *see* ECF No. 137 at 14, 28-29; Pl. SOF ¶¶ 42, 67.

28.    During the affirmative asylum interview, the asylum officer elicits all relevant and useful information bearing on the applicant's eligibility for asylum by discussing the records constituting the basis for the decision in a nonadversarial setting, 8 C.F.R. § 208.9, subject to certain exceptions prohibiting disclosure of classified information. *See* 8 C.F.R. § 103.2(b)(16)(i)-(iv). *See also* Pls.' Ex. 2, AAPM at USCIS00004111-32, ECF No. 139-2.

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs admit that 8 C.F.R. § 208.9(b) states that an asylum officer "shall conduct the interview in a nonadversarial manner," and that the "purpose" of an asylum interview "shall be to elicit all relevant and useful information bearing on the applicant's eligibility for asylum." Plaintiffs also admit that the Affirmative Asylum Procedures Manual requires asylum officers to discuss with the applicant "adverse information" discovered before or during an interview. Ex. 2, AAPM at USCIS00004130. The cited materials do not otherwise require an asylum officer at an asylum interview to discuss "the records constituting the basis for the decision," and Plaintiffs deny that they do. *See* Ex A, 2025 Willshire-Carrera & Kelly Declaration; Ex. B, 2025 Araujo Declaration. In fact, the record establishes that under the Policy challenged in this case, USCIS

does not even recognize as part of the "record" numerous documents that an asylum officer relies on in making a decision. *See* ECF No. 146 at 26 Ex. 4, D.P. Tr. at 75:22-77:4 ("[There are] steps in the [affirmative asylum] process . . . for cases that end in a denial or a grant to allow . . . the applicant to inspect the *parts* of the record . . . that are included within the record of proceeding.") (emphasis added); Ex. 2, AAPM at USCIS00004238-39; Ex. 5, K.S. Tr. 105:1-11 (stating that background and security check information is "excluded from the record of proceeding" even though it is considered by the asylum officer); *id.* at 116:5-7, 13-17 (stating that the I-213 is "excluded from the record of proceeding" even though it is considered by the asylum officer); *id.* 125:18-24, 126:1-24, 127:1-6 (stating that the record of inquiry is "excluded from the record of proceeding" even though it is considered by the asylum officer); *id.* 128:3-10 (excluding State Department records from the record of proceeding); *id.* 130:22-24, 131:1-15 (excluding prior asylum applications and work authorizations from the record of proceeding); *see also* Ex. 4, D.P. Tr. at 295:22-24, 296:1-23.

29.    USCIS policy dictates that the asylum officer "review[] and explain[] to the applicant any corrections, additions, or changes made to the I-589 and numbers each correction, addition, or change," and memorialize the completion of the inspection through the signing of the application itself. *See* Pls.' Ex. 2, AAPM at USCIS00004132.

**RESPONSE:  Admitted, with clarification.**

Although Defendants use the word "inspection" here to advance their contention in this case that the interview provides for the opportunity to "inspect the record" in accordance with 8 C.F.R. § 103.2(b)(16), the cited policy says nothing about "inspection" and does not purport to provide any opportunity to "inspect the record" in accordance with 8 C.F.R. § 103.2(b)(16).

30.    While "[a]sylum officers aren't instructed to go through the supplemental . . . materials that don't pertain to the applicant," USCIS policy requires that "those records that pertain to the applicant, asylum officers are generally going through those documents with the applicant, whether it's identity documents or personal statements" (unless subject to nondisclosure as classified information pursuant to 8 C.F.R. 103.2(b)(16)(iii)-(iv)). Ex. A, D.P. Tr. at 150:19-151:2. And "the record of proceeding would include those documents, and that action of going through the documents would be the inspection under 103.2(b)(16)." *Id*. at 151:8-11.

**RESPONSE:  Admitted in part, denied in part.**

Plaintiffs admit the quotations are as stated and admit that asylum officers are not instructed to go through the supplemental materials that don't pertain to the applicant. Plaintiffs otherwise deny this paragraph.  First, the quotation is taken out of context. The quoted discussion relates only to documents supplied by the applicant. The Rule 30(b)(6) witness was answering a question regarding "supporting materials that the applicant submits," and explained that "asylum officers aren't instructed to go through the supplemental—the supplied materials that don't pertain to the applicant." Defs. Ex. A, D.P. Tr. at 150:13-21. The witness then stated—again referring to materials submitted by the applicant—that "for those records that pertain to the applicant, asylum officers are generally going through those documents with the applicant, whether it's identity documents or personal statements."  *Id.* at 150:13-151:2. The witness then confirmed that going through these documents that pertain to the applicant and were submitted by the applicant is what USCIS considers to be "the inspection under 103.2(b)(16)." *Id.* at 151:3-11. The witness did not contend there was a "policy requir[ing]" asylum officers to go through records pertaining to the applicant. And Plaintiffs deny that USCIS has any "policy requir[ing]" asylum officers to provide for "inspection" of the record of proceeding which constitutes the basis for decision as required by

§ 103.2(b)(16). *See generally* Ex. 15, 2024 Fisher Declaration; Ex. 6, 2024 Willshire-Carrera Declaration; Ex A, 2025 Willshire-Carrera & Kelly Declaration; Ex. B, 2025 Araujo Declaration.

Second, to the extent the witness or Defendants suggest that documents other than the asylum application are generally shown to applicants at an interview, that is incorrect. The Plaintiffs' years of experience establish that this does not occur. *See* Ex. 15, 2024 Fisher Declaration; Ex. 6, 2024 Willshire-Carrera Declaration, Ex A, 2025 Willshire-Carrera & Kelly Declaration; Ex. B**,** 2025 Araujo Declaration. Neither the Affirmative Asylum Procedures Manual's instructions for how interviews should be conducted nor any other written record cited by Defendants establish that asylum officers are instructed to allow for any "inspection" during an interview of the supporting documents submitted by an applicant, or of "the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16); *see generally* Ex. 2, AAPM at USCIS00004111-33.

31.    Affirmative asylum applicants are also permitted to inspect documents comprising the record of proceeding when USCIS serves such records upon the applicant, and may inspect records that originate with the applicant at any time. *See* Ex. A, D.P. Tr. at 147:5-151:11.

**RESPONSE:  Denied.**

The back-and-forth exchange of documents between an applicant and the agency does not "comprise" the entire record of proceeding within the meaning of 8 C.F.R. § 103.2(b)(16). Plaintiffs also deny that an applicant may "inspect records that originate with the applicant at any time," as applicants and their counsel do not always have the original application materials that are submitted to USCIS, particularly when an application has been outstanding for many years or when an applicant changes legal counsel. Ex. 6, 2024 Willshire-Carrera Declaration at ¶ 1; Ex. 15, 2024 Fisher Declaration at ¶ 2. Denied to the extent that Defendants intend to suggest that the mere fact that certain documents were once sent by the applicant or once served on the applicant is the

opportunity to "inspect the record of proceeding which constitutes the basis for the decision" under 8 U.S.C. § 103.2(b)(16). *See* Ex. 15, 2024 Fisher Declaration at ¶¶ 1-3; Ex. 6, 2024 Willshire-Carrera Declaration at ¶ 2; Ex. 1, Response to Interrogatory No. 1; Ex. 5, K.S. Tr. at 105:3-9, 20-24; 116:5-7, 13-17; 125:18-24, 126:1-24, 127:1-6; 128:3-10; 130:22-24, 131:1-15; Ex. 4, D.P. Tr. at 295:22-24, 296:1-23; Ex. 2, AAPM at USCIS00004238-39; Ex. 3, Records Manual at USCIS00016489.

32.     In this regard, USCIS policy ensures that the "notices . . . and decision letter and other documents [] that provide information on the formal decision-making process and the formal steps of the affirmative asylum process in the course of adjudication" are "sent to the applicant" during the process. Ex. A, D.P. Tr. at 180:11-21; *see also id*. at 126:14-127:24.

**RESPONSE: Admitted with clarification.**

Plaintiffs admit that notices and decision letters are generally to be sent or given to the applicant. To the extent the reference to "other documents" refers simply to other procedural notices that USCIS sends to applicants, Plaintiffs also admit the remainder of the statement.

33.     USCIS also permits affirmative asylum applicants to access record of proceeding documents online using the USCIS online account system, if the applicant chooses to file their application online. The USCIS online account system provides readily accessible copies of applicants' filings with supporting documents, as well as copies of any notices issued to the applicant and any responses submitted by the applicant. All such notices are posted to the applicant's online account, providing applicants additional opportunities to access their records on demand and inspect such records anew. *See* Ex. B, Defs.' Responses to Pls.' Revised Third Set of Interrogatories, Response to Interrogatory No. 2 (listing documents viewable in online account).

**RESPONSE: Admitted in part, denied in part**.

Admitted that certain documents exchanged between USCIS and the applicant are available to applicants who file their application online through the USCIS online account system. Denied that the online account provides documents to any applicants who "choose" to file their application online, as this online filing option only became available in November 2022. *See* Pl. SOF ¶ [114]; *see also* Ex. 4, D.P. Tr. at 173:20-175:7; Ex. 2, AAPM at USCIS00004095. Denied that the documents available on the USCIS online account are the "record of proceeding," as the record of proceeding that serves as the basis for the asylum officer's decision includes more than just the documents exchanged between USCIS and the applicant. *See* Pl. SOMF ¶ [43]; *see also* Ex. 5, K.S. Tr. at 56:16-21; 79:13-15; 81:3-15. Notably, the online account *also directs the applicant to FOIA to get their immigration record or A-File*. *See* Ex. 14, *Benefits of a USCIS Online Account*, USCIS (Dec. 10, 2020), at USCIS00008610.

34.    USCIS is also in the process of digitizing applications originally on filed on paper utilizing congressional funding in order to make such documents more readily accessible via the USCIS online account system, in addition to already providing access to such records electronically for applicants who chose to file their applications online. *See* Ex. A, D.P. Tr. at 98:16-100:23.

**RESPONSE: Admitted, with the clarification** that online filing only became an option in November 2022 and few records have been digitized.

35.    Applicants who can access their records online via the USCIS online account system represent "a large portion of the total pending cases." Ex. A, D.P. Tr. at 100:8-15.

**RESPONSE: Denied.**

While Plaintiffs do not know what portion Defendants categorize as "large," cases filed prior to November 2022 could not have been filed online, *see* Ex. 2, AAPM at USCIS00004095,

and only a small portion of previously filed cases have been digitized. Ex. 4, D.P. Tr. at 100:16-22. "[T]here is still a large portion of our pending affirmative asylum caseload that are in paper A-files, or were filed on paper, that are still not digitized." Ex. 4, D.P. Tr. at 101:8-14.

36.     While not required by agency policy, asylum office personnel also have the "the ability and authority" to provide copies of documents to applicants upon request in addition to permitting applicants to inspect those records upon initial receipt and at the interview. Ex. A, D.P. Tr. at 129:12-130:2.

**RESPONSE: Admitted, with two clarifications.**

First, the cited reference to "ability and authority" refers to documents previously sent to the applicant by USCIS. When asked about an applicant who "asked for a second inspection of a notice or document that they may have already received," the 30(b)(6) deponent stated that "asylum officer personnel would have the ability and authority to allow that inspection." Defs. Ex. A, D.P. Tr. at 129:12-22. Second, to the extent that the Government's reference to the asylum interview and to applicants' "initial receipt" of records is intended to suggest that asylum applicants are permitted to inspect documents other than their asylum application at an asylum interview, or that USCIS provides an ability to inspect the record of proceeding which constitutes the basis for the decision within the meaning of 8 C.F.R. § 103.2(b)(16), Plaintiffs dispute that suggestion. *See* ECF 137 at 13-14; Ex A, 2025 Willshire-Carrera & Kelly Declaration; Ex. B, 2025 Araujo Declaration.

37.     The requirements for disclosure of derogatory information unknown to the applicant and information that results in a statutory determination of eligibility are set forth in 8 C.F.R § 103.2(b)(16)(i)-(ii).

**RESPONSE:  Admitted, with the clarification** that the admission is not intended to suggest that no other requirements exist on this subject.

38.    Pursuant to USCIS policy, any information derived from non-classified records that impacts an asylum applicant's statutory eligibility, or that is derogatory information unknown to the applicant that forms the basis for a denial, is shared with the applicant during the interview and via the NOID, and the applicant is then given an opportunity to respond to that information. To that end, first, "the interview and the review of the 589 would be a time where the asylum officer is required to present derogatory information," Ex. A, D.P. Tr. at 264:10-265:22; *see also id.* at 180:3-182:13 (explaining how USCIS permits applicants to inspect derogatory information during the interview).

**RESPONSE: Admitted in part, denied in part.**

With regard to "derogatory information unknown to the applicant that forms the basis for a denial," Plaintiffs admit that 8 C.F.R. § 103.2(b)(16)(i) requires an applicant to be notified of "derogatory information . . . of which the applicant . . . is unaware" and which would form a basis for a denial, and to have the "opportunity to rebut the information." Plaintiffs also admit that the Affirmative Asylum Procedures Manual's section regarding interviews requires an asylum officer who is aware of adverse information to "provide[] the applicant with the opportunity to explain any discrepancies or inconsistencies during the course of an interview." Ex. 2, AAPM at USCIS00004130. The cited documents do not establish whether USCIS complies with these obligations, but only that they exist. Plaintiffs deny that USCIS policy requires disclosure of such information in a NOID, as USCIS policy does not require a NOID in most cases. *See* Ex. 2, AAPM at USCIS00004143-44; U.S. Citizenship and Immigration Services I-159 Affirmative Asylum Summary Overview, *supra* note 2, at 3

With regard to information that "impacts an asylum applicant's statutory eligibility," Plaintiffs admit that 8 C.F.R. § 103.2(b)(16)(ii) requires a determination of statutory eligibility for asylum to be "based only on information contained in the record of proceeding which is disclosed to the applicant," subject to an exception providing for notice procedures with regard to classified information. However, because USCIS's challenged Policy does not in fact allow the "record of proceeding" referred to in § 103.2(b)(16) to be "disclosed to the applicant," USCIS systematically violates the requirement of § 103.2(b)(16)(ii) to make determinations of statutory eligibility "based only on information in the record of proceeding which is disclosed to the applicant," as Plaintiffs have demonstrated in the accompanying brief. *See* ECF 137 at 13-15, 18-20.

39.    Second, USCIS policy requires issuance of a NOID when the agency proposes to deny asylum. *See* 8 C.F.R. §§ 208.14(b)-(c), 103.2(b)(16). This NOID discloses all information which constitutes the basis for the proposed denial (including any non-classified derogatory information constituting the basis for the proposed denial) and provides the applicant an opportunity to respond before a decision is rendered, pursuant to USCIS's obligation to disclose derogatory information and determinations of statutory eligibility under 8 C.F.R. § 103.2(b)(16)(i)-(ii). See Ex. A, D.P. Tr. at 308:18- 309:3. *See also* Pls.' Ex. 8, June 3, 2013 Policy Memorandum at USCIS00004334-35, ECF No. 139-8 (explaining that "if a decision adverse to the individual is based on derogatory information, and the individual is unaware that the information is being considered, the officer must advise the individual of this information and offer him or her an opportunity to rebut it before the decision is rendered" as a matter of USCIS policy under 8 C.F.R § 103.2(b)(16)(i)-(ii)).

**RESPONSE: Admitted in part, denied in part**.

Plaintiffs admit that USCIS issues a NOID to an applicant to whom it intends to deny asylum and clarify that a majority of applicants found not eligible for asylum do not receive NOIDs, as only approximately 0.6% of asylum cases result in denials. *See*, U.S. Citizenship and Immigration Services I-159 Affirmative Asylum Summary Overview, *supra* note 3, at 3. In any event, in cases when a NOID is issued, Plaintiffs deny that a NOID discloses "all" information which constitutes the basis for the proposed denial, as that contention is not supported by the record. The cited materials only acknowledge an obligation to notify an applicant of the basis for a proposed denial when that basis is "derogatory information . . . of which the applicant . . . is unaware." 8 C.F.R. § 103.2(b)(16)(i). The cited materials do not explain how an asylum officer should decide whether an applicant is already "aware" of information, or acknowledge an obligation to notify the applicant of an officer's reliance on information that the asylum officer deems the applicant is already aware of.

In addition, although Defendants cite to both subparagraphs (i) and (ii) of § 103.2(b)(16), the cited materials only refer to NOIDs in connection with subparagraph (i) and Plaintiffs deny that a NOID is issued "pursuant to . . . determinations of statutory eligibility." Subparagraph (ii) does not itself require procedures for notification of an applicant of the basis for a denial, but requires a decision on statutory eligibility—favorable or unfavorable—to be based only on the "record of proceeding which is disclosed to the applicant." *Id.* at § 103.2(b)(16)(ii)USCIS does not comply with this requirement because it provides no mechanism for disclosure of that record of proceeding to an applicant, as established in Plaintiffs' summary judgment briefing.

40.     Plaintiffs note that the AAPM "references the use of FOIA to disclose files to affirmative asylum applicants when discussing the sworn statement, which refers to an asylum officer's notes from an asylum interview when the applicant provides information about a

circumstance that may relate to a mandatory bar to asylum". See Pls.' Statement of Facts at ¶ 50 ECF No. 138 (quoting Pls.' Ex. 2, AAPM at USCIS00004126 ("[i]f requested, the Asylum Office may give the applicant a copy of the sworn statement without requiring the applicant to file a request under the Freedom of Information Act (FOIA)."))

      **RESPONSE:  Admitted.**

    41.    Plaintiffs' assertion (made without citation to any evidence, *contra* Local Rule 56.1) that this statement in the AAPM "indicates that providing a copy of a document—the sworn statement— without requiring the applicant to file a request under FOIA is an exception to the agency's general practice," is false. *Id*. at ¶ 51. Rather, this reference acts to implement separate regulatory provisions, as Defendants' Rule 30(b)(6) witness confirmed. *See* 8 C.F.R § 103.2(b)(7) ("When a statement is taken from and signed by a person, he or she shall, upon request, be given a copy without fee."); Ex. A, D.P. Tr. at 307:6-23; see also id. at 289:12-292:10 (explaining that the reference to FOIA in the AAPM merely reflects the continued availability of FOIA pursuant to 8 C.F.R § 208.12(b), *see supra* ¶¶ 19-23). As described above, USCIS permits applicants to inspect the record of proceeding without utilizing FOIA as part of the application process.

      **RESPONSE: Denied**.

    The fact that the reference is implementing a separate regulation does not bear on whether providing a document is an exception to the general practice of requiring a FOIA. Plaintiffs further deny that "USCIS permits applicants to inspect the record of proceeding without utilizing FOIA as part of the application process," because the ability to view the documents one sends to USCIS before sending them, receive notices from USCIS, and review and/or swear to an asylum application during an interview does not comprise an ability to "inspect the record of proceeding," as established in Plaintiffs' summary judgment briefing. *See* ECF No. 137 at 10, 13-15, 23-25; *see*

*also* Ex. 15, 2024 Fisher Declaration at ¶¶ 1-2; Ex. 6, 2024 Willshire-Carrera Declaration at ¶¶ 1-2; Ex. A, 2025 Willshire-Carrera & Kelly Declaration; Ex. B, 2025 Araujo Declaration.

42.    The procedures outlined in the AAPM "allow [staff] to perform their job in accordance with the regulation [(8 C.F.R. 103.2(b)(16))]." Ex. A, D.P. Tr. at 111:4-17 (explaining that "all of the procedures in the AAPM, the Affirmative Asylum Procedures Manual, are meant to comport [with] and create and maintain a process that is in accordance with the regulations, including 103.2(b)(16)").

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs do not dispute the quotations in this paragraph. However, Plaintiffs dispute that the Affirmative Asylum Procedures Manual outlines procedures that comport with 8 C.F.R. § 103.2(b)(16), as it does not provide a procedure for applicants to "inspect the record of proceedings which constitutes the basis for the decision." *See generally* Ex. 2, AAPM.

43.    The policies permitting inspection of the record of proceeding as described above are longstanding, and can be traced back to the agency's 1994 regulatory reform effort, which was designed to streamline the affirmative asylum process. *See* Ex. A, D.P. Tr. at 153:24-154:21 ("that principle and regulatory framework set up by asylum reform . . . in order to streamline the process, is the basis [of] the current [AAPM] guidance in relation to 103.2(b)(16)"); id. at 155:13-19 ("The main underlying policy is that which is described [] in the 1994 asylum reform regulations and regulatory history.").

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs admit that the policy at issue in this case is longstanding and acknowledge the Government's position in this litigation that it stems from the 1994 asylum reforms. Plaintiffs deny that USCIS has "policies permitting inspection of the record of proceeding," for the reasons described in Plaintiffs' summary judgment briefing. *See* ECF 137 at 10, 13-15, 23-25.

44.    USCIS also independently provides asylum applicants access to records, including those beyond the limited subset that form "the record of proceeding with constitutes the basis of the decision," through its FOIA request process in accordance with FOIA's separate statutory disclosure requirements. *See* 8 C.F.R. § 208.12(b) ("Persons may continue to seek documents available through a [FOIA] request pursuant to 8 CFR part 103."); 8 C.F.R. §§ 103.42; 103.39.

**RESPONSE:  Admitted in part, denied in part.**

Admitted that USCIS provides asylum applicants with access to certain records through its FOIA request process, and that a FOIA response can include documents beyond the record relevant to a specific application, such as asylum. But to the extent Defendants suggest that a FOIA response includes all the records that form part of "the record of proceeding which constitutes the basis for the decision," Plaintiffs deny that contention. FOIA responses often omit records that are part of the "record of proceeding which constitutes the basis for the decision," and redact key information from those records. *See* Ex. 15, 2024 Fisher Declaration at ¶ 3 (indicating that FOIA requests often omit background check information or State Department records); Ex. 6, 2024 Willshire-Carrera Declaration at ¶ 3.

45.    FOIA establishes a separate statutory right of public access to Executive Branch information. *See* 5 U.S.C. § 552. Pursuant to FOIA, any person has a right to obtain access to federal agency records subject to the Act for any reason, except to the extent that any portions of such records are protected from public disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(b), (c).

**RESPONSE:  Admitted.**

46.    All federal agencies have FOIA offices and regulations designed to respond to FOIA requests, making FOIA an always-available means of accessing government records. *See,*

*e.g.*, 6 C.F.R. § 5.1(a)(1). See Ex. A, D.P. Tr. at 252:1-3 ("FOIA is a separate way to obtain contents of the A-file, including the record of proceeding").

**RESPONSE**: **Admitted, with the clarification** that it is "always" an "available" option to *file* a FOIA request, but a complete response is not "always-available." *See* Ex. 15, 2024 Fisher Declaration at ¶ 3; Ex. 6, 2024 Willshire-Carrera Declaration at ¶ 3.

47.    The agency confirmed that the record disclosure and inspection practices outlined above satisfied its regulatory obligations for record inspection and disclosure in 2007, when it issued a policy memorandum implementing a settlement agreement relating to a subset of affirmative asylum applicants.  *See* Pls. Ex. 11, April 20, 2007, USCIS Interoffice Memorandum Re: Amendment of Section XVII of the ABC-NACARA Procedures Manual (HQRIAO 120/13) (the "2007 Memo") at USCIS00007658, ECF No. 139-11.

**RESPONSE: Denied**.

Nothing in this policy memorandum suggests that USCIS confirmed that its disclosure and inspection practices satisfied its regulatory obligations for record inspection and disclosure. *See generally* Ex. 11, 2007 Memo at USCIS00007656-64. In fact, this 2007 policy memorandum confirms that USCIS does not disclose the I-589 and supporting documents to affirmative asylum applicants besides those eligible for relief under the ABC-NACARA settlement. *See id.* at USCIS00007663.  It also confirms that FOIA is the default means through which the agency allows for inspection of documents by affirmative asylum applicants and their counsel. *See id.* at USCIS00007656-64.

48.    Section II.E. of this memo explains that "Asylum Office personnel are not required to provide copies of the I-589 and any supporting documents to non-ABC-eligible asylum applicants." *Id*. That is because such documents are already inspected at the time of origination

and during the interview in a manner satisfying 8 C.F.R. § 103.2(b)(16), as a matter of USCIS policy, so the provision of copies of records to non-class members is not necessary to satisfy USCIS's regulatory disclosure obligations. *See* Ex. A, D.P. Tr. at 131:10-139:10; *id*. at 139:1-10 (explaining that Section II.E of the 2007 Memo indicates USCIS's acknowledgment that "the 1994 reforms created a streamline[d] process that provided specific points where the record could be inspected, . . . but that activities beyond that related to the inspection of the record were not required in order to allow for the streamline process to continue to be effectuated").

**RESPONSE: Denied**.

The policy memorandum referenced by the Government does not state that the reason why "Asylum Office personnel are not required to provide copies of the I-589 and any supporting documents to non-ABC-eligible asylum applicants" is that "such documents are already inspected at the time of origination." Ex. 11, 2007 Memo at USCIS00007658. The policy memorandum also does not assert that the disclosure policies described therein comport with disclosure obligations under 8 C.F.R. § 103.2(b)(16), and Plaintiffs have established that they do not. *See generally id.* at USCIS00007656-64; *see* ECF No. 137 at 19, 26-35.

49. Defendants do not maintain an unwritten nondisclosure policy of utilizing FOIA as the sole or primary means of permitting affirmative asylum applicants to inspect the record of proceeding that constitutes the basis for the decision under 8 U.S.C. § 103.2(b)(16). As explained above, USCIS provides applicants multiple opportunities to inspect the record of proceeding throughout the application process, with the exchange of documents and notices between the applicant and the agency, the asylum interview, the NOID, and the USCIS online account system all serving as ways in which USCIS permits applicants to inspect the record of proceeding, and FOIA also remains available as an additional means of accessing government records. *See* Ex. A, D.P. Tr. at 295:9-299:15, 308:18-309:3 (listing the documents which might be contained within

an applicants' record of proceeding, and listing the asylum interview, the exchange of records between applicants and USCIS, the USCIS online account system, FOIA, and service of the NOID as different ways in which an applicant is permitted to inspect such records); *id.* at 147:5-151:11 (explaining the inspection process). *See also* Pls.' Ex. 5, K.S. Tr. at 78:3-79:15 (listing the exchange of documents between applicant and agency, the interview, the NOID, and the USCIS online account, *inter alia*, as methods of inspecting the record of proceeding provided to applicants by USCIS policy).

**RESPONSE: Denied**.

This paragraph is an argument to which no response is required, and, in any event, is not supported by the evidentiary record. In its summary judgment filing, Defendants have articulated and confirmed the policy by which USCIS does not provide affirmative asylum applicants with an opportunity to inspect records central to the decision of their asylum cases, and violates its duty to permit applicants and their counsel to "inspect the record of proceeding which constitutes the basis for the decision" under 8 U.S.C. § 103.2(b)(16). Plaintiffs' summary judgment filings explain the challenged policy and how it violates § 103.2(b)(16) at length. *See* ECF No. 137 at 11-20, 26-35; Pl. SOMF ¶¶ [29-91, 105-114].

**Stefanie Fisher's Interaction at the Boston Asylum Office On or About October 10, 2023**

50.    A woman identifying herself as Stephanie Fisher came into the Boston Asylum Office on or about October 10, 2023, advised that she was an attorney there to attend an asylum interview with one of her clients, and asked to see a former USCIS Section Chief. A USCIS Legal Administrative Specialist ("LAS") assigned to the front desk informed Fisher that the Section Chief no longer worked at the Boston Asylum Office. Fisher then asked if the LAS knew the procedure for Fisher to file a FOIA request. The LAS advised Fisher that she did not know, but would check with a supervisor. The LAS also obtained the necessary information from Fisher

regarding her client's interview and checked her in for the interview. *See* Ex. C, Defs.' Responses to Pls.' Second Set of Interrogatories, Response to Interrogatory No. 1.

**RESPONSE: Admitted in part, denied in part.**

Plaintiffs admit that Stefanie Fisher interacted with the USCIS employee described on October 10, 2023, but deny that Ms. Fisher asked how to file a FOIA request. *See* Ex. 7, 2023 Stefanie Fisher Declaration at ¶ 1. Instead, she asked how to view a record of proceeding, and she was directed to file a FOIA by a USCIS supervisor after she asked how she could view her client's record of proceeding. *See id.*

51.    While Fisher and the LAS were speaking, a USCIS Training Officer ("TO") walked by the desk and Fisher asked the TO whether USCIS had a system for an asylum applicant or representative to view the applicant's record of proceeding similar to the system that the Department of Justice, Executive Office for Immigration Review ("EOIR"), has for that purpose. As a practicing attorney before joining the Boston Asylum Office, the TO had used EOIR's record viewing system on at least two occasions, so he understood Fisher to be asking whether USCIS had a system through which she could schedule an appointment to come into a USCIS office and then, at the scheduled time, review a record of proceeding in the USCIS office. The TO responded that he was not aware of USCIS having such a system, but he would check with a supervisor. *Id*.

**RESPONSE: Admitted.**

52.    The TO approached a USCIS Supervisor Asylum Officer ("SAO"), and consulted with him about Fisher's question. The SAO advised the TO that he was not aware of USCIS having a system for viewing ROPs similar to EOIR's, but FOIA remains an available method of requesting government records on demand. The TO then returned to the front desk and confirmed to Fisher that USCIS does not have a system similar to EOIR's for reviewing a record of proceeding. The

TO advised Fisher that FOIA remains an available means of requesting government records. Fisher did not ask any follow-up questions and returned to the waiting room. *Id*.

    **RESPONSE: Admitted.**

*    *    *

Dated: February 21, 2025                    Respectfully submitted,


                                            By: */s/ Adriana Lafaille*
                                            Adriana Lafaille (BBO #680210)
                                            AMERICAN CIVIL LIBERTIES
                                            UNION FOUNDATION OF
                                            MASSACHUSETTS, INC.
                                            One Center Plaza, Suite 850
                                            Boston, MA 02108
                                            (617) 482-3170
                                            ALafaille@aclum.org

                                            */s/ John T. Montgomery*
                                            John T. Montgomery (BBO#352220)
                                            Amanda L. Pine (BBO #707611)
                                            ROPES & GRAY LLP
                                            800 Boylston Street
                                            Boston, MA 02199
                                            (617) 951-7000
                                            John.Montgomery@ropesgray.com

                                            Deanna Minasi (admitted pro hac vice)
                                            ROPES & GRAY LLP
                                            1211 Avenue of the Americas
                                            New York, NY 10036
                                            (212) 596-9000
                                            Deanna.Minasi@ropesgray.com

                                            *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed this document with the Court's ECF system, which sends

notice to Defendants' Counsel identified on the NEF.


*/s/ John T. Montgomery*
John T. Montgomery