UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GREATER BOSTON LEGAL SERVICES, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 21-cv-10083-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                        **June 20, 2025**

**I.      Introduction**

In 2021, Plaintiffs Greater Boston Legal Services ("GBLS"), Araujo & Fisher, LLC ("Araujo & Fisher"), Annelise M. Araujo ("Araujo") and Stefanie Fisher ("Fisher") filed this lawsuit against Defendants United States Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), United States Customs and Border Protection ("USCBP"), and various individuals serving in leadership positions in these agencies, alleging a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  D. 1.  After the litigation of two motions to dismiss and the resolution of disputes about the administrative record and a course of supplemental discovery, each side now has moved for summary judgment as to the one claim that remains: whether the policy of the Defendants for inspection of documents in asylum proceedings violates the APA.

1

D. 136; D. 145.  For the reasons stated below, the Court ALLOWS Defendants' motion for summary judgment, D. 145, and DENIES Plaintiffs' motion for summary judgment, D. 136.

**II.    Standard of Review**

Summary judgment is ordinarily appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In cases involving review of agency action under the APA, however, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record.  See Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan, 802 F.3d 99, 106 (1st Cir. 2015) (observing that "[t]he summary judgment 'rubric' also 'has a special twist in the administrative law context'" (quoting Associated Fisheries of Me., Inc. v. Daley, 127 F.3d 104, 109 (1st Cir. 1997))).  Rather, when administrative action is challenged under the APA "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Coe v. McHugh, 968 F. Supp. 2d 237, 240 (D.D.C. 2013); S. Shore Hosp., Inc. v. Thompson, 308 F.3d 91, 97-98 (1st Cir. 2002).

The APA provides that a reviewing court should "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706.  A court, however, may "not . . . substitute its judgment for that of the agency."  DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)).  Instead, it should "assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Id. (internal citation and quotation marks omitted).

2

### III.    Factual Background

The following facts are undisputed unless otherwise noted and are drawn from the parties' respective statements of undisputed facts and accompanying exhibits, D. 138; D. 147; D. 151.[1]

Plaintiffs are attorneys, law firms and a nonprofit legal services organization who represent noncitizens in immigration proceedings. D. 138 ¶¶ 1-6. Defendant, DHS, is the federal agency responsible for enforcing immigration laws. D. 138 ¶ 7. USCIS is a component agency of DHS. D. 138 ¶ 8; D. 147 ¶ 1; D. 151 ¶ 1. USCIS's Asylum Division reviews asylum applications to determine eligibility for asylum. D. 138 ¶ 9; D. 147 ¶ 1; D. 151 ¶ 1; 6 U.S.C. § 271(b). USCIS has discretion to grant asylum to applicants who demonstrate their status as a "refugee," meaning they have suffered persecution or have a "well-founded fear of persecution" in their home country based upon a protected ground, if they warrant a favorable exercise of discretion and they are not subject to one of the mandatory bars to asylum. D. 147 ¶ 2; D. 151 ¶ 2; 8 U.S.C. §§ 1101(a)(42), 1158(b).

DHS maintains records for each noncitizen who submits an affirmative asylum application in the form of an Alien File ("A-File"). D. 138 ¶ 11. The A-File contains the applicant's official immigration and naturalization records, including records that document the history of the

---

[1] Although Defendants did not respond to Plaintiffs' statement of material facts, D. 138, they filed their own statement of material facts. In the administrative law context, in which "a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action was arbitrary and capricious." Boston Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016); Minuteman Health v. Dep't of Health & Human Serv., 291 F. Supp. 3d 174, 189 (D. Mass. 2018) (noting that "in cases involving review of agency action under the APA, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing an administrative record"). Accordingly, the Court has considered all facts proffered by the parties which are neither inconsistent with the facts proffered by the other party nor inconsistent with the administrative record.

individual's interactions with USCIS, ICE and CBP. D. 138 ¶ 12. The A-File also may include documents related to the applicant's other immigration benefits applications or to other immigration proceedings in which the applicant participated. D. 138 ¶ 13. In addition, it may include other documents such as the asylum application, interview notices, requests for evidence, background and security checks, supporting documents, internal USCIS correspondence, other applications filed with USCIS, visa application materials and records of encounters with other immigration agencies. D. 138 ¶ 14. Asylum applicants and their attorneys often request copies of documents from their A-Files when preparing for their affirmative asylum interview. D. 138 ¶ 15.

Part of an affirmative asylum applicant's A-File is Form I-589, the Application for Asylum and for Withholding of Removal, along with supporting materials, which a USCIS asylum officer reviews and evaluates alongside the applicant's interview testimony and other government records to determine whether USCIS should exercise its discretion to grant asylum. D. 147 ¶ 3; D. 151 ¶ 3; 8 U.S.C. § 1158(b)(1). USCIS policy requires the asylum officer to "review[] and explain[] to the applicant any corrections, additions, or changes made to the I-589 and numbers each correction, addition, or change" at the asylum interview. D. 147 ¶ 29 (alteration in original); D. 151 ¶ 29.

That interview is a key step in the asylum application process. See D. 147 ¶¶ 27-28; D. 151 ¶¶ 27-28. The "purpose" of an asylum interview is "to elicit all relevant and useful information bearing on the applicant's eligibility for asylum." D. 151 ¶ 28; 8 C.F.R. § 208.9(b). The Affirmative Asylum Procedures Manual ("AAPM") also requires asylum officers to discuss "adverse information" discovered before or during the interview with the applicant at the interview. D. 147 ¶ 38; D. 151 ¶¶ 28, 38.

### A.     <u>8 C.F.R. § 103.2(b)(16)'s Inspection Requirement</u>

Under 8 C.F.R. § 103.2(b)(16) ("§ 103.2(b)(16)" or the "Regulation"), applicants or petitioners shall be permitted to "inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs." D. 138 ¶ 16; D. 147 ¶ 24; D. 151 ¶ 24; 8 C.F.R. § 103.2(b)(16). Subsections (i) and (ii) provide requirements for affirmative disclosure of derogatory information unknown to the applicant and information that results in a statutory determination of eligibility, "i.e. an asylum officer's determination of whether a noncitizen falls within the definition of a 'refugee.'" D. 138 ¶ 17; D. 147 ¶ 24; D. 151 ¶ 24; 8 C.F.R. § 103.2(b)(16). Specifically, according to subsection (i), "[i]f the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised on this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered" subject to the exceptions in subsections (ii), (iii) and (iv). 8 C.F.R. § 103.2(b)(16)(ii). Subsection (ii) provides that "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner" subject to subsection (iv)'s exception for classified information. 8 C.F.R. § 103.2(b)(16)(ii). Subsections (iii) and (iv) allow USCIS to use certain classified information when making its decision without, in certain circumstances, disclosing that information.[2] D. 147 ¶ 24; D. 151 ¶ 24; 8 C.F.R. § 103.2(b)(16)(iii)-(iv).

No formal written DHS policy or procedure sets forth a process for applicants to inspect the "record of proceeding which constitutes the basis for the decision." D. 138 ¶ 18; <u>see</u> 8 C.F.R.

---

[2] Plaintiffs do not challenge the government's practices regarding nondisclosure of classified information pursuant to 8 C.F.R. § 103.2(b)(16)(iii), (iv). D. 147 ¶ 25; D. 151 ¶ 25.

§ 103.2(b)(16). The AAPM does not reference DHS's regulatory obligations under § 103.2(b)(16). D. 138 ¶¶ 19-20, 22-23; see D. 138 ¶ 23; D. 139-4 at 49 (testimony from USCIS's 30(b)(6) witness, observing that AAPM "doesn't speak to the record of proceeding as a term of art" and "doesn't define what 'inspect' means as a legal term"). USCIS officials, nevertheless, acknowledge the agency's disclosure obligations, D. 138 ¶¶ 21, 24, as do other USCIS documents, D. 138 ¶¶ 25-28 (citing USCIS Policy Memorandum and USCIS Policy Manual that reference § 103.2(b)(16)).

**B.     1994 Reforms**

Before 1994, asylum officers issued their asylum decisions in the form of a grant or a denial. D. 147 ¶ 4; D. 151 ¶ 4. If an asylum officer did not intend to grant asylum, the officer was required to provide the applicant with a notice of intent to deny ("NOID"), followed by a denial if the applicant did not overcome the grounds for denial. D. 147 ¶¶ 4, 39; D. 151 ¶¶ 4, 39. Prior to 1994, an applicant could file an application *de novo* with an immigration judge if exclusion or deportation proceedings were initiated. D. 147 ¶ 4; D. 151 ¶ 4. In 1994, the agency issued new regulations to "streamline the asylum adjudications process by making several principal reforms." D. 147 ¶ 5; D. 151 ¶ 5; Rules and Procedures for Adjudication of Applications for Asylum or Withholding of Deportation and for Employment Authorization ("Rules and Procedures"), 59 Fed. Reg. 14,779, 14,779-80 (Mar. 30, 1994) (proposed rule). The 1994 reforms provide the basis for at least some of USCIS's current practices for processing affirmative asylum applications. D. 147 ¶ 6; D. 151 ¶ 6.

The 1994 regulations introduced the concept of a "referral . . . to allow the Officers to address a greater volume of applications and to concentrate their efforts on approving meritorious claims." Rules and Procedures, 59 Fed. Reg. at 14,780; see D. 147 ¶ 7; D. 151 ¶ 7. This allowed asylum officers to refer applicants who were not granted asylum in the affirmative process and

6

who lacked an underlying lawful immigration status to removal proceedings in immigration court without issuing a NOID and without making a final determination regarding the applicant's eligibility for asylum.  D. 138 ¶¶ 76-77; D. 147 ¶¶ 8, 15; D. 151 ¶¶ 8, 15; 8 C.F.R. § 208.14(c); Rules and Procedures, 59 Fed. Reg. at 14,779.  After the asylum officer makes such a referral, jurisdiction for the referred applicant passes to a Department of Justice ("DOJ") immigration judge for *de novo* adjudication.  D. 147 ¶ 16; D. 151 ¶ 16; 8 U.S.C. §§ 1101(b)(4), 1229(a).

Also in 1994, USCIS proposed amending the text of 8 C.F.R. § 208.12(a) "to eliminate the provisions requiring an Asylum Officer to provide the applicant with an opportunity to inspect, explain, or rebut the material(s) relied upon to find that the applicant's claim has not been approved."  Rules and Procedures, 59 Fed. Reg. at 14,783; D. 147 ¶ 9; D. 151 ¶ 9.  Pursuant to such an amendment, "[t]he Asylum Officer will continue to rely upon materials provided by the Department of State, the District Director, or other credible sources in making a decision to grant asylum, to refer the case to an Immigration Judge, or to deny asylum for applicants having another lawful immigration status."  Rules and Procedures, 59 Fed. Reg. at 14,783; D. 147 ¶ 9; D. 151 ¶ 9.  The proposed amendment specified that "[t]he applicant will have the opportunity to review such materials to the extent they are relied upon in the course of proceedings before an Immigration Judge."  Rules and Procedures, 59 Fed. Reg. at 14,783; D. 147 ¶ 9; D. 151 ¶ 9.  The agency did not propose amending and did not amend the inspection requirement under 8 C.F.R. § 103.2(b)(16), or the requirement under 8 C.F.R. § 1292.4(b) to permit a noncitizen or their attorney "to examine the record of proceeding in a Service office" during the pendency of a case before an Immigration Judge or Board proceedings.  D. 151 ¶ 9.

In response to the agency's 1994 proposed rule, some commentators lamented the elimination of the NOID and argued that additional opportunities to examine and rebut evidence

7

and materials introduced in opposition to an asylum claim would better protect the rights of applicants and would promote more accurate decision-making. D. 147 ¶ 13; D. 151 ¶ 13; Rules and Procedures, 59 Fed. Reg. 62,284, 62,293-94 (Dec. 5, 1994) (final rule). Despite these objections, USCIS finalized its proposed rule, stating that it was "pivotal to the streamlining of the asylum process" as "[a]pplicants who are not granted asylum by the asylum officer will have a full opportunity to present their claim to an immigration judge, with all the procedural protections of a full adversarial proceeding. This includes, of course, the right to examine and rebut all evidence and materials that are introduced in opposition to the asylum claim." D. 147 ¶ 14; D. 151 ¶ 14; Rules and Procedures, 59 Fed. Reg. at 62,293-94; see D. 148-1 at 26 (noting that the requirement that the agency complete its work on each asylum application within 60 days of its filing further supports the proposed rule).

USCIS stated that it planned to adopt these reforms because its "existing system for adjudicating asylum claims [could] not keep pace with incoming applications" due to the agency's "limited resources" and "the effort [required] to meet procedural requirements imposed by [then-]current regulations." D. 147 ¶ 18; D. 151 ¶ 18; Rules and Procedures, 59 Fed. Reg. at 14,780. Even after the 1994 rulemaking, USCIS has struggled to keep up with the pace of filings, and at the end of November 2024, there were 1,410,151 affirmative asylum applications pending adjudication. D. 147 ¶ 18; D. 151 ¶ 18.

    **C.**    <u>**Plaintiffs Contend that USCIS Has An Unwritten Nondisclosure Policy**</u>

In 1997, the agency issued an interim rule which would ultimately become 8 C.F.R. § 208.12(b). D. 147 ¶ 19; D. 151 ¶ 19. That section now provides that "[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of [USCIS], the Department of Justice, or the Department of State. Persons may continue to seek documents available through a [FOIA] request pursuant to 8 [C.F.R.] part

103." D. 147 ¶ 19; D. 151 ¶ 19; see Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures ("Inspection and Expedited Removal"), 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997). Some commenters expressed concern "that the provision would preclude someone from seeking, or excuse [USCIS] from providing, information under [FOIA]." Inspection and Expedited Removal, 62 Fed. Reg. at 10,316; see D. 147 ¶ 20; D. 151 ¶ 20. USCIS described this fear as "totally groundless," reasoning that "FOIA provisions are covered under separate statutory and regulatory bases. The [agency] is guided by 5 U.S.C. [§] 522 and 8 [C.F.R. §] 103 with regard to FOIA matters, neither of which are in any way affected by this rulemaking." Inspection and Expedited Removal, 62 Fed. Reg. at 10,316; see D. 147 ¶ 21; D. 151 ¶ 21. USCIS subsequently revised paragraph (b) of Section 208.12 "to clarify that a prohibition on discovery of information does not include requests for information made under [FOIA]." D. 147 ¶ 22; D. 151 ¶ 22; Asylum Procedures, 65 Fed. Reg. 76,121, 76,121-26 (Dec. 6, 2000).[3]

Presently, asylum officers review the contents of documents in the applicant's record of proceeding that bear upon eligibility for asylum or derogatory information unknown to the applicant that bears upon same. See D. 138 ¶ 67; D. 147 ¶¶ 27-28, 38. More recently, an USCIS online account system provides applicants the opportunity to view certain documents, but this only applies to documents that have been digitized and/or filed electronically. D. 138 ¶¶ 111-14; D. 147 ¶ 33; D. 151 ¶ 33. As mentioned above, the AAPM requires asylum officers to discuss "adverse information" discovered before or during the interview with the applicant at the interview, D. 147 ¶ 38; D. 151 ¶¶ 28, 38, and USCIS policy requires the asylum officer to "review[] and explain[] to

---

[3] FOIA creates a separate right of public access to federal records, D. 147 ¶ 45; D. 151 ¶ 45; 5 U.S.C. § 552, subject to certain exemptions. D. 147 ¶ 45; D. 151 ¶ 45; 5 U.S.C. § 552(b), (c).

9

the applicant any corrections, additions, or changes made to the I-589 and numbers each correction, addition, or change." D. 147 ¶ 29; D. 151 ¶ 29. Plaintiffs dispute that the asylum officer is otherwise required to discuss "the records constituting the basis for the decision" at the interview. D. 151 ¶ 28.

A 2007 USCIS Interoffice Memorandum notes that "the Asylum Office may not deny the application until the applicant has been informed of . . . the right to inspect the record of proceedings, including any non-privileged adverse information[.]" D. 138 ¶ 35; D. 139-11 at 5. According to the memorandum, "[t]he inspection of the record of proceedings in such cases is best accomplished through the applicant's submission of a FOIA request." D. 138 ¶ 36; D. 139-11 at 10. A screenshot from USCIS's web page also encourages benefits applicants to use FOIA to access their immigration records and that applicants can use their USCIS online account to do so. D. 138 ¶ 55; D. 139-14 at 3.

Plaintiffs point to these developments as evidence that Defendants have an unwritten nondisclosure "Policy" that declines to give access to records before the asylum officer and directs them to make FOIA requests, D. 137 at 11, and that such policy violates Defendants' obligations under § 103.2(b)(16) and is arbitrary and capricious. Certainly, the Court allowed this matter to proceed past the motion to dismiss challenges where Plaintiffs had plausibly alleged the existence of same and mounts a facial challenge to it. D. 50, 80. Now, however, on a developed record, the Court cannot conclude that such a broad policy exists and that even if such policy was shown on the record here that it violates the Regulation or constitutes arbitrary and capricious agency action. See Reno v. Flores, 507 U.S. 292, 301 (1993) (noting where a party bring a facial challenge as opposed to a challenge "in a particular circumstance," "[t]o prevail in such a facial challenge,

10

respondents must establish that no set of circumstances exist under which the [policy] would be valid") (internal citation and quotation marks omitted).

IV.     **Procedural History**

Plaintiffs instituted this action in 2021.  D. 1.  Defendants then moved to dismiss.  D. 23.  The Court allowed the motion to the extent Plaintiffs' claim relied upon the Due Process Clause and allowed the motion without prejudice to amend with respect to removal proceedings but denied the motion with respect to asylum proceedings.  D. 50.  The Court concluded that "by identifying DHS regulations that direct asylum applicants to file FOIA requests instead of seeking discovery for relevant documents to which the regulations purportedly require access, Plaintiffs have plausibly alleged an agencywide policy with respect to these proceedings." Id. at 15.  With respect to removal proceedings, the Court concluded that Plaintiffs had made no such showing and had failed to allege "specific proceedings in which Plaintiffs were denied access to records based upon" the purported nondisclosure policy.  Id. at 15-16.  After the Court's ruling, Plaintiffs filed an amended complaint adding allegations with respect to removal proceedings.  D. 57.  Defendants again moved to dismiss the allegations in the amended complaint related to removal proceedings, D. 62, and the Court allowed the motion, D. 80.

On May 24, 2023, the government filed the administrative record.  D. 96.  Plaintiffs then challenged the sufficiency of that record, D. 109, and the Court allowed Plaintiffs to supplement the administrative record with limited discovery, particularly as to "the lack of any records relating to the promulgation and application of 8 C.F.R. § 103.2(b)(16)."  D. 115.  In September 2024, the

11

parties notified the Court that they had completed this discovery. D. 127. Both sides now have moved for summary judgment. D. 136; D. 145.[4]

## V. Discussion

### 1. The Record Does Not Establish that the Alleged Policy by USCIS Violates § 103.2(b)(16)

Although Plaintiffs frame the alleged policy as a nondisclosure policy where the core mechanism for information is seeking a FOIA, D. 137 at 11, Defendants contend that USCIS satisfies the inspection requirement under § 103.2(b)(16) by making the specific, requisite disclosures about the derogatory information, and the information that forms the basis of eligibility determination pursuant to subsections (i) and (ii) of the Regulation; that this is primarily done at the asylum interview; and to the extent that there is referral to FOIA beyond that, such policy is not inconsistent with the Regulation or arbitrary or capricious. D. 146 at 18, 33. Since the parties' dispute concerns the proper Interpretation of the Regulation, the Court turns to this issue.

As an initial matter, though, Plaintiffs do not appear to suggest that any policy by USCIS reflected in this record violates the specific requirement for disclosure of derogatory information pursuant to § 103.2(b)(16)(i), D. 137 at 26 & n.8, and this Court, consistent with the decisions of other courts, concludes that it does not. See, e.g., Ogbolumani v. Napolitano, 557 F.3d 729, 735 (7th Cir. 2009) (concluding that "nit-picking the exact characterization of the evidence would overstep our limited role"); Hassan v. Chertoff, 593 F.3d 785, 789 (9th Cir. 2010) (noting that 8 C.F.R. § 103.2(b)(16)(i) requires no more than that an applicant be made "aware of the information against him" and "given the opportunity to explain [it]"); Mangwiro v. Johnson, 554 F. App'x 255,

---

[4] On December 10, 2024, the parties jointly moved to amend the summary judgment briefing schedule, D. 141. The parties then filed their briefs in accordance with their proposed schedule, compare D. 141 with D. 146 and D. 150 and D. 155. The Court ALLOWS the motion, D. 141, *nunc pro tunc*.

261 (5th Cir. 2014) (concluding that 8 C.F.R. § 103.2(b)(16)(i) "does not require USCIS to provide documentary evidence of the information, but only sufficient information to allow the petitioners to rebut the allegations"); Levy v. U.S. Citizenship & Immigr. Servs., No. 20-cv-972, 2025 WL 771373, at *4 (S.D. Ohio Mar. 11, 2025) (same).[5]

As to the parties' dispute about the demands of the Regulation, first, the Court disagrees with the breadth of Plaintiffs' interpretation of § 103.2(b)(16). At times, Plaintiffs appear to suggest that § 103.2(b)(16) entitles applicants to all documents that "might" form the basis for the agency's ultimate decision. See D. 137 at 29; D. 150 at 8-9. The word "might" is, however, missing from the Regulation, which requires only that an applicant or petitioner be permitted to inspect "the record of proceeding which constitutes the basis for the decision." 8 C.F.R. § 103.2(b)(16); Noel Canning v. N.L.R.B., 705 F.3d 490, 500 (D.C. Cir. 2013) (observing that "the" is an "article noting a particular thing"), aff'd, 573 U.S. 513 (2014). It is not plainly erroneous to conclude that this language requires only disclosure of the documents on which the decision was actually based. See Ghaly v. I.N.S., 48 F.3d 1426, 1434-35 (7th Cir. 1995)

---

[5] Boateng v. Holder, 12-cv-10057-FDS, 2012 WL 12893987, at *4 (D. Mass. Aug. 16, 2012) and Ghafoori v. Napolitano, 713 F. Supp. 2d 871, 880 (N.D. Cal. 2010), upon which Plaintiffs rely, D. 150 at 19-20, do not warrant a different outcome. Even in Boateng, the Court denied plaintiff's clam that the failure to provide a copy of the BIA interview was arbitrary or capricious because defendants were only required to disclose the information that was the basis of the eligibility determination and "are not required to provide plaintiffs with a copy of the evidence that contains that information." Boateng, 2012 WL 12893987, at *4. To the extent that the court made any reference to a right to inspection under § 103.2(b)(16), it did not have before it any challenge to any policy regarding same and did not address how USCIS may satisfy this requirement. Id. Ghafoori, 713 F. Supp. 2d at 880 is distinguishable on this point because the court there explicitly noted that it was not interpreting 8 C.F.R. § 103.2(b)(16)(i) (regarding derogatory information) and instead was addressing (ii) where it found that, in the circumstances of that particular case, defendants had failed to disclose the information that was the basis of the decision.

13

(concluding that the regulation regarding disclosure of the basis of a notice of intent to revoke a visa requires disclosure of "crucial evidence," rather than "an opportunity to view each and every sworn statement" or every document USCIS consulted in reaching its decision); Michel v. Mayorkas, No. 20-cv-10885-IT, 2021 WL 797810, at *4 (D. Mass. Mar. 2, 2021) (noting that "an agency's interpretation of its own regulations is generally controlling unless plainly erroneous or inconsistent with the regulation" (internal citation and quotation marks omitted)).

Plaintiffs suggest other courts have interpreted "record of proceeding" more broadly, D. 137 at 33 n.10, but the cases Plaintiffs highlight are inapplicable here. Specifically, Zerezghi v. USCIS, 955 F.3d 802, 811-12 (9th Cir. 2020) and Kinda v. Jaddou, No. 22-cv-3037, 2023 WL 3624677, at *11 (D. Neb. Mar. 16, 2023) do not pertain to an applicant's inspection right pursuant to § 103.2(b)(16), see Zerezghi, 955 F.3d at 811-12 (concluding that the BIA's reliance upon "secret evidence" to deny a I-130 petition, a petition for an alien relative, on the grounds of marriage fraud without providing at least a summary of that evidence violated procedural due process); Kinda, 2023 WL 3624677, at *11 (interpreting 8 C.F.R. § 1003.5(b) and concluding that it does not require "unredacted versions of every document in the USCIS file" to be provided to the BIA), and yet their rulings echo the notion that the entirety of the record is not required to be disclosed, but the basis of an adverse decision must be. Plaintiffs also cite Sehgal v. Lynch, 813 F.3d 1025, 1031-32 (7th Cir. 2016), in which the Seventh Circuit observed that "8 C.F.R. § 103.2(b)(16)(ii), prohibits the agency from basing a determination of statutory eligibility on information that has not been disclosed to the applicant or petitioner" and noted that "a summary can suffice." Id. This analysis comports with the text of the Regulation, 8 C.F.R. § 103.2(b)(16)(ii), and the Defendants' position regarding same.

Second, the record does not show that the policy as alleged by Plaintiffs or the actual practices, as reflected in the record and presented by Defendants, by USCIS violates § 103.2(b)(16)'s requirement to permit applicants to "inspect the record of proceeding which constitutes the basis for the decision," as the Regulation does not specify when the record of proceeding must be made available for inspection. 8 C.F.R. § 103.2(b)(16). Plaintiffs suggest that "since each of § 103.2(b)(16)'s four paragraphs apply during the pendency of the asylum case, interpreting the 'inspect the record' requirement in the introductory clause of § 103.2(b)(16) as being triggered only *after* 'the decision' would render that clause disjointed from the four paragraphs that qualify and elaborate upon it, impermissibly turning the regulation into 'a chameleon.'" D. 150 at 14. But that is the structure of the Regulation. Subsection (i)'s requirement that derogatory information unknown to the applicant is provided "before the decision is rendered" makes the omission of similar language from the introductory clause of 8 C.F.R. § 103.2(b)(16) or its other subsections conspicuous. The absence of such language suggests that, subject to the specific requirements of its subsections, 8 C.F.R. § 103.2(b)(16) does not apply until the decision is made. New Ikor, Inc. v. McGlennon, 446 F. Supp. 136, 140 (D. Mass. 1978) (observing that "[i]t is a familiar aid to construction of regulations that where a term is carefully employed in one place and excluded in another, it should not be implied where excluded") (internal citation and quotation marks omitted); see Rudisill v. McDonough, 601 U.S. 294, 308 (2024) (noting the general presumption that "differences in language . . . convey differences in meaning"). Indeed, if the Regulation's inspection requirement applied prior to the asylum interview, as Plaintiffs suggest, subsection (i)'s specific requirement that derogatory information be disclosed before the decision would not be necessary. See D. 155 at 11. In addition, it is not clear how an

15

asylum officer can determine "what documents 'constitute[] the basis for the decision' for purposes of inspection" before any decision is made. D. 155 at 10.

Plaintiffs suggest any policy by the USCIS renders § 103.2(b)(16)'s inspection right meaningless by preventing applicants from invoking it prior to the asylum interview, and thereby forcing them to go into that interview blind. D. 137 at 31 (citing Dent v. Holder, 627 F.3d 365, 374 (9th Cir. 2010) (concluding that denying aliens in removal proceedings access to their A-files until after their immigration hearing, when those files would be "too late to use" would violate due process)). But to the extent the inspection right can be invoked during the asylum interview, it at least provides the applicant some opportunity to respond. Even post-interview inspection would not be meaningless, as it could provide unsuccessful applicants notice of relevant information in advance of removal proceedings and would "enable[] applicants to meaningfully pursue a motion to reopen or reconsider under 8 C.F.R. § 103.5." D. 155 at 18. While "the right to examine and rebut all evidence and materials that are introduced in opposition to an asylum claim" is an essential part of the procedural protections available to an asylum applicant in removal proceedings, Rules and Procedures, 59 Fed. Reg. at 62,293-94; see Dent, 627 F.3d at 374, 8 C.F.R. § 103.2(b)(16) does not evince an intent to apply the same procedural protections prior to the asylum interview.

Moreover, the record here also does not establish that any part of the "record of proceeding" that applicants cannot obtain through the application process or inspect during the asylum interview (i.e., information beyond that which is the basis of the decision or derogatory information unknown to the applicant before the interview) is inaccessible through FOIA. Because Plaintiffs' issue with disclosure through FOIA is the possibility of delay, and the Regulation does not require the opportunity for inspection within a specific timeframe, any reference to FOIA for inspection

16

pursuant to 8 C.F.R. § 103.2(b)(16) is at least consistent with that regulatory text. Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 208-09 (2011) (reasoning that "[b]ecause the interpretation the [agency] presents in its brief is consistent with the regulatory text, we need look no further in deciding this case").[6]

Lastly, the discovery offered by Plaintiffs does not suggest a policy that violates the Regulation. On or about October 10, 2023, an attorney went to the Boston Asylum Office and advised that she was there to attend an asylum interview with one of her clients. D. 138 ¶ 42; D. 147 ¶ 50; D. 151 ¶ 50. There, she asked a USCIS Training Officer whether USCIS had a system for asylum applicants or their representatives to view the applicant's record of proceeding, similar to the system used by the DOJ, Executive Office for Immigration Review ("EOIR"). D. 138 ¶ 42; D. 147 ¶ 51; D. 151 ¶ 51. This officer understood that she was asking whether USCIS had a system through which applicants or representatives could schedule an appointment to come into a USCIS office and then, at the scheduled time, review the record of proceeding in the USCIS office. D. 147 ¶ 51; D. 151 ¶ 51. In response, the officer said that he was unaware of any such USCIS system but would check with a supervisor. D. 147 ¶ 51; D. 151 ¶ 51. The officer consulted with a USCIS Supervisory Asylum Officer, who confirmed he was not aware of a USCIS system for viewing a record of proceeding similar to EOIR's. D. 147 ¶ 52; D. 151 ¶ 52. The supervisor shared that FOIA remains an available method of requesting government records. D. 147 ¶ 52; D. 151 ¶ 52. "K.S.," a senior asylum officer at the Asylum Division Headquarters at USCIS, stated that aside from reviewing certain documents (i) during the affirmative asylum interview and (ii) online (if

---

[6] Plaintiffs suggest that "the [g]overnment is not entitled to deference for a 'convenient litigating position' not reflecting a 'fair and considered judgment,'" D. 150 at 21 (quoting Kisor v. Wilkie, 588 U.S. 558, 579 (2019)), but this position appears to reflect USCIS practice, in line with the agency's 1994 reforms and guidance. See D. 155 at 17-18.

17

available), FOIA is the only practice she is familiar with by which affirmative asylum applicants, or their attorneys can obtain copies of the documents contained within the applicant's A-File. D. 138 ¶¶ 43-44; see D. 138 ¶¶ 45-47 (referencing further testimony confirming this practice). Neither suggests violation of the Regulation.  As to an earlier incident, on August 14, 2023, a senior asylum officer emailed USCIS to solicit advice regarding a request to review derogatory information contained in the record of proceeding on behalf of a particular asylum applicant, D. 138 ¶ 41, and the officer "assume[d] that counsel should do a FOIA if they want access to any documents we can provide," id., does not suggest an agencywide policy to avoid the obligations of the Regulation, see Bark v. United States Forest Serv., 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (concluding on summary judgment that plaintiffs had not shown final agency action where they "point[ed] to no written rules, orders, or even guidance documents of the [defendants] that set forth the supposed policies challenged here" but instead "attached a 'policy' label to their own amorphous description [agency's] practices").

For all of these reasons, the Court does not conclude that any policy of the USCIS, as alleged by Plaintiffs or as otherwise reflected in the record, violates the Regulation.

2. **The Alleged Policy Here is Neither Arbitrary Nor Capricious**

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  "One basic procedural requirement of administrative rulemaking is that an agency must give adequate reasons for its decisions." Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 212 (2016).  In the context of immigration laws, the agency's "approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." Judulang v. Holder, 565 U.S. 42, 55 (2011).

18

Plaintiffs suggest that USCIS's policy, even as Plaintiffs have framed it, is arbitrary and capricious because it reflects a modification of the agency's disclosure practices from those set forth in § 103.2(b)(16) which was adopted without reasoned explanation. D. 137 at 20-26. As discussed above, because the record here does not establish that any such policy violates the government's obligations under § 103.2(b)(16), and thus rescinds or modifies existing regulations, no further explanation is necessary and the reasons for the Regulation were explained. See Zixiang Li v. Kerry, 710 F.3d 995, 1001 (9th Cir. 2013) (declining to find a USCIS practice arbitrary and capricious where a contrary practice was not required by law); cf. Motor Vehicle Mfrs., 463 U.S. at 42 (noting that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change"). Nor does the record suggest that the government's approach is untied to the purposes of the immigration laws or the operation of the immigration system. See Judulang, 565 U.S. at 55. Rather, the agency's disclosure practices appear to be in line with its efforts – through its 1994 reforms – to reduce "the effort [required] to meet procedural requirements imposed by [then-]current regulations" to allow "[t]he existing system for adjudicating asylum claims" to attempt to "keep pace with incoming applications." Rules and Procedures, 59 Fed. Reg. at 14,780.

Certainly, this Court is mindful of the shortcomings of FOIA, and has previously noted that to the extent the Policy cabins the inspection right to FOIA, it "can have severe consequences for the individuals that Plaintiffs represent, especially given the accelerated timing of the proceedings." D. 50 at 17 (quoting Nightingale v. U.S. Citizenship & Immigr. Servs., 507 F. Supp. 3d 1193, 1205, 1212 (N.D. Cal. 2020) (ruling on class action regarding FOIA requests and explaining "[t]he unfortunate reality is that FOIA is the only realistic mechanism through which noncitizens can obtain A-Files" and that "DHS has acknowledged that '[p]ro se litigants who lack

19

expertise to file FOIA requests are routinely unable to obtain copies of their A-Files or do not receive it in a timely fashion to adequately represent themselves . . . increas[ing] the likelihood that DHS will improperly remove individuals who do not fall under any of the Department's enforcement priorities'")). Such arguments cannot, however, ground Plaintiffs' motion for summary judgment in light of the record, where Defendants' interpretation and implementation of the Regulation is at least consistent with the regulatory text and stated reasons for same. Chase Bank USA, 562 U.S. at 208-09.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 145, and DENIES Plaintiffs' motion for summary judgment, D. 136.

**So Ordered.**

/s Denise J. Casper
United States District Judge